UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENATA SINGLETON; MARC MITCHELL; LAZONIA BAHAM; JANE DOE; TIFFANY LACROIX; FAYONA BAILEY; and SILENCE IS VIOLENCE,<br><br>    *Plaintiffs*,<br><br>v.<br><br>LEON CANNIZZARO, in his official capacity as District Attorney of Orleans Parish and in his individual capacity; DAVID PIPES; IAIN DOVER; JASON NAPOLI; ARTHUR MITCHELL; TIFFANY TUCKER; MICHAEL TRUMMEL; MATTHEW HAMILTON; INGA PETROVICH; LAURA RODRIGUE; and JOHN DOE, in their individual capacities,<br><br>    *Defendants*. | Civil Action No. 17-10721<br><br>Section H<br>Judge Jane Triche Milazzo<br><br>Division 1<br>Magistrate Judge Janis van Meerveld |

## **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Leon Cannizzaro (in his official capacity as Orleans Parish District Attorney ("OPDA")), through undersigned counsel, respectfully submits this memorandum in support of his motion to dismiss the claims against the OPDA filed by Renata Singleton; Marc Mitchell; Lazonia Baham; Jane Doe; Tiffany LaCroix; Fayona Bailey; and Silence Is Violence ("SIV") (collectively, the "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Complaint, Doc. No. 1.

### **INTRODUCTION**

This lawsuit alleges that District Attorney Leon Cannizzaro and nine Assistant District Attorneys, in their efforts to aggressively prosecute those who commit serious crimes in Orleans Parish—specifically, murder, child molestation, child pornography, and domestic violence— have violated the rights of six witnesses and one organization. The Plaintiffs broadly challenge the efforts of Orleans Parish prosecutors to question material witnesses to such serious crimes

who are unwilling to cooperate with the prosecution, alleging that the Defendants have "create[d] a culture of fear and intimidation that chills crime victims and witnesses from asserting their constitutional rights"—*i.e.*, their purported right to refuse to speak to prosecutors. Complaint at 3. Many of the allegations concern the use of material-witness warrants, which "shall issue" upon a showing by the prosecution—or the defense—that "the testimony of any witness is essential to the prosecution or the defense" and that "it may become impracticable to secure the presence of the person by subpoena." LA. REV. STAT. § 15:257.[1] Notwithstanding the Plaintiffs' implications, such warrants are a critical tool for procuring essential testimony in criminal matters. *See, e.g.*, *Stein v. New York*, 346 U.S. 156, 184 (1953) ("[I]nterrogation of those who know something about the facts is the chief means to solution of crime. The duty to disclose knowledge of crime rests upon all citizens. It is so vital that one known to be innocent may be detained, in the absence of bail, as a material witness."), *overruled on other grounds by Jackson v. Denno*, 378 U.S. 368 (1964).

    **1.**    Three of the Plaintiffs (Ms. Singleton, Ms. Baham, and Mr. Mitchell) allege that their Fourth Amendment rights were violated because they were arrested pursuant to material-witness warrants that were obtained using warrant applications that allegedly contained false statements, material omissions, and insufficient factual allegations. Complaint at ¶¶ 295–297. These Plaintiffs allege that the same conduct also violates the First Amendment (because it constitutes "threat[s] and retaliati[on] against crime victims, witnesses and advocates who engage in constitutionally protected free speech, including the right to decline to speak voluntarily with investigating prosecutors"); violates the substantive-due-process clause of the

---

[1] Federal law contains a very similar statute applicable to witnesses in criminal proceedings. *See* 18 U.S.C. § 3144.

Fourteenth Amendment (because it "shocks the conscience"); and constitutes abuse of process and fraud under Louisiana law. *See id.* at ¶¶ 302–303, 309, 318–330.

2. The other three individual Plaintiffs (Ms. Bailey, Ms. LaCroix, and Ms. Doe) allege that their Fourth Amendment rights were violated because they were compelled to attend private meetings at the DA's office through allegedly "unlawful subpoenas, accompanied by threats of arrest and imprisonment." *See* Complaint at ¶¶ 299–300. These Plaintiffs likewise allege that the same conduct also violates the First and Fourteenth Amendments and constitutes abuse of process and fraud under Louisiana law. *See id.* at ¶¶ 302–303, 309, 318–330.

