# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RENATA SINGLETON; MARC MITCHELL; LAZONIA BAHAM; JANE DOE; TIFFANY LACROIX; FAYONA BAILEY; and SILENCE IS VIOLENCE,

    *Plaintiffs*,

v.

LEON CANNIZZARO, in his official capacity as District Attorney of Orleans Parish and in his individual capacity; DAVID PIPES; IAIN DOVER; JASON NAPOLI; ARTHUR MITCHELL; TIFFANY TUCKER; MICHAEL TRUMMEL; MATTHEW HAMILTON; INGA PETROVICH; LAURA RODRIGUE; and JOHN DOE, in their individual capacities,

    *Defendants*.

Civil Action No. 17-10721

Section H
Judge Jane Triche Milazzo

Division 1
Magistrate Judge Janis van Meerveld

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Leon Cannizzaro (in his individual capacity); David Pipes; Iain Dover; Jason Napoli; Arthur Mitchell; Tiffany Tucker; Michael Trummel; Matthew Hamilton; Inga Petrovich; and Laura Rodrigue (collectively, the "Individual Defendants"), through undersigned counsel, respectfully submit this memorandum in support of their motion to dismiss the claims against them filed by Renata Singleton; Marc Mitchell; Lazonia Baham; Jane Doe; Tiffany LaCroix; Fayona Bailey; and Silence Is Violence ("SIV") (collectively, the "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Complaint, Doc. No. 1.

## INTRODUCTION

This lawsuit alleges that District Attorney Leon Cannizzaro and nine Assistant District Attorneys, in their efforts to aggressively prosecute those who commit serious crimes in Orleans Parish—specifically, the offenses of murder, child molestation, child pornography, and domestic violence, as described in the Complaint—have violated the rights of six witnesses and one organization. The Plaintiffs broadly challenge the efforts of Orleans Parish prosecutors to question material witnesses to such serious crimes who are unwilling to cooperate with the prosecution, alleging that the Defendants have "create[d] a culture of fear and intimidation that chills crime victims and witnesses from asserting their constitutional rights"—*i.e.*, their purported right to refuse to speak to prosecutors. Complaint at 3. Many of the allegations concern the use of material-witness warrants, which "shall issue" upon a showing by the prosecution—or the defense—that "the testimony of any witness is essential to the prosecution or the defense" and that "it may become impracticable to secure the presence of the person by subpoena." La. Rev. Stat. § 15:257.[1] Notwithstanding the Plaintiffs' implications, such warrants are a critical tool for

---

[1] Federal law contains a similar statute applicable to witnesses in criminal proceedings. *See* 18 U.S.C. § 3144.

procuring essential testimony in criminal matters. *See, e.g.*, *Stein v. New York*, 346 U.S. 156, 184 (1953) ("[I]nterrogation of those who know something about the facts is the chief means to solution of crime. The duty to disclose knowledge of crime rests upon all citizens. It is so vital that one known to be innocent may be detained, in the absence of bail, as a material witness."), *overruled on other grounds by Jackson v. Denno*, 378 U.S. 368 (1964).

Although Plaintiffs' Complaint stretches to 62 pages, the actual claims against the Individual Defendants are discrete and straightforward:

1.      Three of the Plaintiffs (Ms. Singleton, Ms. Baham, and Mr. Mitchell) allege that their Fourth Amendment rights were violated by six of the Individual Defendants because they were arrested pursuant to material-witness warrants that were obtained using warrant applications that allegedly contained false statements, material omissions, and insufficient factual allegations. Complaint at ¶¶ 295–297. These Plaintiffs allege that the same conduct also violates the First Amendment (because it constitutes "threat[s] and retaliati[on] against crime victims, witnesses and advocates who engage in constitutionally protected free speech, including the right to decline to speak voluntarily with investigating prosecutors"); violates the substantive-due-process clause of the Fourteenth Amendment (because it "shocks the conscience"); and constitutes abuse of process and fraud under Louisiana law. *See id.* at ¶¶ 302–303, 309, 318–330.

2.      The other three individual Plaintiffs (Ms. Bailey, Ms. LaCroix, and Ms. Doe) allege that their Fourth Amendment rights were violated by three of the Individual Defendants because they were compelled to attend private meetings at the DA's office through allegedly "unlawful subpoenas, accompanied by threats of arrest and imprisonment." *See* Complaint at ¶¶ 299–300. These Plaintiffs likewise allege that the same conduct also violates the First and Fourteenth

Amendments and constitutes abuse of process and fraud under Louisiana law. *See id.* at ¶¶ 302–303, 309, 318–330.

3. Ms. Baham additionally alleges that Mr. Napoli violated her Fourteenth Amendment due-process rights by causing her to be "jailed without a prompt court appearance after an arrest on a material witness warrant." Complaint at ¶ 306.

4. The Plaintiffs allege that Mr. Cannizzaro is personally liable for the alleged wrongful acts described above because he failed to adequately train, supervise, and discipline the Assistant District Attorneys and others under his control. Complaint at ¶¶ 311–313. The Plaintiffs further allege that each of the Individual Defendants is liable for the alleged wrongdoing of every other Individual Defendant because he knew or should have known about it but failed to intervene and prevent it. *Id.* at ¶¶ 314–317.

5. SIV alleges that the Fourth Amendment rights of its unnamed "clients" were violated in the same manner described above, and that its own First Amendment rights were violated based on alleged threats that Mr. Cannizzaro made to its Executive Director. Complaint at ¶¶ 295, 299, 304. SIV also asserts a state-law abuse-of-process claim on the same grounds described above. *Id.* at ¶ 321.

\* \* \* \* \*

All of these claims are fatally flawed for multiple reasons. First, most of the claims are prescribed because they were filed more than one year after the date of the alleged injury. Second, most of the claims are barred by absolute prosecutorial immunity, and the remaining claims are barred by qualified immunity. Third, the claims fail on the merits because the Plaintiffs have not alleged facts plausibly showing that the Individual Defendants violated their rights. Accordingly, the claims against the Individual Defendants must be dismissed.

