# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENATA SINGLETON; MARC MITCHELL; LAZONIA BAHAM; JANE DOE; TIFFANY LACROIX; FAYONA BAILEY; JOHN ROE; and SILENCE IS VIOLENCE, | Civil Action No. 17-10721 |
| *Plaintiffs*, | Section H<br>Judge Jane Triche Milazzo |
| v. | Division 1<br>Magistrate Judge Janis van Meerveld |
| LEON CANNIZZARO, in his official capacity as District Attorney of Orleans Parish and in his individual capacity; GRAYMOND MARTIN; DAVID PIPES; IAIN DOVER; JASON NAPOLI; ARTHUR MITCHELL; TIFFANY TUCKER; MICHAEL TRUMMEL; MATTHEW HAMILTON; INGA PETROVICH; LAURA RODRIGUE; SARAH DAWKINS; and JOHN DOE, in their individual capacities, | |
| *Defendants*. | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 6

    I.      Arthur Mitchell (claims by Renata Singleton)..................................... 6

    II.     Tiffany Tucker (claims by Renata Singleton)....................................... 8

    III.    Michael Trummel (claims by Marc Mitchell) ..................................... 8

    IV.    Matthew Hamilton (claims by Marc Mitchell) .................................... 9

    V.      Jason Napoli (claims by Lazonia Baham) .......................................... 10

    VI.    Iain Dover (claims by Jane Doe) ....................................................... 11

    VII.   Inga Petrovich (claims by Fayona Bailey)......................................... 12

    VIII.  Laura Rodrigue (claims by Tiffany LaCroix)..................................... 13

    IX.    Sarah Dawkins (claims by John Roe) ................................................ 13

    X.      David Pipes (claims by Renata Singleton and John Roe)................... 15

    XI.    Graymond Martin.............................................................................. 15

    XII.   Leon A. Cannizzaro, Jr., in his individual capacity ............................ 16

    XIII.  Leon A. Cannizzaro, Jr., in his official capacity as Orleans Parish District Attorney ........................................................................................... 16

LAW AND ARGUMENT ........................................................................................ 16

    I.      Prosecutors are protected by absolute immunity with respect to actions taken as an advocate of the State and by qualified immunity with respect to other official actions. ......................................................................... 18

    II.     Of the four Fourth Amendment claims based on material-witness warrants, three are barred by prescription; all are barred by absolute immunity (or, in the alternative, by qualified immunity); and all have failed to adequately state a claim........................................................................................... 19

            A.     Prescription ............................................................................ 19

            B.     Absolute Immunity .................................................................. 20

            C.     Qualified Immunity.................................................................. 21

                 1.     Renata Singleton ......................................................... 22

                 2.     Marc Mitchell.............................................................. 23

        3.      Lazonia Baham ......................................................... 24

        4.      John Roe................................................................... 25

    D.    Failure to State a Claim................................................... 27

III.   Of the three Fourth Amendment claims based on allegedly unlawful subpoenas, one is barred by prescription; all are barred by absolute immunity (or, in the alternative, by qualified immunity); and all have failed to adequately state a claim. ................................................ 27

    A.    Prescription ................................................................... 27

    B.    Absolute Immunity ....................................................... 28

    C.    Qualified Immunity........................................................ 28

        1.      Fayona Bailey and Tiffany LaCroix ............................. 28

        2.      Jane Doe................................................................... 30

    D.    Failure to State a Claim................................................... 31

IV.   Of the seven First Amendment claims, four are barred by prescription; all are barred by absolute immunity (or, in the alternative, by qualified immunity); and all have failed to adequately state a claim................................. 31

    A.    Prescription ................................................................... 31

    B.    Absolute Immunity ....................................................... 32

    C.    Qualified Immunity........................................................ 32

    D.    Failure to State a Claim................................................... 33

V.    Of the seven Fourteenth Amendment substantive-due-process claims, four are barred by prescription; all are barred by absolute immunity (or, in the alternative, by qualified immunity); and all have failed to adequately state a claim. ................................................................. 33

    A.    Prescription ................................................................... 34

    B.    Absolute Immunity ....................................................... 35

    C.    Qualified Immunity........................................................ 35

    D.    Failure to State a Claim................................................... 36

VI.   Of the seven state-law abuse-of-process claims, four are barred by prescription; all are barred by absolute immunity; and all have failed to adequately state a claim. ................................................................. 36

A.      Prescription ........................................................................ 36

B.      Absolute Immunity ............................................................ 37

C.      Failure to State a Claim..................................................... 37

VII.    Of the seven state-law fraud claims, four are barred by prescription; all are
barred by absolute immunity; and all have failed to adequately state a claim.
........................................................................................................... 38

A.      Prescription ........................................................................ 38

B.      Absolute Immunity ............................................................ 38

C.      Failure to State a Claim..................................................... 38

VIII.   The Fourteenth Amendment claim by Ms. Baham based on the alleged
denial of a prompt court appearance is prescribed; is barred by absolute
immunity (or, in the alternative, by qualified immunity); and has failed to
adequately state a claim. ................................................................ 39

A.      Prescription ........................................................................ 39

B.      Absolute Immunity ............................................................ 39

C.      Qualified Immunity............................................................ 40

D.      Failure to State a Claim..................................................... 41

IX.     The claims based on supervisory liability and failure to intervene fail
because the Plaintiffs have not adequately alleged any underlying
actionable violation of their rights. ........................................... 41

X.      Silence Is Violence has failed to adequately allege any actionable violation
of its own rights or the rights of its "clients." ........................ 42

A.      First Amendment Claim..................................................... 42

B.      Abuse-of-Process Claim .................................................... 44

CONCLUSION................................................................................................. 45

Leon Cannizzaro, in his individual capacity; Graymond Martin; David Pipes; Iain Dover; Jason Napoli; Arthur Mitchell; Tiffany Tucker; Michael Trummel; Matthew Hamilton; Inga Petrovich; Laura Rodrigue; and Sarah Dawkins (collectively, the "Individual Defendants"), together with Mr. Cannizzaro in his official capacity as District Attorney of Orleans Parish (referred to herein as the "OPDA"), through undersigned counsel, respectfully submit this memorandum in support of their motion to dismiss the claims against them filed by Renata Singleton; Marc Mitchell; Lazonia Baham; Jane Doe; Tiffany LaCroix; Fayona Bailey; John Roe; and Silence Is Violence ("SIV") (collectively, the "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Second Amended Complaint, Doc. No. 52 (the "Complaint").

## INTRODUCTION

This lawsuit alleges that District Attorney Leon Cannizzaro and eleven Assistant District Attorneys have violated the rights of seven witnesses and one organization through their efforts to aggressively prosecute those who commit serious crimes in Orleans Parish—specifically, the offenses of murder, child molestation, child pornography, aggravated assault with a firearm, and domestic violence, as described in the Complaint. The Plaintiffs are represented by two advocacy groups that hope to use this lawsuit as the "initiating piece of litigation" for "The Prosecutor Project," which seeks to "use rigorous, innovative litigation to fundamentally change the discourse and narrative around long-settled and entrenched aspects of the American criminal system."[1] Here, the Plaintiffs and their sponsors take aim at prosecutors' alleged practices concerning essential witnesses to serious crimes who are uncooperative or even hostile to the State's efforts to prosecute these crimes. Unfortunately, in their zeal to use the courts to change the criminal justice system, they have advanced a meritless case that is based on false or highly misleading factual statements

---

[1] *See* http://www.civilrightscorps.org/prosecutor-project/.

1

and legally unsupportable claims that are barred by prescription, absolute immunity, and qualified immunity.

For example, the Plaintiffs allege that prosecutors obtained a material-witness warrant for Renata Singleton, which ultimately led to her arrest, because she "declined to attend [a] private meeting" at the District Attorney's office on April 24, 2015, as directed by two "fraudulent" subpoenas. *See* Complaint at ¶¶ 5, 195. The Plaintiffs neglect to mention, however, that the ***trial*** for Vernon Crossley—in which Ms. Singleton was an essential witness for the State—was set for April 24, 2015, in Orleans Parish Criminal District Court, and that Ms. Singleton failed to appear.[2] Furthermore, the trial had previously been continued because Ms. Singleton, despite actual notice and repeated attempts at formal service, failed to appear for trial on March 20, 2015.[3] The motion seeking a material-witness warrant for Ms. Singleton noted her failure to appear and explained that "[t]he Sheriff's Office has made numerous attempts to serve [her] at her primary address with no

---

[2] Exhibit 1, Motion and Order for Material Witness Bond ("Singleton Motion"). Because the Singleton Motion is referred to in the Complaint, *see, e.g.*, Complaint at ¶¶ 200–202, and is central to the Plaintiffs' claims, it is "considered part of the pleadings" and is appropriate for consideration in a Rule 12(b)(6) motion. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499–500 (5th Cir. 2000) (quotation omitted).

*See also* Exhibit 2, March 20, 2015 Minute Entry for *State v. Vernon W. Crossley, Jr.*, Orleans Parish Criminal District Court ("March 20, 2015 Minute Entry"). Such court records are "matters of public record" that may be considered when deciding a Rule 12(b)(6) motion. *See Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Henson v. CSC Credit Svcs.*, 29 F.3d 280, 284 (7th Cir. 1994). The Individual Defendants hereby request that this Court take judicial notice of the March 20, 2015 Minute Entry.

[3] *See* Exhibit 1, Singleton Motion at 1; Exhibit 2, March 20, 2015 Docket Entry. After Ms. Singleton failed to appear for trial on March 20, 2015, the district court directed that a subpoena be sent to her commanding her to appear for the re-set trial on April 24. Exhibit 2, March 20, 2015 Docket Entry. Moreover, Ms. Singleton had also failed to appear at an earlier trial setting on February 27, 2015, despite being notified of the trial date by a victim/witness coordinator.

success. They have been to her residence three times and have left subpoenas in her door due to no one accepting service at the residence on her behalf."[4] The motion concluded:

> SINGLETON failed to appear at trial scheduled in Section F on April 24, 2015, even after the numerous subpoenas that she received at her primary residence. The conduct of SINGLETON is a reasonable basis for the undersigned to attest that RENATA SINGLETON will not honor her subpoena and appear at the next trial setting scheduled for this matter.[5]

The suggestion that Ms. Singleton was arrested merely because she would not speak privately with prosecutors is simply false.

Similar false or misleading statements underlie claims brought by other Plaintiffs as well, for example:

- The Plaintiffs allege that Jane Doe was "compell[ed] . . . to attend [a] private meeting[ ] at the District Attorney's Office by using unlawful subpoenas." Complaint at ¶ 419. But there was nothing unlawful about the subpoena directing Ms. Doe to appear at the DA's office for questioning—it was a subpoena issued by the Orleans Parish Criminal District Court pursuant to Code of Criminal Procedure article 66.[6] Ms. Doe is presumably aware of this fact because her lawyer unsuccessfully moved to quash the subpoena, expressly acknowledging in his motion that the State had obtained the subpoena by motion from the district court.[7] Further, as the Plaintiffs admit, Ms. Doe ultimately met with Mr. Dover pursuant to a direct court order. *See* Complaint at ¶ 298.

