UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENATA SINGLETON; MARC MITCHELL; LAZONIA BAHAM; JANE DOE; TIFFANY LACROIX; FAYONA BAILEY; JOHN ROE; and SILENCE IS VIOLENCE,<br><br>    *Plaintiffs*,<br><br>v.<br><br>LEON CANNIZZARO, in his official capacity as District Attorney of Orleans Parish and in his individual capacity; GRAYMOND MARTIN; DAVID PIPES; IAIN DOVER; JASON NAPOLI; ARTHUR MITCHELL; TIFFANY TUCKER; MICHAEL TRUMMEL; MATTHEW HAMILTON; INGA PETROVICH; LAURA RODRIGUE; SARAH DAWKINS; and JOHN DOE, in their individual capacities,<br><br>    *Defendants*. | Civil Action No. 17-10721<br><br>Section H<br>Judge Jane Triche Milazzo<br><br>Division 1<br>Magistrate Judge Janis van Meerveld |

## **OPPOSITION TO MOTIONS FOR LEAVE TO FILE AMICUS BRIEFS**

The Defendants respectfully submit the following memorandum in opposition to two motions seeking leave to file amicus briefs opposing the Defendants' motion to dismiss, Doc. No. 63, one filed on behalf of two legal "centers" at the NYU School of Law; a libertarian think tank; and five individual law professors at various law schools (collectively, the "Law School Movants"), Doc. No. 84, and the other filed on behalf of three organizations that work with victims of sexual assault and domestic violence (collectively, the "Organizational Movants"), Doc. No. 85.

The Defendants' motion to dismiss presents the straightforward question of whether the Plaintiffs' allegations, accepted as true, state cognizable claims for relief that are not prescribed or

1

barred by immunity. The movants request leave to file a total of 35 pages of briefing that provides little or no assistance to the Court in answering this question. Instead, the movants seek to divert the Court's attention by "responding" to arguments that the Defendants have not actually made (for example, whether the alleged conduct is justified by a "compelling government interest," and whether absolute immunity should be "expanded" to investigatory and administrative conduct) and discussing issues that are entirely irrelevant to the issues properly before the Court (for example, whether binding Supreme Court precedent concerning absolute immunity was correctly decided, and whether "the goals of victims" are "aligned with those of the criminal justice system"). The parties and the issues in this litigation are already adequately represented, and none of the proposed amici have any special interest in the case that would justify their participation. Because their participation would only increase the burdens of litigation without any corresponding benefit to the Court, their motions for leave should be denied.

## LAW AND ARGUMENT

"No statute, rule, or controlling case defines a federal district court's power to grant or deny leave to file an *amicus* brief." *Sierra Club v. Fed. Emergency Mgmt. Agency*, No. 07-cv-608, 2007 WL 3472851, at *1 (S.D. Tex. Nov. 14, 2007) (Rosenthal, J.).[1] It is clear that "[a] federal district court possesses the inherent authority to appoint an amicus curiae to assist the court in its proceedings." *United States v. Louisiana*, 751 F. Supp. 608, 620 (E.D. La. 1990). This authority should be exercised carefully, however, because "amicus curiae briefs can be a real burden on the court system" for multiple reasons. *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000).

---

[1] As one district court noted, "such participation is uncommon." *McCarthy v. Fuller*, No. 08-cv-994, 2012 WL 1067863, at *2 (S.D. Ind. Mar. 29, 2012)

> [J]udges have heavy caseloads and therefore need to minimize extraneous reading; amicus briefs, often solicited by parties, may be used to make an end run around court-imposed limitations on the length of parties' briefs; the time and other resources required for the preparation and study of, and response to, amicus briefs drive up the cost of litigation; and the filing of an amicus brief is often an attempt to inject interest group politics into the federal appeals process.

*Voices for Choices v. Illinois Bell Telephone Co.*, 339 F.3d 542, 544 (7th Cir. 2003).[2] Accordingly, "a district court lacking joint consent of the parties should go slow in accepting, an even slower in inviting, an amicus brief unless, as a party, although short of a right to intervene, the amicus has a special interest that justifies his having a say, or unless the court feels that existing counsel may need supplementing assistance." *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970); *see also Abu-Jamal v. Horn*, No. 99-cv-5089, 2000 WL 1100784, at *3 (E.D. Pa. Aug. 7, 2000) ("[D]istrict courts have denied leave to file an amicus brief when it is unnecessary and the parties are adequately represented.").

