UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENATA SINGLETON,<br>MARC MITCHELL,<br>LAZONIA BAHAM,<br>JANE DOE,<br>TIFFANY LACROIX,<br>FAYONA BAILEY,<br>JOHN ROE, and<br>SILENCE IS VIOLENCE,<br><br>    *Plaintiffs*,<br><br>      v.<br><br>LEON CANNIZZARO, in his official capacity as District Attorney of Orleans Parish and in his individual capacity;<br><br>DAVID PIPES,<br>IAIN DOVER,<br>JASON NAPOLI,<br>ARTHUR MITCHELL,<br>TIFFANY TUCKER,<br>MICHAEL TRUMMEL,<br>MATTHEW HAMILTON,<br>INGA PETROVICH,<br>LAURA RODRIGUE,<br>SARAH DAWKINS, and<br>JOHN DOE,<br>in their individual capacities;<br><br>    *Defendants*. | CIVIL ACTION NO. 2:17-cv-10721<br><br>JUDGE: JANE TRICHE MILAZZO<br><br>MAGISTRATE: JANIS VAN MEERVELD |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO STAY OFFICIAL CAPACITY CLAIMS AND
CLAIMS AGAINST INDIVIDUAL DEFENDANTS
FOR INJUNCTIVE RELIEF**

    Defendants are not entitled to a stay of the official capacity claims and injunctive relief claims in this case. That is because Defendants' interlocutory appeal applies to only one dimension of this case—whether certain Individual Defendants can overcome this Court's denial of absolute

1

immunity on claims seeking monetary damages. The bulk of Plaintiffs' claims—those seeking injunctive relief and those against Defendant Cannizzaro in his official capacity—are not subject to interlocutory appeal. Defendants[1] assert that the Fifth Circuit has automatic pendant jurisdiction over the otherwise unappealable claims, but binding case law directly rejects that contention. *E.g.*, *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 468 (5th Cir. 2014) (noting that courts should be "especially wary of granting jurisdiction" under circumstances like these "for fear of 'allowing parties to parlay . . . collateral orders into multi-issue interlocutory appeal tickets'") (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 49-50 (1995)). This Court therefore retains jurisdiction over them and should allow discovery to proceed.

This Court has every reason to permit discovery on the unappealable claims. The Fifth Circuit's answer to the absolute immunity question will have little effect on Plaintiffs' overall discovery plan. Regardless of whether or not Defendants win their appeal, Plaintiffs will seek to establish that, through its practices, "the Orleans Parish District Attorney's Office unlawfully compelled victims and witnesses of crimes to cooperate with prosecutors." Order, Doc. 116, at 1. To do that, Plaintiffs will need discovery concerning the creation, implementation, and effect of Defendants' policies and practices.

By its recent Order, this Court has already found that Plaintiffs are entitled to pursue their claims against the official capacity defendant and against some individually named defendants for injunctive relief. A stay would thus not shield Defendants from discovery—one of the primary purposes of absolute immunity—because discovery will proceed even should the Fifth Circuit find that immunity applies. In their "Motion to Confirm a Stay," Doc. 121, Defendants provide no

---

[1] "Defendants" refers to both the official capacity Defendant and those sued in their individual capacities. "Individual Defendants" refers only to those sued in their individual capacities.

2

substantive argument that suggests delaying discovery on these important matters is either necessary or prudent. Delaying discovery will not serve the interests of efficiency or justice, or the concerns underlying the absolute immunity doctrine, and Defendants have said nothing that suggests otherwise. Instead, delay will permit Defendants to continue unabated their corrupt and nefarious practices that "shock the conscience," Doc. 116 at 26, for the months or even years it may take for an appeal to be decided.

