UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENATA SINGLETON; MARC MITCHELL; LAZONIA BAHAM; JANE DOE; TIFFANY LACROIX; FAYONA BAILEY; JOHN ROE; and SILENCE IS VIOLENCE,<br><br>  *Plaintiffs*,<br><br>v.<br><br>LEON CANNIZZARO, in his official capacity as District Attorney of Orleans Parish and in his individual capacity; GRAYMOND MARTIN; DAVID PIPES; IAIN DOVER; JASON NAPOLI; ARTHUR MITCHELL; TIFFANY TUCKER; MICHAEL TRUMMEL; MATTHEW HAMILTON; INGA PETROVICH; LAURA RODRIGUE; SARAH DAWKINS; and JOHN DOE, in their individual capacities,<br><br>  *Defendants*. | Civil Action No. 17-10721<br><br>Section H<br>Judge Jane Triche Milazzo<br><br>Division 1<br>Magistrate Judge Janis van Meerveld |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' REQUESTS FOR INJUNCTIVE RELIEF**

Defendants Leon Cannizzaro (in his individual capacity); Graymond Martin; David Pipes; Iain Dover; Jason Napoli; Arthur Mitchell; Tiffany Tucker; Michael Trummel; Matthew Hamilton; Inga Petrovich; Laura Rodrigue; and Sarah Dawkins (the "Individual Defendants"), through undersigned counsel, respectfully submit this memorandum in support of their motion seeking partial summary judgment dismissing all requests for injunctive relief asserted against them by Plaintiffs Renata Singleton, Marc Mitchell, Lazonia Baham, Jane Doe, Tiffany LaCroix, Fayona Bailey, and John Roe (collectively, the "Individual Plaintiffs") and Silence Is Violence for lack of

1

standing.[1] All of the criminal cases in which the Individual Plaintiffs were victims or witnesses have now resolved. Similarly, there is no reason to believe that Silence Is Violence faces an imminent, substantial risk of injury by any specific Individual Defendant. Because they cannot show any continuing harm as a result of alleged past wrongdoing or any real and immediate threat of future harm at the hands of the Individual Defendants, the Plaintiffs lack standing to seek injunctive relief against the Individual Defendants.

## BACKGROUND

### I. The surviving claims for injunctive relief against the Individual Defendants

On January 25, 2018, the Plaintiffs filed a Second Amended Complaint asserting various constitutional and state-law claims against the Individual Defendants and OPDA. Doc. No. 52. The claims arise from allegations that OPDA prosecutors have used "fraudulent" subpoenas (sometimes referred to as "DA subpoenas") and material-witness warrants to coerce crime victims and witnesses into cooperating with the prosecution. *See id.* at 2–3. In addition to damages, the Plaintiffs seek "injunctive relief requiring Defendants to end the ongoing constitutional violations and violations of Louisiana law" and "equitable relief in the court's discretion that ensures that the violations do not recur." *Id.* at 77.

The Defendants filed a Rule 12(b)(6) motion to dismiss, which the Court granted in part, setting forth a list of surviving claims. *See* Doc. No. 63; *see also* Doc. No. 116 at 51–52. Based on that list, it appears that the Plaintiffs continue to seek injunctive relief against the Individual Defendants with respect to the following claims: (1) claims against Mr. Napoli, Mr. Trummel, Mr. Hamilton, and Ms. Dawkins under Count I (Fourth Amendment—material witness warrants); (2)

---

[1] This motion does not address claims asserted against Mr. Cannizzaro in his official capacity (*i.e.*, against the Orleans Parish District Attorney's Office ("OPDA")).

claims against Mr. Napoli, Mr. Dover, and Ms. Dawkins under Count III (First Amendment—retaliation); and (3) claims against Mr. Cannizzaro, Mr. Martin, and Mr. Pipes under Counts VI and VII (failure to supervise, train, discipline, and intervene); (4) claims against some of the Individual Defendants under Count VIII (abuse of process); and (5) claims against Mr. Martin, Mr. Dover, Ms. Petrovich, and Ms. Rodrigue under Count IX (fraud). *See* Doc. No. 116 at 51–52.

