UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENATA SINGLETON, ET AL.,<br>*Plaintiffs* | CIVIL ACTION<br>NUMBER:  17-10721 |
| VERSUS | SECTION:  "H" (1) |
| LEON CANNIZZARO, ET AL.,<br>*Defendants* | JUDGE JANE TRICHE MILAZZO<br><br>MAGISTRATE JUDGE<br>JANIS VAN MEERVELD |

## ORDER AND REASONS

Before the Court is Renata Singleton's Motion to Quash the Individual Defendants' Subpoena to Dr. Ronald McClendon, Jr. (Rec. Doc. 162). For the following reasons, the Motion is GRANTED.

## Background

In this 42 U.S.C. §1983 action, the plaintiffs challenge as unconstitutional the Orleans Parish District Attorney's practice of using their own "subpoenas" to "coerce" victims and witnesses into meeting with prosecutors and arresting them if they refuse to talk. The defendants are Leon Cannizzaro in his individual capacity and in his official capacity as District Attorney of Orleans Parish as well as the following assistant district attorneys in their individual capacities: Graymond Martin, David Pipes, Iain Dover, Jason Napoli, Arthur Mitchell, Tiffany Tucker, Michael Trummel, Matthew Hamilton, Inga Petrovich, Laura Rodrigue, Sarah Dawkins, and unknown defendant John Doe who allegedly participated in a meeting with plaintiff Singleton at the Orleans Parish District Attorney's Office.  According to the Complaint, Renata Singleton is an accountant and mother of three. She is also a victim of domestic violence. She alleges that in 2014, after her boyfriend smashed her phone, he was arrested and released the same day. Shortly thereafter she spoke to a victim-witness advocate from the District Attorney's Office and informed

her that she had three children, was paid by the hour, had ended her relationship with her perpetrator, and did not want to pursue charges. On April 21, 2015, an investigator with the District Attorney's Office left at Ms. Singleton's door two documents styled as subpoenas demanding she appear for questioning with the District Attorney on April 24, 2015. A friend in law enforcement informed Ms. Singleton she had not been properly served and Ms. Singleton did not go to the District Attorney's office on April 24; defendant Mitchell applied for a material witness warrant on the same day. Judge Robin Pittman issued the arrest warrant and set a bond of $100,000. Police appeared at Ms. Singleton's home to arrest her, though ultimately left without arresting her when Ms. Singleton's law enforcement friend promised to accompany her to the District Attorney's Office the following day. Ms. Singleton went to the District Attorney's Office but refused to answer any questions without a lawyer present. She was arrested and brought to Orleans Parish Prison.  Because she could not afford the $100,000 bond, she spent five days in Orleans Parish Prison during which time she says she lost eight pounds. When she was released, she was subject to an 8:00 p.m. curfew and put on an ankle monitor. Her perpetrator had been released months earlier on a $3,500 secured bond; he plead guilty and was sentenced to one year of inactive probation with no jail time. Once she had been jailed, Ms. Singleton was never asked to testify. Ms. Singleton's mugshot and arrest record remain publicly available online. She alleges that she is currently looking for a job as an accountant and is afraid the arrest will prevent her from being hired. She alleges she is afraid to ever call the police again.

On November 6, 2019, the defendants issued a subpoena to Dr. Ronald McLendon Jr., Ms. Singleton's primary care physician, seeking all documents concerning the medical or psychological treatment of Ms. Singleton from June 2, 2015 to the present. Ms. Singleton has moved to quash the subpoena, arguing that defendants are not entitled to every document

concerning her medical or psychological treatment over the past four-and-a-half years. She points out that none of the allegations in the Second Amended Complaint refer to her medical or psychological treatment. Nor does she intend to put forward any specific medical evidence related to her claims. She submits that any reasonable person would be distraught after suffering what defendants did to her, but there is no reason for medical evidence to prove her emotional distress. She argues that in such a situation, the psychotherapist-patient privilege should not be deemed waived. She submits that even if defendants are correct that she has put her psychological condition at issue, other sensitive medical information unrelated to her psychological condition is not relevant. Finally, she requests that if medical records are ordered produced, they be subject to a protective order designating them as confidential and limiting their disclosure. She also requests that her counsel be the recipient of the medical records to ensure they are marked confidential and redacted for any clearly irrelevant or personally identifying information.

