UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENATA SINGLETON; MARC MITCHELL; LAZONIA BAHAM; JANE DOE; TIFFANY LACROIX; FAYONA BAILEY; JOHN ROE; and SILENCE IS VIOLENCE,<br><br>    *Plaintiffs*,<br><br>v.<br><br>LEON CANNIZZARO, in his official capacity as District Attorney of Orleans Parish and in his individual capacity; GRAYMOND MARTIN; DAVID PIPES; IAIN DOVER; JASON NAPOLI; ARTHUR MITCHELL; TIFFANY TUCKER; MICHAEL TRUMMEL; MATTHEW HAMILTON; INGA PETROVICH; LAURA RODRIGUE; SARAH DAWKINS; and JOHN DOE, in their individual capacities,<br><br>    *Defendants*. | Civil Action No. 17-10721<br><br>Section H<br>Judge Jane Triche Milazzo<br><br>Division 1<br>Magistrate Judge Janis van Meerveld |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER**

    Plaintiffs submit this Reply Memorandum in response to the arguments and proposed stipulation and order submitted in Defendants' Objection to Plaintiffs' Motion for a Protective Order. Doc. No. 186. Defendants have made clear that they do not object in general[1] to the entry of a protective order governing the parties' exchange and use of confidential documents and information in this matter. *See* Deft. Opp. at 1. However, there remain several areas of dispute between the parties' respective proposed orders.

---

[1] Just as Defendants (correctly) state that Plaintiffs have not produced certain documents because of the absence of a protective order in this case, Deft. Opp at 1, Plaintiffs note that Defendants have also withheld relevant documents pending the entry of such order. Plaintiffs additionally note that the delay in the negotiations for a stipulated order is equally attributable to Defendants.

1

Defendants' specific objections to Plaintiffs' proposed order are: 1) that a non-disclosure provision to protect Plaintiff Jane Doe is "unprecedented," "atypical," and "vague;" 2) that a non-disclosure provision is unnecessary because Defendants have not, to date, violated Ms. Doe's privacy interests; 3) that the OPDA's right to use any Protected Material in any criminal prosecution, without notice to Plaintiffs or the Court, must be reserved; 4) that the inclusion of "failure to designate" as a basis for a challenge is improper; and 5) that the shifting of the burden to the Challenging Party is improper. As discussed below, Plaintiffs have ample good cause for the non-disclosure provision, for excluding language that would permit Defendants to use Protected Material in pursuing criminal action against Plaintiffs, and for including a clause that enables them to require Defendants to designate material as confidential. Further, Defendants have misread Plaintiffs' Proposed Protective Order, which does <u>not</u> shift the burden of persuasion to the Challenging Party except under exceptional circumstances. For the reasons outlined herein and in Plaintiffs' Memorandum of Law in Support of their Motion, Doc. No. 183-1, the Court should reject Defendants' arguments and enter Plaintiffs' Proposed Protective Order, Doc. No. 183-2.

### A. Non-Disclosure of Jane Doe's Identity

Plaintiffs have demonstrated good cause for including a non-disclosure provision, ¶ 16, in their Proposed Protective Order. Defendants first object that this section is "atypical" and "extraordinary" to include a non-disclosure provision in such an order. Deft. Opp. at 4-5. Plaintiffs' attorneys are, of course, well aware of the importance of narrowly tailoring any court order that could be conceived of as a prior restraint of speech. But Plaintiffs have previously demonstrated that Jane Doe is in an extraordinarily precarious position were her name to be publicized. *See* Motion to Proceed by Pseudonym, Doc. No. 14. Defendants have not attempted to dispute this fact, nor could they.

