# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
April 21, 2020
Lyle W. Cayce
Clerk

No. 19-30197

RENATA SINGLETON; MARC MITCHELL; LAZONIA BAHAM; TIFFANY LACROIX; FAYONA BAILEY; SILENCE IS VIOLENCE; JANE DOE; JOHN ROE,

      Plaintiffs - Appellees

v.

LEON A. CANNIZZARO, JR., in his official capacity as District Attorney of Orleans Parish and in his individual capacity; DAVID PIPES; IAIN DOVER; JASON NAPOLI; ARTHUR MITCHELL; TIFFANY TUCKER; MICHAEL TRUMMEL; INGA PETROVICH; LAURA RODRIGUE; MATTHEW HAMILTON; GRAYMOND MARTIN; SARAH DAWKINS,

      Defendants - Appellants

Appeal from the United States District Court for
the Eastern District of Louisiana

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

    This is a case about prosecutorial immunity. The Orleans Parish District Attorney and several assistant district attorneys ("Defendants") appeal the district court's denial of absolute immunity on claims arising from their use of fake "subpoenas." They also appeal the district court's denial of their motion to dismiss several of Plaintiffs' claims. We AFFIRM in part and DISMISS in part.

Case: 19-30197    Document: 00515414386    Page: 2    Date Filed: 05/13/2020
Case 2:17-cv-10721-JTM-JVM   Document 197-2   Filed 05/13/20   Page 2 of 17

No. 19-30197

## I. Background

Plaintiffs allege that for years, prosecutors at the Orleans Parish District Attorney's Office (the "Office"), under the direction of District Attorney Leon Cannizzaro, used fake "subpoenas" to pressure crime victims and witnesses to meet with them. These documents were labeled "SUBPOENA" and were marked with the Office's official seal. They directed recipients "to appear before the District Attorney for the Parish of Orleans" and warned that "A FINE AND IMPRISONMENT MAY BE IMPOSED FOR FAILURE TO OBEY THIS NOTICE." The Office's use of the fake subpoenas violated Louisiana law, which requires prosecutors to channel proposed subpoenas through a court. *See* LA. CODE CRIM. PROC. ANN. art. 66.[1]

A brief summary of each relevant Plaintiff's[2] experience with the fake subpoenas is in order. Plaintiff Renata Singleton is a domestic violence victim who refused to speak with prosecutors about a domestic incident. She alleges that an investigator from the Office then delivered two fake subpoenas to her home. The fake subpoenas demanded that she appear at the Office for questioning. Singleton did not comply.

---

[1] Article 66 provides:

> Upon written motion of the attorney general or district attorney setting forth reasonable grounds therefor, the court may order the clerk to issue subpoenas directed to the persons named in the motion, ordering them to appear at a time and place designated in the order for questioning by the attorney general or district attorney respectively, concerning any offense under investigation by him.

*Id.*

[2] In addition to the individual Plaintiffs who received fake subpoenas, Plaintiff Silence Is Violence ("SIV") also brings subpoena-related claims. SIV is a nonprofit victim advocacy organization that alleges that it diverted resources to protecting crime victims from Defendants' "coercive tactics." This case also involves other Plaintiffs whose claims are not relevant to this appeal.

No. 19-30197

Plaintiff Lazonia Baham's daughter's boyfriend was murdered. The Office charged a suspect with committing the murder. Baham spoke at her home and over the telephone with two investigators from the Office about the murder. One of the investigators allegedly pressured Baham to provide testimony that contradicted her memory of the events. In the following months, Baham received several fake subpoenas demanding that she appear for private meetings at the Office. Baham refused to comply. A Defendant assistant district attorney ("ADA") then applied for a material witness warrant based on Baham's refusal to meet with the Office. Baham was jailed for over a week as a result. She has since testified twice in pretrial proceedings in the case, apparently pursuant to lawful subpoenas. The case has not yet gone to trial.

Plaintiff Jane Doe is a victim of child molestation and child pornography. While the criminal case against the suspect was pending, a Defendant ADA and an investigator delivered a fake subpoena to Doe's home demanding that she appear for questioning at the Office. The ADA threatened to seek Doe's arrest if she did not comply. Due to her fear of being jailed, Doe met privately with the ADA at the Office. The defendant in the related criminal case entered a guilty plea fifteen months after Doe received the fake subpoena.

