UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENATA SINGLETON; MARC MITCHELL; LAZONIA BAHAM; JANE DOE; TIFFANY LACROIX; FAYONA BAILEY; JOHN ROE; and SILENCE IS VIOLENCE,<br><br>  *Plaintiffs*,<br><br>v.<br><br>LEON CANNIZZARO, in his official capacity as District Attorney of Orleans Parish and in his individual capacity; GRAYMOND MARTIN; DAVID PIPES; IAIN DOVER; JASON NAPOLI; ARTHUR MITCHELL; TIFFANY TUCKER; MICHAEL TRUMMEL; MATTHEW HAMILTON; INGA PETROVICH; LAURA RODRIGUE; SARAH DAWKINS; and JOHN DOE, in their individual capacities,<br><br>  *Defendants*. | Civil Action No. 17-10721<br><br>Section H<br>Judge Jane Triche Milazzo<br><br>Division 1<br>Magistrate Judge Janis van Meerveld |

**PLAINTIFF'S RESPONSE TO STATEMENT OF UNCONTESTED FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
<u>RENATA SINGLETON'S CLAIMS AGAINST INDIVIDUAL DEFENDANTS</u>**

  Defendants Arthur Mitchell, David Pipes, and Graymond Martin (collectively, the "Individual Defendants"), have filed a statement of purportedly uncontested facts as required by Local Rule 56.01. As set forth further in this Response, Plaintiffs respond that Individual Defendants' statement of facts contains numerous statements that are, in fact, contested. This Response addresses each purportedly uncontested fact in turn.

  1. Ms. Singleton has never produced copies of any document ordering her to appear at the Orleans Parish District Attorney's Office.

1

**Plaintiff's Response:** OBJECTION. Object to the extent Individual Defendants suggest that this fact is dispositive of whether or not Ms. Singleton received a document ordering her to appear at the Orleans Parish District Attorney's Office. Object that it is immaterial to any issue in dispute in this motion, as whether Ms. Singleton preserved and is now able to produce the fraudulent subpoena she received years prior to this action does not bear on the question of whether she actually received one. Without waiving that objection, admit that Ms. Singleton has been unable to locate or produce the fraudulent "subpoena" directing her to appear at the District Attorney's Office without court authorization.

2. Between the date when Vernon Crossley was arrested in November 2014 and the date when Ms. Singleton was arrested in May 2015, Ms. Singleton recalls receiving only two documents at her home that concerned Mr. Crossley's case: a "notice" that was left at her home on a date that she does not remember, and a subpoena that was served on her son at her home in late May 2015. *See* Exhibit 1, Singleton Depo., at 63–66.

**Plaintiff's Response:** Admit. By way of further response, Ms. Singleton understood the "notice" that was left at her home to be a court document connected with Mr. Crossley's case and further understood that it was not properly served. *See* Ex. 1 (Singleton Decl.) ¶ 2; Ex. 2 (Singleton Dep.) at 61:1-7.

3. The subpoena that Ms. Singleton's son received in May 2015 was a valid court-issued subpoena ordering Ms. Singleton to appear in court. *See* Exhibit 1, Singleton Depo., at 85; *see also* Doc. No. 52 at ¶ 204.

**Plaintiff's Response:** OBJECTION. Object as this statement is not material to the issue of the fake subpoena that Ms. Singleton received. Without waiving that objection, admit.

4. Ms. Singleton does not believe that the "notice" she received was illegal or fraudulent. *See* Exhibit 1, Singleton Depo., at 78–79.

