EXHIBIT 54

```
                                                           Page 1
 1               UNITED STATES DISTRICT COURT

 2           FOR THE EASTERN DISTRICT OF LOUISIANA

 3   _____

 4   RENATA SINGLETON, MARC MITCHELL,
     LAZONIA BAHAM, JANE DOE,
 5   TIFFANY LACROIX, FAYONA BAILEY,
     JOHN ROE and
 6   SILENCE IS VIOLENCE,              Case No.

 7                                     2:17-cv-10721-JTM-JVM

 8          Plaintiffs,

 9   v.

10   LEON CANNIZZARO, et al.,

11          Defendants.

12   _____

13

14               VIDEOTAPED DEPOSITION OF

15               CLINTON GIVENS

16               New Orleans, Louisiana

17               October 13, 2020

18               10:07 a.m. - 2:36 p.m.

19

20          Taken on behalf of the Plaintiffs

21               ****************

22

23   Reported By:

24   Michael J. D'Amato, Registered Merit Reporter

25   Job No. 185110
```

1  her, probably.  I can't -- I can't write a report six
2  months from now assuming what she said, so I would have
3  to take notes when she's speaking.
4      Q.   Would you have been typing it directly into
5  your computer or writing it down --
6      A.   Taking notes, notepad.
7      Q.   I'm going to open up and go back to Exhibit 2
8  and I'm going to go to Bates stamp 10865.  I'm going to
9  zoom in so hopefully you can see this on your phone.
10 I'm midway through the second to last paragraph.
11          Do you see the line that says, "She advised
12 she had seen the footage released to the media and was
13 positive that the van featured was the same she had
14 seen Ike in about 30 minutes prior to the murders on
15 Baudin Street"?
16     A.   Yes.
17     Q.   Could you please just clarify whether that
18 means that the person you believed was Lazonia was on
19 Baudin Street when she saw Ike in the van or that she
20 saw Ike in the van somewhere else 30 minutes prior to
21 the murders that happened on Baudin Street?
22     A.   The murders were on Baudin Street.
23     Q.   Not the reporting?
24     A.   No.  It says, "She advised she had seen the
25 footage released to the media and was positive that the

1  van featured was the same she had seen Ike in about 30

2  minutes prior to the murders that occurred on Baudin

3  Street."

4      It's referencing the murders that occurred on

5  Baudin Street.

6    Q.  It's pretty clear, right?

7    A.  I think so.

8    Q.  At any point during the pendency of the Isaac

9  Jones case did anyone ever ask you to clarify that

10  line?

11    A.  No.

12      MR. STEIN:  Would now be a good time to take a

13    lunch break?

14      THE WITNESS:  Sure.

15      MR. STEIN:  Why don't we take a lunch break

16    now?  Do we want to come back at, does 1:45 work

17    for everyone?

18      THE VIDEOGRAPHER:  We are going off the record

19    at 12:45 p.m.

20      (Discussion off the record)

21      MR. STEIN:  Why don't we come back in 50

22    minutes.  So let's come back at 1:35 p.m.

23      (Recess taken in the proceedings)

24

25

Page 111

1        A F T E R N O O N  S E S S I O N
2                    (1:36 p.m.)
3            THE VIDEOGRAPHER:  We are back on the record
4      at 1:37 p.m.
5  BY MR. STEIN:
6      Q.   Good afternoon, Sergeant Givens.  Prior to
7  that interview on April 29, 2014 had you ever spoken to
8  Lazonia Baham before?
9      A.   No.
10     Q.   You had no idea what her voice sounded like?
11     A.   No.
12     Q.   Do you know what number she called from on
13 that day?
14     A.   I don't remember.
15     Q.   And if that number wasn't written in your file
16 is there anywhere else that that number would be?
17     A.   My guess in the phone records from my work
18 phone, but I don't remember.
19     Q.   What phone number did you have at that time?
20     A.   I couldn't say, honestly.
21     Q.   Did you ever confirm that the number that the
22 person claiming to be Lazonia called from was in fact
23 registered to Lazonia Baham?
24     A.   I did not.
25          MR. FREEMAN:  This is Mr. Freeman.  Object to

1        the question.
2        Q.   When you were discussing your interview of
3   Dinnika we went over the geography of Telemachus and
4   Uptown.  Do you remember that?
5        A.   Yes.
6        Q.   In Lazonia's interview you also stated that
7   she claimed to have seen Isaac Jones in the Uptown
8   area, right?
9        A.   I believe so.
10       Q.   Do you have your report in front of you?
11       A.   I don't.  I had to relocate home to get my
12  charging cord and didn't have time to get back, but the
13  report is on my desk, but I pulled it up on the
14  Internet.  I can look at it.  What page is that?
15       Q.   That is --
16       A.   I found it.  It is page 2 of 37.  I found it.
17       Q.   Do you want to take a look and then let me
18  know?
19       A.   Okay, I put that she stated it was in the
20  Uptown area.
21       Q.   So based on the way that you had transcribed
22  or taken notes about your interview with Dinnika it's
23  perfectly possible that in your interview with Lazonia
24  that Lazonia had also said she saw Ike on Telemachus,
25  is that right?

