UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENATA SINGLETON et al.<br><br>*Plaintiffs*,<br><br>v.<br><br>LEON CANNIZZARO, et al.<br><br>*Defendants*. | Civil Action No. 17-10721<br><br>Section H<br>Judge Jane Triche Milazzo<br><br>Division 1<br>Magistrate Judge Janis van Meerveld |

**PLAINTIFFS' RESPONSE TO STATEMENT OF UNCONTESTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS AGAINST INDIVIDUAL DEFENDANTS**

Defendants Laura Rodrigue, David Pipes, and Graymond Martin (collectively, the "Individual Defendants"), through their undersigned counsel, have filed a statement of purportedly uncontested facts as required by Local Rule 56.01. As set forth further in this Response, Plaintiffs respond that Individual Defendants' statement of facts contain numerous statements that are, in fact, contested and/or objectionable on other grounds. This Response addresses each purportedly uncontested fact in turn.

1. Between April 2016 and October 2016, Ms. LaCroix was interviewed by at least two reporters about Cardell Hayes. Ms. LaCroix provided them with information about her phone call with Mr. Hayes immediately after the shooting of Will Smith, along with other information about Mr. Hayes's character and personality. *See* Exhibit 4, Sean Flynn, *The Shooter & The Saint*, GQ: GENTLEMEN'S QUARTERLY, October 1, 2016; Exhibit 5, Richard O'Brien, *Complicated*

*Truth Behind Will Smith's Killing*, SPORTS ILLUSTRATED, October 11, 2016; Exhibit 7, LaCroix Depo., at 31–36.

**RESPONSE:** OBJECTION. Object as this statement is not material to the issue in dispute in this motion. Without waiving the objection, Admit.

2. On or around October 1, 2016, *GQ* published an article about Cardell Hayes and Will Smith that included statements made by Ms. LaCroix and information provided by Ms. LaCroix. *See* Exhibit 4, Sean Flynn, *The Shooter & The Saint*, GQ: GENTLEMEN'S QUARTERLY, October 1, 2016.

**RESPONSE:** OBJECTION. Object as this statement is not material to the issue in dispute in this motion. Without waiving the objection, Admit.

3. On October 11, 2016, *Sports Illustrated* published an article about Cardell Hayes and Will Smith that included statements made by Ms. LaCroix and information provided by Ms. LaCroix. *See* Exhibit 5, Richard O'Brien, *Complicated Truth Behind Will Smith's Killing*, SPORTS ILLUSTRATED, October 11, 2016.

**RESPONSE:** OBJECTION. Object as this statement is not material to the issue in dispute in this motion. Without waiving the objection, Admit.

4. Before the October 2016 GQ and *Sports Illustrated* articles, Ms. Rodrigue was not aware that Mr. Hayes had called Ms. LaCroix immediately after the shooting. See Exhibit 6, Rodrigue Depo., at 71, 95.

**RESPONSE:** OBJECTION. Object as this statement is not material to the issue in dispute in this motion. Without waiving the objection, Admit.

5. Ms. Rodrigue hoped to speak with Ms. LaCroix before trial to ascertain what Ms. LaCroix's testimony might be, because Ms. Rodrigue recognized that the testimony could be very

important in adjudicating Mr. Hayes's claim of self-defense. *See* Exhibit 6, Rodrigue Depo., at 71, 79. This was Ms. Rodrigue's purpose in sending Ms. LaCroix a "DA subpoena." *See id.*

**RESPONSE:** OBJECTION. Object to the extent this statement suggests that Ms. Rodrigue's purpose in sending the document titled "Subpoena" was for trial preparation. Ms. LaCroix was never called as a witness in the Cardell Hayes case. *See* the Declaration of Sarah Brooks ("Brooks Decl.") filed concurrently herewith, Exhibit B at 70:19-25, 71:1-17. Instead, Rodrigue testified that she issued the "Subpoena" requesting that Ms. LaCroix appear at the District Attorney's Office because Rodrigue wanted to speak to Ms. LaCroix about an interview Ms. LaCroix had done with a media outlet where she discussed a phone call that was made to her by the defendant in the *State v. Cardell Hayes* case on the day of the crime. *See* Brooks Decl. Exhibit B at 70:19-25, 71:1-17, 80:7-12. Without waiving the objection, Deny.