3. Ms. Baham additionally alleges her Fourteenth Amendment due-process rights were violated by causing her to be "jailed without a prompt court appearance after an arrest on a material witness warrant." Complaint at ¶ 306.

4. The Plaintiffs allege that Mr. Cannizzaro is liable for the alleged wrongful acts described above because he failed to adequately train, supervise, and discipline the Assistant District Attorneys and others under his control. Complaint at ¶¶ 311–313.

5. SIV alleges that the Fourth Amendment rights of its unnamed "clients" were violated in the same manner described above, and that its own First Amendment rights were violated based on alleged threats that Mr. Cannizzaro made to its Executive Director. Complaint at ¶¶ 295, 299, 304. SIV also asserts a state-law abuse-of-process claim on the same grounds described above. *Id.* at ¶ 321.

\* \* \* \* \*

The Plaintiffs allege that the OPDA (*i.e.*, Mr. Cannizzaro in his official capacity) is liable for these allegedly wrongful actions because such actions allegedly were taken pursuant to an official policy, practice, or custom of the OPDA. However, all of the Plaintiffs' claims are fatally

flawed for one reason or another. Most of these claims—including all of the claims asserted by Plaintiffs who were arrested to material-witness warrants—are prescribed because they were filed more than one year after the date of the alleged injury. Additionally, all but one of the claims fail to state a cognizable cause of action. For these reasons, all of the claims against the OPDA must be dismissed.

## FACTUAL BACKGROUND

The specific factual allegations made by each Plaintiff are set forth below. Although these allegations are replete with inaccuracies and material omissions, they are accepted as true for the purposes of this motion only, as required by Rule 12(b)(6) standards.

### A.    Claims by Renata Singleton

Renata Singleton reported a crime by Vernon Crossley to the police on November 2, 2014. *See* Complaint at ¶ 155. On April 21, 2015, an unnamed "investigator from the District Attorney's Office" delivered two documents that were styled as "subpoenas," directing her to appear for questioning at the DA's office on April 24, 2015, but which had not been presented to or approved by a court. *Id.* at ¶¶ 157–158. The Plaintiffs do not allege whose signature was on the documents. Ms. Singleton did not go the DA's office on April 24, 2015, as requested. *Id.* at ¶ 160. On that day, Arthur Mitchell "applied for a material witness warrant asking the court to put [her] in jail," including as part of the factual basis that she had failed to appear at the DA's office pursuant to the two "subpoenas." *Id.* at ¶ 161. David Pipes "reviewed and approved Defendant Mitchell's application for the arrest warrant" for Ms. Singleton. *Id.* at ¶ 162.

Judge Robin Pittman issued the material-witness warrant for her arrest with a bond of $100,000. Complaint at ¶ 163. On May 28, 2015, police officers came to her house to arrest her pursuant to that warrant, but her friend, who was also a police officer, persuaded the officers (who called the DA's office for approval) to leave without arresting her on the condition that she

4

voluntarily appear at the DA's office the next morning. *Id.* at ¶¶ 165–167. She appeared the next morning and was greeted by Mr. Mitchell, who led her to a room and questioned her about the incident with Mr. Crossley. *Id.* at ¶ 169. "At some point," Tiffany Tucker and an unnamed supervisor joined the meeting. *Id.* Mr. Mitchell told Ms. Singleton that she did not need a lawyer because she was not a criminal. *Id.* at ¶ 170. After she refused to answer any questions without an attorney present, the unnamed supervisor called for a police officer, who arrived and arrested her. *Id.* at ¶¶ 171–172. She was brought to court on June 2, 2015, and a lawyer hired by her mother succeeded in having the bond reduced to $5,000. *Id.* at ¶ 181. Her mother paid the bond, and she was released. *Id.* at ¶¶ 181–182. Mr. Crossley pleaded guilty to two misdemeanors, and Ms. Singleton was never asked to testify. *Id.* at ¶ 183.