## FACTUAL BACKGROUND

The specific factual allegations against each Defendant, as alleged by the Plaintiffs, are set forth below. Although these allegations are replete with inaccuracies and material omissions, they are accepted as true for the purposes of this motion only, as required by Rule 12(b)(6) standards.

### A.     Arthur Mitchell (claims by Renata Singleton)

Renata Singleton reported to the police a crime by Vernon Crossley on November 2, 2014. *See* Complaint at ¶ 155. On April 21, 2015, an unnamed "investigator from the District Attorney's Office" delivered two documents that were styled as "subpoenas," directing her to appear for questioning at the DA's office on April 24, 2015, but which had not been presented to or approved by a court. *Id.* at ¶¶ 157–158. The Plaintiffs do not allege whose signature was on the documents. Ms. Singleton did not go the DA's office on April 24, 2015, as requested. *Id.* at ¶ 160. On that day, Mr. Mitchell "applied for a material witness warrant asking the court to put [her] in jail," including as part of the factual basis that she had failed to appear at the DA's office pursuant to the two "subpoenas." *Id.* at ¶ 161.

Judge Robin Pittman issued the material-witness warrant for her arrest with a bond of $100,000. Complaint at ¶ 163. On May 28, 2015, police officers came to her house to arrest her pursuant to that warrant, but her friend, who was also a police officer, persuaded the officers (who called the DA's office for approval) to leave without arresting her on the condition that she voluntarily appear at the DA's office the next morning. *Id.* at ¶¶ 165–167. She appeared the next morning and was greeted by Mr. Mitchell, who led her to a room with other attorneys and questioned her about the incident with Mr. Crossley, telling her that she did not need a lawyer because she was not a criminal. *Id.* at ¶¶ 168–170. After she refused to answer any questions without an attorney present, an unnamed supervisor who was in the room called for a police officer, who arrived and arrested her. *Id.* at ¶¶ 171–172. She was brought to court on June 2, 2015, and a

lawyer hired by her mother succeeded in having the bond reduced to $5,000. *Id.* at ¶ 181. Her mother paid the bond, and she was released. *Id.* at ¶¶ 181–182. Mr. Crossley pleaded guilty to two misdemeanors, and Ms. Singleton was never asked to testify. *Id.* at ¶ 183.

### B.     David Pipes (claims by Renata Singleton)

The sole allegation against Mr. Pipes is that he "reviewed and approved Defendant Mitchell's application for the arrest warrant" for Ms. Singleton. Complaint at ¶ 162.[2]

### C.     Tiffany Tucker (claims by Renata Singleton)

The sole allegation against Ms. Tucker is that she was present, along with Mr. Mitchell and an unnamed supervisor, in a meeting with Ms. Singleton that culminated in Ms. Singleton being arrested pursuant to a material-witness warrant. *See* Complaint at ¶ 169.[3] However, the Plaintiffs do not allege that Ms. Tucker said or did anything at that meeting or otherwise played any part in her arrest.

### D.     Michael Trummel (claims by Marc Mitchell)

In July 2014, Marc Mitchell was shot multiple times by Jonterry Bernard after a confrontation with Gerard Gray at a basketball court. Complaint at ¶¶ 187–188. Mr. Bernard and Mr. Gray were both charged with attempted murder. *Id.* at ¶ 189. As Mr. Gray's trial approached, Mr. Trummel met with Mr. Mitchell to prepare. *Id.* at ¶ 192. Mr. Mitchell felt that Mr. Trummel "seemed more intent on telling him what had happened than actually listening to [his] account of the shooting," and that the DA's office was not "taking concerns about his safety seriously." *Id.* at ¶¶ 194–195. On April 4, 2016, Mr. Mitchell met with Mr. Trummel "to inform him that he wanted

---

[2] The Plaintiffs also allege that Mr. Pipes approved a warrant application pertaining to an unnamed person who is not a party to this case. *See* Complaint at ¶ 93.

[3] The Plaintiffs also allege that Ms. Tucker signed allegedly improper subpoenas and applied for a material-witness warrant pertaining to unnamed persons who are not parties to this case. *See* Complaint at ¶¶ 46, 47, 55, 78, 79.

no further private contact with the District Attorney's Office," and also "signed a subpoena to come to court to testify against Gray." *Id.* at ¶¶ 197–198.

On April 6, 2016, Mr. Trummel applied for a material-witness warrant for Mr. Mitchell, relying on Mr. Mitchell's statements at the April 4 meeting and stating that Mr. Mitchell "had a bus ticket to leave town," although Mr. Mitchell had not in fact bought a bus ticket. Complaint at ¶¶ 199–200. The application did not inform the court that Mr. Mitchell had signed a subpoena to appear in court for Mr. Gray's trial. *Id.* at ¶ 201. The warrant was issued, and on April 7, 2016, Mr. Mitchell was arrested by two police officers pursuant to the warrant and held on a $50,000 bond. *Id.* at ¶ 203–206. Mr. Mitchell's family sought assistance from SIV, and Tamara Jackson advocated for his release. *Id.* at ¶ 207. Mr. Mitchell was released the next morning, April 8, 2016, on his own recognizance. *Id.* The day before Mr. Gray's trial, Mr. Mitchell "reluctantly" agreed to meet with prosecutors, and he discussed his testimony with Mr. Trummel once again. *Id.* at ¶ 208. Mr. Mitchell testified at trial, and Mr. Gray was convicted. *Id.* at ¶ 210.[4]

### E.      Matthew Hamilton (claims by Marc Mitchell)

Aside from conclusory allegations that Mr. Hamilton violated Mr. Mitchell's rights, *see* Complaint at ¶¶ 296, 303, there are no specific factual allegations against Mr. Hamilton.