---

[4] Exhibit 1, Singleton Motion at 1.

[5] Exhibit 1, Singleton Motion at 2.

[6] Exhibit 3, Article 66 Subpoena ("Doe Subpoena") (redacted to preserve Ms. Doe's anonymity). Because the Doe Subpoena is referred to in the Complaint, *see, e.g.*, Complaint at ¶¶ 291–292, and is central to the Plaintiffs' claims, it is considered part of the pleadings and is appropriate for consideration in a Rule 12(b)(6) motion. *See also* Exhibit 4, Motion and Order for Issuance of a Subpoena, Pursuant to Louisiana Code of Criminal Procedure Article 66 ("Doe Motion") (redacted to preserve Ms. Doe's anonymity). Such public court filings are "matters of public record" that may be considered when deciding a Rule 12(b)(6) motion. The Individual Defendants hereby request that this Court take judicial notice of the Doe Motion.

[7] Exhibit 5, Motion to Quash District Attorney Subpoena ("Motion to Quash") (redacted to preserve Ms. Doe's anonymity). Such public court filings are "matters of public record" that may be considered when deciding a Rule 12(b)(6) motion. The Individual Defendants hereby request that this Court take judicial notice of the Motion to Quash.

- The Plaintiffs allege that the application seeking a material-witness warrant for Lazonia Baham[8] was misleading because Mr. Napoli did not inform the court that he had spoken to Ms. Baham and that "she had told him that she planned to attend court." Complaint at ¶ 274. The Plaintiffs neglect to mention that trial was set for October 13, 2015 (the same day that Mr. Napoli applied for the warrant), and Ms. Baham *did not* in fact appear, causing the trial to be continued.[9]

- The Plaintiffs allege that the application seeking a material-witness warrant for Marc Mitchell was misleading because prosecutors did not inform the court that Mr. Mitchell had "signed a subpoena to appear in court" for the upcoming trial at which he was an essential witness—implying that Mr. Mitchell had expressed his willingness to testify at trial. Complaint at ¶ 246. The Plaintiffs neglect to mention, however, that Mr. Mitchell had also informed the prosecutors that he "did not want to move forward with the case," and that "the only way in which he would testify is if he was arrested."[10]

It is indeed ironic that a lawsuit accusing the Defendants of "mak[ing] false statements" and "omit[ting] material facts" in warrant applications, Complaint at 2, relies so heavily on false and misleading depictions of the underlying matters.

More broadly, none of the Plaintiffs in this case have stated any valid cause of action. Four of the Plaintiffs—Renata Singleton, Marc Mitchell, Lazonia Baham, and John Roe—allege that they were arrested pursuant to material-witness warrants that were obtained using warrant

---

[8] Exhibit 6, Motion and Order for Material Witness Bond ("Baham Motion"). Because the Baham Motion is referred to in the Complaint, *see, e.g.*, Complaint at ¶¶ 273–274, and is central to the Plaintiffs' claims, it is considered part of the pleadings and is appropriate for consideration in a Rule 12(b)(6) motion.

[9] *See* Exhibit 7, October 13, 2015 Minute Entry for *State v. Isaac C. Jones*, Orleans Parish Criminal District Court ("October 13, 2015 Minute Entry"). Such court records are "matters of public record" that may be considered when deciding a Rule 12(b)(6) motion. The Individual Defendants hereby request that this Court take judicial notice of the October 13, 2015 Minute Entry.

[10] Exhibit 8, Motion and Order for Material Witness Bond ("Mitchell Motion"). Because the Mitchell Motion is referred to in the Complaint, *see, e.g.*, Complaint at ¶¶ 243, 246, and is central to the Plaintiffs' claims, it is considered part of the pleadings and is appropriate for consideration in a Rule 12(b)(6) motion. Notably, although the Plaintiffs allege that one of the representations the prosecutors made to the court was inaccurate (that Mr. Mitchell had a bus ticket to leave town), they do not challenge the accuracy of the representation concerning Mr. Mitchell's unwillingness to testify absent arrest.

applications allegedly containing false statements, material omissions, and insufficient factual allegations. Complaint at ¶¶ 415–417. However, because these warrant applications did not contain any false statements or material omissions that would be necessary to establish the elements for a material-witness warrants, there is no conceivable Fourth Amendment violation. For similar reasons, these Plaintiffs' claims under the First and Fourteenth Amendments and under state law also fail. Ms. Baham's claim based on alleged delay in being brought before a judge fails because she has not adequately alleged facts showing that any Defendant was responsible for any such delay or that the Constitution would require a more prompt appearance.

The other three individual Plaintiffs—Jane Doe, Tiffany LaCroix, and Fayona Bailey— allege that they were compelled to attend private meetings at the DA's office through allegedly "unlawful subpoenas, accompanied by threats of arrest and imprisonment." *See* Complaint at ¶¶ 419–420. All of the claims based on this central allegation, whether under the U.S. Constitution or state law, must fail for the simple reason that the allegation is demonstrably false, even by the Plaintiffs' own allegations. Ms. LaCroix and Ms. Bailey admit that they never in fact attended any private meeting at the DA's office or otherwise complied with the allegedly fraudulent subpoenas that they received. *See* Complaint at ¶¶ 304–325. Additionally, the Plaintiffs' allegations, along with the official records of the Orleans Parish Criminal District Court, establish that Ms. Doe's meeting at the DA's office was pursuant to a valid Article 66 subpoena *and* a direct court order.

The final Plaintiff, SIV, also has failed to plead any plausible, actionable claim. SIV's claims based on harm to its "clients" fail because, even assuming that SIV would have standing to assert such claims, it has not adequately alleged any specific harm to any specific client. Additionally, SIV's claims in its own right fail because it has not adequately alleged any illegal or unconstitutional actions by the Defendants that caused any cognizable injury to SIV.

Moreover, even aside from the failure to adequately state a claim, all of the Plaintiffs' claims are barred for multiple additional, independent reasons. First, most of the claims are prescribed because they were filed more than one year after the date of the alleged injury. The only Plaintiffs whose (meritless) claims are not prescribed are Ms. LaCroix and Ms. Bailey—neither of whom ever appeared at the DA's office for questioning or was arrested—and Mr. Roe. Second, all of the claims against the Individual Defendants are barred by absolute prosecutorial immunity because they concern activities that are intimately associated with the judicial phase of the criminal process. Finally, in the alternative, the claims against the Individual Defendants are barred by qualified immunity because the alleged conduct would not violate clearly established law.

For all of these reasons, the Plaintiffs' claims must be dismissed.

## FACTUAL BACKGROUND

The specific factual allegations against each Defendant, as alleged by the Plaintiffs, are set forth below. As required by Rule 12(b)(6) standards, the Plaintiffs' allegations are accepted as true for the purposes of this motion only, except to the extent that those allegations are contradicted by documents incorporated into the Complaint by reference or public records of which the Court may take judicial notice when ruling on a motion under Rule 12(b)(6).

## I.     Arthur Mitchell (claims by Renata Singleton)

Renata Singleton reported to the police a crime by Vernon Crossley on November 2, 2014. *See* Complaint at ¶ 193. She alleges that on April 21, 2015, at the direction of Mr. Mitchell, an "investigator from the District Attorney's Office" delivered two documents that were styled as "subpoenas," directing her to appear for questioning at the DA's office on April 24, 2015, but which had not been presented to or approved by a court. *Id.* at ¶¶ 195–197. Even assuming for the purposes of this motion that this allegation is true, the official docket of the Orleans Parish Criminal District Court reveals that a court-issued subpoena was also sent to Ms. Singleton

6

directing her to appear at ***trial*** on the same day, April 24, 2015.[11] Ms. Singleton did not appear at either the DA's office or at Mr. Crossley's trial on April 24, 2015. Complaint at ¶ 199.[12] On that day, Mr. Mitchell applied for a material-witness warrant for Ms. Singleton, explaining: "The State has reason to fear SINGLETON will not appear in Court pursuant to a subpoena as she has failed to appear pursuant to an appointment with the undersigned, and she has failed to appear in court at every other trial setting that she was issued a subpoena for." *See id.* at ¶ 200.[13]

Judge Robin Pittman issued the material-witness warrant for Ms. Singleton's arrest with a bond of $100,000. Complaint at ¶ 203. On May 28, 2015, police officers came to her house to arrest her pursuant to that warrant, but her friend, who was also a police officer, persuaded the officers (who allegedly called the DA's office for approval) to leave without arresting her on the condition that she voluntarily appear at the DA's office the next morning. *Id.* at ¶¶ 205–207. She appeared the next morning and was greeted by Mr. Mitchell, who led her to a room with other attorneys and questioned her about the incident with Mr. Crossley, telling her that she did not need a lawyer because she was not a criminal. *Id.* at ¶¶ 208–210. After she refused to answer any questions without an attorney present, an unnamed supervisor who was in the room called for a police officer, who arrived and arrested her. *Id.* at ¶¶ 211–212. Mr. Mitchell did not "t[ake] any action to prevent Ms. Singleton's arrest." *Id.* at ¶ 213.

Ms. Singleton was brought to court on June 2, 2015, and a lawyer hired by her mother succeeded in having the bond reduced to $5,000. *Id.* at ¶¶ 220, 222. Her mother paid the bond, and

---

[11] *See* Exhibit 2, March 20, 2015 Minute Entry.

[12] *See also* Exhibit 1, Singleton Motion.

[13] *See also* Exhibit 1, Singleton Motion.

she was released. *Id.* at ¶¶ 222–223. Mr. Crossley pleaded guilty to two misdemeanors, and Ms. Singleton was never asked to testify. *Id.* at ¶ 224.

## II.   Tiffany Tucker (claims by Renata Singleton)

The sole allegation against Ms. Tucker is that she was present, along with Mr. Mitchell and an unnamed supervisor, in a meeting with Ms. Singleton that culminated in Ms. Singleton being arrested pursuant to a material-witness warrant, and that she did not "t[ake] any action to prevent Ms. Singleton's arrest." *See* Complaint at ¶¶ 209, 213.[14]

## III.   Michael Trummel (claims by Marc Mitchell)

In July 2014, Marc Mitchell was shot multiple times by Jonterry Bernard after a confrontation with Gerard Gray at a basketball court. Complaint at ¶¶ 229–230. Mr. Bernard and Mr. Gray were both charged with attempted murder. *Id.* at ¶ 231. As Mr. Gray's trial approached, Mr. Trummel and Matthew Hamilton met with Mr. Mitchell to prepare. *Id.* at ¶ 234. Mr. Trummel and/or Mr. Hamilton "continued to ask Mr. Mitchell if he had seen Gray gesture to Bernard to order him to shoot," and "Mr. Mitchell repeatedly told the prosecutors that he had not." *Id.* at ¶ 236. Mr. Mitchell "was uncomfortable with how this meeting had gone" because he felt that Mr. Trummel "seemed more intent on telling him what had happened than actually listening to [his] account of the shooting"; he also felt that the DA's office was not "taking concerns about his safety seriously." *Id.* at ¶¶ 237–239. On April 4, 2016, Mr. Mitchell met with Mr. Trummel and Mr. Hamilton "to inform them that he wanted no further private contact with the District Attorney's Office." *Id.* at ¶ 241. In the presence of Mr. Trummel, Mr. Hamilton gave Mr. Mitchell a subpoena

---

[14] The Plaintiffs also allege that Ms. Tucker signed allegedly improper subpoenas and applied for a material-witness warrant pertaining to unnamed persons who are not parties to this case. *See* Complaint at ¶¶ 54, 55, 63, 97, 98.

ordering him to appear to testify at Mr. Gray's trial on April 11, 2016, which Mr. Mitchell signed. *Id.* at ¶ 242.