I.   **None of the proposed amici has any specific, concrete interest in the outcome of this case that would justify participation in this litigation.**

The Law School Movants describe themselves as "leading thinkers and researchers on the criminal justice system" who have an interest in this case "because its outcome will affect the incentives of prosecutors to comply with the law" and "because they believe that the interpretation of 42 U.S.C. § 1983 should reflect the purpose and history of the statute's enactment." Doc. No. 84-3 at 1. The Organizational Movants contend that "[t]his case bears directly on [their] work" with "victims and witnesses of sexual assault and domestic violence," and that they have a "distinct perspective on the First Amendment rights implicated by the alleged unlawful conduct and on the

---

[2] Federal district courts have often looked to Federal Rule of Appellate Procedure 29, which governs appellate amicus briefs, for guidance. *See Sierra Club*, 2007 WL 3472851, at *1. Yet "[a] district court must keep in mind the differences between the trial and appellate court forums in determining whether it is appropriate to allow an *amicus curiae* to participate." *Id.*; *see also id.* ("An *amicus* may be useful at the appellate level but not in the district court.").

3

likely impact of that conduct on crime victims and witnesses." Doc. No. 74 at 2. However, such generic interests in the subject matter of a case provide very little justification for allowing the movants to participate as amici. *See, e.g.*, *Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 555 (E.D. Pa. 1999) ("[T]he Trust is merely a trade association with a generalized interest in all cases related to school district liability and insurance. This is not the kind of special interest that warrants amicus status.").

Even interests that are substantially more direct than those of the movants here have been found insufficient to justify leave to participate as amici. For example, in *Alabama v. United States*, No. 16-cv-29, 2016 WL 7010948 (N.D. Ala. Apr. 22, 2016), Alabama brought an action seeking a declaration that the federal government has a duty to consult with states regarding placement of refugees before they are placed. The United States moved to dismiss on the ground that Alabama had failed to state a claim. *Id.* at *1. Various organizations (including the Southern Poverty Law Center, the ACLU, and the National Immigration Law Center) moved for leave to file an amicus brief in support of the government's motion to dismiss, but the district court denied leave. *Id.* at *1–2. Although the district court recognized that "three of the *amici* [were] currently representing refugee resettlement organizations in other federal court cases involving efforts to bar refugee resettlements," it concluded that "the interest of the *amici* concerning any impact this litigation may have on refugees is not sufficiently direct to justify granting the motion in light of the issues presented in this litigation." *Id.* at *3–4. The district court further noted that "the issues in the federal defendants' motion to dismiss are narrow and discrete" and "may result in dismissal of [the] action." *Id.* at *4.[3]

---

[3] *See also Donovan v. Gillmor*, 535 F. Supp. 154, 159 (N.D. Ohio 1982), a case involving FLSA claims by migrant workers on a pickle farm: "The Court will note that [proposed amicus Advocates for Basic Legal Equality] does currently represent clients who have filed lawsuits pursuant to the

4

**II.     The participation of amici is unnecessary because the parties and issues are already adequately represented.**

Perhaps even more importantly, there is no reason to believe that the Plaintiffs will be inadequately represented, or the issues inadequately addressed, by the Plaintiffs' counsel. The Plaintiffs are represented by five lawyers backed by the resources of the ACLU and the Civil Rights Corps. Moreover, this is not a case involving a purely self-interested plaintiff who is either unwilling or unable to address broader social ramifications of the issues—to the contrary, the Plaintiffs' counsel have made clear (both in their pleadings and in communications to the public) that they intend to use this case as a vehicle to seek broad structural change of the DA's office and of the criminal-justice system generally. Under the circumstances, it is hard to see what is gained by allowing still more advocacy groups with essentially identical views on the issues raised by the Defendants' motion to participate in the litigation. *See, e.g.*, *Sierra Club*, 2007 WL 3472851, at *3 ("The parties are sophisticated and ably represented by counsel. It is unclear what new perspective or information [the Cypress Creek Flood Control Coalition] could provide. CCFCC has the same interests and policy objectives as [plaintiff] Sierra Club."); *Abu-Jamal*, 2000 WL 1100784, at *4 ("[T]he principal legal claims arising out of various events appear to have been comprehensively treated by petitioner and his counsel," and "no amici suggest in their petition that petitioner's legal

---

FLSA, in addition to two suits concerning FLSA claims in which minimum wages for migrants working in pickles are in dispute. However, the Court does not find these circumstances to rise to the level of 'special interest' that would justify certification of ABLE to the status of amicus curiae. More importantly, the Court is of the opinion that counsel for both parties are more than adequately representing the interests of their clients and that counsel do not need supplementing assistance."