## I.   Relevant Background

Plaintiffs filed the Second Amended Complaint in this action in January 2018, bringing claims against Defendant Leon Cannizzaro, in his official capacity, and several individual prosecutors for the creation and use of fraudulent subpoenas and the abuse of material witness warrants. On March 1, 2018, Defendants filed a motion to dismiss. After this Court ruled on Defendants' motion on February 28, 2019, three broad categories of claims survived: (1) claims against Individual Defendants for damages; (2) claims against Individual Defendants for injunctive relief; and (3) official capacity claims for both damages and injunctive relief.[2]

Defendants then filed a broad notice of appeal of the February 28 order, suggesting that they are entitled to appeal the Court's entire ruling now. Based on that apparent belief, Defendants contend that the entire case is "automatically stayed." Mem. in Support of Defs.' Mot. for Stay, Doc. 121-1, at 3.

---

[2] As this Court outlined in its Order, official capacity claims remain on Counts I, II, III, V, VI, VII, VIII, and IX. *See* Doc. 116 at 51-52. Claims for injunctive relief against certain individual defendants remain on Counts I, III, VI, VII, VIII, and IX. Claims against certain individual defendants for damages remain on Counts VI, VII, and IX. By listing the Court's rulings on Plaintiffs' claims in this footnote, Plaintiffs do not waive their rights to later contest or clarify those rulings.

3

## II. The Scope of Defendants' Interlocutory Appeal Includes Only the Court's Immunity Rulings

Defendants seem to believe they are entitled to an "automatic stay" because they seek to appeal this Court's entire Order. Doc. 121-1 at 3. But although an interlocutory appeal is available to challenge denials of qualified and absolute immunity, *Mitchell v. Forsyth*, 472 U.S. 511, 525-28 (1985), it is not available for "mere defense[s] to liability," *Swint*, 514 U.S. at 42. This Court did not deny Defendants qualified immunity on any of the claims for which they asserted it. Doc. 116 at 18-26. Therefore, Defendants' interlocutory appeal could only apply to one aspect of the Court's multifaceted ruling: the Court's determination that Individual Defendants are not absolutely immune from damages related to the creation and use of fraudulent subpoenas. Doc. 116 at 10-14.

The Court's absolute immunity determination—and, correspondingly, Defendants' interlocutory appeal—is separate from the official capacity claims in this case, as both Defendants and this Court have recognized. Doc 121-1 at 2 ("Mr. Cannizzaro did not assert absolute or qualified immunity with respect to the claims against him in his official capacity."); *accord* Doc. 116 at 9 ("[A]bsolute immunity only protects *individuals* from claims for *damages*."). It is also separate from the claims against Individual Defendants for injunctive relief, an issue that Defendants do not even attempt to address in their motion.[3] Because the official capacity and injunctive relief claims cannot be properly appealed now—and will thus be litigated regardless of whether Defendants' limited appeal succeeds or fails—there is no reason to delay discovery on them.

---

[3] Indeed, absolute immunity is wholly unavailable for both official capacity claims, *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999), and claims for prospective relief, *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 n.1 (5th Cir. 1997).

### A. Plaintiffs' Official Capacity Claims Are Not Subject to an Automatic Interlocutory Appeal

No doubt aware that blackletter law limits their interlocutory appeal to the narrow question of absolute immunity, Defendants invoke a rare exception. They contend, without explanation, that the Fifth Circuit has pendant jurisdiction over Plaintiffs' official capacity claims. Doc. 121-1 at 2. But such jurisdiction is exceedingly narrow; it is exercised only in "rare and unique circumstances where a final appealable order is 'inextricably intertwined' with an unappealable order." *Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016) (internal quotation marks omitted); *see also McKee v. City of Rockwall, Tex.*, 877 F.2d 409, 413 (5th Cir. 1989) ("[P]endant interlocutory appellate jurisdiction over additional issues is looked upon with disfavor, and must not be invoked merely out of convenience to the litigants, or even to th[e] court.") (internal quotation marks omitted). It is unlikely that the Court of Appeals will apply this limited exception here, where the underlying factual and legal issues for the two categories of claims are quite distinct.