II. **The Plaintiffs' allegations concerning injunctive relief**

At the time the Second Amended Complaint was filed, four of the Individual Plaintiffs—Renata Singleton, Marc Mitchell, Fayona Bailey, and Tiffany LaCroix—were no longer witnesses in pending criminal cases. *See, e.g.*, Doc. No. 52 at ¶ 224 (alleging that the defendant in Ms. Singleton's case, Vernon Crossley, "pled guilty to two misdemeanors and was sentenced to one year of inactive probation with no jail time"); *id.* at ¶ 255 (alleging that the defendant in Mr. Mitchell's case, Gerard Gray, "was convicted" at trial); *id.* at ¶ 325 (alleging that the defendants in Ms. Bailey and Ms. LaCroix's cases "were ultimately convicted at trial"). None of these four Individual Plaintiffs alleged that they faced an imminent or ongoing risk of future harm.

The other three Individual Plaintiffs—Lazonia Baham, Jane Doe, and John Roe—were still witnesses in active criminal cases when the Second Amended Complaint was filed. Accordingly, these three Individual Plaintiffs alleged that the pendency of cases in which they were material witnesses created an imminent or ongoing risk of future harm. For example:

- "The Isaac Jones case has not yet gone to trial. Ms. Baham has appeared in court pursuant to several lawful subpoenas." Doc. No. 52 at ¶ 285. "Plaintiff Baham faces an ongoing risk that Defendant Napoli will violate her rights . . . again." *Id.* at ¶ 416.

- "The criminal case involving Ms. Doe remains pending, and Ms. Doe faces an imminent risk of future harm." Doc. No. 52 at ¶ 8. "Ms. Doe still does not wish to meet privately with prosecutors again unless lawfully compelled to do so." *Id.* at ¶ 301.

3

- "The criminal case involving Mr. Roe is still pending, and Mr. Roe faces an imminent risk of future harm." Doc. No. 52 at ¶ 11. "Plaintiff Roe faces an ongoing risk that Defendant Dawkins will violate his rights in this way again." *Id.* at ¶ 416.

At this point, however, all of the criminal cases in which the Individual Plaintiffs were witnesses have terminated, either through a conviction at trial or a guilty plea.[2] The case in which Lazonia Baham was a witness, *State v. Isaac Jones*, terminated in March 2018 when Mr. Jones pleaded guilty and was sentenced.[3] The case in which Jane Doe was a witness, *State v. Matthew Totaro*, terminated in December 2018 when Mr. Totaro pleaded guilty and was sentenced.[4] The case in which John Roe was a witness, *State v. Michael Young*, terminated in August 2019 when Mr. Young pleaded guilty and was sentenced.[5] As far as the Individual Defendants are aware, none of the Individual Plaintiffs is a material witness in any pending criminal case in Orleans Parish.

As for Silence Is Violence, it alleges, under Count XIII (abuse of process), that it "was injured because it had to redirect its resources to remedy and prevent harms to its clients caused by the unlawful acts of the District Attorney's Office," and that it "faces a risk that Defendants will harm it in this way again." Doc. No. 52 at ¶ 444. Similarly, it alleges under Count IX (fraud) that it was "injured" by allegedly fraudulent "subpoenas" and that it "face[s] a risk that Defendants will harm [it] in this way in the future." *Id.* at ¶ 450. However, Silence Is Violence does not specifically identify any Individual Defendant who allegedly harmed it through the use of material-witness warrants or DA subpoenas. Nor does it allege any facts even suggesting that it faces an imminent threat of future harm by any specific Individual Defendant. Indeed, based on the

---

[2] *See* Declaration of Graymond Martin at ¶¶ 3–9; Exhibits 1–7.

[3] *See* Declaration of Graymond Martin at ¶ 5; Exhibit 3 (Docket Master for Case No. 536-436).

[4] *See* Declaration of Graymond Martin at ¶ 6; Exhibit 4 (Excerpt of Docket Master for Case No. 523-930).

[5] *See* Declaration of Graymond Martin at ¶ 9; Exhibit 7 (Excerpt of Docket Master for Case No. 526-096).

Plaintiffs' own allegations, the alleged "policy" of using DA subpoenas ended on April 28, 2017, when First Assistant Graymond Martin "issued a memorandum to staff" instructing them not to use any "Notice to Appear" form and to instead use a "letter" that "does not include overt threats of jail or files and does not resemble an official court order." Doc. No. 52 at ¶¶ 77–80.