Defendants oppose. They point out that per Ms. Singleton's initial disclosures, she seeks to recover "damages for emotional distress and mental anguish." In her interrogatory responses, Ms. Singleton identified Dr. McLendon as a physician from whom she received counseling or treatment in connection with the allegations in the complaint. Accordingly, they insist, the subpoena seeks relevant and discoverable information. They argue they are entitled to explore non-psychological medical care as well as other medical care around the same time that could provide context or even an alternative cause for the harm she alleges she suffered. Defendants argue that courts in the Fifth Circuit have not found the psychotherapist-patient privilege remains intact when emotional distress damages are asserted. Defendants note that they do not oppose a protective order designating the medical records as confidential, however they do oppose the records being provided to plaintiffs' counsel in the first instance. They insist there is no justification to allow

3

unilateral redactions by plaintiffs' counsel, adding that personally identifying information will be adequately protected from public disclosure by the issuance of a protective order.

Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. The Rule requires consideration of the following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. In assessing proportionality, the comments explain that with these new amendments, courts should still consider "the significance of the substantive issues, as measured in philosophic, social, or institutional terms. Thus the rule recognizes that many cases in public policy spheres . . . may have importance far beyond the monetary amount involved." Fed. R. Civ. Proc. 26 advisory committee's 2015 Amendment notes. For example, courts have recognized "that a public policy against the unnecessary public disclosure of tax returns indicates that a Court should not require the production of tax returns where the information sought is readily obtainable by other means or from other sources." Biliske v. Am. Live Stock Ins. Co., 73 F.R.D. 124, 126 n.1 (W.D. Okla. 1977).

Prior to the 2000 amendments, the Federal Rules provided for discovery of nonprivileged matter "relevant to the subject matter involved in the pending actions." The 2000 amendments

deleted the quoted language, limiting the scope of discovery to nonprivileged matters "relevant to the claim or defense of any party" and allowing for discovery "of any matter relevant to the subject matter involved in the action" only upon a showing of good cause. Fed. R. Civ. Proc. 26; see XTO Energy, Inc. v. ATD, LLC, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *12–13 (D.N.M. Apr. 1, 2016) (analyzing the progressive rule changes); see also 8 Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2008 (3d ed.). The change "signal[ed] to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signal[ed] to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. Proc. 26 advisory committee's notes to 2000 amendment.  The committee explained that the parties should "focus on the actual claims and defenses involved in the action," but that a variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Id. Following the 2015 amendments to the Rules (which removed reference "to the subject matter involved in the action" entirely), courts have concluded that "[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense.'" XTO Energy, Inc. v. ATD, LLC, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *17 (D.N.M. Apr. 1, 2016) (quoting State Farm Mut. Auto. Ins. Co. v. Fayda, No. 14CIV9792WHPJCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), aff'd, No. 14CV9792, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016)); Walker v. H & M Henner & Mauritz, L.P., No. 16 CIV. 3818 (JLC), 2016 WL 4742334, at *2 (S.D.N.Y. Sept. 12, 2016).

Thus, while construing relevance broadly, this Court is anchored by the parties' pleadings. "To implement the rule that discovery must be relevant to the claim or defense of any party, district

courts have examined the relationship of the requested discovery and the facts it is intended to uncover to the specific claims and defenses raised by the parties." Thibault v. BellSouth Telecommunications, Inc., No. CIV.A. 07-200, 2008 WL 4808893, at *2 (E.D. La. Oct. 30, 2008) (M.J. Wilkinson). For example, in reviewing the magistrate judge's discovery order, a district court explained that evaluating "the relevancy determination necessarily begins with an examination of [plaintiff's] claim in this case." Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc., No. CIV.A. 02-3398, 2006 WL 378523, at *4 (E.D. La. Feb. 17, 2006) (J. Zainey). The court looked to the claim plead and the way the plaintiff had defined its claim throughout the proceedings. Id. The plaintiff itself had been pursuing a very specific claim of breach of contract arising out of the defendant's alleged failure to obtain a signature. Id. The court observed that the plaintiff had attempted to broaden its claim by amending its complaint, but the court had denied that motion. Id. Thus, the court limited discovery to the specific claim the plaintiff had plead and had been pursuing, and the defenses raised by that claim. Id.