The non-disclosure language in Plaintiffs' proposed order is narrowly tailored to prevent public disclosure of Jane Doe's name and other identifying information. *See* Plaintiffs' Proposed Protective Order, at ¶ 16. In a case with as many different named parties and moving pieces as this

one, it hardly seems unreasonable to ask that Defendants be directed to take care to protect the identity of Jane Doe. While Defendants have argued that the provision is too "vague," Plaintiffs' intention is simple—as explained in Plaintiffs' motion for Jane Doe to proceed pseudonymously, they seek prevent irreparable damage to Jane Doe's psychological health and well-being should intimate details of her child sexual abuse become public. *See* Doc. 14-1 at 3-4 (explaining importance of shielding child abuse victims from publicity).[2] It is difficult to understand why Defendants are unable to parse Plaintiffs' use of the term "Personally Identifying Information," or to agree that such information should not be publicly disclosed. Plaintiffs would be amenable to adding a definition of PII, such as the one found on the New Orleans Police Department website regarding identity theft. *See* "Identity Theft," New Orleans Police Department Operations Manual, Chapter 41:39, available at http://www.nola.gov/getattachment/NOPD/Policies/Chapter-41-39-Identity-Theft-EFFECTIVE-12-10-17.pdf/ (last visited Jan. 31, 2020).[3]

Protective orders in other federal civil cases can, when necessary, include a non-disclosure provision where publicizing a pseudonymous plaintiff's identity would cause a substantial risk of embarrassment and intrusion. *See, e.g.*, *Corbitt v. Taylor*, Case No. 18-cv-91, "Protective Order," ECF Doc. No. 33 (M.D. Ala., May 18, 2018) (including as presumptively confidential "any document containing plaintiff John Doe's actual name" without limiting it to documents exchanged in discovery); *Ray v. Ohio Dept of Health*, Case No. 18-cv-272, "Order," ECF Doc. No. 9 (S.D. Ohio, April 5, 2018) (granting plaintiff's motion for a protective order to prevent public disclosure of her identity); *Jones v. Suffolk County*, Case No. 15-cv-111, "Protective Order,"

---

[2] Defendants' assertion that Plaintiffs have some ulterior motive for seeking to shield Jane Doe's identity from public disclosure is puzzling and baseless. The distinction between describing Jane as a "victim" and stating that she was "named as a victim" is meaningless and has no bearing on either the merits of her claim or the protection of her information that Plaintiffs have requested.

[3] The N.O.P.D.'s definition of Personal identifying information is: "Includes, but is not limited to, an individual's: (a) Social security number (b) Driver's license number (c) Checking account number (d) Savings account number (e) Credit card number (f) Debit card number (g) Electronic identification number (h) Digital signatures (i) Birth certificate (j) Date of birth (k) Mother's maiden name (l) Armed forces identification number (m) Government issued identification number (n) Financial institution account number."

ECF Doc. No. 70-1 (E.D.N.Y., Aug. 31, 2015) (despite defendants' prior knowledge of pseudonymous plaintiff, stipulating not to further disclose his identity). Defendants state that they have acted in good faith in shielding Ms. Doe's identity since the filing of this suit. This is commendable, but also shows that this non-disclosure provision is not overly burdensome on Defendants. Indeed, compared to the extraordinary harm that would be wreaked upon Ms. Doe if she were to have her identity exposed, the burden on the Defendants is small.[4]

### B. Use of Protected Material by Law Enforcement

Defendants' proposed stipulation and order differs from Plaintiffs' in another critical respect: at paragraph 20, Defendants' version states "Nothing in this Order shall in any way limit or impair the right of the Orleans Parish District Attorney's office to use or disclose to any law enforcement agency Protected Material regarding a potential violation of the law, for legitimate law enforcement purposes or pursuant to a statutory or regulatory obligation, without notice to any party." Defendants have made clear, here and in conversations with Plaintiffs' counsel, that with this language they are explicitly preserving their right to use Protected Material in arrests and prosecutions, including, potentially, prosecutions of the Plaintiffs in this case. However, Defendants' brief does not provide good cause, legal precedent, or other reasoning for this addition.