Plaintiffs Fayona Bailey and Tiffany LaCroix were both potential witnesses in two different murder cases. They each received a fraudulent subpoena demanding a private meeting at the Office prior to trial. Both Bailey and LaCroix retained counsel, who moved to quash the fake subpoenas. In response to the motions to quash, prosecutors withdrew the subpoenas. Neither Bailey nor LaCroix was ever called to testify.

Plaintiffs sued Defendants in federal court, asserting various federal constitutional claims for monetary and injunctive relief against the assistant

3

Case: 19-30197 Document: 00515414386 Page: 4 Date Filed: 05/13/2020
Case 2:17-cv-10721-JTM-JVM Document 197-2 Filed 05/13/20 Page 4 of 17

No. 19-30197

district attorneys and Cannizzaro in his individual capacity (collectively, "Individual Defendants"), and against Cannizzaro in his official capacity. Plaintiffs also asserted individual- and official-capacity claims under Louisiana state law for abuse of process (Count VIII) and fraud (Count IX).

Defendants moved to dismiss. They contended that absolute immunity barred each of Plaintiffs' damages claims against Individual Defendants. They asserted that five of those same claims should also be dismissed based on qualified immunity. Finally, they argued that all of Plaintiffs' official-capacity claims should be dismissed for failure to state a claim on which relief could be granted.

The district court granted absolute or qualified immunity for Individual Defendants on all but two of Plaintiffs' federal individual-capacity damages claims.[3] It later granted qualified immunity on the two remaining federal individual-capacity claims for monetary damages that it allowed to proceed. As relevant here, the district court denied absolute immunity for Individual Defendants only with respect to Plaintiffs' claims arising from Individual Defendants' creation and use of the fake subpoenas. The court reasoned that absolute immunity did not cover Individual Defendants' "*ultra vires* conduct," which was not "intimately associated with the judicial phase of the criminal process" because Individual Defendants had "side-stepped the judicial process" and "operated outside of the process legally required by the Louisiana Code of

---

[3] Absolute and qualified immunity protect only *individuals* from claims for *damages*; they do not bar official-capacity claims or claims for injunctive relief. *See Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) ("The rule in this circuit is that a Louisiana district attorney, sued in his or her official capacity, is a local government official who is not entitled to Eleventh Amendment immunity."); *Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991) ("Neither absolute nor qualified personal immunity extends to suits for injunctive or declaratory relief under § 1983."). Thus, Plaintiffs' claims (1) for damages and injunctive relief against Cannizzaro in his official capacity and (2) against Individual Defendants for injunctive relief remain.

Case: 19-30197 Document: 00515414386 Page: 5 Date Filed: 05/13/2020
Case 2:17-cv-10721-JTM-JVM Document 197-2 Filed 05/13/20 Page 5 of 17

No. 19-30197

Criminal Procedure." The district court also granted in part and denied in part Defendants' motion to dismiss the remaining claims for failure to state a claim on which relief could be granted. Defendants appealed.

## II. Jurisdiction & Standard of Review

The district court had federal question jurisdiction over Plaintiffs' federal claims. 28 U.S.C. § 1331. It had supplemental jurisdiction over Plaintiffs' state-law claims. 28 U.S.C. § 1367.

We have jurisdiction over Defendants' interlocutory appeal from the district court's denial of absolute immunity. *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 438 (5th Cir. 2015). But as discussed in Section III.B. *infra*, we lack jurisdiction over Defendants' appeal of the district court's rulings on the merits of Plaintiffs' claims.

We review a district court's denial of a motion to dismiss de novo. *Loupe v. O'Bannon*, 824 F.3d 534, 536 (5th Cir. 2016). "In determining immunity, we accept the allegations of [the plaintiffs'] complaint as true." *Id.* (quoting *Kalina v. Fletcher*, 522 U.S. 118, 122 (1997)).

## III. Discussion

Individual Defendants argue that they are absolutely immune from Plaintiffs' subpoena-related claims. They also ask us to reverse the district court's denial of their motion to dismiss Plaintiffs' remaining claims on the merits. We conclude that (1) at this early, motion to dismiss stage, Individual Defendants are not entitled to absolute immunity for Plaintiffs' subpoena-related state-law claims and (2) we lack jurisdiction to consider the merits of Plaintiffs' claims.