**Plaintiff's Response:** OBJECTION. Object as this statement calls for a legal conclusion. Object as well that the evidence cited here was obtained in response to a vague and ambiguous question. Moreover, the statement above is immaterial to any issue in dispute in this case. Whether Ms. Singleton understood the fake subpoena she received at the time to be illegal or fraudulent is irrelevant to a) whether it is illegal or fraudulent and b) the elements of abuse of process. Without waiving the objections, Deny. This statement is ambiguous with regard to its reference to "the 'notice'" and is misleading. When asked whether the document Ms. Singleton found in her living room was "illegal" or "fraudulent"—both legal terms of art—Ms. Singleton testified, "Yeah, the -- yeah, I don't -- I don't know.· I didn't -- I don't think I felt like it was illegal. I just felt like it wasn't the official document," and "No, I didn't think it -- I didn't think it was fraud. I just thought, like, it wasn't official or professional, like I stated." Ex. 2 (Singleton Dep.) at 79:3-20. Further, Ms. Singleton testified that the notice she discovered in her living room was improper. *Id.* at 78:15-79:2.

5. The "notice" that Ms. Singleton recalls receiving "just wasn't professional or official looking"; rather, "it looked like a—like a notice, like a memo." *See* Exhibit 1, Singleton Depo., at 66, 79.

**Plaintiff's Response:** Admit.

6.     The "notice" that Ms. Singleton recalls receiving did not include any seal. *See* Exhibit 1, Singleton Depo., at 61.

**Plaintiff's Response:**  Admit.

7.     Ms. Singleton does not recall whether the "notice" she recalls receiving had the word "subpoena" on it. *See* Exhibit 1, Singleton Depo., at 62.

**Plaintiff's Response**:  Admit.

8.     After Ms. Singleton received the "notice," she showed it to her friend, a police officer who was familiar with subpoenas. Ms. Singleton's friend told her that the document was "probably just a notice telling you that the court date is coming up." *See* Exhibit 1, Singleton Depo., at 58–59.

**Plaintiff's Response:**  Deny.  This statement is misleading.  Ms. Singleton also testified that Ms. Phillips, her friend, told her that because the court document Ms. Singleton received had been left in her door, she had not been properly served and did not have to respond; Ms. Phillips stated that she would also be served with "official papers to let her know to come to court." Ex. 2 (Singleton Dep.) at 59:5-8, 59:12-14, 60:5-8.

9.     Ms. Singleton did not believe that she was required to obey or comply with the "notice" that she recalls receiving. *See* Exhibit 1, Singleton Depo., at 61–62.

**Plaintiff's Response:**  Deny.  This statement is misleading.  Ms. Singleton did not believe she was required to obey or comply with the document because it was not properly served, *not*

4

because she understood it to be a fake subpoena. Moreover, when asked whether it was her understanding that she did not have to comply with the document because she was not properly served, Ms. Singleton responded, "I -- like, I was -- I was just confused. I didn't know exactly where it came from or, you know, how it ended up on my living room floor." Ex. 2 (Singleton Dep.) at 59:9-14.

10. Ms. Singleton did not feel like she would get in trouble if she did not respond to the "notice." *See* Exhibit 1, Singleton Depo., at 62.

**Plaintiff's Response:** OBJECTION. Object to the extent this statement suggests that Ms. Singleton did not understand the document to be a subpoena. Ms. Singleton did not believe she was required to obey or comply with the document because it was not properly served, *not* because she understood it to be a fake subpoena. Without waiving those objections, Admit.

11. Ms. Singleton does not recall what the "notice" ordered her to do, but whatever it might have been, she did not do it. *See* Exhibit 1, Singleton Depo., at 62.

**Plaintiff's Response:** Admit. By way of further response, Ms. Singleton testified that once she realized that the document she had received had not been properly served, she understood that she would be "getting served soon" with official papers. *See* Ex. 2 (Singleton Dep.), at 61:1-7.

12. Ms. Singleton did not consult a lawyer about the "notice" she recalls receiving. *See* Exhibit 1, Singleton Depo., at 62.

**Plaintiff's Response:** Admit. By way of further response, Ms. Singleton testified that once she realized that the document she had received had not been properly served, she understood that she would be "getting served soon" with official papers. *See* Ex. 2 (Singleton Dep.), at 61:1-7.

13. Ms. Singleton does not recall discussing the "notice" with anyone other than her friend Kenyatta. *See* Exhibit 1, Singleton Depo., at 62.