Page 113

```
 1            MR. FREEMAN:  Objection, calls for
 2      speculation.
 3      A.    She could have simply said the Uptown area.  I
 4 can't say.
 5      Q.    You can't say one way or another?
 6      A.    She could have simply said the Uptown area.
 7      Q.    But you don't know sitting here today whether
 8 she said Uptown area or Telemachus, correct?
 9      A.    All I can tell you what is what my report
10 says, sir.
11      Q.    Right, but remember with Dinnika you had
12 written Uptown --
13      A.    I understand what you are saying but again, I
14 don't have the memory of this report, of this
15 investigation.  I'm given you what I have from memory.
16 What I'm giving you is from my report, so all I can
17 give you is what my report says.
18            The difference with Dinnika, you were able to
19 give me an interview that was recorded and that was my
20 summary.  So I can't say that her mother didn't say the
21 Uptown area.  I can't say.
22      Q.    And my only question, you also can't say that
23 she didn't say Telemachus?
24      A.    I can't say either way, sir.
25      Q.    Did you write down any notes either during or
```

1  after the call with Lazonia?

2  A.  I told you before -- as I told you before the

3  break, I took notes as I was talking to her.

4  Q.  And before the break we talked about how you

5  would often take notes on your notepad?

6  A.  Yes.

7  Q.  And we talked about how all the notes that you

8  would take end up back in the file, is that right?

9  A.  Yes.

10 Q.  So all the notes that you took on your notepad

11 would also be in the file of the case created?

12 A.  Yes.

13 Q.  And in their original form in the file?

14 A.  I would imagine.

15 Q.  And that's because you would never take notes

16 on a notepad and then discard the notepad without

17 preserving it in the file, right?

18 A.  No.

19 Q.  Do you know if you sent any emails or created

20 any other contemporaneous documentation about that call

21 with the person claiming to be Lazonia?

22 A.  Not that I recall.

23 Q.  Did you ever pull the phone records to figure

24 out the phone number that she had called from?

25 A.  No.

1    Q.   Had you obtained, did you obtain any other
2  record of that call at all?
3    A.   No.
4    Q.   And you know that because it's not in the
5  file?
6    A.   Because it's not in my report.
7    Q.   And if you had done those things they would
8  have been in your report in the file?
9    A.   Yes.
10   Q.   You've been noticed as a witness with
11  information on contacts with Lazonia Baham and
12  statements made by her relating to Isaac Jones and I'm
13  going to pull up Exhibit 6, which is just the notice
14  that we were provided.  Can you see that?
15   A.   Yes.
16        (Exhibit 6 marked for identification)
17   Q.   This is just the notice.  I'll flip to the top
18  very quickly.  It's the notice, Defendant's Amended
19  Joint Initial Disclosures.
20        And I just want to clarify looking at page 9,
21  paragraph 48, although the notice states that you are
22  giving notice with regard to contacts with Lazonia
23  Baham and statements in the plural made by her relating
24  to Isaac Jones, you're only a witness to one statement,
25  is that accurate?

Page 116

1    A.   Yes.

2    Q.   And you haven't spoken to Lazonia Baham since
3 that conversation?

4    A.   No.

5    Q.   Do you remember testifying or the fact that
6 you testified in the grand jury in this case?

7    A.   I don't remember that I did or didn't but I'm
8 sure I did.

9    Q.   I'm going to pull up what we'll call Exhibit
10 7.  This is the subpoena for grand jury testimony.
11 This is page 4, pdf page 442 of the pdf that we had
12 sent over.  The Bates stamp is OPDA 10568.
13       Do you see this cover sheet which says
14 Perpetuation of Testimony?

15   A.   Yes.

16       (Exhibit 7 marked for identification)

17   Q.   And this the State of Louisiana v. Isaac
18 Jones?

19   A.   Yes.

20   Q.   So I'm going to go to pdf page 456 which is
21 Bates stamped 10582.  I just want to draw your
22 attention to lines 420 and I'll read it allowed for
23 you.

24       "But when I was talking to Dinnika Baham she
25 tells me that on the same date, maybe about half an