6.      Before sending Ms. LaCroix a "DA subpoena" on November 27, 2016, Ms. Rodrigue had never met or spoken with Ms. LaCroix, and she still has not met or spoken with her. *See* Exhibit 6, Rodrigue Depo., at 81.

**RESPONSE:** OBJECTION. Object to the extent this statement suggests that Ms. Rodrigue sent the Fake Subpoena without an "ulterior purpose." The Fake Subpoena stated that it was issued pursuant to Louisiana State Code Article 66,[1] but Ms. Rodrigue testified that this was inaccurate. *See* Brooks Decl. Exhibit B at 66:6-15, 67:21-25; Exhibit C. Ms. Rodrigue admits, in hindsight, that the fake subpoenas she used should not have included a statement that it was issued pursuant to Article 66. *See* Brooks Decl. Exhibit B at 156:13-16. Ms. Rodrigue also admits, in

---

[1] The only legitimate subpoenas that direct an individual to appear at the District Attorney's Office in Orleans Parish are subpoenas issued by a Court under Article 66 of the Louisiana Code of Criminal Procedure ("C.Cr.P") and grand jury subpoenas. C.Cr.P. §66; C.Cr.P. §439.

hindsight, that the fake subpoenas she used "should not have had the word 'Subpoena' on the top [of the document]." *See* Brooks Decl. Exhibit B, at 156:6-8. She also testified that the fake subpoenas should not have had statements about consequences of being fined or imprisoned. *See* Brooks Decl. Exhibit B at 156:9-12. Without waiving the objection, Admit.

7. The "DA subpoena" that was sent to Ms. LaCroix was not issued or approved by any court. *See, e.g.*, Exhibit 6, Rodrigue Depo., at 70.

**RESPONSE:** Admit. By way of further response, the Fake Subpoena inaccurately stated "I received the process of court of which this is a duplicate[,]" even though it was "not a document that's filed into the court record," nor was it approved, reviewed, or signed by the court. *See* Brooks Decl. Exhibit B at 69:23-24, 70:2-12.

8. The "DA subpoena" that was sent to Ms. LaCroix was not a "legal document," and it had no legal effect. *See* Doc. No. 52 at ¶324.

**RESPONSE:** Admit. By way of further response, the document Ms. Rodrigue issued to Ms. LaCroix titled "Subpoena" was actually a Fake Subpoena. *See* Brooks Decl. Exhibit B at 58:9-13, 65:4-14. The Fake Subpoena stated that it was issued pursuant to Louisiana State Code Article 66, but Ms. Rodrigue testified that this was inaccurate. *See* Brooks Decl. Exhibit B at 66:6-15, 67:21-25; Exhibit C.

9. The "DA subpoena" that was sent to Ms. LaCroix was not enforceable in any court. *See, e.g.*, Exhibit 6, Rodrigue Depo., at 70.

**RESPONSE:** Admit. By way of further response, the Fake Subpoena received by Ms. LaCroix warned that "A fine and imprisonment may be imposed for failure to obey this notice." *See* Brooks Decl. Exhibit B at 66:1-5; Exhibit C; Exhibit E at ¶3. However, Ms. Rodrigue testified that this was not an accurate statement. *See* Brooks Decl. Exhibit B at 67:16-20.

10. Ms. LaCroix discovered the "DA subpoena" stuck in her door when she arrived at her home on the night of November 27, 2016.  Ms. LaCroix was not personally served with the "DA subpoena." *See* Exhibit 7, LaCroix Depo., at 48–50.

**RESPONSE:** OBJECTION. Object to the extent this statement suggests that Ms. LaCroix did not suffer compensable distress from receiving the Fake Subpoena.  After receiving the Fake Subpoena, Ms. LaCroix testified that she became "very upset and nervous" and was "confused" because she "believe[d] that, like, it was a sign that [she] did something wrong."  Ms. LaCroix called her mother who told her to "calm down."  *See* Brooks Decl. Exhibit A at 50:6-17; Exhibit E at ¶6.  Ms. LaCroix also testified that she "was afraid that [she] could face, like, jail time or be fined" because of the Fake Subpoena.  She had never been jailed in her life. *See* Second Amended Complaint at ¶320, Dkt. No. 52; Brooks Decl. Exhibit A at 99:11-13.  Without waiving the objection, Admit.