### B. Claims by Marc Mitchell

In July 2014, Marc Mitchell was shot multiple times by Jonterry Bernard after a confrontation with Gerard Gray at a basketball court. Complaint at ¶¶ 187–188. Mr. Bernard and Mr. Gray were both charged with attempted murder. *Id.* at ¶ 189. As Mr. Gray's trial approached, Michael Trummel met with Mr. Mitchell to prepare. *Id.* at ¶ 192. Mr. Mitchell felt that Mr. Trummel "seemed more intent on telling him what had happened than actually listening to [his] account of the shooting," and that the DA's office was not "taking concerns about his safety seriously." *Id.* at ¶¶ 194–195. On April 4, 2016, Mr. Mitchell met with Mr. Trummel "to inform him that he wanted no further private contact with the District Attorney's Office," and also "signed a subpoena to come to court to testify against Gray." *Id.* at ¶¶ 197–198.

On April 6, 2016, Mr. Trummel applied for a material-witness warrant for Mr. Mitchell, relying on Mr. Mitchell's statements at the April 4 meeting and stating that Mr. Mitchell "had a bus ticket to leave town," although Mr. Mitchell had not in fact bought a bus ticket. Complaint at ¶¶ 199–200. The application did not inform the court that Mr. Mitchell had signed a subpoena to

5

appear in court for Mr. Gray's trial. *Id.* at ¶ 201. The warrant was issued, and on April 7, 2016, Mr. Mitchell was arrested by two police officers pursuant to the warrant and held on a $50,000 bond. *Id.* at ¶ 203–206. Mr. Mitchell's family sought assistance from SIV, and Tamara Jackson advocated for his release. *Id.* at ¶ 207. Mr. Mitchell was released the next morning, April 8, 2016, on his own recognizance. *Id.* The day before Mr. Gray's trial, Mr. Mitchell "reluctantly" agreed to meet with prosecutors, and he discussed his testimony with Mr. Trummel once again. *Id.* at ¶ 208. Mr. Mitchell testified at trial, and Mr. Gray was convicted. *Id.* at ¶ 210.

### C.      Claims by Lazonia Baham

After Lazonia Baham's daughter's boyfriend was murdered in February 2013, multiple investigators from the DA's office (including Michael Kitchens, who is not a party to this case) contacted her on several occasions with questions about Isaac Jones, the murder suspect. Complaint at ¶¶ 214–218. After Mr. Kitchens told her that she could be arrested if she refused to tell prosecutors what she knew, she stopped taking his calls. *Id.* at ¶¶ 218–219. She told the DA's office that "she would come to court if subpoenaed, but . . . would not change her story." *Id.* at ¶ 220. In the following months, she received several allegedly "unlawful" subpoenas directing her to appear at the DA's office, but she did not appear. *Id.* at ¶¶ 221–221.

On October 13, 2015, Jason Napoli applied for a material-witness warrant for Ms. Baham, alleging that Ms. Baham "refused to meet with ADA Jason Napoli and cut off all communication with the District Attorney's Office." Complaint at ¶ 223. Mr. Napoli did not state in the application that Ms. Baham had talked to him on multiple occasions, or that she had told him she planned to attend court. *Id.* at ¶ 224. The warrant was issued, and on December 29, 2015, police officers arrested Ms. Baham. *Id.* at ¶¶ 224–225. On January 6, 2016, she was brought to court, where she met with Mr. Napoli privately. *Id.* at ¶¶ 227–228. She was released

later that evening. *Id.* at ¶ 233. Since then, Ms. Baham has testified twice in pretrial proceedings. *Id.* at ¶ 234.

        **D.**       **Claims by Jane Doe**

Jane Doe is a victim of juvenile molestation and child pornography. Complaint at ¶ 236. In September 2016, Iain Dover brought an allegedly "fraudulent" subpoena to her home, directing her to appear at the DA's office for questioning. *Id.* at ¶ 237. An attorney for Ms. Doe responded with a letter asking Mr. Dover to "honor their right to privacy, their right to be left alone," explaining that "[t]hey do not want to be badgered, bothered or harassed by anyone from law enforcement in any way," and telling him to direct any questions to Ms. Doe's attorney. *Id.* at ¶ 238. Later, an investigator from the DA's office who worked for Mr. Dover came to Ms. Doe's high school, accompanied by a uniformed police officer, with a "document" directing her to appear for questioning at the DA's office the next morning. *Id.* at ¶ 239.