### F.      Jason Napoli (claims by Lazonia Baham)

After Lazonia Baham's daughter's boyfriend was murdered in February 2013, multiple investigators from the DA's office (including Michael Kitchens, who is not a party to this case) contacted her on several occasions with questions about Isaac Jones, the murder suspect. Complaint at ¶¶ 214–218. After Mr. Kitchens told her that she could be arrested if she refused to

---

[4] The Plaintiffs also allege that Mr. Trummel applied for a material-witness warrant pertaining to an unnamed person who is not a party to this case. *See* Complaint at ¶¶ 83–84.

tell prosecutors what she knew, she stopped taking his calls. *Id.* at ¶¶ 218–219. She told the DA's office that "she would come to court if subpoenaed, but . . . would not change her story." *Id.* at ¶ 220. In the following months, she received several allegedly "unlawful" subpoenas directing her to appear at the DA's office, but she did not appear. *Id.* at ¶¶ 221–221.

On October 13, 2015, Mr. Napoli applied for a material-witness warrant for Ms. Baham, alleging that Ms. Baham "refused to meet with ADA Jason Napoli and cut off all communication with the District Attorney's Office." Complaint at ¶ 223. Mr. Napoli did not state in the application that Ms. Baham had talked to him on multiple occasions, or that she had told him she planned to attend court. *Id.* at ¶ 224. The warrant was issued, and on December 29, 2015, police officers arrested Ms. Baham. *Id.* at ¶¶ 224–225. On January 6, 2016, she was brought to court, where she met with Mr. Napoli privately. *Id.* at ¶¶ 227–228. She was released later that evening. *Id.* at ¶ 233. Since then, Ms. Baham has testified twice in pretrial proceedings. *Id.* at ¶ 234.[5]

### G.      Iain Dover (claims by Jane Doe)

Jane Doe is a victim of juvenile molestation and child pornography. Complaint at ¶ 236. In September 2016, Mr. Dover brought an allegedly "fraudulent" subpoena to her home, directing her to appear at the DA's office for questioning. *Id.* at ¶ 237. An attorney for Ms. Doe responded with a letter asking Mr. Dover to "honor their right to privacy, their right to be left alone," explaining that "[t]hey do not want to be badgered, bothered or harassed by anyone from law enforcement in any way," and telling him to direct any questions to Ms. Doe's attorney. *Id.* at ¶ 238. Later, an investigator from the DA's office who worked for Mr. Dover came to Ms. Doe's

---

[5] The Plaintiffs also allege that Mr. Napoli obtained a material-witness warrant pertaining to an unnamed person who is not a party to this case. *See* Complaint at ¶¶ 88–90.

high school, accompanied by a uniformed police officer, with a "document" directing her to appear for questioning at the DA's office the next morning. *Id.* at ¶ 239.

Ms. Doe did not appear the following morning, and Mr. Dover "called her attorney and left a voicemail threatening that, if [she] did not arrive by 11 a.m., he would seek her arrest on a material witness warrant." Complaint at ¶ 242. A hearing in the case was held later that day, and although Mr. Dover "arrived at the hearing with a completed material witness warrant application" for Ms. Doe, he did not present it, and no warrant was issued. *Id.* at ¶ 243–244. Instead, "[t]he court ordered [Ms. Doe's attorney] to arrange a meeting for Ms. Doe to meet with prosecutors." *Id.* at ¶ 244. Ms. Doe met with Mr. Dover at the DA's office later that same day. *Id.* at ¶ 245. Mr. Dover "interrogated her about the offenses that victimized her, including a number of intimate questions," and allegedly "mocked [her] when she did not answer his questions." *Id.* at ¶ 246.

## H.    Inga Petrovich (claims by Fayona Bailey)

Fayona Bailey is a potential witness in a murder case, and Ms. Petrovich issued an allegedly "fraudulent" subpoena directing her to appear at the DA's office on March 16, 2017, for questioning. Complaint at ¶¶ 250, 252. The document, which was entitled "SUBPOENA" and threatened jail and fines for failure to obey, was delivered to Ms. Bailey's home by two investigators from the DA's office. *Id.* at ¶ 253. One of the investigators told her that she could be sent to jail if she did not attend. *Id.* at ¶ 254. The investigators asked her to sign the document to acknowledge receipt, but she did not do so. *Id.* at ¶ 256. Later, an unnamed "representative" of the DA's office called Ms. Bailey and again threatened her with jail time if she did not appear. *Id.* at ¶ 258. Ms. Bailey hired an attorney, who filed a motion to quash the subpoena, but the subpoena was withdrawn by the prosecution. *Id.* at ¶ 267. Ms. Bailey was never called to testify at trial. *Id.* at ¶ 268.

## I.    Laura Rodrigue (claims by Tiffany LaCroix)

Tiffany LaCroix is a potential witness in a murder case, and Ms. Rodrigue issued an allegedly "fraudulent" subpoena in November 2016 directing her to appear at the DA's office for questioning and threatening fines or imprisonment for failure to obey. Complaint at ¶¶ 250, 262. Ms. LaCroix "did not want to be pressured to reveal private information about [the defendant] unless she was compelled by law to do so" and did not want to miss work, so she hired an attorney, who filed a motion to quash the subpoena. *Id.* at ¶¶ 263–267. The subpoena was withdrawn by the prosecution, and Ms. LaCroix was never called to testify at trial. *Id.* at ¶¶ 267–268.

## J.    Leon A. Cannizzaro, Jr., in his individual capacity

With one exception, the claims against Mr. Cannizzaro in his individual capacity arise from his alleged failure to adequately train, supervise, and discipline the Assistant District Attorneys and other agents under his control with respect to the allegedly unlawful conduct described above. *See* Complaint at ¶¶ 311–313. The Plaintiffs also allege that Mr. Cannizzaro personally violated the First Amendment rights of SIV (1) by warning its Executive Director, Tamara Jackson, in 2016 that "if it appeared that she was encouraging victims not to communicate with his office, he could prosecute her for witness coercion"; and (2) by warning Ms. Jackson three years earlier that "if she dissuaded victims from assisting prosecutors, she could be charged with obstruction." Complaint at ¶¶ 151–153, 304.