On April 6, 2016, Mr. Trummel applied for a material-witness warrant for Mr. Mitchell. Complaint at ¶ 243. The warrant application explained that Mr. Mitchell had stated on April 4, 2016, that he "did not want to move forward with the case," and that "the only way in which he would testify is if he was arrested."[15]  However, the warrant application did not state that Mr. Mitchell had "signed" a subpoena to appear in court for Mr. Gray's trial. Complaint at ¶ 246. Additionally, "Defendant Trummel and/or Hamilton also told the court that Mr. Mitchell had a bus ticket to leave town," although Mr. Mitchell had not in fact bought a bus ticket. *Id.* at ¶ 245.[16] The warrant was issued, and on April 7, 2016, Mr. Mitchell was arrested by two police officers pursuant to the warrant and held on a $50,000 bond. *Id.* at ¶ 246–251.

Mr. Mitchell's family sought assistance from SIV, and Tamara Jackson advocated for his release. *Id.* at ¶ 252. Mr. Mitchell was released the next morning, April 8, 2016, on his own recognizance. *Id.* The day before Mr. Gray's trial, Mr. Mitchell "reluctantly" agreed to meet with prosecutors, and he discussed his testimony with Mr. Trummel once again. *Id.* at ¶ 253. Mr. Mitchell testified at trial, and Mr. Gray was convicted. *Id.* at ¶ 255.[17]

## IV.   Matthew Hamilton (claims by Marc Mitchell)

The Plaintiffs allege that Mr. Hamilton was present during one or more meetings with Mr. Mitchell, and that he may have questioned Mr. Mitchell and provided him with certain information

---

[15] Exhibit 8, Mitchell Motion.

[16] Mr. Trummel notes that the statement that Mr. Mitchell had a bus ticket to leave town was based on information provided by Mr. Mitchell's mother.

[17] The Plaintiffs also allege that Mr. Trummel applied for a material-witness warrant pertaining to an unnamed person who is not a party to this case. *See* Complaint at ¶¶ 102–103.

about the men who were responsible for shooting him. *See* Complaint at ¶¶ 234, 236. The Plaintiffs also allege that Mr. Hamilton gave Mr. Mitchell a subpoena to testify at Mr. Gray's trial, and that he may have incorrectly told the court, during the hearing on Mr. Mitchell's material-witness warrant, that Mr. Mitchell had a bus ticket to leave town. *See id.* at ¶¶ 242, 245.[18] The Plaintiffs also allege that Mr. Trummel submitted the warrant application for Mr. Mitchell "with the knowledge of Defendant Hamilton." *Id.* at ¶ 244. The Plaintiffs do not otherwise allege any actions by Mr. Hamilton.

## V.    Jason Napoli (claims by Lazonia Baham)

After Lazonia Baham's daughter's boyfriend was murdered in February 2013, multiple investigators from the DA's office (including Michael Kitchens, who is not a party to this case[19]) contacted her on several occasions with questions about Isaac Jones, the murder suspect. Complaint at ¶¶ 261–265. After Mr. Kitchens told her that she could be arrested if she refused to tell prosecutors what she knew, she stopped taking his calls. *Id.* at ¶¶ 265–266. She told the DA's office that "she would come to court if subpoenaed, but . . . would not change her story." *Id.* at ¶ 269. In the following months, she received several allegedly "unlawful" subpoenas "issued at the direction of Defendant Napoli" directing her to appear at the DA's office, but she did not appear. *Id.* at ¶¶ 270–272.

On October 13, 2015, Mr. Napoli applied for a material-witness warrant for Ms. Baham, alleging that Ms. Baham "refused to meet with ADA Jason Napoli and cut off all communication

---

[18] The Plaintiffs appear to admit that they do not know whether it was Mr. Hamilton or Mr. Trummel who allegedly made these statements to the court.

[19] The Plaintiffs allege that Mr. Kitchens's actions were taken "at the request of" Mr. Napoli. Complaint at ¶ 268.

with the District Attorney's Office." Complaint at ¶ 273.[20] Mr. Napoli did not state in the application that Ms. Baham had talked to him on multiple occasions, or that she had told him she planned to attend court. *Id.* at ¶ 274.[21] The warrant was issued, and on December 29, 2015, police officers arrested Ms. Baham. *Id.* at ¶¶ 274–275. On January 6, 2016, she was brought to court, where she met with Mr. Napoli privately. *Id.* at ¶¶ 277–278. She was released later that evening. *Id.* at ¶ 283. Since then, Ms. Baham has testified twice in pretrial proceedings. *Id.* at ¶ 284.[22]

## VI.    Iain Dover (claims by Jane Doe)

Jane Doe is a victim of juvenile molestation and child pornography. Complaint at ¶ 287.[23] In September 2016, Mr. Dover and an unnamed "investigator" delivered an allegedly "fraudulent" subpoena to her home, directing her to appear at the DA's office for questioning. *Id.* at ¶ 288. Ms. Doe and her mother retained an attorney, who responded with a letter asking Mr. Dover to "honor their right to privacy, their right to be left alone," explaining that "[t]hey do not want to be badgered, bothered or harassed by anyone from law enforcement in any way," and telling Mr. Dover to direct any questions to her. *Id.* at ¶¶ 289–290. Later, an investigator from the DA's office who worked for Mr. Dover came to Ms. Doe's high school, accompanied by a uniformed police officer, with a "document" directing her to appear for questioning at the DA's office the next

---

[20] *See also* Exhibit 6, Baham Motion.

[21] Although Ms. Baham's allegations are accepted as true for the purposes of this motion, Mr. Napoli notes that he disputes certain allegations and does not recall ever speaking with Ms. Baham before her arrest or sending her any document ordering her to appear for questioning at the DA's office.

[22] The Plaintiffs also allege that Mr. Napoli obtained a material-witness warrant pertaining to an unnamed person who is not a party to this case. *See* Complaint at ¶¶ 107–109.

[23] More specifically, Ms. Doe was sexually molested by her stepfather, who recorded videos of the sexual molestation. The prosecution of these crimes was impeded by the resistance of Ms. Doe's mother, who did not want the prosecution to proceed.

morning. *Id.* at ¶ 291. This "document" was, in fact, a proper Article 66 subpoena that was issued by the Orleans Parish Criminal District Court.[24]

Ms. Doe did not appear the following morning, and Mr. Dover "called her attorney and left a voicemail threatening that, if [she] did not arrive by 11 a.m., he would seek her arrest on a material witness warrant." Complaint at ¶ 295. According to the Plaintiffs, a hearing in the case was held later that day, and although Mr. Dover "arrived at the hearing with a completed material witness warrant application" for Ms. Doe, he did not present it, and no warrant was issued. *Id.* at ¶¶ 296–297. Instead, Ms. Doe's attorney "informed the court that Ms. Doe would be willing to comply with the meeting," and "[t]he court ordered [him] to arrange a meeting for Ms. Doe to meet with prosecutors." *Id.* at ¶ 298. Ms. Doe met with Mr. Dover at the DA's office later that same day. *Id.* at ¶ 299. Mr. Dover "interrogated her about the offenses that victimized her, including a number of intimate questions," and allegedly "mocked [her] when she did not answer his questions." *Id.* at ¶¶ 299–300. Ms. Doe's stepfather pleaded guilty in December 2017, and his sentencing was set for February 23, 2018. *See id.* at ¶ 301.

## VII.  Inga Petrovich (claims by Fayona Bailey)

Fayona Bailey is a potential witness in a murder case, and Ms. Petrovich issued an allegedly "fraudulent" subpoena directing her to appear at the DA's office on March 16, 2017, for questioning. Complaint at ¶¶ 304, 306. The document, which was entitled "SUBPOENA" and threatened jail and fines for failure to obey, was delivered to Ms. Bailey's home by two investigators from the DA's office, who were allegedly acting "at the direction of Defendant Petrovich.". *Id.* at ¶ 307. One of the investigators told her that she could be sent to jail if she did not attend. *Id.* at ¶ 308. The investigators asked her to sign the document to acknowledge receipt,

---

[24] *See* Exhibit 3, Doe Subpoena; Exhibit 4, Doe Motion.

but she did not do so. *Id.* at ¶ 311. Later, an unnamed "representative" of the DA's office called Ms. Bailey and again threatened her with jail time if she did not appear. *Id.* at ¶ 313. Ms. Bailey hired an attorney, who filed a motion to quash the subpoena, but the subpoena was withdrawn by the prosecution. *Id.* at ¶¶ 312, 324. Ms. Bailey was never called to testify at trial. *Id.* at ¶ 325. Ms. Bailey alleges that she "did not feel at liberty to travel or leave the state until the purported subpoena was quashed." *Id.* at ¶ 316. Ms. Bailey does not allege that she ever met with prosecutors.

## VIII.   Laura Rodrigue (claims by Tiffany LaCroix)

Tiffany LaCroix is a potential witness in a murder case, and Ms. Rodrigue issued an allegedly "fraudulent" subpoena in November 2016 directing her to appear at the DA's office for questioning and threatening fines or imprisonment for failure to obey. Complaint at ¶¶ 304, 317–318. Ms. LaCroix "did not want to be pressured to reveal private information about [the defendant] unless she was compelled by law to do so" and did not want to miss work, so she hired an attorney, who filed a motion to quash the subpoena. *Id.* at ¶¶ 319–322. The subpoena was withdrawn by the prosecution, and Ms. LaCroix was never called to testify at trial. *Id.* at ¶¶ 324–325. Ms. LaCroix also alleges that she "did not feel at liberty to travel or leave the state until the purported subpoena was quashed." *Id.* at ¶ 323. Ms. LaCroix does not allege that she ever met with prosecutors.

## IX.   Sarah Dawkins (claims by John Roe)

On January 30, 2016, John Roe was attacked with an AK-47 rifle by Michael Young, who ultimately was arrested for this assault. Complaint at ¶¶ 326–331. Mr. Young was also a suspect in the murder of Mr. Roe's friend, Gregory Young. *Id.* at ¶ 332. Mr. Roe answered questions from the police concerning the assault and murder investigations and gave them his address, his phone number, and the name and phone number of his fiancée. *Id.* at ¶¶ 333–334. Beginning in May 2017, the DA's Office began attempting to serve Mr. Roe with subpoenas for him to testify in court for the joint trial of the assault and murder charges against Michael Young. *Id.* at ¶ 337.