5

analysis is inadequate.").[4] This is particularly true when the proposed amici use their opportunity for briefing to explicitly bolster and even quote the Plaintiffs' arguments.[5]

### III. The proposed amicus briefs contain minimal analysis of the alleged facts and the relevant legal issues and are therefore of little help to the Court.

The fear that the proposed amici will increase the burdens of litigation without any corresponding benefit is borne out by examining their proposed briefs, which contain very little content that is relevant to the legal issues before the Court. The Organizational Movants' proposed brief argues two overall points: (1) that "the First Amendment right not to speak is well established," and (2) that "the challenged policies are self-defeating and thus do not advance a compelling government interest." Doc. No. 85-2 at 2. The first point was argued by the Plaintiffs in their opposition, *see* Doc. No. 67 at 41–44, and the Organizational Movants add little new material on the issue.[6]

The second point is entirely irrelevant to the issues presented in the Defendants' motion because that motion does not argue that the Plaintiffs' constitutional rights are overcome by a "compelling government interest." Rather, the Defendants' motion explains that "there is no

---

[4] *See also Maples v. Thomas*, No. 03-cv-2399, 2013 WL 5350669, at *3 (N.D. Ala. Sep. 23, 2013) ("[E]ach amicus brief relies on the ability of amici to provide a unique perspective or specific information that can assist the court beyond what the parties can provide. After review, however, the court agrees with respondents that the parties have already addressed the issues presented in the proposed briefs. Therefore, the court finds that consideration of the proposed briefs would not be helpful.").

[5] *See* Doc. No. 85-2 at 6 (arguing that "Plaintiffs have sufficiently alleged violation of their First Amendment rights to survive dismissal of those claims" and that the Court "should allow Plaintiffs to make [their] case); *see also id.* at 10 ("As the Plaintiffs allege, 'The right to freely decline voluntary questioning from a government official is a basic constitutional right.'").

[6] The Organizational Movants primarily rely on the same three authorities as the Plaintiffs: *Wooley v. Maynard*, 430 U.S. 705 (1977); *Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781 (1988); and *W.V. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943). *See* Doc. No. 67 at 42–44; Doc. No. 85-2 at 7–10.

clearly established law holding that a material witness to a crime has a First Amendment right to refuse to speak with prosecutors," and that "the Plaintiffs' alleged activities are not actually protected by the First Amendment." Doc. No. 63 at 37. Likewise, the Defendants' reply explains that "[t]he Fifth Circuit [in *Alexander*] did not hold that the plaintiffs' First Amendment rights were overcome by an important government interest—rather, it did not find any First Amendment right in the first place." Doc. No. 88 at 18. The Organizational Movants' discussion of the wisdom and efficacy of the alleged tactics is thus an improper attempt to inject new issues into the litigation that are not fairly raised by the Defendants' motion. *See, e.g.*, *United States v. Bd. of County Comm'rs.*, 184 F. Supp. 3d 1097, 1117 (D.N.M. 2015) (denying leave to proposed amicus and noting that "the entirety of PLF's proposed amicus brief addresses a topic not presently before this Court.").

The Law School Movants' proposed brief contains even less analysis of the relevant legal issues. Indeed, it is striking that a 22-page brief on absolute immunity by purported authorities in the field presents essentially no legal analysis supporting its central assumption—that the Defendants' alleged conduct is merely "administrative" or "investigative," as opposed to conduct that is "intimately associated with the judicial phase of the criminal process." *See* Doc. No. 84-3 at 5 (quoting *Imbler*, 424 U.S. at 430). The closest thing to such an analysis is a string-cite to four cases, with parenthetical descriptions but no application to the alleged facts of this case. *See id.* at 12.