To determine whether claims are "inextricably intertwined," the Fifth Circuit looks to whether each claim has "unique elements and relevant facts" and was "considered separately by the district court." *Gros v. City of Grand Prairie*, 209 F.3d 431, 437 (5th Cir. 2000). When applying this test to an individual capacity immunity defense, the Fifth Circuit has declined to assert pendant jurisdiction over related official capacity claims. For example, in *Cutler v. Stephen F. Austin State University*, the court held that the claims were not "inextricably intertwined" because the defendants there had to "prove a different set of facts to show that they are not liable as final decisionmakers" for *Monell* purposes "than they must prove to show they enjoy qualified immunity from suit." 767 F.3d 462, 468 (5th Cir. 2014). The Court further held that asserting "jurisdiction would not serve the interests of judicial economy, because common factual and legal

issues will not necessarily be resolved by the qualified-immunity appeal" and warned that courts "should be especially wary of granting jurisdiction here for fear of allowing parties to 'parlay collateral orders into multi-issue interlocutory appeal tickets.'" *Id.* (quoting *Swint*, 514 U.S. at 49-50); *see also Swint*, 514 U.S. at 50-51 (rejecting pendant jurisdiction over an official capacity claim because it was not "inextricably intertwined" with the appealable issue of whether individual defendants had qualified immunity); *Hill v. City of Seven Points*, 31 F. App'x 835, 2002 WL 243261 *7 (5th Cir. 2002) (finding claims not to be "inextricably intertwined" because "qualified immunity . . . turns on whether [the plaintiff] ha[d] alleged the violation of a clearly established constitutional right and whether Defendants' conduct was objectively unreasonable in light of clearly established law," whereas "[s]overeign immunity … turns on whether [the plaintiff] ha[d] established a constitutional deprivation resulting from an official policy or custom of the City").

Here, the absolute immunity and official capacity claims turn on separate elements and numerous unique facts. Absolute immunity involves a single narrow question: whether the individual's challenged conduct was prosecutorial in nature. *See Loupe v. O'Bannon*, 824 F.3d 534, 538-39 (5th Cir. 2016) (describing "functional approach"). By contrast, Plaintiffs' official capacity claims "require proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)).[4] These inquiries are distinct, as evidenced by the fact that the Court's Order addressed each separately and at length. *See* Doc. 116, at 7-17 (absolute immunity); *id*. at 26-45 (the merits of Plaintiffs' claims).

---

[4] The only *Monell* element Defendants challenged in their motion to dismiss was whether there was an underlying constitutional violation. Accordingly, this Court did not address the other *Monell* elements in its Order. *See* Doc. 116 at 26-45 (addressing the official capacity claims).

Indeed, because this case involves absolute immunity, the application of the "inextricably intertwined" exception is even less appropriate here than it would have been in *Cutler*, which involved qualified immunity. Absolute immunity is about the *function* served by the prosecutor; the legality of the conduct is not at issue. A qualified immunity analysis, however, invites consideration of the underlying merits, as it turns on whether a defendant's conduct was objectively unreasonable in light of clearly established law at the time of that conduct. *See Kinney v. Weaver*, 367 F.3d 337, 367 (5th Cir. 2004).[5] Thus, there is far less basis to conclude that absolute immunity is intertwined with the merits than there is when qualified immunity is at issue. For the same reason, the cases Defendants cite in support of their motion—all of which involve qualified, rather than absolute, immunity—are distinguishable from this case. *See* Doc. 121-1 at 2-3 (citing *Carty v. Rodriguez*, 211 F. App'x 292 (5th Cir. 2006), *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 439 (5th Cir. 2015), *Pollard v. City of Columbus*, 780 F.3d 395, 401 (6th Cir. 2015), and *Roberts v. City of Omaha*, 723 F.3d 966, 975-76 (8th Cir. 2013)).