Additionally, five of the Individual Defendants (Matthew Hamilton, Laura Rodrigue, Iain Dover, Tiffany Tucker, and Inga Petrovich) are no longer employed by OPDA.[6] Because none of the Plaintiffs can show any continuing harm as a result of alleged past wrongdoing or any real and immediate threat of future harm at the hands of the Individual Defendants, they lack standing to seek injunctive relief against the Individual Defendants.

## LAW AND ARGUMENT

Summary judgment must be granted as to all or part of any claim or defense "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). Summary judgment is an appropriate procedural mechanism to challenge a plaintiff's standing to seek injunctive relief. *See, e.g.*, *Campbell v. Lamar Institute of Tech.*, 842 F.3d 375, 382–83 (5th Cir. 2016); *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 562–64 (5th Cir. 1998); *Smith v. Bd. of Comm'rs of La. Stadium and Exposition Dist.*, 371 F. Supp. 3d 313, 318–20 (E.D. La. 2019).[7]

---

[6] *See* Declaration of Graymond Martin at ¶¶ 10–14.

[7] Although the Plaintiffs' allegations are accepted as true solely for the purposes of determining whether they have standing, *see N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 192 (5th Cir. 2015), their allegations are in fact strongly disputed by the Individual Defendants.

I. **Plaintiffs who cannot show continuing harm or an imminent, substantial risk of future harm have no standing to seek injunctive relief.**

"Article III of the Constitution confines the federal courts to deciding actual cases and controversies." *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (en banc). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). "The rule that litigants must have standing to invoke the power of the federal courts is perhaps the most important doctrine stemming from the case or controversy requirement." *Society of Separationists*, 959 F.2d at 1285; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). "Standing defies precise definition, but at the least insists that the complained of injury be real and immediate rather than conjectural, that the injury be traceable to the defendant's allegedly unlawful conduct, and that relief from the injury must be likely to follow from a favorable ruling." *Society of Separationists*, 959 F.2d at 1285.

"[P]laintiffs may lack standing to seek prospective relief even though they have standing to sue for damages." *Society of Separationists*, 959 F.2d at 1285 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). That is because "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* (quoting *Lyons*, 461 U.S. at 102). "To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Id.*; *see also Stringer v. Whitley*, – F.3d –, 2019 WL 5955321, at *2, (5th Cir. Nov. 13, 2019) ("[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement [of Article III standing] only by demonstrating a continuing injury or threatened future injury."); *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011) ("Absent

6

such a showing, there is no case or controversy regarding prospective relief, and thus no basis in Article III for the court's power to issue an injunction.").

"To be an injury in fact, a threatened future injury must be (1) potentially suffered by the plaintiff, not someone else; (2) concrete and particularized, not abstract; and (3) actual or imminent, not conjectural or hypothetical." *Stringer*, 2019 WL 5955321, at *2 (citations and quotations omitted). "For a threatened future injury to satisfy the imminence requirement, there must be at least a substantial risk that the injury will occur." *Id.* (citation and quotation omitted). "Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." *Society of Separationists*, 959 F.2d at 1287 (quoting *Eccles v. Peoples Bank*, 333 U.S. 426, 431 (1948)).

In *Lyons*, the Supreme Court held that a plaintiff who was allegedly subjected to a "chokehold" by the Los Angeles Police during a traffic stop lacked standing to seek injunctive relief against the City of Los Angeles prohibiting the use of "chokeholds" in certain situations. *See Lyons*, 461 U.S. at 97–98, 101. The Supreme Court explained that "Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers." *Id.* at 105. However, the allegation that he had been "illegally choked" five months earlier "does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id.* The Supreme Court concluded that it was "surely no more than speculation" to assert that Lyons would suffer such harm in the future, explaining that "[a]bsent a sufficient likelihood that he will

7

again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles . . . ." *Id.* at 108, 111.[8]