The dispute here concerns a plaintiff's medical records. It is undisputed that when a plaintiff claims damages resulting from emotional distress, her medical records may be discoverable. For example, courts have found that such records can "help the Defendant assess the Plaintiff's emotional distress claim and may provide the defendant with an alternative explanation for the Plaintiff's emotional distress claim." Bacharach v. SunTrust Mortg., Inc., No. CIV.A. 14-0962, 2015 WL 1843007, at *7 (E.D. La. Apr. 22, 2015).[1] However, the court must reject the defendants' assertion that such medical records are always relevant and proportional to the needs of a case whenever a plaintiff alleges emotional distress. For example, in Victoria W. v. Larpenter, a case cited by the defendants, the court held that only medical records reflecting plaintiff's

---

[1] Of note, in the Bacharach case, the plaintiff had not specifically objected to production of her medical records. 2015 WL 1843007, at *7.

diagnosis with manic depression, bipolar disorder, and borderline personality disorder were relevant to her claim for emotional distress damages. No. CIV. A. 00-1960, 2001 WL 674156, at *2 (E.D. La. June 14, 2001). The court sustained plaintiff's relevance objection to subpoenas that provided no time or type of treatment limitations. Id.; see Sedaghatpour v. California, C 07-1802 WHA (MEJ), 2007 WL 4259214, at *2 (N.D. Cal. Dec. 3, 2007) (modifying a subpoena for plaintiffs' medical records where plaintiff asserted a claim for intentional infliction of emotional distress to require production of only "documents related to treatment for Plaintiff's mental health and any physical condition related to her mental health symptoms").

Here Ms. Singleton argues that her mental health records are protected from disclosure because "'garden variety' emotional distress allegations are not deemed to waive" the psychotherapist-patient privilege. St. John v. Napolitano, 274 F.R.D. 12, 19 (D.D.C. 2011). Although courts in this circuit have not enforced a psychotherapist-patient privilege to prevent discovery,[2] the court finds the analysis in St. John to be instructive. The St. John court recognized that some "courts have held that 'patients only waive the privilege by affirmatively placing the substance of the advice or communication directly in issue.'" Id. (quoting Koch v. Cox, 489 F.3d 384, 390 (D.C. Cir. 2007)). Other courts "have held that a plaintiff places his or her medical condition at issue and waives the psychotherapist-patient privilege simply by making a claim for emotional distress." Id. The St. John court employed a "middle ground approach," drawing a "distinction between claims for 'garden variety'[3] emotional distress and more severe emotional

---

[2] E.g., Stogner v. Sturdivant, No. CIV.A. 10-125-JJB-CN, 2011 WL 4435254, at *5 (M.D. La. Sept. 22, 2011) ("[B]y putting one's medical condition at issue in a lawsuit, a plaintiff waives any privilege to which he may have otherwise been entitled as to his privacy interests in his medical records.").

[3] Defendants cite Williams v. United States Environmental Services, LLC, for the proposition that emotional distress damages claims are relevant even when "a plaintiff is only seeking 'garden variety' emotional distress damages." No. CV 15-168-RLB, 2016 WL 684607, at *10 (M.D. La. Feb. 18, 2016). The Williams court made this statement without any reference to legal authority. The case, like those cited by Ms. Singleton, is not a Fifth Circuit or Eastern District of Louisiana case, and it is not binding on this court. The better approach is to consider on a case by case basis whether the mental health records are relevant and proportional to the needs of the case. While the court may

distress allegations." Id.  "Under this approach, '[w]here a plaintiff merely alleges 'garden variety' emotional distress and neither alleges a separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe distress, that plaintiff has not placed his/her mental condition at issue to justify a waiver of the psychotherapist-patient privilege.'" Id.  (quoting Koch v. Cox, 489 F.3d 384, 390 (D.C. Cir. 2007)).  The court observed that courts have developed factors for determining whether the plaintiff's claims are garden variety or more severe. Id.  For example, the following factors would indicate the plaintiff had put her mental condition in controversy:

> "(1) a cause of action for intentional or negligent infliction of emotional distress;
> (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim
> of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to
> support a claim of emotional distress; and/or (5) plaintiff's concession that his or
> her mental condition is 'in controversy.'"