At the outset, the Defendants' brief posits that the OPDA should be given special deference as a party to this matter because it is charged with making reasonable efforts to interview crime victims. Deft. Opp. at 2, citing La Rev. Stat. § 46:1844(C). But Plaintiffs have alleged that the Defendants have had a policy of <u>not</u> acting reasonably when pursuing interviews with victims and witnesses. Plaintiffs have not been accused of wrongdoing, but rather are parties asserting that OPDA abused its power to, among other things, gain an advantage in prosecuting cases. Indeed,

---

[4] Defendants are arguably already constrained by, at the very least, the Louisiana Crime Victims Bill of Rights. *See* LA Rev. Stat., Title 46, § 1844(W). The provision in Plaintiffs' Proposed Protective Order is simply making this explicit.

Defendants have never denied that in at least several hundred cases, they failed to seek a judicial signature in "subpoenas" ostensibly drafted pursuant to Article 66 of the Louisiana Rules of Criminal Procedure. Defendants seek to have the Court ignore this extraordinary wrongdoing, and trust OPDA that, should it uncover some potentially criminal activity during this litigation, it will ineluctably make a well-reasoned decision as to whether that activity rises to the level of an offense that ought to be prosecuted. Unfortunately, past behavior indicates that such information, no matter how small and irrelevant, could be exploited in this litigation to OPDA's advantage. OPDA's actions against the Plaintiffs make it clear that the Court simply cannot trust OPDA to consistently exercise its discretion in good faith.

The Defendants have argued that the Court should enter their proposed stipulation and order, with its paragraph 20, in place of the Plaintiffs' proposal, in part because Defendants' version is "similar" to the order entered in *Jones v. Cannizzaro*, Case No. 18-cv-00503 (E.D. La., Sec. H), and *Jones* "has not required additional judicial intervention . . . to address confidentiality issues." Deft. Opp at 2. However, the facts in *Jones* stem from the OPDA's longstanding and repeated violations of Mr. Jones' rights under *Brady v. Maryland* many years ago. 373 U.S. 83 (1963); *see Jones v. Cannizzaro*, Compl., Doc. No. 1. This case is focused on a different set of troubling and unlawful policies within the OPDA office. In their Second Amended Complaint, Plaintiffs have described OPDA's use of threats, fraudulent documents, and other coercive tactics to intimidate crime victims and witnesses into submitting to prosecutors' directives. *See, e.g.*, Second Am. Compl. ("SAC") at ¶¶ 177-87, 193-228, 287-303. Indeed, multiple Plaintiffs in this case have First Amendment Retaliation claims against OPDA that survived the Defendants' Motion to Dismiss. *See* Order on Defendants' Motion to Dismiss, Doc. No. 116, at 51.

One of the very defendants in this case, Jason Napoli, was recused from involvement in the criminal prosecution of an investigator from the Orleans Public Defender's (OPD) office precisely *because*, given the "high level of animosity" between Mr. Napoli and attorneys from OPD, a reasonable person would believe that Mr. Napoli had a personal interest in the case that would "impair his ability to fairly and impartially handle this case." *Blume*, Order on Mtn. to

5

Recuse, Exh. C to Kovel Decl., Doc 183-6 at 8. Because Plaintiffs' allegations and claims in this case emerge from, and are intertwined with, allegations about the OPDA's frequent use of threats and arrests as retaliation,[5] it is entirely appropriate to have a different protective order than the one that was entered in *Jones*. In other words, Defendants have not demonstrated good cause to include their paragraph 20, and Plaintiffs have demonstrated good cause to exclude it.

While Plaintiffs maintain that, given the allegations in the SAC and, e.g., the testimony elicited in the recusal *Blume* hearing, a provision allowing for the use of Protected Material for law enforcement purposes would be inappropriate, in the alternative Plaintiffs respectfully request that Defendants be required to notify this Court prior to any use of Protected Material in a criminal prosecution, in order to deter its use in a retaliatory arrest or prosecution of a party or witness in this case.