5

Case: 19-30197    Document: 00515414386    Page: 6    Date Filed: 05/13/2020
Case 2:17-cv-10721-JTM-JVM   Document 197-2   Filed 05/13/20   Page 6 of 17

No. 19-30197

## A. Absolute Immunity

Individual Defendants first claim that they are absolutely immune from Plaintiffs' claims arising from the use of the fake subpoenas.[4] Although they may yet be able to prevail on this claim, we disagree with their argument at this stage of the case.

### 1. *Overview of Absolute Prosecutorial Immunity for § 1983 Claims*

The Supreme Court extended absolute immunity for § 1983 claims to state prosecutors in *Imbler v. Pachtman*, 424 U.S. 409 (1976). In that case, a criminal defendant whose conviction had been overturned sued the prosecutor, several police officers, and a fingerprint expert, alleging "a conspiracy among them unlawfully to charge and convict him." *Id.* at 415–16. But the Court concluded that state prosecutors are absolutely immune from § 1983 damages claims based on activities "intimately associated with the judicial phase of the criminal process." *Id.* at 430. Thus, the Court held that a state prosecutor who acts "within the scope of his duties in initiating and pursuing a criminal prosecution" is absolutely immune from § 1983 claims for violating a "defendant's constitutional rights." *Id.* at 410.

In discussing absolute immunity, "[t]he Supreme Court has made clear that 'it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance.'" *Loupe*, 824 F.3d at 538 (quoting *Kalina*, 522 U.S. at 125). "Thus, 'the actions of a prosecutor are not absolutely immune merely because they are performed

---

[4] The only remaining claims that implicate absolute immunity are Plaintiffs' state-law claims. Louisiana law tracks federal law on absolute prosecutorial immunity. *See Knapper v. Connick*, 681 So. 2d 944, 947, 950 (La. 1996) ("[W]e have harmonized our own state immunity rules with federal immunity principles in the past"); *accord Tickle v. Ballay*, 259 So. 3d 435, 438–39 (La. Ct. App. 2018).

Case: 19-30197　　Document: 00515414386　　Page: 7　　Date Filed: 05/13/2020
Case 2:17-cv-10721-JTM-JVM　　Document 197-2　　Filed 05/13/20　　Page 7 of 17

No. 19-30197

by a prosecutor.'" *Loupe*, 824 F.3d at 538 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

Instead, the Supreme Court has taken a "functional approach" to absolute immunity that "emphasize[s] that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991). More specifically, the Court distinguishes between (1) actions taken "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [the prosecutor's] role as an advocate for the State," and (2) "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley*, 509 U.S. at 273.

In *Buckley*, the petitioner sued "prosecutors for allegedly fabricating evidence during the preliminary investigation of a crime and making false statements at a press conference announcing the return of an indictment." *Id.* at 261. The Supreme Court held that the prosecutors were not absolutely immune for allegedly fabricating evidence because they lacked "probable cause to arrest [the] petitioner or initiate judicial proceedings" at the time of the alleged fabrication. *Id.* at 274. Thus, the prosecutors' "mission at that time was entirely investigative in character." *Id.* Importantly, however, the Court also recognized that "a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination, . . . a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." *Id.* at 274 n.5; *see also id.* at 276 ("When the functions of prosecutors and detectives are the same, . . . the immunity that protects them is also the same.").

We have adhered to this functional approach to absolute immunity. We have held that conduct protected by absolute immunity "is not limited 'only to

7

Case: 19-30197　　Document: 00515414386　　Page: 8　　Date Filed: 05/13/2020
Case 2:17-cv-10721-JTM-JVM   Document 197-2   Filed 05/13/20   Page 8 of 17

No. 19-30197

the act of initiati[ng judicial proceedings] itself and to conduct occurring in the courtroom,' but instead includes all actions 'which occur in the course of [the prosecutor's] role as an advocate of the State.'" *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (per curiam) (quoting *Buckley*, 509 U.S. at 272–73). Thus, prosecutors are absolutely immune even for "[w]ilful or malicious prosecutorial misconduct . . . if it occurs in the exercise of their advocatory function." *Cousin*, 325 F.3d at 635. But by the same token, "state prosecutors are not entitled to absolute immunity when they perform functions other than their quasi-judicial functions of 'initiating prosecutions and presenting the State's case.'" *Marrero v. City of Hialeah*, 625 F.2d 499, 507 (5th Cir. 1980) (quoting *Imbler*, 424 U.S. at 431).