**Plaintiff's Response:** Admit. By way of further response, Ms. Singleton testified that once she realized that the document she had received had not been properly served, she understood that she would be "getting served soon" with official papers. *See* Ex. 2 (Singleton Dep.), at 61:1-7.

14. After discussing the "notice" with her friend Kenyatta, Ms. Singleton "essentially put it out of [her] mind." *See* Exhibit 1, Singleton Depo., at 62.

**Plaintiff's Response:** Admit. By way of further response, Ms. Singleton testified that once she realized that the document she had received had not been properly served, she understood that she would be "getting served soon" with official papers. *See* Ex. 2 (Singleton Dep.), at 61:1-7.

15. Mr. Crossley's case was set for trial on April 24, 2015. *See* Exhibit 6, March 20, 2015 minute entry.

**Plaintiff's Response:** Admit.

16. The criminal court issued subpoenas ordering Ms. Singleton to appear in Section F for trial on April 24, 2015, at 9:00 a.m. *See* Exhibit 7, Instanter subpoena for April 24, 2015; Exhibit 8, CourtNotify subpoena for April 24, 2015.

**Plaintiff's Response:** Admit.

17. The subpoenas delivered to Ms. Singleton's home on April 20–21, 2015, were instanter and CourtNotify subpoenas ordering Ms. Singleton to appear in criminal court for trial on April 24, 2015, not "DA subpoenas" ordering her to appear at the DA's office. *See* Exhibit 2, Mitchell Depo., at 231–233, 238, 242, 245.

**Plaintiff's Response:** Deny. This is clearly an issue of disputed fact. The Material Witness Warrant application filed in criminal court by Mr. Mitchell clearly states that an OPDA investigator "left two subpoenas at the residence for SINGLETON to appear at the District Attorney's Office on April 24, 2015." *See* Ex. 3 (Motion for Material Witness Warrant for R. Singleton) at OPDA 18398. Moreover, senior prosecutor Tiffany Tucker, who worked on Renata Singleton's case, testified: "Renata Singleton, my understanding is that DA subpoenas were used to attempt multiple times to meet with her, and ultimately that information was placed into a Material Witness Warrant motion." *See* Ex. 4 (Tucker Dep.) at 132:16-19.

18. Mr. Mitchell's intention in sending subpoenas to Ms. Singleton on April 20–21, 2015, was to secure her presence in court on April 24, 2015, not to compel her to meet with him privately at the DA's office. *See* Exhibit 2, Mitchell Depo., at 235–238.

**Plaintiff's Response:** Deny. This is clearly an issue of disputed fact. The Material Witness Warrant application filed in criminal court by Mr. Mitchell clearly states that an OPDA

investigator "left two subpoenas at the residence for SINGLETON to appear at the District Attorney's Office on April 24, 2015." *See* Ex. 3 (Motion for Material Witness Bond for R. Singleton) at OPDA 18398. It also notes that Ms. Singleton "failed to appear pursuant to an appointment with the undersigned"; arguably, this reflects Mr. Mitchell's attempt to meet with Ms. Singleton prior to trial. *Id*. at OPDA 18397. Moreover, senior prosecutor Tiffany Tucker, who worked on Renata Singleton's case, testified: "Renata Singleton, my understanding is that DA subpoenas were used to attempt multiple times to meet with her, and ultimately that information was placed into a Material Witness Warrant motion." *See* Ex. 4 (Tucker Dep.) at 132:16-19. The evidence is clearly disputed regarding what Mr. Mitchell's intentions were in the days leading up to trial in the Vernon Crossley case in April 2015.

19. Ms. Singleton filed the present lawsuit on October 17, 2017. *See* Doc. No. 1.

**Plaintiff's Response:** Admit. Ms. Singleton, along with several other Plaintiffs, commenced this lawsuit on October 17, 2017. *See* Dkt. No. 1.

20. Ms. Singleton alleges in the Second Amended Complaint that two unlawful "subpoenas" were left at her door on April 21, 2015, approximately two-and-a-half years before the present lawsuit was filed. *See* Doc. No. 52 at ¶¶ 195–197.