11. The following day, November 28, 2016, Ms. LaCroix met with a lawyer, Anthony Ibert.  During that meeting, Mr. Ibert informed Ms. LaCroix that she did not have to comply with the "DA subpoena" "because the document was fake, basically."  *See* Exhibit 7, LaCroix Depo., at 54, 67.

**RESPONSE:** OBJECTION. Object to the extent this statement suggests that Ms. LaCroix intended not to comply with the Fake Subpoena.  Ms. LaCroix testified that Mr. Ibert was hired with the intention to "assist [Ms. LaCroix] in going to speak to the district attorney when [she] received the false subpoena" because she "believed this document said [she] needed to go, so [she] was going to comply with the law, and [she] just wanted representation to come with [her] so [she could] comply with whatever was being requested of [her] at the time."  *See*

5

Brooks Decl. Exhibit A at 63:23-25, 64:1-8, 64:12-25, 65:1-8.  Without waiving the objection, Admit.

12. Ms. LaCroix never paid any money for Mr. Ibert to represent her.  *See* Exhibit 7, LaCroix Depo., at 66.

**RESPONSE:** Deny. Ms. LaCroix's mother paid Mr. Ibert $500 to represent her daughter and Ms. LaCroix paid her mother back for Mr. Ibert's attorney fees.  *See* Brooks Decl. Exhibit E at ¶10.

13. Ms. LaCroix's mother paid Mr. Ibert's $500 flat fee and never requested or received any reimbursement from Ms. LaCroix.  *See* Exhibit 7, LaCroix Depo., at 66–67.

**RESPONSE:** Deny to the extent that Ms. LaCroix's mother never received any reimbursement from Ms. LaCroix. Ms. LaCroix's mother loaned her $500 to pay for Mr. Ibert's attorney fees, and Ms. LaCroix has since paid her mother back.  *See* Brooks Decl. Exhibit E at ¶¶8, 10.

14. Ms. LaCroix alleges that she missed work on November 28, 2016, so that she could meet with Mr. Ibert about the "DA subpoena."  *See* Exhibit 7, LaCroix Depo., at 85–86.  Ms. LaCroix does not contend that she missed work at any other time due to the "DA subpoena."

**RESPONSE:** Admit. By way of further response, Ms. LaCroix testified that it was difficult for her to take the day off of work, because she is a teacher and the school must find a substitute in her absence.  *See* Brooks Decl. Exhibit E at ¶7.

15. Ms. LaCroix has not produced evidence that could provide even an estimate of the wages she allegedly lost due to missing work on November 28, 2016.  *See* Exhibit 7, LaCroix Depo., at 105–107.

**RESPONSE:** Deny. Ms. LaCroix states in her declaration that she had to take her accrued vacation time (they are allotted ten days of paid leave per year) in order to hire Mr. Ibert and attend the meeting at the DA's office. *See* Brooks Decl. Exhibit E at ¶7.

16. Ms. LaCroix had no plans to travel or leave the state between November 27, 2016, and November 29, 2016. *See* Exhibit 7, LaCroix Depo., at 86–87.

**RESPONSE:** OBJECTION. Object to the extent this statement omits the key fact that Ms. LaCroix did not feel at liberty to travel or to leave the state until the Fake Subpoena was quashed, since she was apprehensive of the language used in the Fake Subpoena and the prosecutor's threats. *See* Second Amended Complaint at ¶323, Dkt. No. 52; Brooks Decl. Exhibit A at 88:15-18, 89:6-25, 90:1-21. Without waiving the objection, Admit.

17. Ms. LaCroix did not appear at the District Attorney's Office on November 29, 2016, as directed by the "DA subpoena." *See* Exhibit 7, LaCroix Depo., at 64.

**RESPONSE:** Admit. By way of further response, Ms. LaCroix intended to hire an attorney to accompany her to the DA's office. Once she learned the DA subpoena was fake from that lawyer, she did not attend the meeting and the lawyer subsequently moved to quash the fake subpoena. Brooks Decl. Exhibit A at 67:15-25.

18. In a November 29, 2016 phone call with Cardell Hayes, Ms. LaCroix described her receipt of the "DA subpoena" as "a good thing" that was "very good" for Mr. Hayes. *See* Exhibit 9, Audio recording of November 29, 2016 phone call, at 0:22–1:45; *see also* Exhibit 7, LaCroix Depo., at 52–58.