Ms. Doe did not appear the following morning, and Mr. Dover "called her attorney and left a voicemail threatening that, if [she] did not arrive by 11 a.m., he would seek her arrest on a material witness warrant." Complaint at ¶ 242. A hearing in the case was held later that day, and although Mr. Dover "arrived at the hearing with a completed material witness warrant application" for Ms. Doe, he did not present it, and no warrant was issued. *Id.* at ¶ 243–244. Instead, "[t]he court ordered [Ms. Doe's attorney] to arrange a meeting for Ms. Doe to meet with prosecutors." *Id.* at ¶ 244. Ms. Doe met with Mr. Dover at the DA's office later that same day. *Id.* at ¶ 245. Mr. Dover "interrogated her about the offenses that victimized her, including a number of intimate questions," and allegedly "mocked [her] when she did not answer his questions." *Id.* at ¶ 246.

### E.     Claims by Fayona Bailey

Fayona Bailey is a potential witness in a murder case, and Inga Petrovich issued an allegedly "fraudulent" subpoena directing her to appear at the DA's office on March 16, 2017, for questioning. Complaint at ¶¶ 250, 252. The document, which was entitled "SUBPOENA" and threatened jail and fines for failure to obey, was delivered to Ms. Bailey's home by two investigators from the DA's office. *Id.* at ¶ 253. One of the investigators told her that she could be sent to jail if she did not attend. *Id.* at ¶ 254. The investigators asked her to sign the document to acknowledge receipt, but she did not do so. *Id.* at ¶ 256. Later, an unnamed "representative" of the DA's office called Ms. Bailey and again threatened her with jail time if she did not appear. *Id.* at ¶ 258. Ms. Bailey hired an attorney, who filed a motion to quash the subpoena, but the subpoena was withdrawn by the prosecution. *Id.* at ¶ 267. Ms. Bailey was never called to testify at trial. *Id.* at ¶ 268.

### F.     Claims by Tiffany LaCroix

Tiffany LaCroix is a potential witness in a murder case, and Laura Rodrigue issued an allegedly "fraudulent" subpoena in November 2016 directing her to appear at the DA's office for questioning and threatening fines or imprisonment for failure to obey. Complaint at ¶¶ 250, 262. Ms. LaCroix "did not want to be pressured to reveal private information about [the defendant] unless she was compelled by law to do so" and did not want to miss work, so she hired an attorney, who filed a motion to quash the subpoena. *Id.* at ¶¶ 263–267. The subpoena was withdrawn by the prosecution, and Ms. LaCroix was never called to testify at trial. *Id.* at ¶¶ 267–268.

### J.     Claims by Silence Is Violence

The Plaintiffs allege that Mr. Cannizzaro violated the First Amendment rights of SIV (1) by warning its Executive Director, Tamara Jackson, in 2016 that "if it appeared that she was

8

encouraging victims not to communicate with his office, he could prosecute her for witness coercion"; and (2) by warning Ms. Jackson three years earlier that "if she dissuaded victims from assisting prosecutors, she could be charged with obstruction." Complaint at ¶¶ 151–153, 304. Also, as discussed further below, SIV attempts to assert various claims on behalf of its unnamed "clients."

## LAW AND ARGUMENT

In considering a Rule 12(b)(6) motion, a court must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Howell v. Town of Ball*, 827 F.3d 515, 521 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a court is not bound to accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678.

**I.    Fourth Amendment claims based on material-witness warrants**

"Section 1983 claims pending in federal courts in Louisiana are subject to a one year statute of limitations period," which "commences to run from the day injury or damage is sustained." *Gordon v. James*, No. 16-cv-16540, 2017 WL 4311125, at *6 (E.D. La. Sep. 26, 2017) (citing LA. CIV. CODE art. 3492); *see also Elzy v. Roberson*, 868 F.2d 793 (5th Cir. 1989) (same). Three of the Plaintiffs assert Fourth Amendment claims arising out their arrest on allegedly improper material-witness warrants: (1) Ms. Singleton alleges that a warrant was issued on April 24, 2015, and that she was arrested on May 29, 2015, and released on June 2, 2015; (2) Mr. Mitchell alleges that a warrant was issued on April 6, 2016, and that he was

9

arrested on April 7, 2016, and released on April 8, 2016; (3) Ms. Baham alleges that a warrant was issued on October 13, 2015, and that she was arrested on December 29, 2015, and released on January 6, 2016. The injuries alleged by these Plaintiffs—seizure on allegedly unconstitutional grounds—clearly were sustained on the day they were arrested, and in no event could have occurred at any point *after* they were released from custody. Because these Plaintiffs were all arrested and released more than one year before the date this lawsuit was filed (October 17, 2017), their claims are prescribed on the face of the Complaint and must be dismissed.