## LAW AND ARGUMENT

In considering a Rule 12(b)(6) motion, a court must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Howell v. Town of Ball*, 827 F.3d 515, 521 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a court is not bound to accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678.

## I.     Prosecutors are protected by absolute immunity with respect to actions taken as an advocate of the State and by qualified immunity with respect to other official actions.

"[P]rosecutors are absolutely immune with respect to activities that are 'intimately associated with the judicial phase of the criminal process.'" *Cousin v. Small*, 325 F.3d 627, 631–32 (5th Cir. 2003) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "Conduct falling within this category is not limited 'only to the act of initiation itself and to conduct occurring in the courtroom,' but instead includes all actions 'which occur in the course of [the prosecutor's] role as an advocate of the State.'" *Id.* at 632 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 272–73 (1993)); *see also Buckley*, 509 U.S. at 273 ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.").

With respect to any other official actions—such as "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings"—prosecutors are entitled to qualified immunity. *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) (quotation omitted). "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). "This immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 371 (quotation omitted). "[A] plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was

clearly established at the time of the challenged conduct." *Id.* (quotation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation omitted). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

## II.    Fourth Amendment claims based on material-witness warrants

"Section 1983 claims pending in federal courts in Louisiana are subject to a one year statute of limitations period," which "commences to run from the day injury or damage is sustained." *Gordon v. James*, No. 16-cv-16540, 2017 WL 4311125, at *6 (E.D. La. Sep. 26, 2017) (citing LA. CIV. CODE art. 3492); *see also Elzy v. Roberson*, 868 F.2d 793 (5th Cir. 1989) (same). Three of the Plaintiffs assert Fourth Amendment claims arising out their arrest on allegedly improper material-witness warrants: (1) Ms. Singleton alleges that a warrant was issued on April 24, 2015, and that she was arrested on May 29, 2015, and released on June 2, 2015; (2) Mr. Mitchell alleges that a warrant was issued on April 6, 2016, and that he was arrested on April 7, 2016, and released on April 8, 2016; (3) Ms. Baham alleges that a warrant was issued on October 13, 2015, and that she was arrested on December 29, 2015, and released on January 6, 2016. The injuries alleged by these Plaintiffs—seizure on allegedly unconstitutional grounds—clearly were sustained on the day they were arrested, and in no event could have occurred at any point *after* they were released from custody. Because these Plaintiffs were all arrested and released more than one year before the date this lawsuit was filed (October 17, 2017), their claims are prescribed on the face of the Complaint and must be dismissed.

Alternatively, these claims are barred by the Individual Defendants' absolute prosecutorial immunity. "Other circuits that have addressed the question have held that prosecutors are

ordinarily entitled to absolute immunity for conduct falling within a prosecutorial function when they seek detention of a material witness pursuant to judicial order." *Adams v. Hanson*, 656 F.3d 397, 403 (3rd Cir. 2011); *see also Simon v. City of New York*, 727 F.3d 167, 172 (2nd Cir. 2013) ("[W]hen a prosecutor seeks a material witness warrant, he does so as an advocate and is immune from suit. Any alleged misstatements by [the prosecutor] in his application for the material witness warrant therefore cannot form the basis for liability.") (citation omitted); *Daniels v. Kieser*, 586 F.2d 64 (7th Cir. 1978) (prosecutor was absolutely immune from § 1983 suit alleging that he made false statements to the court to obtain a material-witness warrant). The claim that the Individual Defendants "rel[ied] on false allegations, material omissions, and plainly insufficient factual allegations in applications for material witness warrants," Complaint at ¶ 295, plainly concerns alleged conduct taken as an advocate. Accordingly, these claims are barred by absolute immunity. *See Adams*, 656 F.3d at 405 ("Because [the prosecutor's] actions fell within her prosecutorial role, she is entitled to absolute immunity even if her statements were false or misleading.").[6]

## III.    Fourth Amendment claims based on allegedly unlawful subpoenas

Three of the Plaintiffs (Ms. Doe, Ms. Bailey, and Ms. LaCroix) allege that "unlawful" subpoenas were used to "seize" them in violation of the Fourth Amendment—more specifically, that certain Individual Defendants "compel[ed] [them] to attend private meetings at the District

---

[6] Additionally, Ms. Singleton's claims against Mr. Pipes and Ms. Tucker, along with Mr. Mitchell's claims against Mr. Hamilton, fail because the Complaint does not plausibly allege facts suggesting any wrongdoing on their part. Ms. Singleton alleges that Mr. Pipes "reviewed and approved" the warrant application for her arrest, which allegedly contained false statements (because the "subpoenas" sent to Ms. Singleton allegedly were not true subpoenas). *See* Complaint at ¶ 161–162. However, Ms. Singleton does not allege that Mr. Pipes knew the statements in the application were false, and the facts as alleged do not plausibly raise such an inference. Further, Ms. Singleton does not allege that Ms. Tucker had anything to do with the issuance of the warrant, or her arrest, at all. *See id.* at ¶ 169 (sole allegation against Ms. Tucker). Finally, the Complaint contains no specific factual allegations whatsoever concerning Mr. Hamilton.

Attorney's Office by using unlawful subpoenas, accompanied by threats of arrest and imprisonment." Complaint at ¶ 299. However, the claims by Ms. Doe are prescribed because the presentation of the allegedly fraudulent subpoena and her meeting with Mr. Dover occurred in September 2016, more than one year before this suit was filed. Moreover, because the alleged actions—sending allegedly improper subpoenas to witnesses in an attempt to review and discuss the witnesses' testimony in advance of trial—were "undertaken by . . . prosecutor[s] in preparing for . . . trial" and "occur[red] in the course of [their] role as an advocate for the State," *Buckley*, 509 U.S. at 273, the claims of all three Plaintiffs are barred by absolute immunity.