Although "prosecutors or their agents" attempted to serve at least ten subpoenas to Mr. Roe, they were unsuccessful; some of the subpoena returns from the Sheriff's Department were marked "incomplete address" or "subject moved." *Id.* at ¶¶ 339, 341.

Mr. Roe alleges that he was unaware of the attempts to contact him because he had moved to his fiancée's house and both he and his fiancée had changed their phone numbers. *Id.* at ¶¶ 342–343. However, Mr. Roe suggests that he "was not difficult to find" because he "maintains a Facebook account under his own name, as does his fiancée." *Id.* at ¶ 346. Mr. Roe contends that "prosecutors never attempted to have Mr. Roe served at a different address," and that "neither [he] nor his fiancée ever received messages from anyone at the District Attorney's Office or the police department on their Facebook accounts." *Id.* at ¶¶ 340, 347.

On August 28, 2017, Ms. Dawkins submitted an application for a material-witness warrant for Mr. Roe in order to ensure his presence at the September 18, 2017 trial. Complaint at ¶ 349.[25] The application explained: "The State has reason to fear [Mr. Roe] will not appear in Court. Attempts to reach [him] at his home and by phone by members of the Orleans Parish District Attorney's Office have been unsuccessful. Messages left for [Mr. Roe] have gone unanswered."[26] The court issued the warrant and set bond at $250,000, as requested by Ms. Dawkins. Complaint at ¶ 357. Mr. Roe was arrested pursuant to the warrant on December 3, 2017. *Id.* at ¶ 358. He was released on December 6, 2017, without posting any bond, after agreeing to submit to electronic monitoring. *See id.* at ¶¶ 372–374. Although Mr. Roe subsequently returned to court and stated

---

[25] *See also* Exhibit 9, Motion and Order for Material Witness Bond ("Roe Motion") (redacted to preserve Mr. Roe's anonymity). Because the Roe Motion is referred to in the Complaint, *see, e.g.*, Complaint at ¶¶ 349, 357, and is central to the Plaintiffs' claims, it is considered part of the pleadings and is appropriate for consideration in a Rule 12(b)(6) motion.

[26] Exhibit 9, Roe Motion.

that he could not afford to pay for electronic monitoring, he was allowed to remain free on his own recognizance and was not returned to jail. *See id.* at ¶ 378–380.[27]

## X.    David Pipes (claims by Renata Singleton and John Roe)

The Plaintiffs allege that Mr. Pipes "reviewed and approved Defendant Mitchell's application for the arrest warrant" for Ms. Singleton and "authorized Defendant Dawkins to pursue the [material witness] warrant" for Mr. Roe. Complaint at ¶¶ 202, 350.[28] The Plaintiffs further contend that Mr. Pipes "evaluates the performance of each Assistant District Attorney under his supervision, recommending raises, promotions, and disciplinary actions, including dismissal," and generally allege that he "failed to adequately train, supervise, and/or discipline Assistant District Attorneys and other agents at the District Attorney's Office under [his] supervision" with respect to the other misconduct alleged in the complaint. *Id.* at ¶ 15, 434.

## XI.    Graymond Martin

The Plaintiffs allege that Mr. Martin is the First Assistant District Attorney and is "responsible for key office policies, including in connection with compliance with ethical rules and the Office's witness contact policies." Complaint at ¶ 14. The Plaintiffs also generally allege that Mr. Martin "failed to adequately train, supervise, and/or discipline Assistant District Attorneys and other agents at the District Attorney's Office under [his] supervision" with respect to the other misconduct alleged in the complaint. *Id.* at ¶ 434. The Plaintiffs further allege that Mr. Martin "directly instruct[ed]" the other Defendants under his supervision to "engage in unlawful

---

[27] Mr. Roe alleges that Ms. Dawkins told him that "he would have to report to court once a week until Michael Young's trial to check in with her" and that "if he failed to come to any check-in, he would go to jail." Complaint at ¶ 380, 382. Mr. Roe neglects to mention, however, that these "check-ins" were in fact pre-trial conferences that he was compelled to attend by court-issued subpoenas.

[28] The Plaintiffs also allege that Mr. Pipes approved a warrant application pertaining to an unnamed person who is not a party to this case. *See* Complaint at ¶ 112.

conduct"—specifically, to use a "template fraudulent subpoena" that he provided, and to "use the threat of arrest from a material witness warrant to make contact with a witness." *Id.* at ¶¶ 179–180, 420, 426.

## XII.   Leon A. Cannizzaro, Jr., in his individual capacity

With one exception, the claims against Mr. Cannizzaro in his individual capacity arise from his alleged failure to adequately train, supervise, and discipline the Assistant District Attorneys and other agents under his control with respect to the allegedly unlawful conduct described above. *See* Complaint at ¶¶ 335–341. The Plaintiffs also allege that Mr. Cannizzaro personally violated the First Amendment rights of SIV (1) by warning its Executive Director, Tamara Jackson, in 2016 that "if it appeared that she was encouraging victims not to communicate with his office, he could prosecute her for witness coercion"; and (2) by warning Ms. Jackson three years earlier that "if she dissuaded victims from assisting prosecutors, she could be charged with obstruction." Complaint at ¶¶ 173–175, 427.

## XIII.   Leon A. Cannizzaro, Jr., in his official capacity as Orleans Parish District Attorney

The Plaintiffs contend that the OPDA is liable for the alleged wrongful actions of the Individual Defendants because such actions were taken pursuant to an official policy, practice, or custom of the OPDA. *See, e.g.*, Complaint at ¶¶ 415–416, 419–420, 422–426, 429–430, 432, 441–443.

## LAW AND ARGUMENT

In considering a Rule 12(b)(6) motion, a court must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Howell v. Town of Ball*, 827 F.3d 515, 521 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a court is not bound to accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678.

Although generally "a district court must limit itself to the contents of the pleadings, including attachments thereto, . . . [d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499–500 (5th Cir. 2000) (quotation omitted). Additionally, "[f]ederal courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss." *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *see also Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("[T]he district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand."); *Henson v. CSC Credit Svcs.*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that "the district court was permitted to consider the public court documents filed in the earlier Indiana state court case in deciding the defendants' motion to dismiss"). "If [an] appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." *Assoc. Builders, Inc. v. Ala. Power. Co.*, 505 F.2d 97, 100 (5th Cir. 1974); *see also Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss."); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

I.      **Prosecutors are protected by absolute immunity with respect to actions taken as an advocate of the State and by qualified immunity with respect to other official actions.**

"[P]rosecutors are absolutely immune with respect to activities that are 'intimately associated with the judicial phase of the criminal process.'" *Cousin v. Small*, 325 F.3d 627, 631–32 (5th Cir. 2003) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "Conduct falling within this category is not limited 'only to the act of initiation itself and to conduct occurring in the courtroom,' but instead includes all actions 'which occur in the course of [the prosecutor's] role as an advocate of the State.'" *Id.* at 632 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 272–73 (1993)); *see also Buckley*, 509 U.S. at 273 ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.").

With respect to any other official actions—such as "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings"—prosecutors are entitled to qualified immunity. *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) (quotation omitted). "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). "This immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 371 (quotation omitted). "[A] plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (quotation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation

18

omitted). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question ***beyond debate***." *Id.* (emphasis added).

## II.     Of the four Fourth Amendment claims based on material-witness warrants, three are barred by prescription; all are barred by absolute immunity (or, in the alternative, by qualified immunity); and all have failed to adequately state a claim.

Four of the Plaintiffs (Ms. Singleton, Mr. Mitchell, Ms. Baham, and Mr. Roe) assert Fourth Amendment seizure claims arising out of their arrest on allegedly improper material-witness warrants. *See* Complaint at ¶¶ 415–418.

### A.     Prescription

"Section 1983 claims pending in federal courts in Louisiana are subject to a one year statute of limitations period," which "commences to run from the day injury or damage is sustained." *Gordon v. James*, No. 16-cv-16540, 2017 WL 4311125, at *6 (E.D. La. Sep. 26, 2017) (citing LA. CIV. CODE art. 3492); *see also Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987) ("[T]he statute of limitations begins to run from the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.").

Ms. Singleton alleges that a warrant was issued on April 24, 2015, and that she was arrested on May 29, 2015, and released on June 2, 2015. Complaint at ¶¶ 199–203, 208, 212, 220–223. Mr. Mitchell alleges that a warrant was issued on April 6, 2016, and that he was arrested on April 7, 2016, and released on April 8, 2016. *Id.* at ¶¶ 243–252. Ms. Baham alleges that a warrant was issued on October 13, 2015, and that she was arrested on December 29, 2015, and released on January 6, 2016. *Id.* at ¶¶ 273–275, 283. The injuries alleged by these Plaintiffs—seizure on allegedly unconstitutional grounds—clearly were sustained on the day they were arrested, and in no event could have occurred at any point ***after*** they were released from custody. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) ("In the context of [a § 1983 claim] for wrongful arrest and confinement, it is the plaintiff's knowledge of those two events that triggers the limitations

period. Accordingly, [the plaintiff's] claims accrued at the latest on [the date he was released from custody].") (quotation omitted); *see also Rose v. Bartle*, 871 F.2d 331, 350 (3rd Cir. 1989) ("[A] section 1983 claim for false arrest accrues on the date of the arrest, as does a section 1983 claim for abuse of process, because on that date a plaintiff would have reason to know of the injury which those two torts encompass.") (quotation omitted). Because these three Plaintiffs were all arrested and released more than one year before the date this lawsuit was filed (October 17, 2017), their claims are prescribed on the face of the Complaint and must be dismissed.

### B.    Absolute Immunity

Additionally, the claims of all four of these Plaintiffs against the Individual Defendants are barred by absolute prosecutorial immunity. "Other circuits that have addressed the question have held that prosecutors are ordinarily entitled to absolute immunity for conduct falling within a prosecutorial function when they seek detention of a material witness pursuant to judicial order." *Adams v. Hanson*, 656 F.3d 397, 403 (3rd Cir. 2011); *see also Simon v. City of New York*, 727 F.3d 167, 172 (2nd Cir. 2013) ("[W]hen a prosecutor seeks a material witness warrant, he does so as an advocate and is immune from suit. Any alleged misstatements by [the prosecutor] in his application for the material witness warrant therefore cannot form the basis for liability.") (citation omitted); *Daniels v. Kieser*, 586 F.2d 64 (7th Cir. 1978) (prosecutor was absolutely immune from § 1983 suit alleging that he made false statements to the court to obtain a material-witness warrant). The claim that the Individual Defendants "rel[ied] on false allegations, material omissions, and plainly insufficient factual allegations in applications for material witness warrants," Complaint at ¶ 415, plainly concerns alleged conduct taken as an advocate. Accordingly, these claims are barred by absolute immunity. *See Adams*, 656 F.3d at 405 ("Because [the prosecutor's] actions fell within her prosecutorial role, she is entitled to absolute immunity even if her statements were false or misleading.").