Instead, the bulk of the Law School Movants' proposed brief consists of various policy arguments against "extending" absolute immunity to the conduct alleged by the Plaintiffs. *See* Doc. No. 84-3 at 13–23. They argue that the Defendants "have not even attempted to carry" the "heavy burden" of justifying an expansion of absolute immunity, *id.* at 11, which is correct. The

Defendants have explained in their briefing that application of absolute immunity to the Plaintiffs' claims is straightforward based on existing federal law, and they have not argued for an extension of the doctrine to cover "investigative" or "administrative" conduct that is not "intimately associated with the judicial phase of the criminal process." Accordingly, the Law School Movants' extended discussion, which goes far afield into such topics as attorney discipline for *Brady* violations, *see id.* at 19–20, is not helpful.

The proposed amici also demonstrate at various points their unfamiliarity with the facts upon which the Court must decide the Defendants' motion. The Law School Movants argue that absolute immunity does not and should not extend to "pre-litigation investigative or administrative conduct," Doc. No. 84-3 at 11, but none of the wrongdoing alleged in this case could be described in any way as "pre-litigation." Rather, it is undisputed that all of the Plaintiffs were material witnesses in active criminal cases that had already been instituted and that were proceeding toward trial.[7]

Additionally, the Organizational Movants suggest that this case involves witnesses who were "compelled to make *false* factual statements" and "pressure[d] to lie." Doc. No. 85-2 at 5. This grave and defamatory accusation against the Defendants is not supported even by the Plaintiffs' allegations. Of the eight Plaintiffs, only two (Marc Mitchell and Lazonia Baham) allege anything resembling this accusation, and their allegations—which are based on their own subjective impressions—suggest that prosecutors did nothing more than challenge their version of events or present them with additional information. *See* Complaint (Doc. No. 52) at ¶¶ 234–238, 253–254, 263–267, 279–282. Mr. Mitchell alleges that he was "under the impression" that one

---

[7] As explained in the Defendants' reply, all of the alleged wrongful conduct occurred either shortly before, or after, the initial trial settings in the underlying criminal cases. *See* Doc. No. 88 at 6 & n.5.

8

prosecutor "wanted him to testify using specific words that did not match Mr. Mitchell's recollection of events." Complaint at ¶ 238. Ms. Baham alleges that another prosecutor "seemed to want her to testify to something that she knew was not true." Complaint at ¶ 281. But these Plaintiffs do not allege that prosecutors ever asked or demanded that they give false testimony, or that the alleged harm they suffered was inflicted because they would not do so.[8]

IV.   **The proposed amicus briefs also contain material that, if anything, will only confuse the issues and impede an efficient, correct resolution of the Defendants' motion.**

The proposed amici also should not be allowed to participate in this litigation because they raise arguments that can only serve to distract the Court and obfuscate the relevant issues. For example, the Law School Movants dedicate a significant portion of their proposed brief to challenging the very concept of absolute prosecutorial immunity. They argue that "[a]bsolute prosecutorial immunity is not found in the text or history of Section 1983," and they suggest that the Supreme Court's landmark opinion establishing qualified immunity for prosecutors, *Imbler v. Pachtman*, 424 U.S. 409 (1976), was based on a "questionable analysis" that was contrary to "the clear text and history of Section 1983." Doc. No. 84-3 at 5. They further suggest that absolute prosecutorial immunity is "anathema to the very purpose of Section 1983." *Id.* at 8. Lest there be any doubt that they are in fact arguing to this Court that a controlling opinion of the U.S. Supreme Court was wrongly decided, they helpfully note that "[s]everal commentators have argued that *Imbler* was wrongly decided." *Id.* at 10 n.3. Although this commentary may be appropriate in a

---

[8] Specifically, the Plaintiffs do not allege that prosecutors decided to obtain a material-witness warrant for Mr. Mitchell because he would not testify in the way they preferred. Nor do they allege that Ms. Baham was subjected to arrest or prolonged detention because she would not testify to prosecutors' version of events—in fact, they allege that she was released from custody on the very day that she spoke with the prosecutor and allegedly rebuffed his implicit suggestion that she "testify to something that she knew was not true" (January 6, 2016). *See* Complaint at ¶¶ 277–283.

law review article, it is singularly unhelpful in guiding this Court to an understanding of the actual controlling law that applies here.