### B. Plaintiffs' Claims Against Individual Defendants for Injunctive Relief Are Not Subject to Interlocutory Appeal

In addition to the claims for damages, several Individual Defendants face claims for injunctive relief. The absolute immunity question is as irrelevant to these claims as it is to the official capacity claims. *See Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 n.1 (5th Cir. 1997) (explaining that absolute immunity is unavailable for claims for prospective relief); Doc. 116 at 9 (noting that absolute immunity does not "bar claims against the Individual Defendants for

---

[5] Under *Pearson v. Callahan*, 555 U.S. 223 (2009), courts examining qualified immunity need not decide whether the facts alleged make out a constitutional violation if the court first determines that the right at issue was not "clearly established" at the time of the defendant's conduct. Even so, the Supreme Court recognized that it was "often beneficial" to do so, noting that "the two-step procedure promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable." *Id.* at 236.

injunctive relief"). Moreover, other than Defendants' blanket contention that this entire case "has been automatically stayed," Defendants make no attempt to argue that the appellate court has pendant jurisdiction over the claims against Individual Defendants *for injunctive relief*. Doc. 121-1 at 3.

Nor could they: absolute immunity claims and claims against individuals for injunctive relief have "unique elements and relevant facts." *Gros*, 209 F.3d at 437. As noted above, absolute immunity turns solely on the factual question of whether a defendant's past conduct was prosecutorial in nature. *See Loupe*, 824 F.3d at 539; Doc. 116, at 8-9. Whether it applies has nothing to do with the merits of the underlying claim. Claims against individuals for injunctive relief, however, turn on the merits. Doc. 116 at 26-45. These separate inquiries require distinct analysis based on separate facts; they are not "inextricably intertwined." *Gros*, 209 F.3d at 437.

### III. This Court Should Not Stay Discovery

Based on the flawed premise that their interlocutory appeal extends to the whole case, Defendants assert that this "Court is without jurisdiction to proceed" until the appeal concludes. Doc. 121-1 at 3. No law supports this. As the Fifth Circuit has explained, "[a] notice of appeal from an interlocutory order does not produce a complete divestiture of the district court's jurisdiction over the case." *Alice L. v. Dusek*, 492 F. 3d 563, 564 (5th Cir. 2007). Instead, it divests the district court of jurisdiction only over those aspects of the case subject to appeal. *Id.* And "where an appeal is allowed from an interlocutory order, the district court may still proceed with matters not involved in the appeal." *Id.* at 564-65 (internal quotation marks omitted); *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 908 (5th Cir. 2011) ("Although appeals transfer jurisdiction from the district court to the appellate court concerning those aspects of the case involved in the appeal, the district court is nonetheless free to adjudicate matters that are not involved in that appeal.").

8

In *Dusek*, the Fifth Circuit held that discovery on plaintiff's Title IX claims could proceed despite an interlocutory appeal of the district court's denial of qualified immunity for the § 1983 claims, because the "the claims [were] legally distinct" and the defendant "[could not] assert qualified immunity from the Title IX claim." 492 F. 3d at 564. Adhering to that principle, courts within this circuit have repeatedly found that an immediate appeal of immunity issues does not stay unrelated claims. *See, e.g.*, *Stumpf v. City of Dallas*, No. 3:15-CV-1944-N, 2016 WL 10749149, at *1–2 (N.D. Tex. May 25, 2016) (permitting discovery to proceed on claims against the City despite another defendant's appeal of denial of qualified immunity); *Saenz v. City of El Paso, Tex.*, No. EP-14-CV-244-PRM, 2015 WL 4590309, at *4 (W.D. Tex. Jan. 26, 2015) (denying motion to stay all discovery based on defendant's appeal of qualified immunity denial); *Harris v. City of Balch Springs*, 33 F. Supp. 3d 730, 33 (N.D. Tex. 2014) ("Discovery may proceed on those claims that are legally distinct and for which a party may not assert the defense of qualified immunity.").

As noted, neither the official capacity claims nor the injunctive claims against Individual Defendants are eligible for interlocutory appeal. This Court thus retains jurisdiction over them. Therefore, whether to stay these claims is within the discretion of this Court based on considerations of efficiency and fairness. *See Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (observing that in deciding a stay motion, courts "must weigh competing interests and maintain an even balance"). In this case, there is no reason to stay the unappealable claims because Plaintiffs will seek the same types of discovery regardless of whether the Fifth Circuit affirms or vacates the Court's absolute immunity findings. That is, should the Defendants win on appeal, they will still be subject to the very discovery Plaintiffs would be seeking now and, thus, no efficiency interest is served by delay.