In *Society of Separationists*, the Fifth Circuit held that the plaintiff in that case, Robin Murray-O'Hair, "lack[ed] standing to obtain prospective relief for the same reason that Lyons did." *Society of Separationists*, 959 F.2d at 1285. Ms. O'Hair was called for jury duty and was held in contempt and jailed for six hours because she would not swear or affirm that she would tell the truth. *See id.* at 1284. She alleged that this treatment violated her First Amendment rights and sued the judge for damages and injunctive relief. *See id.* at 1284–85. As the Fifth Circuit explained:

> She suffers no continuing harm as a result of Judge Herman's actions. Nor can she show a real and immediate threat that she will again appear before Judge Herman as a prospective juror and that Judge Herman will again exclude her from jury service and jail her for contempt. There are over half a million residents in Travis county and twenty trial judges. The chance that O'Hair will be selected again for jury service and that Judge Herman will be assigned again to oversee her selection as a juror is slim.

*Id*. at 1285. For these reasons, the Fifth Circuit and other courts "have often held that plaintiffs lack standing to seek prospective relief against judges because the likelihood of future encounters is speculative." *Id.* at 1286.

In the recent decision in *Stringer*, 2019 WL 5955321, at *3, the Fifth Circuit reiterated that, regardless of whether a plaintiff has suffered "past injury," standing to seek injunctive relief requires a "substantial risk" of future injury.

> Standing . . . does not follow from the conclusion that the injunctive relief sought by a plaintiff would prevent the plaintiff from suffering the same injury in the future, which is always true when a plaintiff seeks an injunction prohibiting a defendant from repeating an action that injured the plaintiff in the past. Plaintiffs must also show that there is a substantial risk that they will suffer the potential future injury absent their requested relief.

---

[8] The Fifth Circuit has noted that "[t]he requirement articulated in *Lyons* is cited with relative frequency in cases denying injunctive relief." *Armstrong*, 141 F.3d at 563 n.25.

8

*Id.* Similarly, whether injunctive relief "would prevent future injury to others is irrelevant; plaintiffs seeking injunctive relief must show a continuing or threatened future injury to themselves." *Id.*

The plaintiffs in *Stringer* alleged that the Texas Department of Public Safety ("DPS") online driver's license renewal system was illegal and unconstitutional because address changes through that system did not automatically update the applicant's voter registration. *Stringer*, 2019 WL 5955321, at *1. The plaintiffs alleged that their voter registrations were not updated after they moved to a new county in Texas and used the DPS online system to change their driver's license addresses. *Id.* Although the plaintiffs alleged that they intended to use the DPS online system in the future if they moved again, the Fifth Circuit found that the evidence established no "substantial risk" that they would move again in the future or otherwise be injured by being unable to update their voter registrations through the DPS online system. *Id.* at *3–4. Accordingly, the Fifth Circuit reversed the district court's judgment granting injunctive and declaratory relief because the plaintiffs lacked standing. *Id.* at *1, 5.

In *Brotherhood of Locomotive Engineers v. Jones*, this Court dismissed a plaintiff's claim seeking injunctive relief against a police department when his allegations of future harm were "too speculative." No. 92-cv-2868, 1992 WL 370126, at *1–2 (E.D. La. Dec. 1, 1992). The plaintiff, a locomotive engineer, had been tested for alcohol impairment by sheriff's deputies after the train he was operating struck an automobile at a railroad crossing. *Id.* at *1. Federal law prohibited the officers from conducting the test unless they had "specific cause" to believe the engineer was impaired by alcohol. *Id*. The Court dismissed the plaintiff's claim for injunctive relief against the Sheriff's Department because the plaintiff:

> cannot establish a real and immediate threat that he would again be tested under these circumstances. To be entitled to prospective relief, he must again be involved

>in a train collision involving multiple fatalities in Tangipahoa Parish, which is investigated by the local sheriff's department, and in which the officers decide to test [plaintiff] without the presence of additional factors indicating impairment. The risk posed by the occurrence of these events is too speculative.

*Id*.

## II. The Plaintiffs cannot show any continuing harm from past alleged wrongdoing or any imminent, substantial risk that they will be subjected to the same injuries in the future.