Id. (quoting Turner v. Imperial Stores, 161 F.R.D. 89 (S.D. Cal. 1995)).  The St. John court found these factors useful for considering whether the emotional distress claim was "garden variety."

Here, too, the court finds the factors identified by the court in St. John useful for determining whether a plaintiff has put her mental condition in controversy such that her medical records are relevant to the litigation. The cases cited by defendants are not inconsistent with this approach. For example, in Victoria W., where mental health records were found discoverable, plaintiff had been diagnosed with manic depression, bipolar disorder, and borderline personality disorder. 2001 WL 674156, at *2. In Stogner, the plaintiff asserted a claim under 42 U.S.C. §1983 for personal injuries sustained by her husband as a result of the alleged battery, torture, and wrongful death inflicted upon him by certain sheriff's deputies. No. CIV.A. 10-125-JJB-CN, 2011 WL 4435254, at *1 (M.D. La. Sept. 22, 2011). She also asserted a claim for negligent infliction of

---

have been satisfied that the mental health records in Williams were discoverable, the same result does not
necessarily follow in every other case.

emotional distress. In addition to seeking damages for her "emotional distress, mental anguish, and suffering," she also sought "medical expenses." Id. She testified that although she had pre-existing medical conditions, they were worsened by her husband's death and her health care providers told her so. Id. at *5. In Tanner v. BD LaPlace, LLC, the district court found "[t]he Magistrate Judge was not unreasonable in determining that the plaintiff's medical records are relevant, and that the plaintiff waived the privilege by putting his medical condition at issue by bringing the suit and seeking damages based on his emotional distress." Id. But the reference to emotional distress was not a major part of the decision. In fact, plaintiff had alleged that the defendant violated the Americans with Disabilities Act ("ADA") by requiring him to undergo an examination for a perceived disability. Id. at *2. Thus, the court found the medical history was relevant to determining whether he was qualified for the job, an essential element of his ADA claim. Id. Each of these cases support this court's holding that something more than the words "emotional distress damages" in the complaint is required before a defendant is granted wholesale access to a plaintiff's medical records.

### 2. Rule 45 Subpoenas

Under Rule 45, the Court may quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception of waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. Proc. 45(d)(3); see Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 817–18 (5th Cir. 2004). The moving party bears the burden of showing that compliance with the subpoena would be unduly burdensome. Wiwa, 392 F.3d at 818; Informd, LLC v. DocRX, Inc., No. MC 16-83-JJB-EWD, 2016 WL 7478962, at *3 (M.D. La. Dec. 29, 2016). In assessing the undue burden, the Court considers "(1)

relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." Wiwa, 392 F.3d at 818. Where a non-party is subject to a subpoena, "the court may also consider the expense and inconvenience to the non-party." Wiwa, 392 F.3d at 818.   The Court should also consider whether the requested information is available from any other source. Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 377 (5th Cir. 2004) abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010).

Typically, a subpoena is challenged by the party subpoenaed. The Fifth Circuit has held that defendants could not challenge a subpoena issued to a third party because they were not "in possession of the materials subpoenaed and have not alleged any personal right or privilege with respect to the materials subpoenaed." Brown v. Braddick, 595 F.2d 961, 967 (5th Cir. 1979). "[A] party, although not the person to whom a subpoena is directed and not in possession or control of the requested materials, does have such standing if he has a personal right or privilege in respect to the subject matter of the subpoena or a sufficient interest in it. Kiger v. Plaisance Dragline, No. CIV A 04-3153, 2006 WL 3228289, at *1 (E.D. La. Nov. 2, 2006). For example, courts have held that a party has sufficient personal right and interest in his or her financial and medical information that a party has standing to challenge a subpoena seeking financial and medical information. Mims v. B&J Martin, Inc., No. CV 17-07324, 2018 WL 1064411, at *2 (E.D. La. Feb. 25, 2018)

Additionally, courts held that a party "has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash a third-party subpoena." Bounds v. Capital Area Family Violence Intervention Ctr., Inc., 314 F.R.D. 214, 218–19 (M.D. La. 2016). Rule 26(c)

provides that the Court "may, for good cause," protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" by issuing an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. Proc. 26(c)(1)(D). To satisfy "good cause," [t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1325–26 n. 3 (5th Cir. 1978).