### C. Failure to Designate

Section C, paragraph 6 of Plaintiffs' Proposed Protective Order provides that "Any Party may challenge a designation of, or failure to designate, confidentiality at any time." Defendants' objection to this language is that it is atypical and could lead to "wasteful motion practice." Deft. Opp. at 4. But this language is designed to address the unique situation that is present here—as law enforcement agents, Defendants have access to (and likely possession of) sensitive confidential information about the Plaintiffs. Each individual Plaintiff was, after all, the target of OPDA action because of their position as a crime victim or witness. Because Defendants possess confidential information about Plaintiffs to which Plaintiffs may not have access and are thus not

---

[5] Defendants try to wave away the remarkable testimony elicited in the *Blume* case by saying simply that it is "unrelated" to the case at bar. Deft. Opp. at 2. Plaintiffs have not included facts regarding the arrest and prosecution of Taryn Blume in their Second Amended Complaint; however, the testimony from the *Blume* recusal hearing shows a willingness on the part of at least one named defendant to threaten arrest and prosecution against defense attorneys, investigators, and crime victims and witnesses, and thus is certainly relevant to Plaintiffs' claims about the OPDA's conduct as alleged in the complaint. *See, e.g.*, Transcript, Exh. B to Kovel Decl., Doc. No. 183-5, at 48-49.

in a position to designate, in a case where the claims include the use of Defendants' law enforcement position to retaliate against Plaintiffs, it is appropriate for Defendants to have the obligation to protect sensitive information and for Plaintiffs to have the ability to enforce that obligation. Such a provision will protect any possible public disclosure of discovery materials containing confidential information regarding Plaintiffs that is not in Plaintiffs' possession.

### D. Parties' Burden of Persuasion

Defendants argue that Plaintiffs are proposing to shift the customary burden in a proceeding under the protective order such that the "Challenging Party [must] establish that the material is not entitled to protection," and that this is "improper." Deft. Opp. at 4 (citing Doc. 183-2 at ¶ 6(c)). However, Defendants have misread Plaintiffs' Proposed Protective Order, which only shifts the burden to the Challenging Party in cases where the Challenging Party elects to file a motion challenging a confidentiality designation outside the time limits and default rule of Section C.

Paragraph 6(b) of Plaintiffs' Proposed Protective Order, in contrast, states the default rule for judicial intervention. It requires the Designating Party to file a motion to retain confidentiality and accordingly maintains the burden on the Designating Party to establish that the material is entitled to protection. *See generally* Doc 183-2 at ¶ 6. Subsequently, paragraph 6(c) allows that, "*in addition*, the Challenging Party may file a motion challenging a confidentiality designation at any time," and requires the Challenging Party departing from the default rule to explain why the challenged material is not entitled to protection. *Id.* (emphasis added). This is a sensible requirement designed to limit wasteful motion practice (as reinforced by the subsequent language in the same section that states that frivolous or improper challenges may expose the Challenging Party to sanctions). The allocations of burdens in Plaintiffs' Proposed Protective Order is thus appropriate, and should be adopted by this Court.

**Conclusion**

Defendants and Plaintiffs agree that the Parties would benefit from a general protective order in this case. For the reasons outlined in this Memorandum and in Plaintiffs' initial Memorandum of Law, the Court should enter the Plaintiffs' Proposed Protective Order so that discovery can proceed without further delay.

Respectfully submitted this 3rd day of February, 2020,

*/s/ Mariana Kovel*
Mariana Kovel
Admitted *pro hac vice*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (646) 905-8870
mkovel@aclu.org

Somil Trivedi
Admitted *pro hac vice*
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Tel: (202) 715-0802

Katherine Chamblee-Ryan
Tara Mikkilineni
Ryan C. Downer
Olevia Boykin*
Admitted *pro hac vice*
Civil Rights Corps
910 17th Street NW
Washington, D.C. 20006
Tel. (202) 656-5198

Bruce Hamilton
La. Bar No. 33170
ACLU Foundation of Louisiana
New Orleans, LA 70156
Tel. (504) 522-0628

COUNSEL FOR PLAINTIFFS

* Admitted to practice solely in Texas. Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c), with supervision by Alec Karakatsanis, a member of the D.C. Bar.