The policy underlying absolute prosecutorial immunity is twofold. First, "the 'special nature' of the responsibilities of those engaged in the judicial process requires that such persons be accorded absolute immunity when they participate in that process." *Marrero*, 625 F.2d at 507 (quoting *Butz v. Economou*, 438 U.S. 478, 511 (1978)); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (noting that "public trust" would suffer if prosecutors were thinking about their own liability in making prosecutorial decisions). This is relevant because

> The prosecutor's immunity is derived from the absolute immunity accorded judges and grand jurors, an immunity necessitated by the concern that these actors in the judicial process required by law to make important decisions regarding the initiation, conduct, and merit of controversies which often excite "the deepest feelings" of the parties would be intimidated in the exercise of their discretion by the fear of retaliatory lawsuits brought by angry defendants. A prosecutor's fear of liability could, in a variety of ways, seriously undermine the criminal justice system's goal of accurately determining the guilt or innocence of defendants.

*Marrero*, 625 F.2d at 507 (citation omitted) (quoting *Butz*, 438 U.S. at 509).

Case: 19-30197    Document: 00515414386    Page: 9    Date Filed: 05/13/2020
Case 2:17-cv-10721-JTM-JVM   Document 197-2   Filed 05/13/20   Page 9 of 17

No. 19-30197

But "when a prosecutor acts outside his quasi-judicial role, he is not making decisions comparable to those of a judge or grand juror. Thus, subjecting him to liability for such decisions will not interfere to the same degree with the effective functioning of the criminal judicial system." *Marrero*, 625 F.2d at 508; *see also Van de Kamp*, 555 U.S. at 343 ("We have held that absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, . . . when the prosecutor makes statements to the press, . . . or when a prosecutor acts as a complaining witness in support of a warrant application."). So "[o]nly discretion that is quasi-judicial in nature requires absolute insulation from suit because only such discretion is so crucial to the effectiveness of the truth-finding process to outweigh the countervailing policy that government officials should be subject to suit for violations of civil rights." *Id.* For this reason, "when a prosecutor makes an investigative decision" comparable to that of a police officer—such as whether to order a search and seizure—the prosecutor is not entitled to absolute immunity. *Id.* Instead, he is given the same immunity a police officer would have: qualified immunity. *Id.*

"The second reason justifying absolute immunity for prosecutors engaged in quasi-judicial activities is that 'the safeguards built into the judicial system tend to reduce the need for private damage actions as a means of controlling unconstitutional conduct.'" *Marrero*, 625 F.2d at 509 (quoting *Butz*, 438 U.S. at 512). But "when a prosecutor steps outside the confines of the judicial setting, the checks and safeguards inherent in the judicial process do not accompany him, and thus there is greater need for private actions to curb prosecutorial abuse and to compensate for abuse that does occur." *Marrero*, 625 F.2d at 509.

9

No. 19-30197

## 2. *Whether Individual Defendants Are Entitled to Absolute Immunity*

Plaintiffs allege that Individual Defendants used fraudulent subpoenas to pressure crime victims and witnesses to meet with them outside of court. Both the Ninth Circuit and our court have issued decisions involving somewhat analogous facts. We discuss the relevant decisions in turn.

In *Lacey v. Maricopa County*, the Ninth Circuit held that a prosecutor who had improperly issued fake subpoenas was not entitled to absolute immunity for his conduct. 693 F.3d 896, 913–14 (9th Cir. 2012). The prosecutor had created purported subpoenas and issued them to a news organization without the prior grand jury or court approval required by Arizona law. *Id.* at 909. The plaintiffs alleged that the prosecutor's avoidance of the judicial subpoena process was intentional. *Id.* at 914. In denying absolute immunity, the Ninth Circuit stated that "[p]rosecutors generally enjoy absolute immunity for their conduct before grand juries because that conduct is integral to 'the judicial phase of the criminal process.' But we can find no justification for extending absolute immunity to the acts of a prosecutor designed to *avoid* the 'judicial phase.'" *Id.* at 913 (citations omitted) (quoting *Imbler*, 424 U.S. at 430).