**Plaintiff's Response:** Admit. The Material Witness Warrant application in Ms. Singleton's case clearly states that an OPDA investigator "left two subpoenas at the residence for SINGLETON to appear at the District Attorney's Office on April 24, 2015." *See* Ex. 3 (Motion for Material Witness Bond for R. Singleton) at OPDA 18398. By way of further response, Ms. Singleton did not know that these "subpoenas" were unlawful fake subpoenas until years later,

when she learned that OPDA had sent fake subpoenas to numerous witnesses in Orleans Parish. Ex. 1 (Singleton Decl.) ¶¶ 2, 5.

21. Ms. Singleton has not alleged that Mr. Pipes or Mr. Martin personally sent any fraudulent "DA subpoena" to her or personally directed that such a document be sent to her. *See* Doc. No. 52. Ms. Singleton also has not produced or identified any evidence showing that Mr. Pipes or Mr. Martin took such actions.

**Plaintiff's Response:** Admit that, at this point in the litigation, there is no evidence that Defendant Martin personally directed the fraudulent subpoena be sent to Ms. Singleton (Plaintiffs have not taken the deposition of Mr. Martin to confirm this fact). By way of further response, David Pipes was Mr. Mitchell's supervisor on the case, was closely involved in decisionmaking on the case and advised Mr. Mitchell closely, and generally directed Mr. Mitchell to use fake subpoenas. *See* Ex. 5 (Mitchell Dep.) at 139:2-4, 188:2-20, 246:4-247:20. Moreover, Ms. Singleton alleges that Mr. Martin, in his capacity as a policymaker on fraudulent subpoenas for the office, contributed and conspired to have such documents sent to witnesses including Ms. Singleton. However, Defendant Martin has not yet been deposed and thus the question remains unresolved.

Dated: December 15, 2020                                                     Respectfully Submitted,

                                                                              *s/ Tara Mikkilineni*

| | |
|---|---|
| Katherine Chamblee-Ryan (*pro hac vice*)<br>Tara Mikkilineni (*pro hac vice*)<br>Ryan C. Downer (*pro hac vice*)<br>Laura Gaztambide Arandes (*pro hac vice*)<br>Jeffrey Stein (*pro hac vice*)<br>Civil Rights Corps<br>1601 Connecticut Avenue NW, Suite 800<br>Washington, D.C. 20009<br>Tel: (202) 844-4975 | Mariana Kovel (*pro hac vice*)<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>Tel: (646) 905-8870<br>mkovel@aclu.org |
| Somil Trivedi (*pro hac vice*)<br>American Civil Liberties Union Foundation<br>915 15th Street NW<br>Washington, DC 20005<br>Tel: (202) 715-0802 | Bruce Hamilton<br>La. Bar No. 33170<br>ACLU Foundation of Louisiana<br>1340 Poydras St., Suite 2160<br>New Orleans, LA 70156<br>Tel: (504) 522-0628 |
| Gerald S. Sachs (*pro hac vice*)<br>Venable LLP DC<br>600 Massachusetts Ave. NW<br>Washington, DC 20001<br>Tel: (202) 344-4269 | Sarah S. Brooks (*pro hac vice*)<br>Venable LLP<br>2049 Century Park East, Suite 2300<br>Los Angeles, CA 90067<br>Tel: (310) 229-0408 |
| Allison B. Gotfried (*pro hac vice*)<br>Venable LLP<br>1270 Avenue of the Americas<br>24th Floor<br>New York, NY 10020<br>Tel: (212) 370-6227 | Michael S. Blume (*pro hac vice*)<br>Venable LLP<br>1270 Avenue of the Americas<br>24th Floor<br>New York, NY 10020<br>Tel: (212) 370-5500 |

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that on December 15, 2020, I electronically filed the foregoing Plaintiffs's Response to Statement of Undisputed Facts using the CM-ECF System, which caused notice to be sent to via email to all counsel of record.

*s/ Tara Mikkilineni*