**RESPONSE:** OBJECTION. Object as this statement is immaterial to any issue in dispute in this case. Object to the extent this statement suggests that Ms. LaCroix believed her receipt of the Fake Subpoena was going to help Mr. Hayes' case. Ms. LaCroix testified that she did not

believe it was going to help or hurt his case. *See* Brooks Decl. Exhibit A at 55:17-25, 56:1-3. Without waiving the objection, Admit.

19. On November 29, 2016, Mr. Ibert filed a motion to quash the "DA subpoena" in Orleans Parish Criminal District Court. The motion stated that "the subpoena does not appear on its face to be issued by the clerk of court." *See* Exhibit 10, Motion to Quash filed in *State v. Cardell Hayes* (November 29, 2016).

**RESPONSE:** Admit.

20. At the beginning of the November 30, 2016 hearing on the motion to quash, Ms. Rodrigue stated: "[T]he State can withdraw the 'DA' subpoena at this time. We don't need the hearing. We just need her served for trial." *See* Exhibit 11, Transcript of November 30, 2016 hearing, at 1.

**RESPONSE:** Admit.

21. Judge Camille Buras issued a subpoena ordering Ms. LaCroix to appear for the trial of Cardell Hayes. *See* Exhibit 11, Transcript of November 30, 2016 hearing.

**RESPONSE:** OBJECTION. Object as this statement is immaterial to any issue in dispute in this case. Without waiving the objection, Admit.

22. The trial issued to Ms. LaCroix by Judge Buras was lawfully issued and legally valid. *See* Exhibit 7, LaCroix Depo., at 39–40.

**RESPONSE:** OBJECTION. Object as this statement is immaterial to any issue in dispute in this case. Without waiving the objection, Admit.

23. Ms. LaCroix testified on Cardell Hayes's behalf at his sentencing hearing. *See* Exhibit 14, Excerpts of Cardell Hayes sentencing, at 30–38.

**RESPONSE:** OBJECTION. Object as this statement is immaterial to any issue in dispute in this case. Without waiving the objection, Admit.

24. Ms. LaCroix has not alleged that Mr. Pipes or Mr. Martin personally sent any fraudulent "DA subpoena" to her or personally directed that such a document be sent to her. *See* Doc. No. 52. Ms. LaCroix also has not produced or identified any evidence showing that Mr. Pipes or Mr. Martin took such actions.

**RESPONSE:** Admit that, at this point in the litigation, there is no evidence that Defendants Pipes or Martin personally directed the Fake Subpoena be sent to Ms. LaCroix (Plaintiffs have not taken the deposition of Mr. Martin to confirm this fact). Ms. LaCroix alleges that Mr. Martin, in his capacity as a policymaker on fraudulent subpoenas for the office, and supervisor of cases in the Major Offense Trials Division, which prosecuted the Cardell Hayes case, contributed and conspired to have such documents sent to witnesses including Ms. LaCroix. However, Defendant Martin has not yet been deposed and thus the question remains unresolved.

Respectfully submitted this 26th day of January, 2021,

                                         */s/ Sarah S. Brooks*
                                         Sarah S. Brooks
                                         VENABLE LLP
                                         2049 Century Park East, Suite 2300
                                         Los Angeles, CA 90067
                                         ssbrooks@venable.com
                                         (310) 229-0408
                                         *Counsel for Plaintiff Tiffany LaCroix*

<div style="display: flex;">

<div>

Katherine Chamblee-Ryan (*pro hac vice*)
Tara Mikkilineni (*pro hac vice*)
Ryan C. Downer (*pro hac vice*)
Laura Gaztambide Arandes (*pro hac vice*)
Civil Rights Corps
1601 Connecticut Avenue NW, Suite 800
Washington, D.C. 20009
Tel: (202) 844-4975

Somil Trivedi (*pro hac vice*)
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Tel: (202) 715-0802

Sarah S. Brooks (*pro hac vice*)
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Tel: (310) 229-9900

*Counsel for Plaintiff Tiffany LaCroix*

</div>

<div>

Mariana Kovel (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (646) 905-8870
mkovel@aclu.org

Bruce Hamilton
La. Bar No. 33170
ACLU Foundation of Louisiana
1340 Poydras St., Suite 2160
New Orleans, LA 70156
Tel: (504) 522-0628

</div>

</div>