## II.     Fourth Amendment claims based on allegedly unlawful subpoenas

Three of the Plaintiffs (Ms. Doe, Ms. Bailey, and Ms. LaCroix) allege that "unlawful" subpoenas were used to "seize" them in violation of the Fourth Amendmt and they were "compel[ed] to attend private meetings at the District Attorney's Office by using unlawful subpoenas, accompanied by threats of arrest and imprisonment." Complaint at ¶ 299. However, the claims by Ms. Doe are prescribed because the presentation of the allegedly fraudulent subpoena and her meeting occurred in September 2016, more than one year before this suit was filed.

Two of these plaintiffs—Ms. Bailey and Ms. LaCroix—admit that they did not appear for questioning at the DA's office as requested; thus, they were not actually "compel[ed] . . . to attend private meetings at the District Attorney's Office." Complaint at ¶ 299. Notwithstanding this failure to appear, they do not allege that they were arrested or subjected to any other restraint on their liberty. The law is clear that a threat of possible imprisonment, without more, does not constitute a "seizure" under the Fourth Amendment if the subject does not actually yield or submit to it. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991); *see also Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control."); *Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007)

10

("[T]he mere issuance of a citation requiring presence at future legal proceedings does not qualify as a constitutional 'seizure.'"); *Britton v. Maloney*, 196 F.3d 24, 29–30 (1st Cir. 1999) ("*Terry* cannot be read to mean that the issuance of a summons (any more than a testimonial subpoena or a call to jury duty) would constitute a seizure simply because it threatens a citizen with the *possibility* of confinement if he fails to appear in court."). Ms. Bailey and Ms. LaCroix plainly have not stated any cognizable cause of action.

Although Ms. Doe alleges that she actually appeared at the DA's office for questioning, her claim is likewise deficient. Even assuming that a voluntary meeting with prosecutors under threat of imprisonment could constitute a "seizure," Ms. Doe does not allege that any such seizure resulted from the subpoena that was sent to her—rather, she alleges that she initially refused to appear as directed by the subpoena and met with prosecutors only later, after "[t]he court ordered [her lawyer] to arrange a meeting." Complaint at ¶ 244–245. In other words, Ms. Doe cannot show that she was improperly coerced her to meet with him when it was the court that ultimately ordered the meeting. Accordingly, Ms. Doe also has failed to state a cognizable cause of action.

### III.     First Amendment retaliation claims

"[T]o establish a First Amendment retaliation claim . . . , [a plaintiff] must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

Three of the Plaintiffs (Ms. Singleton, Mr. Mitchell, and Ms. Baham) appear to allege that their First Amendment rights were violated because material-witness warrants were obtained

in "retaliation" for their assertion of their purported "right to decline to speak voluntarily with investigating prosecutors." Complaint at ¶ 302–303. As discussed above, these claims are prescribed because the injury they complain of occurred more than one year before suit was filed. Alternatively, these Plaintiffs have failed to state a claim because it is not "constitutionally protected activity" for a witness to a serious crime to refuse to speak with prosecutors.

The other three individual Plaintiffs (Ms. Doe, Ms. Bailey, and Ms. LaCroix) appear to allege that their First Amendment rights were violated because they were sent allegedly fraudulent subpoenas to them in "retaliation" for their assertion of their purported "right to decline to speak voluntarily with investigating prosecutors." Complaint at ¶ 302–303. As discussed above, Ms. Doe's claim is prescribed because her alleged injury occurred more than one year before suit was filed. Alternatively, these Plaintiffs have also failed to state a claim. Receiving an allegedly fraudulent subpoena that threatens fines or imprisonment if the recipient does not appear, without more, does not give rise to a constitutionally adequately "injury." Nor would it "chill a person of ordinary firmness" from continuing the activity of not speaking voluntarily with prosecutors. Notably, neither Ms. Doe, Ms. Bailey, nor Ms. LaCroix felt sufficiently "chilled" or threatened to actually comply with the subpoenas that they received. And again, it is not "constitutionally protected activity" for a witness to a serious crime to refuse to speak with prosecutors.