Alternatively, even if absolute immunity does not apply, the claims are certainly barred by qualified immunity because the Plaintiffs have not adequately alleged the violation of any constitutional right, clearly established or otherwise. "A person is 'seized' for Fourth Amendment purposes 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the citizen.'" *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "A seizure occurs 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [they were] not free to leave.'" *Id.* (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)).

Two of these plaintiffs—Ms. Bailey and Ms. LaCroix—admit that they did not appear for questioning at the DA's office as requested; thus, they were not actually "compel[ed] . . . to attend private meetings at the District Attorney's Office." Complaint at ¶ 299. Notwithstanding this failure to appear, they do not allege that they were arrested or subjected to any other restraint on their liberty. The law is clear that a threat of possible imprisonment, without more, does not constitute a "seizure" under the Fourth Amendment if the subject does not actually yield or submit to it. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991); *see also Brower v. County of Inyo*,

489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control."); *Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007) ("[T]he mere issuance of a citation requiring presence at future legal proceedings does not qualify as a constitutional 'seizure.'"); *Britton v. Maloney*, 196 F.3d 24, 29–30 (1st Cir. 1999) ("*Terry* cannot be read to mean that the issuance of a summons (any more than a testimonial subpoena or a call to jury duty) would constitute a seizure simply because it threatens a citizen with the *possibility* of confinement if he fails to appear in court."). Because Ms. Bailey and Ms. LaCroix plainly have not stated any cognizable cause of action, Ms. Rodrigue and Ms. Petrovich are entitled, at a minimum, to qualified immunity.

Although Ms. Doe alleges that she actually appeared at the DA's office for questioning, her claim is likewise deficient. Even assuming that a voluntary meeting with prosecutors under threat of imprisonment could constitute a "seizure," Ms. Doe does not allege that any such seizure resulted from the subpoena that was sent to her—rather, she alleges that she initially refused to appear as directed by the subpoena and met with prosecutors only later, after "[t]he court ordered [her lawyer] to arrange a meeting." Complaint at ¶ 244–245. In other words, Ms. Doe cannot show that Mr. Dover improperly coerced her to meet with him when it was the court that ultimately ordered the meeting.

Finally, Ms. Doe's voluntary decision to meet with Mr. Dover pursuant to a court order or purported subpoena does not constitute a Fourth Amendment "seizure" under clearly established law. The Fifth Circuit's opinion in *McLin* is instructive: In that case, the Court held that, although the plaintiff's voluntary surrender to an arrest warrant constituted a "seizure" under the Fourth Amendment, the defendants were entitled to qualified immunity because the relevant law was not clearly established. *See* 866 F.3d at 695–96. The Court noted that "neither the Supreme Court nor

the Fifth Circuit has decided that an officer's acceptance of a voluntary surrender to an arrest warrant constitutes a Fourth Amendment seizure," and that "there is no [sic] a robust consensus of persuasive authority" on the question. *Id.* at 696 (quotation omitted). And if the law is unclear with respect to a criminal defendant's surrender for arrest on a criminal charge, it is much less clear with respect to a witness's pre-trial meeting with prosecutors. Accordingly, Mr. Dover is entitled to qualified immunity.

## IV. First Amendment retaliation claims

"[T]o establish a First Amendment retaliation claim . . . , [plaintiffs] must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

Three of the Plaintiffs (Ms. Singleton, Mr. Mitchell, and Ms. Baham) appear to allege that their First Amendment rights were violated because certain Individual Defendants obtained material-witness warrants in "retaliation" for their assertion of their purported "right to decline to speak voluntarily with investigating prosecutors." Complaint at ¶ 302–303. As discussed above, these claims are prescribed because the injury they complain of occurred more than one year before suit was filed. Also, as with the Fourth Amendment claims asserted by these Plaintiffs, these First Amendment claims are barred by absolute prosecutorial immunity because they arise out of the Individual Defendants' actions in seeking and obtaining material-witness warrants. Alternatively, these claims are barred by qualified immunity because there is no clearly established law holding that it is "constitutionally protected activity" for a witness to a serious crime to refuse to speak with prosecutors.

The other three individual Plaintiffs (Ms. Doe, Ms. Bailey, and Ms. LaCroix) appear to allege that their First Amendment rights were violated because certain Individual Defendants sent allegedly fraudulent subpoenas to them in "retaliation" for their assertion of their purported "right to decline to speak voluntarily with investigating prosecutors." Complaint at ¶ 302–303. As discussed above, Ms. Doe's claim is prescribed because her alleged injury occurred more than one year before suit was filed. Furthermore, the claims of all three Plaintiffs are barred by absolute immunity because the allegedly improper subpoenas were sent by prosecutors in their role as advocate for the State, in an attempt to review witness testimony in advance of trial. Alternatively, these claims are barred by qualified immunity because none of these Plaintiffs "suffer[ed] an injury that would chill a person of ordinary firmness from continuing to engage in" the allegedly protected activity. *Keenan*, 290 F.3d at 258. Receiving an allegedly fraudulent subpoena that threatens fines or imprisonment if the recipient does not appear, without more, does not give rise to a constitutionally adequate "injury." Nor would it "chill a person of ordinary firmness" from continuing the activity of not speaking voluntarily with prosecutors. Notably, neither Ms. Doe, Ms. Bailey, nor Ms. LaCroix felt sufficiently "chilled" or threatened to actually comply with the subpoenas. And again, there is no clearly established law holding that it is "constitutionally protected activity" for a witness to a serious crime to refuse to speak with prosecutors.