20

### C.    Qualified Immunity

Even if absolute immunity does not apply here (and it does as a matter of law), these claims against the Individual Defendants would still be barred by qualified immunity because the Plaintiffs have not adequately alleged the violation of constitutional right, clearly established or otherwise. The undersigned is unaware of any authority holding that a prosecutor may be liable under the Fourth Amendment for actions taken in the course of obtaining a warrant for a material witness in an ongoing criminal prosecution, and certainly the law is this area is not clearly established. The Plaintiffs' contention that the warrant applications contained "false allegations" and "material omissions," Complaint at ¶ 415, suggests that they are invoking *Franks v. Delaware*, 438 U.S 154 (1978), which holds that evidence obtained pursuant to a search warrant must be suppressed if the police intentionally or recklessly included false statements in the warrant affidavit that are necessary to the finding of probable cause.[29] Additionally, the Plaintiffs' contention that the warrant applications were based on "plainly insufficient factual allegations," Complaint at ¶ 415, suggests that they seek an extension of *Malley v. Briggs*, 475 U.S. 335, 344 (1986), which holds that a police officer may be liable if a warrant application that he submits is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable."

Initially, it must be emphasized that the constitutional law concerning material-witness warrants is so unsettled that it is not even clearly established whether "probable cause" is the governing standard for their issuance. *See, e.g.*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("It might be argued, perhaps, that when . . . the Fourth Amendment said that warrants could only issue

---

[29] Under *Franks*, if the party challenging the warrant demonstrates that the warrant affidavit includes intentionally or recklessly false statements, the court must disregard those statements and consider whether the remaining content is sufficient to establish probable cause. *See* 438 U.S. at 155–56. If it is sufficient, there is no constitutional violation. *See id.*

'on probable cause' it means only probable cause to suspect a violation of law, and not probable cause to believe that the individual named in the warrant was a material witness."); *id.* at 745 (Kennedy, J., concurring, joined by three other Justices) ("[I]t is important to bear in mind that the Material Witness Statute might not provide for the issuance of warrants within the meaning of the Fourth Amendment's Warrant Clause. The typical arrest warrant is based on probable cause that the arrestee has committed a crime; but that is not the standard for the issuance of warrants under the Material Witness Statute."). These recent statements by the Supreme Court forcefully demonstrate that the law is not at all clearly established in this area.

However, even if the Court were inclined to extend the *Franks* and *Malley* doctrines by analogy into a new area where they are certainly not clearly established, importing the probable-cause standard and the associated caselaw, the Plaintiffs have not adequately alleged that any of the material-witness applications contained intentionally or recklessly false statements or omissions that were critical to a finding of probable cause. *See, e.g., Morin v. Caire*, 77 F.3d 116, 122 (5th Cir. 1996) ("In order to constitute a constitutional violation sufficient to overcome the qualified immunity of an arresting officer, the material misstatements and omissions in the warrant affidavit must be of such character that no reasonable official would have submitted it to a magistrate" and "must be clearly critical to a finding of probable cause.") (quotations omitted). Nor have they adequately alleged that any of the material-witness warrant applications were lacking in probable cause, or that any of the Individual Defendants were unreasonable in believing that probable cause existed.

### 1. Renata Singleton

The Plaintiffs allege that the warrant application for Ms. Singleton was false and misleading because it relied on her failure to appear at the District Attorney's Office on April 24, 2015, pursuant to two allegedly "fraudulent" subpoenas that were not actually subpoenas. *See*

Complaint at ¶¶ 195–200. Assuming for the purposes of this motion that Ms. Singleton did receive documents styled as "subpoenas" directing her to appear at the DA's office that were not actual subpoenas, the Plaintiffs still cannot show that the warrant application was defective. Even if the statement concerning "subpoenas . . . to appear at the District Attorney's Office on April 24, 2015" is removed, the fact remains that Ms. Singleton had failed to appear for trial at least twice and that the Sheriff's Office had been unable to serve her with trial subpoenas despite numerous efforts.[30] Such facts easily make out a sufficient showing under the Louisiana material-witness statute, which provides that a warrant "shall issue" upon a showing by the prosecution (or the defense) that "the testimony of any witness is essential to the prosecution or the defense" and that "it may become impracticable to secure the presence of the person by subpoena." LA. REV. STAT. § 15:257. Accordingly, the challenged statement is not "clearly critical to a finding of probable cause." *Morin*, 77 F.3d at 122. Ms. Singleton's claims against Mr. Mitchell and Mr. Pipes are therefore barred by qualified immunity.[31]

### 2.    Marc Mitchell

The Plaintiffs allege that the warrant application for Marc Mitchell was misleading because it failed to state that Mr. Mitchell had "signed a subpoena to appear in court," and because either Mr. Trummel or Mr. Hamilton inaccurately told the court that Mr. Mitchell had a bus ticket to leave town. *See* Complaint at ¶ 245–246. However, the warrant application explained that Mr. Mitchell had stated that he "did not want to move forward with the case," and that "the only way

---

[30] *See* Exhibit 1, Singleton Motion; Exhibit 2, March 20, 2015 Minute Entry.

[31] Additionally, Ms. Singleton's claims against Mr. Pipes, based on his allegedly "review[ing] and approv[ing]" the warrant application for her arrest, fail because the Complaint does not plausibly allege facts suggesting any wrongdoing on his part. *See* Complaint at ¶ 200–202. Even assuming it did in fact contain false statements, Ms. Singleton does not allege that Mr. Pipes knew the statements in the application were false, and the facts as alleged do not plausibly raise such an inference.

in which he would testify is if he was arrested."[32] These facts—which the Plaintiffs do not challenge as false—provide a strong basis for issuance of a material-witness warrant under LA. REV. STAT. § 15:257. The fact that Mr. Mitchell signed a trial subpoena (*i.e.*, simply to acknowledge that he had received it) does not undercut his own statements starkly expressing his unwillingness to testify at trial.

Furthermore, even assuming that an inaccurate statement was made to the effect that Mr. Mitchell had a bus ticket to leave town, this statement was not essential to a finding of probable cause for the warrant—Mr. Mitchell's own statement that he did not intend to testify at trial unless he was arrested (even after receiving a subpoena) clearly showed that "it may become impracticable to secure [his] presence . . . by subpoena." LA. REV. STAT. § 15:257.[33] Here again, the alleged misstatement and omission are not "clearly critical to a finding of probable cause." *Morin*, 77 F.3d at 122. Mr. Mitchell's claims against Mr. Trummel and Mr. Hamilton are therefore barred by qualified immunity.

### 3.    Lazonia Baham

The Plaintiffs allege that the warrant application for Ms. Baham was misleading because Mr. Napoli failed to inform the district court that "Ms. Baham had talked with him on multiple occasions, and . . . that she had told him that she planned to attend court." Complaint at ¶ 274. Even accepting these allegations as true for the purposes of this motion (they are in fact false), the Plaintiffs cannot show that the warrant application was defective. The warrant application explains:

> Lazonia Baham was notified by Orleans Parish District Attorney's Office Investigator Mike Kitchens that she was an essential witness in the above stated

---

[32] Exhibit 8, Mitchell Motion.

[33] Nor do the Plaintiffs provide any reason to infer that the "bus ticket" statement was knowingly false or made with reckless disregard for the truth.

case and would be needed to testify. Ms. Baham refused to meet with ADA Jason Napoli and cut off all communication with the District Attorney's Office. Despite multiple visits to her home, Ms. Baham refuses to speak with Investigator Kitchens and has refused to return multiple phone calls. The actions of Ms. Baham indicate that she is intentionally avoiding service and will not come to court on her own accord.[34]

In light of these facts showing Ms. Baham's extreme reluctance to assist in the prosecution of Mr. Jones—which the Plaintiffs do not challenge as false—it would not have critically undermined the showing necessary for issuance of a material-witness warrant to include Ms. Baham's alleged statement expressing her willingness to show up for court. This is particularly true in light of Ms. Baham's failure to appear for trial on October 13, 2015, which prompted the filing of the warrant application. Because the alleged omissions were not "clearly critical to a finding of probable cause," *Morin*, 77 F.3d at 122, there can be no constitutional violation. Ms. Baham's claim against Mr. Napoli is therefore barred by qualified immunity.

### 4.   John Roe

The warrant application for Mr. Roe explained that the State had reason to fear that he would not appear for trial because "[a]ttempts to reach [him] at his home and by phone by members of the Orleans Parish District Attorney's Office have been unsuccessful. Messages left for [Mr. Roe] have gone unanswered."[35] The Plaintiffs allege that the application was "false and misleading" because (1) no one from the DA's office had left any "phone message" for Mr. Roe, and they could not have because "the number the police had on file had been disconnected at that point"; (2) the address where service was attempted (which Mr. Roe had provided to the police) was not in fact his "home" because he had moved; and (3) the application failed to state that Mr. Roe "had fully and voluntarily assisted police in their investigation." Complaint at ¶¶ 353–356.

---

[34] Exhibit 6, Baham Motion.

[35] Exhibit 9, Roe Motion.

The Plaintiffs' accusations of misrepresentation are based on a willful misreading of the actual language in the warrant application. The application does not say that "phone messages" were left for Mr. Roe. Nor does it say that phone calls were made to only one phone number or that attempts to locate him were confined to a single address.[36] Even if Mr. Roe's actual "home" at the time was not where Ms. Dawkins believed it to be, he provides no basis to infer that Ms. Dawkins made an intentionally or recklessly false representation to the Court—much less a "material misstatement[ ] . . . of such character that no reasonable official would have submitted it to a magistrate," *Morin*, 77 F.3d at 122—by stating that the DA's office had made "[a]ttempts to reach [him] at his home."

Moreover, the alleged false statements and omissions were in no way essential to a finding of probable cause for the warrant. Even if the warrant application had been rewritten consistent with the Plaintiffs' suggestions—to include more detail about the type of messages left, to explain that it was not clear where Mr. Roe's "home" was, and to state that he had initially assisted the police in their investigation—the grounds for issuing the warrant are just as strong. As the Plaintiffs acknowledge, at the time of the application, the DA's office had been attempting to locate Mr. Roe for months to secure his testimony at trial, but without success. *See* Complaint at ¶¶ 337–349. It was obviously true that "it may become impracticable to secure the presence of [Mr. Roe] by subpoena," La. Rev. Stat. § 15:257, because the Sheriff's Office had thus far been unable to serve

---

[36] Although the evidence showing the attempts to contact Mr. Roe is not before the Court in connection with this motion, Ms. Dawkins notes that Mr. Roe's account is highly incomplete. In fact, investigators from the DA's office attempted to locate Mr. Roe and his fiancée multiple times at multiple addresses, including the address that Mr. Roe gave to the police and two other addresses that were found to be associated with them. The investigators spoke with Mr. Roe's grandmother and sister and his fiancée's mother and left messages for Mr. Roe. Additionally, a victim–witness coordinator with the DA's office attempted to contact Mr. Roe and his fiancée multiple times through calls and text messages to multiple phone numbers, including the numbers that Mr. Roe gave to the police and other phone numbers that were found to be associated with them.