Additionally, the Organizational Movants appear to defend and justify the refusal of crime victims to participate in the prosecution of crimes. Although they insist that they "respect the importance of thorough, properly conducted investigations into acts of sexual violence and domestic abuse and do not argue for a right to refuse to participate in the prosecution of such crimes with appropriate judicial oversight," Doc. No. 85-2 at 4, other statements in their brief suggest otherwise. They state that "[t]he wishes and needs of the victims of sexual assault and domestic violence are often diametrically opposed to the requirements of legal proceedings." *Id.* at 12 (quotation omitted); *see also id.* at 14 ("[T]he goals of victims often are not aligned with those of the criminal justice system."). They further state that some victims are "looking for options other than punishment for the abuser" and are "reluctan[t] to participate in the prosecution of an intimate partner." *Id.* at 12, 14 (quotation omitted). They claim that some victims choose not to report crimes to the police because they "d[o] not want to get the offender in trouble," and further suggest that "[s]ome victims don't have the energy to deal with the day-to-day or [sic] life, plus having experienced sexual or domestic violence, plus push through legal proceedings, even if those proceedings would help them." *Id.* at 14–15 (quotation omitted). Such factors, however, clearly provide no legal basis for crime victims to avoid the demands of the legal system, and they are irrelevant to the question of whether the Defendants in this case violated the constitutional rights of the Plaintiffs.

Finally, the proposed briefing—particularly that of the Law School Movants—includes language and rhetoric that is designed to inflame and that is likely to make an already contentious case even more so. The Law School Movants describe the Defendants' alleged conduct as

"egregious" and "harrowing," and liken it to the "racial terrorism" and "campaign of violence and deception" perpetrated by the Ku Klux Klan that provided the "specific historical catalyst" for 42 U.S.C. § 1983. Doc. No. 84-3 at 6. They level false and inflammatory accusations that the Defendants have "disproportionately target[ed] victims and witnesses of color" and suggest that the Defendants have committed "odious" "[d]iscrimination on the basis of race." *Id.* at 21 (quotation omitted). These comments are especially inappropriate in light of the fact that the claims in this case are not based on alleged racial discrimination, and they contribute nothing but needless rancor. *See, e.g.*, *McCarthy*, 2012 WL 1067863, at *2 ("[T]he tenor of Bishop Paprocki's reply brief in support of his *amicus curiae* request . . . causes the court to worry that his participation would serve to increase only the heat and not the light in this case.").

## CONCLUSION

For the reasons set forth above, the Defendants respectfully that the movants' motion for leave to file amicus briefs (Doc. No. 84 & 85) be denied. In the alternative, in the event that the Court grants the movants leave to file their proposed briefs opposing the Defendants' motion to dismiss, the Defendants request that the Court allow them an opportunity to file a reply brief responding to the movants' arguments.

Respectfully submitted,

| | |
|---|---|
| /s/ Thomas J. Barbera | /s/ Matthew J. Paul |
| Thomas J. Barbera, 18719 | Richard C. Stanley, 8487 |
| LAW OFFICE OF THOMAS J. BARBERA | W. Raley Alford, III, 27354 |
| 1010 Common Street, Suite 3000 | Matthew J. Paul, 37004 |
| New Orleans, Louisiana 70119 | STANLEY, REUTER, ROSS, THORNTON |
| Telephone:  (504) 931-0662 |   & ALFORD, LLC |
| Facsimile:   (504) 581-7083 | 909 Poydras Street, Suite 2500 |
| | New Orleans, Louisiana 70112 |
| Robert L. Freeman, Jr., 21596 | Telephone: (504) 523-1580 |
| OFFICE OF THE DISTRICT ATTORNEY, PARISH OF ORLEANS | Facsimile:  (504) 524-0069 |
| 619 South White Street | *Counsel for Leon Cannizzaro (in his individual capacity); Graymond Martin; David Pipes; Iain Dover; Jason Napoli; Arthur Mitchell; Tiffany Tucker; Michael Trummel; Matthew Hamilton; Inga Petrovich; Laura Rodrigue; and Sarah Dawkins* |
| New Orleans, Louisiana 70119 | |
| Telephone:  (504) 822-2414, ext. 2877 | |
| Facsimile:   (504) 827-6393 | |
| | |
| *Counsel for Leon Cannizzaro (in his official capacity as Orleans Parish District Attorney)* | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2018, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system, as well as by U.S. Mail for any non-CM/ECF participant.

　　　　　　　　　　　　　　　　　　　　　　　 /s/ Matthew J. Paul