For example, to pursue the official capacity claims, Plaintiffs will seek evidence that an official policy caused violations of their constitutional rights. *See Monell*, 436 U.S. at 694. And to prove that an official policy existed for each claim, Plaintiffs will seek evidence that the challenged conduct was widespread and systemic, and that it was routinely carried out by prosecutors at every level of the Orleans Parish District Attorney's Office. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (observing that an official policy includes "practices so persistent and widespread as to practically have the force of law"). Each Individual Defendant's conduct is part of the pattern Plaintiffs seek to prove and, accordingly, Plaintiffs will inevitably seek discovery about their actions. As such, the discovery Plaintiffs will seek for the official capacity claims looks largely the same whether or not the Individual Defendants are shielded from damages by absolute immunity.

Similarly, Plaintiffs will seek the same discovery for the claims against the Individual Defendants for injunctive relief regardless of how the Fifth Circuit rules on absolute immunity. To demonstrate either that damages *or* an injunction is warranted, Plaintiffs will need to examine the past conduct of Individual Defendants. And the claims against Individual Defendants for injunctive relief will proceed independent of whether the claims against them for damages proceed. Therefore, those defendants will not avoid discovery by virtue of a favorable outcome on interlocutory appeal. A stay of these claims would serve no purpose aside from needless and prejudicial delay. *See Harris*, 33 F. Supp. 3d at 734 ("Waiting to allow discovery on issues not related to qualified immunity unnecessarily delays resolution of this case."); *Saenz*, 2015 WL 4590309, at *4-5 (noting risks inherent in delaying discovery).

In sum, Plaintiffs' discovery plan does not turn on whether damages are available for certain Individual Defendants. In any scenario, Plaintiffs will depose Individual Defendants and

other witnesses about the nature and scope of Defendants' past conduct; Plaintiffs will request documents concerning Defendants' prosecutorial practices and decisions; and Plaintiffs will seek to uncover as much as possible about the causes and human costs of such practices. None of that discovery overlaps with the legal analysis of whether Plaintiffs' allegations of Individual Defendants' behavior describe prosecutorial or investigative duties, *i.e.*, the immunities issues that will be on appeal. Given the Court's Order and the necessarily limited scope of Defendants' appeal, Plaintiffs are entitled to such discovery. There is no reason to delay it.

## IV. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motion to stay the official capacity claims and claims against Individual Defendants for injunctive relief.

Respectfully submitted this 2nd day of April, 2019,

Anna Arceneaux
Admitted *pro hac vice*
American Civil Liberties Union Foundation
201 West Main Street, Suite 402
Durham, NC 27701
Tel. (919) 682-5159
aarceneaux@aclu.org

Somil Trivedi
Admitted *pro hac vice*
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Tel: (202) 715-0802
strivedi@aclu.org

Mariana Kovel
Admitted *pro hac vice*
American Civil Liberties Union Foundation

/s/Katherine Chamblee-Ryan
Katherine Chamblee-Ryan
Ryan C. Downer
Olevia Boykin*
Admitted *pro hac vice*
Civil Rights Corps
910 17th Street NW
Washington, D.C. 20006
Tel. (202) 656-5198
ryan@civilrightscorps.org
katie@civilrightscorps.org
olevia@civilrightscorps.org

Bruce Hamilton
La. Bar No. 33170
ACLU Foundation of Louisiana
New Orleans, LA 70156
Tel. (504) 522-0628
bhamilton@laaclu.org

| | |
|---|---|
| 125 Broad Street, 18th Floor<br>New York, NY 10004<br>Tel: (646) 905-8870 | Michael S. Blume<br>Venable LLP<br>1270 Avenue of the Americas<br>24th Floor<br>New York, NY 10020<br>Tel: (212) 370-5500 |

\* Admitted to practice solely in Texas. Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c), with supervision by Alec Karakatsanis, a member of the D.C. Bar.

COUNSEL FOR PLAINTIFFS