Although the Plaintiffs allege a variety of past wrongful acts by the Defendants, they do not allege any "continuing injury" that would support a claim for present injunctive relief. *See Stringer*, 2019 WL 5955321, at *2; *see also Lyons*, 461 U.S. at 102. Nor can the Plaintiffs show any real and immediate threat that they will again be subjected to the same alleged injuries. Notably, the Individual Plaintiffs who were no longer witnesses in pending criminal cases at the time the Second Amended Complaint was filed (Renata Singleton, Marc Mitchell, Fayona Bailey, and Tiffany LaCroix) did not even allege that they faced any imminent or ongoing risk of future harm, presumably recognizing that such an allegation would be highly implausible. Now that the criminal cases involving the other three Individual Plaintiffs (Lazonia Baham, Jane Doe, and John Roe) have concluded, their allegations of imminent or ongoing risk of harm are similarly implausible.

Even assuming for the sake of argument that the Individual Plaintiffs' allegations of wrongdoing involving material-witness warrants and DA subpoenas are true (which is expressly denied), they cannot show that they are "immediately in danger of sustaining some direct injury." *Lyons*, 461 U.S. at 102 (quotation omitted). None of the Individual Plaintiffs are material witnesses in any pending criminal case, and no person associated with OPDA is seeking to compel their attendance at trials or private meetings or otherwise communicate with them. To suffer future injury as a result of the alleged wrongdoing, each of the Individual Plaintiffs would, at a minimum,

have to witness or be the victim of another crime yet choose not to cooperate with the prosecution. It is "no more than speculation" to suggest that this will happen, *see Lyons*, 461 U.S. at 108, and there is no reason why the likelihood of it happening to the Individual Plaintiffs would be particularly high compared to the general population.

For the same reasons, Silence Is Violence's vague allegations suggesting a risk of future harm fall far short of the "real and immediate threat" of future injury needed to confer standing to seek injunctive relief against specific individuals. *See Society of Separationists*, 959 F.2d at 1285. Silence Is Violence has not identified any specific Individual Defendant who allegedly injured it by forcing it to "redirect its resources to remedy and prevent harms to its clients," Doc. No. 52 at ¶ 444, and it has certainly given no reason to believe that any specific Individual Defendant will cause such injury in the immediate future. Furthermore, any suggestion that Silence Is Violence faces a threat of future harm due to an ongoing official policy of using "DA subpoenas" would be undermined by the Plaintiffs' own allegations admitting that OPDA prosecutors have been instructed by the First Assistant to avoid using "Notice to Appear" documents and instead send a letter that "does not include overt threats of jail or files and does not resemble an official court order." Doc. No. 52 at ¶¶ 77–80.

### III. The possibility that the Plaintiffs will suffer future injury *by the same Defendants* is even more speculative, particularly in light of the fact that five of the Individual Defendants are no longer employed by OPDA.

As speculative as the prospect of future harm to the Plaintiffs is, the prospect of future harm *by the same Defendants* is even more speculative. Most notably, five of the Individual Defendants are no longer working as prosecutors for OPDA.[9] Thus, even if the Plaintiffs could prove that OPDA has or had an "unconstitutional policy of using extrajudicial and unlawful means to coerce,

---

[9] *See* Declaration of Graymond Martin at ¶¶ 10–14.

arrest, and imprison crime victims and witnesses," Doc. No. 52 at 2, they could not show any risk at all of suffering injury at the hands of people who no longer work for OPDA. And even with respect to the Individual Defendants who are still employed by OPDA, the chance that any of the Plaintiffs would be a victim or witness to a crime being prosecuted by the same Defendant is highly improbable.

## CONCLUSION

Because the Plaintiffs cannot show any continuing harm as a result of alleged past wrongdoing or any imminent, substantial risk of future harm at the hands of the Individual Defendants, they have no standing to seek injunctive relief against the Individual Defendants. Accordingly, the Individual Defendants are entitled to partial summary judgment with respect to the Plaintiffs' requests for injunctive relief.

Respectfully submitted,

 /s/ Matthew J. Paul
Richard C. Stanley, 8487
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
STANLEY, REUTER, ROSS, THORNTON
  & ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069

*Counsel for Leon Cannizzaro (in his individual capacity); Graymond Martin; David Pipes; Iain Dover; Jason Napoli; Arthur Mitchell; Tiffany Tucker; Michael Trummel; Matthew Hamilton; Inga Petrovich; Laura Rodrigue; and Sarah Dawkins*