Further, Rule 26(b)(2) requires that the court, on motion or on its own, limit discovery (1) that is unreasonably cumulative or duplicative or can be obtained from another source that is more convenient, less burdensome, or less expensive; (2) when the party seeking discovery has had ample opportunity obtain the information by discovery in the action; or (3) when the discovery is outside the scope of Rule 26(b)(1) . Fed. R. Civ. P. 26(b)(2)(C)(i). As discussed above, under Rule 26(b)(1), discovery must be relevant and proportional to the needs of the case.

### 3. Analysis

Here, Ms. Singleton seeks damages for emotional distress and mental anguish. But she has not asserted a claim for intentional or negligent infliction of emotional distress. She does not allege any specific mental or psychiatric injury or disorder or an unusually severe emotional distress. She did not consult with any mental health professionals. The only specific distress described in her complaint is that she is afraid her arrest will prevent her from being hired and she is afraid to ever call the police again. She has not claimed any medical expenses as damages. In the motion to quash and at oral argument, Ms. Singleton's counsel made clear that she does not intend to put her medical records into evidence and she does not intend to submit an expert opinion regarding Ms. Singleton's actual mental condition following the experiences she alleges in her complaint. At

most, Ms. Singleton intends to present an expert who can speak to the type of emotional distress that any person would feel if they went through the experiences that Ms. Singleton claims here. Without commenting on the admissibility of such testimony, it is clear in any case that Ms. Singleton does not intend to present her own medical provider as an expert concerning her mental health condition. There is no indication that Ms. Singleton has provided any testimony indicating a reliance on treatment with Dr. McClendon in support for her generic mental anguish and emotional distress claim. Although Ms. Singleton's counsel could not guarantee that Ms. Singleton would not mention her treatment with Dr. McClendon if asked on cross examination, counsel represented that there would be no direct testimony by Ms. Singleton related to any specific mental health diagnoses. Counsel represented that Ms. Singleton's emotional distress damages fall into three buckets: professional and reputational harm, ongoing fear of police and prosecutors, and a distrust of the court system. Upon consideration of the circumstances of this case, it is clear that Ms. Singleton's claim for emotional distress and mental anguish damages is not a claim for special damages, but a general-damages claim. The type of damages she claims are not related to any mental health treatment, and the court finds she has not put her mental condition at issue such that her medical records are made relevant to the claims or defenses asserted here.

Even if her medical records were deemed relevant, the proportionality factors prevent discovery of them. In light of the nature of the emotional distress alleged by Ms. Singleton, the importance of her medical records to resolving the issues in this action is minimal at best. Moreover, the burden of disclosure outweighs its likely benefit. Ms. Singleton's concern about guarding the privacy of her medical records, which she describes as "highly sensitive," is sincere and significant enough that she has deliberately plead and committed to only recitation of "everyman" emotional distress. In so doing, she has likely lowered a damages award.  This inures

to the defendants' benefit. It further lessens the cost of defense; there will be no need to depose Dr. McLendon or to retain their own examining physician.  That is two fewer experts for trial, as well.  In this rather unique context, the burden associated with disclosure of plaintiff's medical files, even if only to defense counsel or under a protective order, is not proportional to the needs of the case.

The court adds that Defendants' approach would automatically open a plaintiff's medical, psychological, and/or emotional history to discovery in every §1983 claim seeking general or compensatory damages regardless of how generic the allegations of distress associated with civil rights violation the plaintiff alleges. Allowing defense lawyers peruse a plaintiff's confidential medical and psychological records for other contributors to or explanations for the distress in every case could have a chilling effect on victims being willing to come forward and report. The better approach, and the one this court finds to be mandated by the Federal Rules of Civil Procedure, is to require that a plaintiff's medical records are only discoverable if they are relevant to the claims and defenses in the action and proportional to the needs of the case. Here, they are not.

Conclusion

For the foregoing reasons, the court finds the subpoenaed documents are neither relevant nor proportional to the needs of the case. Accordingly, the Motion to Quash is GRANTED; Defendants shall notify Dr. McClendon's office of this Court's ruling and if any records are nonetheless received by defendants' counsel, they shall provide them to Ms. Singleton's counsel without reviewing them.

New Orleans, Louisiana, this 23rd day of January, 2020.

Janis van Meerveld<br>United States Magistrate Judge

13