The Ninth Circuit emphasized that usually, "the judicial process . . . serves as 'a check on prosecutorial actions.'" *Lacey*, 693 F.3d at 914 (quoting *Burns*, 500 U.S. at 492). But that oversight had failed in *Lacey* "because the prosecutor acted on his own authority, rather than securing the approvals required by Arizona law." 693 F.3d at 914. Thus, even if authoring a subpoena might, in another context, be considered part of a prosecutor's duties, "by avoiding judicial scrutiny, [the prosecutor's] actions were one step 'further removed from the judicial phase of criminal proceedings.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)). The court concluded: "Where the

10

Case: 19-30197    Document: 00515414386    Page: 11    Date Filed: 05/13/2020
Case 2:17-cv-10721-JTM-JVM    Document 197-2    Filed 05/13/20    Page 11 of 17

No. 19-30197

prosecutor has side-stepped the judicial process, he has forfeited the protections the law offers to those who work within the process." *Lacey*, 693 F.3d at 914.

Similarly, in *Loupe*, we held that although the prosecutor enjoyed absolute immunity for her decision to prosecute the plaintiff, she was not absolutely immune for ordering his warrantless arrest. 824 F.3d at 539–40. We noted that in ordering a warrantless arrest, a prosecutor

> acts directly to deprive someone of liberty; he steps outside of his role as an advocate of the state before a neutral and detached judicial body and takes upon himself the responsibility of determining whether probable cause exists, much as police routinely do. Nothing in the procuring of immediate, warrantless arrests is so essential to the judicial process that a prosecutor must be granted absolute immunity.

*Id.* at 540 (quoting *Lacey*, 693 F.3d at 914). Recalling the Ninth Circuit's analysis in *Lacey*, we concluded that "[o]rdering a warrantless arrest is not intimately associated with the judicial phase of the criminal process; it is conduct outside the judicial process and therefore is not protected by absolute immunity." *Loupe*, 824 F.3d at 540.

Defendants argue that creating and issuing the fake subpoenas was protected prosecutorial conduct because it "relate[d] to the core prosecutorial function of preparing evidence and testimony for trial." But the Supreme Court has squarely rejected this broad interpretation of absolute immunity: "Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive." *Burns*, 500 U.S. at 495; *see also Buckley*, 509 U.S. at 276 (declining to extend immunity to investigative conduct merely because it might later "be retrospectively described as 'preparation'" for a judicial proceeding).

11

No. 19-30197

Based upon the pleadings before us at this time, it could be concluded that Defendants' creation and use of the fake subpoenas was not "intimately associated with the judicial phase of the criminal process," but rather fell into the category of "those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *See Hoog-Watson v. Guadalupe Cty.*, 591 F.3d 431, 438 (5th Cir. 2009) (internal quotation marks and citations omitted). This is so for two reasons. First, Defendants allegedly used the subpoenas to gather information from crime victims and witnesses outside of court.[5] "Investigation . . . ha[s] historically and by precedent been regarded as the work of police, not prosecutors, and [it does] not become [a] prosecutorial function[] merely because a prosecutor has chosen to participate." *Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (internal quotation marks omitted); *see also id.* at 173–74 (denying absolute immunity and noting that "a prosecutor has no power to subpoena a

---

[5] Judging from the operative complaint, it is not clear whether charges were filed in the domestic violence case against Singleton's partner when Singleton received the fake subpoenas. We recognize that Plaintiffs Baham, Doe, Bailey, and LaCroix received subpoenas while related criminal cases were pending but, based upon the allegations before us, the fake subpoenas were never used to secure their attendance or testimony in any judicial proceeding. Thus, their situations are not governed by *Cousin*, in which the defendant prosecutor told a witness to falsely implicate a suspect and practiced with him on how to testify at trial while the trial was pending. *See Cousin*, 325 F.3d at 634–35. In *Cousin*, we concluded that the prosecutor was entitled to absolute immunity because his actions were "intended to secure evidence that would be used in the presentation of the state's case at the pending trial of an already identified suspect, not to identify a suspect or establish probable cause." *Id.* But there the actions occurred during a pending trial and were designed to shape a witness's testimony at that trial. Here, by contrast, Individual Defendants' alleged use of the fake subpoenas on Plaintiffs occurred earlier in the process. Baham received several fake subpoenas over the course of several months after she stopped taking calls from investigators. The facts before us do not support an argument that the reasons for sending Baham the fake subpoenas qualify for absolute immunity. Doe met privately with a Defendant ADA at the Office but does not allege that the ADA expressed any intent to use her testimony in the pending trial. Both Bailey and LaCroix received fake subpoenas demanding private meetings at the Office, but the complaint does not allege that prosecutors sought to use Bailey or LaCroix's testimony at trial. Indeed, prosecutors withdrew the fake subpoenas and never called Bailey or LaCroix to testify.