## IV. Fourteenth Amendment substantive-due-process claims

The Plaintiffs allege that "[e]ach of Defendant Cannizzaro's official policies, practices and customs described [in the Complaint], separately and in combination, shocks the conscience and violated the Fourteenth Amendment rights of all Plaintiffs." Complaint at ¶ 309. A plaintiff asserting a Fourteenth Amendment substantive-due-process claim must show that the defendant's actions (1) caused an injury; (2) "were grossly disproportionate to the need for action

under the circumstances"; and (3) "were inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998). "The burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 868 (5th Cir. 2012) (quotation omitted); *see also Jordan v. Fisher*, 823 F.3d 805, 812–13 (5th Cir. 2016) ("The Court's test for the substantive component of the due process clause prohibits only the most egregious official conduct, and it will rarely come into play.") (quotation omitted); *Kinzie v. Dallas Cty. Hosp. Dist.*, 239 F. Supp. 2d 618, 630 ("[C]ourts have shown great reluctance to find that the behavior of a state official 'shocks the conscience.'").

First, as discussed above, the claims asserted by Ms. Singleton, Mr. Mitchell, Mr. Baham, and Ms. Doe are all barred by prescription. The only Plaintiffs whose claims do not appear to be prescribed are Ms. Bailey and Ms. LaCroix—who were never arrested, detained, or even privately questioned by prosecutors, despite failing to comply with allegedly "fraudulent" subpoenas.

Second, the Plaintiffs have not adequately alleged the violation of any constitutional right—clearly established or otherwise. Even accepting the Plaintiffs' allegations at face value, the alleged actions were neither "grossly disproportionate to the need for action under the circumstances" nor "inspired by malice rather than merely careless or unwise excess of zeal." *Petta*, 143 F.3d at 902. Indeed, the Plaintiffs essentially accuse the Defendants of excessive zeal in securing witness testimony to successfully prosecute serious crimes—murders, child

molestation, child pornography, and domestic violence. The Plaintiffs do not suggest that any of the Defendants abused their office for some ulterior or personal motive, such as profit or vengeance. Thus, even assuming for the sake of argument that one or more subpoenas were sent without proper court authorization, or that one or more material-witness warrants were defective in some respect, this would not amount to an "abuse of official power that shocks the conscience" within the meaning of the Fourteenth Amendment. *Petta*, 143 F.3d at 902.

## V. Abuse of process

"[T]he essential elements of an abuse of process claim" are "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding." *Waguespack, Seago and Carmichael (A PLC) v. Lincoln*, 768 So. 2d 287, 290–91 (La. App. 1st Cir. 2000). Because the tort of abuse of process is subject to a prescriptive period of one year, *see No Drama, LLC v. Caluda*, 177 So. 3d 747, 751–52 (La. App. 5th Cir. 2015), the claims by Ms. Singleton, Mr. Mitchell, Ms. Baham, and Ms. Doe are prescribed.

The abuse-of-process claims also fail on the merits. The Plaintiffs allege that the Defendants obtained material-witness warrants illegally and for an improper purpose ("to coerce private, out-of-court meetings with prosecutors and to coerce testimony consistent with the prosecution's theory of the case"), and that the Defendants "circumvent[ed] the requirements of [Code of Criminal Procedure] Article 66" by sending subpoenas that were not properly authorized by a court. *See* Complaint at ¶¶ 318–319. However, "[t]he tort of abuse of process involves the malicious use of a legal process *after* the process has been instituted." *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (La. App. 5th Cir. 1990). Thus, alleging that the Defendants acted wrongfully in *obtaining* material-witness warrants does not state a valid cause of action. Further, abuse of process requires "malicious perversion of a ***legally issued process***

14

whereby a result not lawfully or properly obtainable under it is attempted to be secured." *Succession of Cutrer v. Curtis*, 341 So. 2d 1209, 1214 (La. App. 1st Cir. 1976) (emphasis added). Because the Plaintiffs allege that the material-witness warrants and subpoenas were issued ***illegally***, they have not stated a valid cause of action.