## V.     Fourteenth Amendment substantive-due-process claims

The Plaintiffs allege that "[e]ach of Defendant Cannizzaro's official policies, practices and customs described [in the Complaint], separately and in combination, shocks the conscience and violated the Fourteenth Amendment rights of all Plaintiffs." Complaint at ¶ 309. A plaintiff asserting a Fourteenth Amendment substantive-due-process claim must show that the defendant's actions (1) caused an injury; (2) "were grossly disproportionate to the need for action under the circumstances"; and (3) "were inspired by malice rather than merely careless or unwise excess of

zeal so that it amounted to an abuse of official power that shocks the conscience." *Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998). "The burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 868 (5th Cir. 2012) (quotation omitted); *see also Jordan v. Fisher*, 823 F.3d 805, 812–13 (5th Cir. 2016) ("The Court's test for the substantive component of the due process clause prohibits only the most egregious official conduct, and it will rarely come into play.") (quotation omitted); *Kinzie v. Dallas Cty. Hosp. Dist.*, 239 F. Supp. 2d 618, 630 ("[C]ourts have shown great reluctance to find that the behavior of a state official 'shocks the conscience.'").

As a threshold matter, it is not clear whether this claim is asserted against the Individual Defendants. Although the caption states that it is "Against all Defendants," the language refers only to Mr. Cannizzaro's "official policies, practices and customs" and does not refer to any specific alleged acts by any specific Defendants. *See id.* Assuming the Plaintiffs intended to assert Fourteenth Amendment substantive-due-process claims against the Individual Defendants, they have plainly failed.

First, as discussed above, the claims asserted by Ms. Singleton, Mr. Mitchell, Mr. Baham, and Ms. Doe are all barred by prescription. The only Plaintiffs whose claims do not appear to be prescribed are Ms. Bailey and Ms. LaCroix—who were never arrested, detained, or even privately questioned by prosecutors, despite failing to comply with allegedly "fraudulent" subpoenas. Second, any claim arising out of the Individual Defendants' actions in obtaining material-witness warrants from a court, or sending allegedly improper subpoenas, is once again barred by absolute prosecutorial immunity.

Third, assuming any part of any of the claims is not barred by absolute immunity, it is barred by qualified immunity because the Plaintiffs have not adequately alleged the violation of any constitutional right—clearly established or otherwise. Even accepting the Plaintiffs' allegations at face value, the Individual Defendants' actions were neither "grossly disproportionate to the need for action under the circumstances" nor "inspired by malice rather than merely careless or unwise excess of zeal." *Petta*, 143 F.3d at 902. Indeed, the Plaintiffs essentially accuse the Individual Defendants of excessive zeal in securing witness testimony to successfully prosecute serious crimes—murders, child molestation, child pornography, and domestic violence. The Plaintiffs do not suggest that the Individual Defendants abused their office for some ulterior or personal motive, such as profit or vengeance. Thus, even assuming for the sake of argument that one or more Individual Defendants sent subpoenas without proper court authorization or obtained material-witness warrants that were defective in some respect, this would not amount to an "abuse of official power that shocks the conscience" within the meaning of the Fourteenth Amendment. *Petta*, 143 F.3d at 902.

Finally, even assuming for the sake of argument that the Fourteenth Amendment rights of one or more Plaintiffs was violated, such rights were not clearly established. As the Fifth Circuit has explained, "[m]any cases that have applied the [shocks-the-conscience] standard have involved the use of extreme force by police officers or other state actors." *Doe*, 675 F.3d at 867–68 (collecting cases). By contrast, the undersigned is unaware of any case law holding that sending improper subpoenas to witnesses or improperly obtaining material-witness arrest warrants would violate the witnesses' Fourteenth Amendment substantive-due-process rights. *See, e.g.*, *Rivera v. Rhode Island*, 402 F.3d 27, 38 (1st Cir. 2005) ("[T]here may be an extreme set of facts involving such deliberate and malevolent actions by police against witnesses as to shock the conscience and

implicate a constitutional violation. Those await another day."). Absent such precedent, the Individual Defendants are, at a minimum, entitled to qualified immunity.

## VI. Abuse of process

"[T]he essential elements of an abuse of process claim" are "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding." *Waguespack, Seago and Carmichael (A PLC) v. Lincoln*, 768 So. 2d 287, 290–91 (La. App. 1st Cir. 2000). Because the tort of abuse of process is subject to a prescriptive period of one year, *see No Drama, LLC v. Caluda*, 177 So. 3d 747, 751–52 (La. App. 5th Cir. 2015), the claims by Ms. Singleton, Mr. Mitchell, Ms. Baham, and Ms. Doe are prescribed.

Further, with respect to state-law tort claims, the Louisiana Supreme Court has held that "prosecutors are entitled to absolute immunity for conduct within the course and scope of their prosecutorial functions," *Knapper v. Connick*, 681 So. 2d 944, 950 (La. 1996); *see also Muhammad v. State*, No. 99-cv-3742, 2000 WL 1568210, at *4 & n.5 (E.D. La. Oct. 18, 2000) (holding that abuse-of-process claim was barred by absolute prosecutorial immunity). The Court further noted that state-law immunity rules have been generally been interpreted in harmony with federal immunity principles. *See id.* at 947. Accordingly, for the same reasons explained above with respect to the Plaintiffs' constitutional claims, the Individual Defendants are absolutely immune from suit under state tort law.

The abuse-of-process claims also fail on the merits. The Plaintiffs allege that certain Individual Defendants obtained material-witness warrants illegally and for an improper purpose ("to coerce private, out-of-court meetings with prosecutors and to coerce testimony consistent with the prosecution's theory of the case"), and that other Individual Defendants "circumvent[ed] the requirements of [Code of Criminal Procedure] Article 66" by sending subpoenas that were not properly authorized by a court. *See* Complaint at ¶¶ 318–319. However, "[t]he tort of abuse of

process involves the malicious use of a legal process *after* the process has been instituted." *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (La. App. 5th Cir. 1990). Thus, alleging that the Individual Defendants acted wrongfully in ***obtaining*** material-witness warrants does not state a valid cause of action. Further, abuse of process requires "malicious perversion of a ***legally issued process*** whereby a result not lawfully or properly obtainable under it is attempted to be secured." *Succession of Cutrer v. Curtis*, 341 So. 2d 1209, 1214 (La. App. 1st Cir. 1976) (emphasis added). Because the Plaintiffs allege that the material-witness warrants and subpoenas were issued ***illegally***, they have not stated a valid cause of action.