Mr. Roe with a trial subpoena despite many attempts. Mr. Roe's claim against Ms. Dawkins is therefore barred by qualified immunity.

### D.      Failure to State a Claim

As explained above, none of the warrant applications contained intentionally or recklessly false statements or omissions that were necessary to establish the elements for a material-witness warrant under LA. REV. STAT. § 15:257. Similarly, all of the applications included facts that were sufficient to establish the elements required under LA. REV. STAT. § 15:257. Because these four Plaintiffs have failed to adequately state a claim under the Fourth Amendment, their claims against the OPDA must be dismissed.

### III.    Of the three Fourth Amendment claims based on allegedly unlawful subpoenas, one is barred by prescription; all are barred by absolute immunity (or, in the alternative, by qualified immunity); and all have failed to adequately state a claim.

Three of the Plaintiffs (Ms. Doe, Ms. Bailey, and Ms. LaCroix) allege that "unlawful" subpoenas were used to "seize" them in violation of the Fourth Amendment—more specifically, that certain Individual Defendants "compel[ed] [them] to attend private meetings at the District Attorney's Office by using unlawful subpoenas, accompanied by threats of arrest and imprisonment." Complaint at ¶ 419.

### A.      Prescription

First, the claims by Ms. Doe are prescribed because the presentation of the allegedly fraudulent subpoena and her meeting with Mr. Dover occurred in September 2016, more than one year before this suit was filed. *See* Complaint at ¶ 288.[37] As explained above in Section II.A, a Fourth Amendment seizure claim accrues, at the latest, at the time the alleged seizure ends. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). Assuming for the sake of argument that

---

[37] *See also* Exhibit 3, Doe Subpoena; Exhibit 4, Doe Motion; Exhibit 5, Doe Motion to Quash.

there was a seizure,[38] it plainly would have occurred—and therefore Ms. Doe's claims would have accrued—by September 2016. Her claims are therefore prescribed as a matter of law.

## B.    Absolute Immunity

Second, because the alleged actions—sending allegedly improper subpoenas to witnesses in an attempt to review and discuss the witnesses' testimony in advance of trial—were "undertaken by . . . prosecutor[s] in preparing for . . . trial" and "occur[red] in the course of [their] role as an advocate for the State," *Buckley*, 509 U.S. at 273, the claims of all three Plaintiffs against the Individual Defendants are barred by absolute immunity.

## C.    Qualified Immunity

Alternatively, even if absolute immunity does not apply, the claims against the Individual Defendants are certainly barred by qualified immunity because the Plaintiffs have not adequately alleged the violation of any constitutional right, clearly established or otherwise. "A person is 'seized' for Fourth Amendment purposes 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the citizen.'" *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "A seizure occurs 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [they were] not free to leave.'" *Id.* (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)).

### 1.    Fayona Bailey and Tiffany LaCroix

Two of these plaintiffs—Ms. Bailey and Ms. LaCroix—admit that they did not appear for questioning at the DA's office as requested; thus, they were not actually "compel[ed] . . . to attend

---

[38] As explained below, Ms. Doe was not in fact "seized" within the meaning of the Fourth Amendment; thus, the claim fails on the merits.

private meetings at the District Attorney's Office." Complaint at ¶ 419. Notwithstanding this failure to appear, they do not allege that they were arrested or subjected to any other restraint on their liberty. The law is clear that a threat of possible imprisonment, without more, does not constitute a "seizure" under the Fourth Amendment if the subject does not actually yield or submit to it. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991); *see also Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control."); *Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007) ("[T]he mere issuance of a citation requiring presence at future legal proceedings does not qualify as a constitutional 'seizure.'"); *Britton v. Maloney*, 196 F.3d 24, 29–30 (1st Cir. 1999) ("*Terry* cannot be read to mean that the issuance of a summons (any more than a testimonial subpoena or a call to jury duty) would constitute a seizure simply because it threatens a citizen with the *possibility* of confinement if he fails to appear in court.").

Ms. Bailey and Ms. LaCroix both contend that they "did not feel at liberty to travel or to leave the state until the purported subpoena was quashed," because they were "apprehensive, given the language used in the subpoena and the threats from prosecutors." Complaint at ¶¶ 316, 323. However, they do not allege that the subpoenas they received included any restriction on their right to travel or to leave the state, or that anyone from the DA's office ever suggested that they were under any such restrictions. Nor can they credibly suggest that they were compelled to alter their travel plans in order to comply with the subpoenas, given that they both admit that they did not actually comply.[39] Because the allegations by Ms. Bailey and Ms. LaCroix do not give rise to a

---

[39] Nor did Ms. Bailey or Ms. LaCroix attend the hearings on the motion to quash filed by their lawyer.

Fourth Amendment seizure under clearly established law, Ms. Rodrigue and Ms. Petrovich are entitled, at a minimum, to qualified immunity.

### 2. Jane Doe

Although Ms. Doe alleges that she did eventually appear at the DA's office for questioning, her claim is likewise deficient. Even assuming that a voluntary meeting with prosecutors under threat of imprisonment could constitute a "seizure" (it cannot, as explained below), Ms. Doe does not allege that any such seizure occurred as a result of a "fraudulent" subpoena that was sent to her. Mr. Dover applied to the Orleans Parish Criminal District Court and obtained an Article 66 subpoena directing Ms. Doe to appear for questioning at the DA's office.[40] Her lawyer moved unsuccessfully to quash the subpoena and ultimately "informed the court that Ms. Doe would be willing" to meet with Mr. Dover. Complaint at ¶¶ 297–298. As a result, "[t]he court ordered [Ms. Doe's lawyer] to arrange a meeting." *Id.* at ¶ 298. Ms. Doe's meeting with Mr. Dover was pursuant to both an Article 66 subpoena and a direct court order and was therefore entirely proper.

Additionally, Ms. Doe's voluntary decision to meet with Mr. Dover does not constitute a Fourth Amendment "seizure" under clearly established law. The Fifth Circuit's opinion in *McLin* is instructive: In that case, the Court held that, although the plaintiff's voluntary surrender to an arrest warrant constituted a "seizure" under the Fourth Amendment, the defendants were entitled to qualified immunity because the relevant law was not clearly established. *See* 866 F.3d at 695–96. The Court noted that "neither the Supreme Court nor the Fifth Circuit has decided that an officer's acceptance of a voluntary surrender to an arrest warrant constitutes a Fourth Amendment seizure," and that "there is no [sic] a robust consensus of persuasive authority" on the question. *Id.* at 696 (quotation omitted). And if the law is unclear with respect to a criminal defendant's

---

[40] *See* Exhibit 3, Doe Subpoena; Exhibit 4, Doe Motion.

surrender for arrest on a criminal charge, it is much less clear with respect to a witness's pre-trial meeting with prosecutors. Accordingly, Mr. Dover is entitled to qualified immunity.

### D.      Failure to State a Claim

For the reasons explained above, these three Plaintiffs have failed to adequately allege a claim for unconstitutional seizure under the Fourth Amendment. Their claims against the OPDA must therefore be dismissed.

### IV.     Of the seven First Amendment claims, four are barred by prescription; all are barred by absolute immunity (or, in the alternative, by qualified immunity); and all have failed to adequately state a claim.

All seven individual Plaintiffs assert First Amendment claims under two theories. First, they allege that they were "unconstitutionally compelled to speak to prosecutors" as a result of the Defendants' actions (*i.e.*, "issuing fraudulent subpoenas, threatening witnesses with fines and jail, seeking to jail witnesses who do not meet voluntarily with prosecutors, and leaving witnesses in jail for excessive periods of time"). Complaint at ¶¶ 422–423. Second, they allege that the Defendants "retaliat[ed]" against them due to their "constitutionally protected activity"— specifically, "choosing not to speak voluntarily absent a lawful court order" and "resisting efforts by prosecutors to coerce false testimony that supports the prosecution's theory of the case." *Id.* at ¶ 424. The alleged "retaliation" consists of "threatening witnesses with jail, seeking to jail these witnesses, and leaving these witnesses in jail for excessive periods of time." *Id.*

### A.      Prescription

For the reasons explained above in Sections II.A and III.A, the claims asserted by Ms. Singleton, Mr. Mitchell, Ms. Baham, and Ms. Doe are prescribed because all of the alleged wrongful acts by the Defendants occurred more than one year before suit was filed.

### B.     Absolute Immunity

Additionally, because the alleged actions supporting the Plaintiffs' claims (obtaining material-witness warrants for uncooperative witnesses and sending allegedly "fraudulent" subpoenas in an attempt to interview witnesses) were "undertaken by . . . prosecutor[s] in preparing for . . . trial" and "occur[red] in the course of [their] role as an advocate for the State," *Buckley*, 509 U.S. at 273, all of these claims against the Individual Defendants are barred by absolute immunity.

### C.     Qualified Immunity

In the alternative, the Plaintiffs' claims against the Individual Defendants are barred by qualified immunity because they have not adequately alleged the violation of their First Amendment rights, clearly established or otherwise. Although the Plaintiffs contend that the First Amendment establishes a "right not to speak with an investigating prosecutor," Complaint at 3, this is incorrect. As the Fifth Circuit recently explained, the First Amendment "right not to speak has been limited to the context of government-compelled speech with respect to a particular political or ideological message." *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017) (quotation omitted); *see also id.* ("Plaintiffs cite no authority to support the application of the First Amendment protection against government-compelled ideological or political speech into the context of police interviews . . . .").

In *Alexander*, which involved a plaintiff's claim that he was arrested for exercising his purported First Amendment right not to answer a police officer's questions, the Fifth Circuit affirmed the district court's dismissal for failure to state a claim because "it was not clearly established that an individual has a First Amendment right to refuse to answer an officer's questions during a *Terry* stop." *See id.* (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1244 (10th Cir. 2011)). Likewise, there is no clearly established law holding that a material witness to a

crime has a First Amendment right to refuse to speak with prosecutors.[41] And because the Plaintiffs' alleged activities are not actually protected by the First Amendment, their retaliation claims fail as well. *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) ("[T]o establish a First Amendment retaliation claim . . . , [plaintiffs] must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct.").[42]

### D.      Failure to State a Claim

For the reasons explained above, the Plaintiffs have failed to adequately allege any violation of their First Amendment rights. Their claims against the OPDA must therefore be dismissed.

### V.      Of the seven Fourteenth Amendment substantive-due-process claims, four are barred by prescription; all are barred by absolute immunity (or, in the alternative, by qualified immunity); and all have failed to adequately state a claim.