Case: 19-30197    Document: 00515414386    Page: 13    Date Filed: 05/13/2020
Case 2:17-cv-10721-JTM-JVM   Document 197-2   Filed 05/13/20   Page 13 of 17

No. 19-30197

witness to appear outside of judicial proceedings to answer questions from the prosecution"). Defendants' information-gathering is more analogous to investigative police work than advocatory conduct.

Defendants assert that their use of the fake subpoenas is like the *Imbler* "prosecutor's out-of-court effort 'to control the presentation of his witness' testimony,'" which the Supreme Court held was "fairly within his function as an advocate." But they overlook the context of the Court's statement. In *Imbler*, the petitioner argued that the prosecutor had engaged in investigative, not prosecutorial, activity when he requested "during a courtroom recess that [police] hold off questioning [a witness] about a pending bad-check charge until after [the witness] had completed his testimony." 424 U.S. at 430 n.32. The Supreme Court determined that "[s]een in its proper light," the prosecutor's "request of the officers was an effort to control the presentation of his witness' testimony, a task fairly within his function as an advocate." *Id.*

Here, in contrast, Defendants were not attempting to control witness testimony during a break in judicial proceedings. Instead, they allegedly used fake subpoenas in an attempt to pressure crime victims and witnesses to meet with them privately at the Office and share information outside of court. Defendants never used the fake subpoenas to compel victims or witnesses to testify at trial. Such allegations are of investigative behavior that was not "intimately associated with the judicial phase of the criminal process." *See Imbler*, 424 U.S. at 430.

Defendants also note that the fake subpoenas were all issued after charges had been filed in the underlying criminal cases. It is true that the Supreme Court in *Buckley* relied on the prosecutors' *lack* of probable cause to conclude that they were not absolutely immune for allegedly fabricating evidence. *See Buckley*, 509 U.S. at 274. But the Court also recognized that even after probable cause has been found, "a prosecutor may engage in 'police

Case: 19-30197    Document: 00515414386    Page: 14    Date Filed: 05/13/2020
Case 2:17-cv-10721-JTM-JVM    Document 197-2    Filed 05/13/20    Page 14 of 17

No. 19-30197

investigative work' that is entitled to only qualified immunity." *Id.* at 274 n.5. The Supreme Court has never held that the timing of a prosecutor's actions controls whether the prosecutor has absolute immunity. Instead, the Court focuses on the function the prosecutor was performing. *See id.* at 273; *Van de Kamp*, 555 U.S. at 342. Defendants' use of the fake subpoenas in an attempt to obtain information from crime victims and witnesses outside the judicial context falls into the category of investigative conduct for which prosecutors are not immune. *Hoog-Watson*, 591 F.3d at 438 ("[A] prosecutor does not enjoy absolute immunity for acts of investigation or administration." (alteration in original) (internal quotation marks and citation omitted)).

In using the fake subpoenas, Individual Defendants also allegedly intentionally avoided the judicial process that Louisiana law requires for obtaining subpoenas. *See* LA. CODE CRIM. PROC. ANN. art. 66. Their creation and use of the fake subpoenas thus fell "outside the judicial process." *Loupe*, 824 F.3d at 540; *see also Lacey*, 693 F.3d at 914 ("[B]y avoiding judicial scrutiny, [the prosecutor's] actions were one step 'further removed from the judicial phase of criminal proceedings.'" (quoting *Malley*, 475 U.S. at 342)). Construing the allegations in the light most favorable to Plaintiffs, the creation and use of the fake subpoenas constituted investigative conduct for which Individual Defendants would not be absolutely immune.