## VI. Fraud

"Louisiana jurisprudence indicates that the following are the elements of the tort of fraud: 1. a misrepresentation of material fact; 2. made with the intent to deceive; 3. reasonable or justifiable reliance by the plaintiff; and 4. resulting injury. The intent to deceive is a specific intent." *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 442 (5th Cir. 2011); *see also Chateau Homes by RJM, Inc. v. Aucoin*, 97 So. 3d 398, 404 (La. App. 5th Cir. 2012) ("[T]he elements of the tort of fraud are a misrepresentation of material fact made with the intent to deceive when there was reasonable or justifiable reliance by the plaintiff and resulting injury."). Because the tort of fraud is subject to a prescriptive period of one year, *see Cerullo v. Heisser*, 213 So. 3d 1232, 1236 (La. App. 5th Cir. 2017), the claims by Ms. Singleton, Mr. Mitchell, Ms. Baham, and Ms. Doe are prescribed.

The fraud claims likewise fail on the merits. The Plaintiffs argue that the Defendants mispresented to them that the "subpoenas" sent to them "were real, had been obtained legitimately, and had to be honored by certain Plaintiffs under threat of fines and incarceration." Complaint at ¶ 324. The Plaintiffs further allege that they "reasonably and justifiably relied on the authenticity, truthfulness, and lawfulness of the fraudulent subpoenas," Complaint at ¶ 327, but this is false. Of the five Plaintiffs who allegedly received such subpoenas (Ms. Singleton, Ms. Baham, Ms. Doe, Ms. Bailey, and Ms. LaCroix), none of them actually appeared at the DA's office as directed. *See id.* at ¶¶ 157–160, 221–222, 237–238, 250–251, 257, 266–267. Thus, even assuming for the sake of argument that the subpoenas included statements that were intentionally

15

deceptive, the Plaintiffs clearly sustained no injuries in reliance on the truthfulness of such statements.

The Plaintiffs also argue that the Defendants "made material misrepresentations in seeking to jail certain Plaintiffs," and that "they were . . . harmed when courts justifiably relied on Defendants' material witness warrant applications." Complaint at ¶¶ 325–327. However, Louisiana law requires justifiable reliance *by the plaintiff*. *Schaumburg*, 421 F. App'x at 442. Alleging that the Plaintiffs were harmed by misrepresentations allegedly made to a court simply does not state a cognizable cause of action for fraud.

## VII. Fourteenth Amendment claim based on prolonged detention without court appearance

Ms. Baham alleges that the Defendants violated her Fourteenth Amendment rights by "causing [her] to be jailed without a prompt court appearance after [her] arrest on a material witness warrant." Complaint at ¶¶ 306–307. For the same reasons explained above, this claim is prescribed because Ms. Baham's detention occurred more than one year before suit was filed. Alternatively, Ms. Baham has failed to state a claim because she has not alleged any specific facts suggesting that any of the Defendants took any actions whatsoever to delay or prevent her from being brought to court.

## VIII. Supervisory liability claims

The Plaintiffs allege that Mr. Cannizzaro is liable for the specific alleged violations of the First, Fourth, and Fourteenth Amendments described above because he failed to adequately train, supervise, and discipline the attorneys and agents under his supervision. Complaint at ¶ 311. Because the Plaintiffs have not adequately alleged any actionable violation of their constitutional rights, their supervisory-liability claims against Mr. Cannizzaro necessarily fail.

16

## IX. Silence Is Violence claims

SIV alleges that various policies and practices have violated "the rights of Silence Is Violence's clients" under the Fourth and Fourteenth Amendments. *See* Complaint at ¶¶ 295, 299, 306, 309. However, the only client mentioned by name in the Complaint is Mr. Mitchell, *see id.* at ¶¶ 277, and his claims fail for all the reasons explained above. Assuming for the sake of argument that SIV would have standing to seek redress for alleged harm to its clients,[2] SIV has failed to adequately allege facts showing that the rights of any specific clients were violated. Nor has SIV adequately alleged facts showing that its own rights were violated.