## VII. Fraud

"Louisiana jurisprudence indicates that the following are the elements of the tort of fraud: 1. a misrepresentation of material fact; 2. made with the intent to deceive; 3. reasonable or justifiable reliance by the plaintiff; and 4. resulting injury. The intent to deceive is a specific intent." *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 442 (5th Cir. 2011); *see also Chateau Homes by RJM, Inc. v. Aucoin*, 97 So. 3d 398, 404 (La. App. 5th Cir. 2012) ("[T]he elements of the tort of fraud are a misrepresentation of material fact made with the intent to deceive when there was reasonable or justifiable reliance by the plaintiff and resulting injury."). Because the tort of fraud is subject to a prescriptive period of one year, *see Cerullo v. Heisser*, 213 So. 3d 1232, 1236 (La. App. 5th Cir. 2017), the claims by Ms. Singleton, Mr. Mitchell, Ms. Baham, and Ms. Doe are prescribed. Additionally, as explained above, these state-law tort claims are barred by absolute prosecutorial immunity. *See Knapper*, 681 So. 2d at 950.

The fraud claims likewise fail on the merits. The Plaintiffs argue that the Individual Defendants mispresented to them that the "subpoenas" sent to them "were real, had been obtained legitimately, and had to be honored by certain Plaintiffs under threat of fines and incarceration." Complaint at ¶ 324. The Plaintiffs further allege that they "reasonably and justifiably relied on the

authenticity, truthfulness, and lawfulness of the fraudulent subpoenas," Complaint at ¶ 327, but this is false. Of the five Plaintiffs who allegedly received such subpoenas (Ms. Singleton, Ms. Baham, Ms. Doe, Ms. Bailey, and Ms. LaCroix), none of them actually appeared at the DA's office as directed. *See id.* at ¶¶ 157–160, 221–222, 237–238, 250–251, 257, 266–267. Thus, even assuming for the sake of argument that the subpoenas included statements that were intentionally deceptive, the Plaintiffs sustained no injuries in reliance on the truthfulness of such statements.

The Plaintiffs also argue that the Individual Defendants "made material misrepresentations in seeking to jail certain Plaintiffs," and that "they were . . . harmed when courts justifiably relied on Defendants' material witness warrant applications." Complaint at ¶¶ 325–327. However, Louisiana law requires justifiable reliance **by the plaintiff**. *Schaumburg*, 421 F. App'x at 442. Alleging that the Plaintiffs were harmed by misrepresentations allegedly made to a court simply does not state a cognizable cause of action for fraud.

## VIII. Fourteenth Amendment claim based on prolonged detention without court appearance

Ms. Baham alleges that Mr. Napoli violated her Fourteenth Amendment rights by "causing [her] to be jailed without a prompt court appearance after [her] arrest on a material witness warrant." Complaint at ¶¶ 306–307. For the same reasons explained above, this claim is prescribed because Ms. Baham's detention occurred more than one year before suit was filed. Additionally, to the extent that Ms. Baham challenges Mr. Napoli's actions in obtaining the warrant upon which she was arrested (including his alleged request that she be held without bond)—or other actions taken by Mr. Napoli as an advocate—her claim is barred by absolute prosecutorial immunity.

Beyond her initial arrest, Ms. Baham does not allege any facts showing that Mr. Napoli is personally responsible for violating her Fourteenth Amendment rights by causing her to be detained without a prompt court appearance. Ms. Baham alleges that she was held in jail for eight

days before being brought to court for the first time, *see* Complaint at ¶¶ 226–227, but she does not allege that Mr. Napoli took any actions to delay or prevent her from being brought to court. Thus, even assuming for the sake of argument that the delay in being brought before a judge could constitute a violation of the Fourteenth Amendment, Ms. Baham does not adequately allege that it was caused by Mr. Napoli.

And finally, even if Ms. Baham could show that Mr. Napoli somehow were responsible for some action that is not covered by absolute immunity, she cannot show any violation of her clearly established rights. "[T]he existence of 'clearly established' law that would guide prosecutors and law enforcement officers to act reasonably in the context of executing a material witness warrant, as opposed to a 'criminal suspect' warrant, is slim." *Simon v. City of New York*, 247 F. Supp. 3d 285, 292 (E.D.N.Y. 2017). Indeed, as recently as 2011, four Justices of the U.S. Supreme Court opined that material-witness-arrest warrants "might not [be] warrants within the meaning of the Fourth Amendment's Warrant Clause," and that such warrants "might [instead] be governed by the Fourth Amendment's separate reasonableness requirements for seizures of the person." *Ashcroft v. al-Kidd*, 563 U.S. 731, 745 (Kennedy, J., concurring). The fact that the Supreme Court has not even clearly established which constitutional provisions govern the use of material-witness warrants only underscores the uncertainty and lack of clear guidance. In any event, because the law does not clearly establish when a person arrested on a material-witness warrant must be brought before a judge, Mr. Napoli is entitled to qualified immunity.