The Plaintiffs allege that "[e]ach of Defendant Cannizzaro's official policies, practices and customs described [in the Complaint], separately and in combination, shocks the conscience and violated the Fourteenth Amendment rights of all Plaintiffs." Complaint at ¶ 432. A plaintiff asserting a Fourteenth Amendment substantive-due-process claim must show that the defendant's actions (1) caused an injury; (2) "were grossly disproportionate to the need for action under the

---

[41] In fact, the undersigned is unaware of *any* authority suggesting such a right.

[42] The Defendants further emphasize once again that, in fact, none of the Plaintiffs in this case were arrested or imprisoned merely because they did not wish to speak privately with prosecutors. Rather, as explicitly contemplated by the material-witness statute, warrants for Ms. Singleton, Mr. Mitchell, Ms. Baham, and Mr. Roe were issued because their actions provided a compelling basis to believe that "it may become impracticable to secure the[ir] presence [at trial] by subpoena." LA. REV. STAT. § 15:257.

circumstances"; and (3) "were inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998). "The burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 868 (5th Cir. 2012) (quotation omitted); *see also Jordan v. Fisher*, 823 F.3d 805, 812–13 (5th Cir. 2016) ("The Court's test for the substantive component of the due process clause prohibits only the most egregious official conduct, and it will rarely come into play.") (quotation omitted); *Kinzie v. Dallas Cty. Hosp. Dist.*, 239 F. Supp. 2d 618, 630 ("[C]ourts have shown great reluctance to find that the behavior of a state official 'shocks the conscience.'").

As a threshold matter, it is not clear whether this claim is asserted against the Individual Defendants. Although the caption states that it is "Against all Defendants," the language refers only to Mr. Cannizzaro's "official policies, practices and customs" and does not refer to any specific alleged acts by any specific Defendants. *See* Complaint at ¶ 432. Assuming the Plaintiffs intended to assert Fourteenth Amendment substantive-due-process claims against the Individual Defendants, they have plainly failed.

## A.     Prescription

First, as discussed above in Sections II.A and III.A, the claims asserted by Ms. Singleton, Mr. Mitchell, Mr. Baham, and Ms. Doe are all barred by prescription. The only Plaintiffs whose claims do not appear to be prescribed are Ms. Bailey and Ms. LaCroix—who were never arrested, detained, or even privately questioned by prosecutors, despite failing to comply with allegedly "fraudulent" subpoenas—and Mr. Roe.

### B.      Absolute Immunity

Second, for the same reasons explained above in Sections II.B and III.B, any claim arising out of the Individual Defendants' actions in obtaining material-witness warrants from a court, or sending allegedly improper subpoenas, is barred by absolute prosecutorial immunity—regardless of the constitutional theory under which it is asserted.

### C.      Qualified Immunity

Third, assuming any part of any of the claims against the Individual Defendants is not barred by absolute immunity, it is barred by qualified immunity because the Plaintiffs have not adequately alleged the violation of any constitutional right—clearly established or otherwise. Even accepting the Plaintiffs' allegations at face value, the Defendants' actions were neither "grossly disproportionate to the need for action under the circumstances" nor "inspired by malice rather than merely careless or unwise excess of zeal." *Petta*, 143 F.3d at 902. Indeed, the Plaintiffs essentially accuse the Defendants of excessive zeal in securing witness testimony to successfully prosecute serious crimes—murders, child molestation, child pornography, aggravated assault with a firearm, and domestic violence. The Plaintiffs do not suggest that the Defendants abused their office for some ulterior or personal motive, such as profit or vengeance. Thus, even assuming for the sake of argument that one or more Defendants sent subpoenas without proper court authorization or obtained material-witness warrants that were defective in some respect, this would not amount to an "abuse of official power that shocks the conscience" within the meaning of the Fourteenth Amendment. *Petta*, 143 F.3d at 902.

Finally, even assuming for the sake of argument that the Fourteenth Amendment rights of one or more Plaintiffs was violated, such rights were not clearly established. As the Fifth Circuit has explained, "[m]any cases that have applied the [shocks-the-conscience] standard have involved the use of extreme force by police officers or other state actors." *Doe*, 675 F.3d at 867–68

(collecting cases). By contrast, the undersigned is unaware of any caselaw holding that sending improper subpoenas to witnesses or improperly obtaining material-witness arrest warrants would violate the witnesses' Fourteenth Amendment substantive-due-process rights. *See, e.g.*, *Rivera v. Rhode Island*, 402 F.3d 27, 38 (1st Cir. 2005) ("[T]here may be an extreme set of facts involving such deliberate and malevolent actions by police against witnesses as to shock the conscience and implicate a constitutional violation. Those await another day."). Absent such precedent, the Individual Defendants are, at a minimum, entitled to qualified immunity.

### D.      Failure to State a Claim

For the reasons explained above, the Plaintiffs have to adequately allege a substantive-due-process claim under the Fourteenth Amendment. Their claims against the OPDA must therefore be dismissed.

### VI.      Of the seven state-law abuse-of-process claims, four are barred by prescription; all are barred by absolute immunity; and all have failed to adequately state a claim.

The Plaintiffs allege that the Individual Defendants "willfully and maliciously abused the material witness statute for a purpose for which it was not designed: to coerce private, out-of-court meetings with prosecutors and to coerce testimony consistent with the prosecution's theory of the case." Complaint at ¶ 441. "[T]he essential elements of an abuse of process claim" are "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding." *Waguespack, Seago and Carmichael (A PLC) v. Lincoln*, 768 So. 2d 287, 290–91 (La. App. 1st Cir. 2000).

### A.      Prescription

Because the tort of abuse of process is subject to a prescriptive period of one year, *see No Drama, LLC v. Caluda*, 177 So. 3d 747, 751–52 (La. App. 5th Cir. 2015), the claims by Ms. Singleton, Mr. Mitchell, Ms. Baham, and Ms. Doe are prescribed.

## B.      Absolute Immunity

Further, with respect to state-law tort claims, the Louisiana Supreme Court has held that "prosecutors are entitled to absolute immunity for conduct within the course and scope of their prosecutorial functions," *Knapper v. Connick*, 681 So. 2d 944, 950 (La. 1996); *see also Muhammad v. State*, No. 99-cv-3742, 2000 WL 1568210, at *4 & n.5 (E.D. La. Oct. 18, 2000) (holding that abuse-of-process claim was barred by absolute prosecutorial immunity). The court further noted in *Knapper* that state-law immunity rules have been generally been interpreted in harmony with federal immunity principles. *See Knapper*, 681 So. 2d at 947. Accordingly, for the same reasons explained above in Sections II.B and III.B concerning the Plaintiffs' constitutional claims, the Individual Defendants are absolutely immune from suit under state tort law.

## C.      Failure to State a Claim

The abuse-of-process claims also fail to adequately allege the required elements. The Plaintiffs allege that certain Defendants obtained material-witness warrants illegally and for an improper purpose ("to coerce private, out-of-court meetings with prosecutors and to coerce testimony consistent with the prosecution's theory of the case"), and that other Defendants "circumvent[ed] the requirements of [Code of Criminal Procedure] Article 66" by sending subpoenas that were not properly authorized by a court. *See* Complaint at ¶¶ 342–343. However, "[t]he tort of abuse of process involves the malicious use of a legal process *after* the process has been instituted." *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (La. App. 5th Cir. 1990). Thus, alleging that the Individual Defendants acted wrongfully in ***obtaining*** material-witness warrants does not state a valid cause of action. Further, abuse of process requires "malicious perversion of a ***legally issued process*** whereby a result not lawfully or properly obtainable under it is attempted to be secured." *Succession of Cutrer v. Curtis*, 341 So. 2d 1209, 1214 (La. App. 1st

Cir. 1976) (emphasis added). Because the Plaintiffs allege that the material-witness warrants and subpoenas were issued *illegally*, they have not stated a valid cause of action.

**VII.   Of the seven state-law fraud claims, four are barred by prescription; all are barred by absolute immunity; and all have failed to adequately state a claim.**

The Plaintiffs allege that the Defendants committed "fraud" by sending them subpoenas that appeared to be lawfully authorized but were not. "Louisiana jurisprudence indicates that the following are the elements of the tort of fraud: 1. a misrepresentation of material fact; 2. made with the intent to deceive; 3. reasonable or justifiable reliance by the plaintiff; and 4. resulting injury. The intent to deceive is a specific intent." *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 442 (5th Cir. 2011); *see also Chateau Homes by RJM, Inc. v. Aucoin*, 97 So. 3d 398, 404 (La. App. 5th Cir. 2012) ("[T]he elements of the tort of fraud are a misrepresentation of material fact made with the intent to deceive when there was reasonable or justifiable reliance by the plaintiff and resulting injury.").

**A.     Prescription**

Because the tort of fraud is subject to a prescriptive period of one year, *see Cerullo v. Heisser*, 213 So. 3d 1232, 1236 (La. App. 5th Cir. 2017), the claims by Ms. Singleton, Mr. Mitchell, Ms. Baham, and Ms. Doe are prescribed.

**B.     Absolute Immunity**

Additionally, as explained above in Section VI.B, these state-law tort claims against the Individual Defendants are barred by absolute prosecutorial immunity. *See Knapper*, 681 So. 2d at 950.

**C.     Failure to State a Claim**

The fraud claims likewise fail to adequately allege the required elements. The Plaintiffs argue that the Defendants mispresented to them that the "subpoenas" sent to them "were real, had

been obtained legitimately, and had to be honored by certain Plaintiffs under threat of fines and incarceration." Complaint at ¶ 348. The Plaintiffs further allege that they "reasonably and justifiably relied on the authenticity, truthfulness, and lawfulness of the fraudulent subpoenas," *id.* at ¶ 351, but this is false. Of the five Plaintiffs who allegedly received such subpoenas (Ms. Singleton, Ms. Baham, Ms. Doe, Ms. Bailey, and Ms. LaCroix), none of them actually appeared at the DA's office as directed. *See id.* at ¶¶ 168–171, 237–238, 254–256, 269–270, 276, 287–288. Thus, even assuming for the sake of argument that the subpoenas included statements that were intentionally deceptive, the Plaintiffs sustained no injuries in reliance on the truthfulness of such statements.

**VIII.  The Fourteenth Amendment claim by Ms. Baham based on the alleged denial of a prompt court appearance is prescribed; is barred by absolute immunity (or, in the alternative, by qualified immunity); and has failed to adequately state a claim.**

Ms. Baham alleges that Mr. Napoli violated her Fourteenth Amendment rights by "causing [her] to be jailed without a prompt court appearance after [her] arrest on a material witness warrant." Complaint at ¶¶ 429–430.

**A.  Prescription**

For the same reasons explained above in Section II.A, this claim is prescribed because Ms. Baham's detention occurred more than one year before suit was filed.

**B.  Absolute Immunity**

Additionally, to the extent that Ms. Baham challenges Mr. Napoli's actions in obtaining the warrant upon which she was arrested (including his alleged request that she be held without bond)—or other actions taken by Mr. Napoli as an advocate—her claim against him is barred by absolute prosecutorial immunity.