Denying Individual Defendants dismissal based upon absolute immunity for their creation and use of the fake subpoenas also accords with the policy underlying absolute prosecutorial immunity. Individual Defendants allegedly violated the rights of victims and witnesses with no cases pending against them. Denying them absolute immunity will not deter prosecutors' future decisions to charge specific defendants. Moreover, because Individual Defendants issued the subpoenas without court supervision, they operated free of "the checks and safeguards inherent in the judicial process." *Marrero*, 625

Case: 19-30197    Document: 00515414386    Page: 15    Date Filed: 05/13/2020
Case 2:17-cv-10721-JTM-JVM   Document 197-2   Filed 05/13/20   Page 15 of 17

No. 19-30197

F.2d at 509. As a result, "there is greater need for private actions to curb prosecutorial abuse and to compensate for abuse that does occur." *Id.* This case is likely Plaintiffs' only means of legally redressing the harms they suffered as a result of Individual Defendants' alleged conduct. At the same time, further facts may develop that support Individual Defendants' defense. We leave open whether Individual Defendants may satisfy their burden of showing absolute immunity at the summary judgment stage. *See Hoog-Watson*, 591 F.3d at 437 n.6 (stating in the summary judgment context that "the defendant who pleads the affirmative defense of absolute prosecutorial immunity bears the burden of proving that the conduct at issue served a prosecutorial function"). We offer no opinion on the future; we simply affirm the district court's decision presented to us.

For the foregoing reasons, we hold that the district court did not err in denying the Individual Defendants absolute immunity for their alleged creation and use of fake subpoenas at this stage of the case.

## B. Merits Jurisdiction

Defendants also appeal the district court's denial of their motion to dismiss a number of claims for failure to state a claim on which relief may be granted. But we lack jurisdiction over this part of Defendants' appeal.

Defendants first argue that "[b]ecause the district court denied qualified immunity with respect to several claims against several Defendants," we have jurisdiction to consider the merits of those claims. *See Bosarge*, 796 F.3d at 439 (stating that an appellate court reviewing a Rule 12(b)(6) motion to dismiss on qualified immunity grounds has "'jurisdiction to pass on the sufficiency of [the] pleadings,' which is an 'issue of law' that 'is both inextricably intertwined with, and directly implicated by, the qualified immunity defense'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 672–73 (2009)). Defendants also contend that

15

Case: 19-30197 Document: 00515414386 Page: 16 Date Filed: 05/13/2020
Case 2:17-cv-10721-JTM-JVM Document 197-2 Filed 05/13/20 Page 16 of 17

No. 19-30197

even though Plaintiffs' official-capacity claims and claims for injunctive relief are "not directly at issue in this immunity appeal, the Court can and should consider and grant relief as to these claims to the extent that they turn on issues closely related to, or inextricably intertwined with, the immunity issues."

But as a result of a recent ruling by the district court, no qualified immunity issues are currently before us. The only remaining immunity question is whether Individual Defendants are absolutely immune from Plaintiffs' *state*-law claims concerning the subpoenas. This question does not implicate the merits of Plaintiffs' federal claims. We lack jurisdiction to consider the merits of Plaintiffs' federal claims at this stage of the appeal.

Defendants also ask us to exercise pendent appellate jurisdiction to review the merits of Plaintiffs' remaining state-law claims. They rely on cases in which this court, reviewing appeals from denials of qualified immunity on federal claims, exercised pendent jurisdiction to review the merits of related state-law claims.

But pendent jurisdiction is inapposite here. "Only where essential to the resolution of properly appealed collateral orders should courts extend their [collateral-order] jurisdiction to rulings that would not otherwise qualify for expedited consideration." *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 51 (1995) (quoting Riyaz A. Kanji, *The Proper Scope of Pendent Appellate Jurisdiction in the Collateral Order Context*, 100 YALE L.J. 511, 530 (1990)). Defendants do not contend that resolving the legal sufficiency of Plaintiffs' state-law claims is essential to our resolution of the absolute immunity issue. We thus lack jurisdiction to consider the merits of Plaintiffs' state-law claims.

No. 19-30197

## IV. Conclusion

We AFFIRM the district court's holding that Individual Defendants are not entitled to absolute immunity for their alleged creation and use of fraudulent subpoenas. We DISMISS the remainder of Defendants' appeal for lack of jurisdiction.