### A. First Amendment claim

SIV alleges that Mr. Cannizzaro violated its First Amendment rights "by threatening its Executive Director with prosecution for her public statements on behalf of the organization." Complaint at ¶ 304. Specifically, SIV alleges that Mr. Cannizzaro informed its director, Tamara Jackson, that she could be subject to criminal prosecution if she encouraged witnesses not to assist or communicate with prosecutors. *See id.* at ¶¶ 152–153. However, SIV cannot show that Mr. Cannizzaro's alleged threats were made in retaliation for SIV's constitutionally protected activity, or that it "suffer[ed] an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Keenan*, 290 F.3d at 258.

The crime of obstruction of justice, as codified in Louisiana law, includes "[i]nducing or persuading or attempting to induce or persuade any person to . . . [t]estify falsely or, without right or privilege to do so, withhold any testimony" or "[w]ithout the right or privilege to do so, absent himself from such proceedings despite having received service of a subpoena." LA. REV. STAT. § 14:130.1(A)(4). Encouraging a witness who has received a subpoena pursuant to Code

---

[2] The Defendants do not concede that SIV has standing.

of Criminal Procedure article 66 from communicating with prosecutors as directed by the subpoena would clearly constitute obstruction of justice. Similarly, encouraging a witness to generally avoid all contact and communications with the DA's office for the purpose of evading service of a subpoena would at least arguably constitute obstruction of justice. To the extent that SIV's purported "core political speech" involves unlawful obstruction of justice, *see* Complaint at ¶ 304, it is not constitutionally protected, and it would not be improper for Mr. Cannizzaro to inform SIV of this.

Further, even assuming that Mr. Cannizzaro's alleged threats could be construed as being motivated in some part by SIV's constitutionally protected speech, SIV has suffered no resulting "injury" as required to support a retaliation claim. *See Keenan*, 290 F.3d at 258. SIV does not allege that any of its members were ever arrested, prosecuted, or subjected to personal abuse or ongoing harassment by police or prosecutors. As a matter of law, two warnings from Mr. Cannizzaro about the law over a three-year period that did not result in any adverse action being taken against SIV do not give rise to a First Amendment retaliation claim. *See, e.g.*, *Osborne v. Grussing*, 477 F.3d 1002, 1005 n.2 (8th Cir. 2007) (the "verbal tongue-lashings" given to the plaintiffs by county officials would not constitute an injury sufficient to support a First Amendment retaliation).

### B. Abuse-of-process claim

SIV also asserts a claim for abuse of process, alleging that it "was injured because it had to redirect its resources to remedy and prevent harms to its clients caused by the abuse of the material witness statute and the Article 66 investigative subpoena by the District Attorney's Office." Complaint at ¶ 321. However, because SIV does not even attempt to connect specific, concrete actions by specific Defendants with specific injuries that it allegedly suffered, SIV

cannot satisfy the basic tort-law requirement of causation.[3] Further, alleging that SIV chose to "redirect its resources to remedy and prevent harms to its clients" fails, as a matter of law, to allege a harm that was directly caused by the Defendants.

## CONCLUSION

For the reasons explained above, the OPDA respectfully requests that the claims against it be dismissed.

*/s/ THOMAS J. BARBERA*
THOMAS J. BARBERA (18719)
1010 Common Street, Suite 3000
New Orleans, LA 70112

*Counsel for Leon Cannizzaro (in his official capacity)*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November, 2017, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system, as well as by U.S. Mail for any non-CM/ECF participant.

*/s/ THOMAS J. BARBERA*

---

[3] *See Hall v. Lilly*, 666 So. 2d 1328, 1332 (La. App. 2nd Cir. 1996) ("Abuse of process is a cause of action originating from the common law and recognized in our jurisprudence as a compensable tort under LSA—C.C. Art. 2315."); LA. CIV. CODE art. 2315(A) ("Every act whatever of man *that causes damages to another* obliges him by whose fault it happened to repair it.") (emphasis added); *Moss v. Town of Rayville*, 181 So. 3d 809, 812 (La. App. 2nd Cir. 2015) ("In a suit for damages, it is the plaintiff's burden to prove the damage he suffered as the result of the defendant's fault.").