## IX. Supervisory liability / failure to intervene

The Plaintiffs allege that Mr. Cannizzaro is liable for the specific alleged violations of the First, Fourth, and Fourteenth Amendments described above because he failed to adequately train, supervise, and discipline the attorneys and agents under his supervision. Complaint at ¶ 311. Because the Plaintiffs have not adequately alleged any actionable violation of their constitutional

rights, their supervisory-liability claims against Mr. Cannizzaro necessarily fail. The Plaintiffs further allege that each of the Individual Defendants is liable for the wrongdoing of each of the others because they "knew or should have known that they and others within the District Attorney's Office were violating Plaintiffs' constitutional rights" yet acted with deliberate indifference in failing to intervene. *Id.* at ¶¶ 314–315. Again, in the absence of any underlying actionable constitutional violations, such secondary claims necessarily fail. Further, such conclusory allegations lack the factual specificity necessary to plausibly allege that any of the Individual Defendants acted with deliberate indifference with respect to alleged wrongdoing by others within the DA's office.

## X.      Silence Is Violence claims

SIV alleges that various policies and practices have violated "the rights of Silence Is Violence's clients" under the Fourth and Fourteenth Amendments. *See* Complaint at ¶¶ 295, 299, 306, 309. However, the only client mentioned by name in the Complaint is Mr. Mitchell, *see id.* at ¶¶ 277, and his claims fail for all the reasons explained above. Assuming for the sake of argument that SIV would have standing to seek redress for alleged harm to its clients,[7] SIV has failed to adequately allege facts showing that the rights of any specific clients were violated. Nor has SIV adequately alleged facts showing that its own rights were violated.

### A.      First Amendment claim

SIV alleges that Mr. Cannizzaro violated its First Amendment rights "by threatening its Executive Director with prosecution for her public statements on behalf of the organization." Complaint at ¶ 304. Specifically, SIV alleges that Mr. Cannizzaro informed its director, Tamara Jackson, that she could be subject to criminal prosecution if she encouraged witnesses not to assist

---

[7] The Defendants do not concede that SIV has standing.

or communicate with prosecutors. *See id.* at ¶¶ 152–153. However, SIV cannot show that Mr. Cannizzaro's alleged threats were made in retaliation for SIV's constitutionally protected activity, or that it "suffer[ed] an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Keenan*, 290 F.3d at 258.

The crime of obstruction of justice, as codified in Louisiana law, includes "[i]nducing or persuading or attempting to induce or persuade any person to . . . [t]estify falsely or, without right or privilege to do so, withhold any testimony" or "[w]ithout the right or privilege to do so, absent himself from such proceedings despite having received service of a subpoena." LA. REV. STAT. § 14:130.1(A)(4). Encouraging a witness who has received a subpoena pursuant to Code of Criminal Procedure article 66 from communicating with prosecutors as directed by the subpoena would clearly constitute obstruction of justice. Similarly, encouraging a witness to generally avoid all contact and communications with the DA's office for the purpose of evading service of a subpoena would at least arguably constitute obstruction of justice. To the extent that SIV's purported "core political speech" involves unlawful obstruction of justice, *see* Complaint at ¶ 304, it is not constitutionally protected, and it would not be improper for Mr. Cannizzaro to inform SIV of this.

Further, even assuming that Mr. Cannizzaro's alleged threats could be construed as being motivated in some part by SIV's constitutionally protected speech, SIV has suffered no resulting "injury" as required to support a retaliation claim. *See Keenan*, 290 F.3d at 258. SIV does not allege that any of its members were ever arrested, prosecuted, or subjected to personal abuse or ongoing harassment by police or prosecutors. As a matter of law, two warnings from Mr. Cannizzaro about the law over a three-year period that did not result in any adverse action being taken against SIV do not give rise to a First Amendment retaliation claim. *See, e.g.*, *Osborne v.*

*Grussing*, 477 F.3d 1002, 1005 n.2 (8th Cir. 2007) (the "verbal tongue-lashings" given to the plaintiffs by county officials would not constitute an injury sufficient to support a First Amendment retaliation claim). Certainly Mr. Cannizzaro's alleged actions did not violate "clearly established law," such that "every reasonable official would have understood that what he is doing violates" SIV's rights. *Ashcroft*, 563 U.S. at 741 (quotation omitted).

### B. Abuse-of-process claim

SIV also asserts a claim for abuse of process, alleging that it "was injured because it had to redirect its resources to remedy and prevent harms to its clients caused by the abuse of the material witness statute and the Article 66 investigative subpoena by the District Attorney's Office." Complaint at ¶ 321. However, because SIV does not attempt to connect specific, concrete actions by specific Defendants with specific injuries that it allegedly suffered, SIV cannot satisfy the basic tort-law requirement of causation.[8] Further, alleging that SIV chose to "redirect its resources to remedy and prevent harms to its clients" fails, as a matter of law, to allege a harm that was directly caused by the Individual Defendants. Finally, for the reasons explained above, SIV's state-law tort claims are barred by absolute prosecutorial immunity.

### CONCLUSION

For the reasons explained above, the Individual Defendants respectfully request that the claims against them be dismissed.

---

[8] *See Hall v. Lilly*, 666 So. 2d 1328, 1332 (La. App. 2nd Cir. 1996) ("Abuse of process is a cause of action originating from the common law and recognized in our jurisprudence as a compensable tort under LSA—C.C. Art. 2315."); La. Civ. Code art. 2315(A) ("Every act whatever of man *that causes damages to another* obliges him by whose fault it happened to repair it.") (emphasis added); *Moss v. Town of Rayville*, 181 So. 3d 809, 812 (La. App. 2nd Cir. 2015) ("In a suit for damages, it is the plaintiff's burden to prove the damage he suffered as the result of the defendant's fault.").

Respectfully submitted,

 /s/ Matthew J. Paul
Richard C. Stanley, 8487
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
STANLEY, REUTER, ROSS, THORNTON
  & ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069

*Counsel for Leon Cannizzaro (in his individual capacity); David Pipes; Iain Dover; Jason Napoli; Arthur Mitchell; Tiffany Tucker; Michael Trummel; Matthew Hamilton; Inga Petrovich; and Laura Rodrigue*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November, 2017, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system, as well as by U.S. Mail for any non-CM/ECF participant.

 /s/ Matthew J. Paul