### C.      Qualified Immunity

In the alternative, Ms. Baham's claim against Mr. Napoli is barred by qualified immunity because she has not adequately alleged that he violated her constitutional rights, clearly established or otherwise. Beyond her initial arrest, Ms. Baham does not allege any facts showing that Mr. Napoli is personally responsible for violating her Fourteenth Amendment rights by causing her to be detained without a prompt court appearance. Ms. Baham alleges that she was held in jail for eight days before being brought to court for the first time, *see* Complaint at ¶¶ 276–277, but she does not allege that Mr. Napoli took any actions to delay or prevent her from being brought to court. Ms. Baham's unsupported contention that "[o]n information and belief, [her] prolonged detention was the result of Defendant Napoli's conduct," is insufficient to state a plausible claim against Mr. Napoli. *See, e.g.*, *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012) ("Menard says the allegation is made on 'information and belief'; but if he had any facts to support this assertion, they should have been set forth. 'Information and belief' does not mean pure speculation."). Thus, even assuming for the sake of argument that the delay in being brought before a judge could constitute a violation of the Fourteenth Amendment, Ms. Baham does not adequately allege that it was caused by Mr. Napoli.

And finally, even if Ms. Baham could show that Mr. Napoli somehow were responsible for some action that is not covered by absolute immunity, she cannot show any violation of her clearly established rights. "[T]he existence of 'clearly established' law that would guide prosecutors and law enforcement officers to act reasonably in the context of executing a material witness warrant, as opposed to a 'criminal suspect' warrant, is slim." *Simon v. City of New York*, 247 F. Supp. 3d 285, 292 (E.D.N.Y. 2017). Indeed, as recently as 2011, four Justices of the U.S. Supreme Court opined that material-witness-arrest warrants "might not [be] warrants within the meaning of the Fourth Amendment's Warrant Clause," and that such warrants "might [instead] be governed by

the Fourth Amendment's separate reasonableness requirements for seizures of the person."

*Ashcroft v. al-Kidd*, 563 U.S. 731, 745 (Kennedy, J., concurring). The fact that the Supreme Court

has not even clearly established which constitutional provisions govern the use of material-witness

warrants only underscores the uncertainty and lack of clear guidance. In any event, because the

law does not clearly establish when a person arrested on a material-witness warrant must be

brought before a judge,[43] Mr. Napoli is entitled to qualified immunity.

### D.      Failure to State a Claim

For the reasons explained above, Ms. Baham has not adequately alleged any violation of

her Fourteenth Amendment rights. Her claims against the OPDA must therefore be dismissed.

## IX.     The claims based on supervisory liability and failure to intervene fail because the Plaintiffs have not adequately alleged any underlying actionable violation of their rights.

The Plaintiffs allege that Mr. Cannizzaro, Mr. Martin, and Mr. Pipes are liable for the

specific alleged violations of the First, Fourth, and Fourteenth Amendments described above

because they failed to adequately train, supervise, and discipline the attorneys and agents under

his supervision. Complaint at ¶ 434. The Plaintiffs further allege that Mr. Martin "directly

instructed" the other Individual Defendants to engage in the conduct that allegedly violated the

Plaintiffs' rights. However, because the Plaintiffs have not adequately alleged any actionable

violation of their rights, these supervisory-liability claims necessarily fail.

The Plaintiffs further allege that each of the Individual Defendants is liable for the

wrongdoing of each of the others because they "knew or should have known that they and others

---

[43] Because a judge has already determined that the witness is subject to detention pursuant to LA. REV. STAT. § 15:257, issued a warrant, and set (or specifically denied) bail, and because a person detained on a material-witness warrant is not entitled to appointed counsel, the purpose of a prompt "initial appearance" is not immediately apparent.

within the District Attorney's Office were violating Plaintiffs' constitutional rights" yet acted with deliberate indifference in failing to intervene. *Id.* at ¶¶ 437–438. Again, in the absence of any underlying actionable constitutional violations, such secondary claims necessarily fail. Further, such conclusory allegations lack the factual specificity necessary to plausibly allege that any of the Individual Defendants acted with deliberate indifference with respect to alleged wrongdoing by others within the DA's office.[44]

## X.   Silence Is Violence has failed to adequately allege any actionable violation of its own rights or the rights of its "clients."

SIV alleges that various policies and practices have violated "the rights of Silence Is Violence and its clients" under the First, Fourth, and Fourteenth Amendments. *See* Complaint at ¶¶ 415, 419, 423, 425, 429, 432. However, the only client mentioned by name in the Complaint is Marc Mitchell, *see id.* at ¶ 298, and his claims fail for all the reasons explained above. Assuming for the sake of argument that SIV would have standing to seek redress for alleged harm to its clients,[45] SIV has failed to adequately allege facts showing that the rights of any specific clients were violated. Nor has SIV adequately alleged facts showing that its own rights were violated.

### A.   First Amendment Claim

SIV alleges that Mr. Cannizzaro violated its First Amendment rights "by threatening its Executive Director with prosecution for her public statements on behalf of the organization."

---

[44] The only claim asserted against Tiffany Tucker is a claim for failure to intervene, based on her alleged failure to "t[ake] any action to prevent Ms. Singleton's arrest." *See* Complaint at ¶¶ 209–213, 437–440. As the Plaintiffs admit, however, Ms. Singleton was arrested pursuant to a material-witness warrant that was issued by the Orleans Parish Criminal District Court. *See id.* at ¶¶ 203, 212. Any suggestion that Ms. Tucker had a duty to prevent a police officer from executing a court-issued arrest warrant is plainly contrary to law and cannot support a claim under any constitutional theory. Furthermore, for the same reasons explained above, the claim Ms. Tucker is barred by prescription, absolute immunity, and qualified immunity.

[45] The Defendants do not concede that SIV has standing.

Complaint at ¶ 427. Specifically, SIV alleges that Mr. Cannizzaro informed its director, Tamara Jackson, that she could be subject to criminal prosecution if she encouraged witnesses not to assist or communicate with prosecutors. *See id.* at ¶¶ 173–175. However, SIV cannot show that Mr. Cannizzaro's alleged threats statement was incorrect or made in retaliation for SIV's constitutionally protected activity, or that it "suffer[ed] an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Keenan*, 290 F.3d at 258.

The crime of obstruction of justice, as codified in Louisiana law, includes "[i]nducing or persuading or attempting to induce or persuade any person to . . . [t]estify falsely or, without right or privilege to do so, withhold any testimony" or "[w]ithout the right or privilege to do so, absent himself from such proceedings despite having received service of a subpoena." LA. REV. STAT. § 14:130.1(A)(4). Encouraging a witness who has received a subpoena pursuant to Code of Criminal Procedure article 66 from communicating with prosecutors as directed by the subpoena would clearly constitute obstruction of justice. Similarly, encouraging a witness to generally avoid all contact and communications with the DA's office for the purpose of evading service of a subpoena would at least arguably constitute obstruction of justice. To the extent that SIV's purported "core political speech" involves unlawful obstruction of justice, *see* Complaint at ¶ 427, it is not constitutionally protected, and it would not be improper for Mr. Cannizzaro to inform SIV of this.

Further, even assuming that Mr. Cannizzaro's alleged threats could be construed as being motivated in some part by SIV's constitutionally protected speech, SIV has suffered no resulting "injury" as required to support a retaliation claim. *See Keenan*, 290 F.3d at 258. SIV does not allege that any of its members were ever arrested, prosecuted, or subjected to personal abuse or ongoing harassment by police or prosecutors. As a matter of law, two warnings from Mr.

43

Cannizzaro about the law over a three-year period that did not result in any adverse action being taken against SIV do not give rise to a First Amendment retaliation claim. *See, e.g.*, *Osborne v. Grussing*, 477 F.3d 1002, 1005 n.2 (8th Cir. 2007) (the "verbal tongue-lashings" given to the plaintiffs by county officials would not constitute an injury sufficient to support a First Amendment retaliation claim). Certainly Mr. Cannizzaro's alleged actions did not violate "clearly established law," such that "every reasonable official would have understood that what he is doing violates" SIV's rights. *Ashcroft*, 563 U.S. at 741 (quotation omitted).

### B.    Abuse-of-Process Claim

SIV also asserts a claim for abuse of process, alleging that it "was injured because it had to redirect its resources to remedy and prevent harms to its clients caused by the unlawful acts of the District Attorney's Office." Complaint at ¶ 444. However, because SIV does not attempt to connect specific, concrete actions by specific Defendants with specific injuries that it allegedly suffered, SIV cannot satisfy the basic tort-law requirement of causation.[46] Further, alleging that SIV chose to "redirect its resources to remedy and prevent harms to its clients" fails, as a matter of law, to allege a harm that was directly caused by the Defendants. Finally, for the reasons explained above in Section VI.B, SIV's state-law tort claims against the Individual Defendants are barred by absolute prosecutorial immunity.

---

[46] *See Hall v. Lilly*, 666 So. 2d 1328, 1332 (La. App. 2nd Cir. 1996) ("Abuse of process is a cause of action originating from the common law and recognized in our jurisprudence as a compensable tort under LSA—C.C. Art. 2315."); LA. CIV. CODE art. 2315(A) ("Every act whatever of man ***that causes damages to another*** obliges him by whose fault it happened to repair it.") (emphasis added); *Moss v. Town of Rayville*, 181 So. 3d 809, 812 (La. App. 2nd Cir. 2015) ("In a suit for damages, it is the plaintiff's burden to prove the damage he suffered as the result of the defendant's fault.").

## CONCLUSION

For the reasons explained above, the Defendants respectfully request that the claims against

them be dismissed.

Respectfully submitted,

_/s/ Thomas J. Barbera_
Thomas J. Barbera, 18719
LAW OFFICE OF THOMAS J. BARBERA
1010 Common Street, Suite 3000
New Orleans, Louisiana 70119
Telephone:  (504) 931-0662
Facsimile:  (504) 581-7083

Robert L. Freeman, Jr., 21596
OFFICE OF THE DISTRICT ATTORNEY,
PARISH OF ORLEANS
619 South White Street
New Orleans, Louisiana 70119
Telephone:  (504) 822-2414, ext. 2877
Facsimile:  (504) 827-6393

*Counsel for Leon Cannizzaro (in his*
*official capacity as Orleans Parish*
*District Attorney)*

_/s/ Matthew J. Paul_
Richard C. Stanley, 8487
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
STANLEY, REUTER, ROSS, THORNTON
 & ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069

*Counsel for Leon Cannizzaro (in his*
*individual capacity); Graymond Martin;*
*David Pipes; Iain Dover; Jason Napoli;*
*Arthur Mitchell; Tiffany Tucker; Michael*
*Trummel; Matthew Hamilton; Inga*
*Petrovich; Laura Rodrigue; and Sarah*
*Dawkins*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February, 2018, a copy of the foregoing was filed

electronically with the Clerk of Court using the CM/ECF system, and that service will be provided

through the CM/ECF system, as well as by U.S. Mail for any non-CM/ECF participant.

_/s/ Matthew J. Paul_