UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENATA SINGLETON, et al.<br><br>*Plaintiffs*,<br><br>v.<br><br>LEON CANNIZZARO, et al.<br><br>*Defendants*. | Civil Action No. 17-10721<br><br>Section H<br>Judge Jane Triche Milazzo<br><br>Division 1<br>Magistrate Judge Janis van Meerveld |

**COUNTERSTATEMENT OF UNCONTESTED FACTS IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS AGAINST INDIVIDUAL DEFENDANTS**

Plaintiff Tiffany LaCroix ("Ms. LaCroix"), through her undersigned counsel, offers this counterstatement of undisputed facts to demonstrate the significant amount of evidence that is relevant to her legal claim against Individual Defendants Laura Rodrigue, David Pipes, and Graymond Martin (collectively, the "Individual Defendants"). The evidence cited here, as well as the evidence cited in Plaintiff's Response to Defendants' Statement of Uncontested Facts, is more than sufficient to demonstrate genuine disputes as to material fact that preclude granting Individual Defendants' Motion.

1.       Ms. LaCroix was a potential witness in a criminal case, *State v. Cardell Hayes*, Case No. 528-975.[1] *See* Second Amended Complaint at ¶304, Dkt. No. 52; *see also* the Declaration of Sarah Brooks ("Brooks Decl.") filed concurrently herewith, Exhibit B at 70:19-25, 71:1-17.

2.       Ms. Rodrigue was an experienced prosecutor at the Orleans Parish District Attorney's Office, and the lead prosecutor on the *Cardell Hayes* case. At the time of the *Cardell Hayes* case, Ms. Rodrigue had been at the District Attorney's Office for ten years and was part of the "Major Offense Trials Division," a division which focused on serious cases where defendants were charged with crimes that could result in imprisonment as a sentence. *See* Second Amended Complaint at ¶23, Dkt. No. 52; Brooks Decl. Exhibit B at 32:20-25, 33:1-20, 203:8-22.

3.       In connection with the *State v. Cardell Hayes* case, in November 2016, Ms. LaCroix received a document titled "Subpoena," demanding a private meeting at the New Orleans Parish District Attorney's Office. *See* Brooks Decl. Exhibit A at 47:11-16; Brooks Decl. Exhibit B at 65:24-25, 70:13-18; Exhibit C.

4.       Ms. Rodrigue testified that she issued the document titled "Subpoena" received by Ms. LaCroix in November 2016. *See* Brooks Decl. Exhibit B at 58:9-13, 65:4-14.

5.       Ms. Rodrigue testified that she issued the "Subpoena" requesting that Ms. LaCroix appear at the District Attorney's Office because Ms. Rodrigue wanted to speak to Ms. LaCroix about an interview Ms. LaCroix had done with a media outlet where she discussed a phone call that was made to her by the defendant in the *State v. Cardell Hayes* case on the day of the crime. *See* Brooks Decl. Exhibit B at 70:19-25, 71:1-17, 80:7-12.

---

[1] Ms. LaCroix was never called as a witness in the *Cardell Hayes* trial.

6.       However, the document Ms. Rodrigue issued titled "Subpoena" was actually a fake subpoena ("Fake Subpoena").  *See* Brooks Decl. Exhibit B at 58:9-13, 65:4-14.

7.       The Fake Subpoena received by Ms. LaCroix inaccurately stated "I received the process of court of which this is a duplicate[,]" even though it was "not a document that's filed into the court record," nor was it approved, reviewed, or signed by the court.  *See* Brooks Decl. Exhibit B at 69:23-24, 70:2-12.

8.       The Fake Subpoena warned that "A fine and imprisonment may be imposed for failure to obey this notice."  *See* Brooks Decl. Exhibit B at 66:1-5; Exhibit C; Exhibit E at ¶3.

9.       However, Ms. Rodrigue testified that this was also not an accurate statement.  *See* Brooks Decl. Exhibit B at 67:16-20.

10.      The Fake Subpoena stated that it was issued pursuant to Louisiana State Code Article 66.[2]  *See* Brooks Decl. Exhibit B at 66:6-15; Exhibit C.

11.      Ms. Rodrigue testified that this was also inaccurate.  *See* Brooks Decl. Exhibit B at 67:21-25.

12.      Counsel for Defendants explained that subpoenas issued pursuant to Louisiana State Code Article 66 were used sparingly due to prosecutors' aversion to disclosing the identity of a witness.  *See* Oral Argument at 41:56, *Singleton v. Cannizzaro*, 956 F.3d 773 (5th Cir. 2020) (No. 19-30197), http://www.ca5.uscourts.gov/oral-argument-information/oral-argument-recordings.

---

[2] The only legitimate subpoenas that direct an individual to appear at the District Attorney's Office in Orleans Parish are subpoenas issued by a Court under Article 66 of the Louisiana Code of Criminal Procedure ("C.Cr.P") and grand jury subpoenas.  C.Cr.P. §66; C.Cr.P. §439.

13. The Fake Subpoena received by Ms. LaCroix was not the only fake subpoena issued by Ms. Rodrigue while she was employed as a prosecutor for the New Orleans Parish District Attorney's Office. *See* Brooks Decl. Exhibit B at 58:9-16.[3]

14. In the same case, Ms. Rodrigue also issued a Fake Subpoena to a witness, Anthony Williams, to gain information from him related to the investigation. *See* Brooks Decl. Exhibit B at 86:12-25; Exhibit D.[4]

15. When using fake subpoenas, Ms. Rodrigue testified that she would print out the blank fake subpoena and then fill out the form by hand. *See* Brooks Decl. Exhibit B at 61:2-6.

16. Fake subpoenas could be found on any desktop within the office. *See* Brooks Decl. Exhibit B at 59:18-25, 60:1-25, 61:1.

17. There were multiple versions of fake subpoenas used. If a prosecutor needed the most recent version, Ms. Rodrigue testified that she could just "scream[] across the hall" and say "Joe, do you have a DA subpoena, have you got one of those subpoenas over there or the form," and someone would "just email[] it so that I would have had a copy on my computer." *See* Brooks Decl. Exhibit B at 90:10-25, 91:1-11.

18. Ms. Rodrigue testified that she believed it was "important" that the fake subpoenas that were issued "look[ed] as if [they] came from the DA's Office." *See* Brooks Decl. Exhibit B at 154:23-25, 155:1-22.

---

[3] Ms. Rodrigue testified that she also used Fake Subpoenas when she worked in the Jefferson Parish District Attorney's Office. *See* Brooks Decl. Exhibit B at 62:2-7, 63:15-23, 88:13-25, 89:1-25, 90:1.

[4] Q: And so your attempt to speak with Mr. Williams was to gain information from him related to the investigation; is that accurate?
A: Correct

19. As First Assistant District Attorney and supervisor of cases in the Major Trials division, Graymond Martin directed the New Orleans Parish District Attorney's Office to use the fake subpoenas. *See* Lazonia Baham's Counterstatement of Undisputed Material Facts at ¶¶5-11, Dkt No. 295-2; Exhibit 11 of Lazonia Baham's Opposition to Motion for Summary Judgment, Dkt No. 296-10. Ms. Rodrigue testified that she assumed Mr. Martin was aware of the OPDA's use of the fake subpoenas, and that he was "very hands-on" and "always there if [they] needed him." *See* Brooks Decl. Exhibit B at 206:8-13.

20. After receiving the Fake Subpoena, Ms. Lacroix testified that she became "very upset and nervous" and was "confused" because she "believe[d] that, like, it was a sign that [she] did something wrong." Ms. LaCroix testified that she was "scared because of, like, what could happen at [her] job, what could happen in front of [her] son." *See* Brooks Decl. Exhibit A at 50:6-17, 93:18-20.

21. Ms. LaCroix also testified that she "was afraid that [she] could face, like, jail time or be fined" because of the Fake Subpoena. She had never been jailed in her life. *See* Second Amended Complaint at ¶320, Dkt. No. 52; Brooks Decl. Exhibit A at 99:11-13.

22. The designated time that the Fake Subpoena directed Ms. LaCroix to appear at the District Attorney's Office was problematic. Ms. LaCroix worked as a schoolteacher, and "had to do a specific training, along with other teachers, in order to be able to give the … standardized test to [] 504 accommodated student[s]" with special needs. *See* Second Amended Complaint at ¶321, Dkt. No. 52; Brooks Decl. Exhibit A at 83:18-25.

23. The Fake Subpoena's appointment time would have required Ms. LaCroix to miss one of the scheduled trainings for the testing. *See* Brooks Decl. Exhibit A at 82:20-25, 83:1-9.

24. Ms. LaCroix also did not feel at liberty to travel or to leave the state until the Fake Subpoena was quashed, since she was apprehensive of the language used in the Fake Subpoena and the prosecutor's threats. *See* Second Amended Complaint at ¶323, Dkt. No. 52; Brooks Decl. Exhibit A at 88:15-18, 89:6-25, 90:1-21.

25. After receiving the Fake Subpoena, Ms. LaCroix spoke to her mother who told her to "calm down." Ms. LaCroix's mother told Ms. LaCroix that she would accompany her to the District Attorney's Office but that just in case, Ms. LaCroix "may need to bring a lawyer." *See* Brooks Decl. Exhibit A at 50:6-17; Exhibit E at ¶6.

26. Ms. LaCroix testified that her mother then proceeded to "call around" to family members to see if anyone knew somebody that Ms. LaCroix could talk to or represent her, because Ms. LaCroix "wasn't sure on what was going to happen because [she] never experienced anything like this before." *See* Brooks Decl. Exhibit A at 50:18-23.

27. The day after receiving the Fake Subpoena, Ms. LaCroix hired a lawyer, A.J. Ibert, to represent her. *See* Brooks Decl. Exhibit A at 61:20-24, 62:16-18; Exhibit E at ¶¶7-8.

28. Ms. LaCroix testified that she had to miss work in order to hire and meet with Mr. Ibert to discuss the Fake Subpoena she received. *See* Brooks Decl. Exhibit A at 85:4-9; Exhibit E at ¶7.

29. Mr. Ibert was hired with the intention to "assist [Ms. LaCroix] in going to speak to the district attorney when [she] received the false subpoena" because she "believed this document said [she] needed to go, so [she] was going to comply with the law, and [she] just wanted representation to come with [her] so [she could] comply with whatever was being requested of [her] at the time." *See* Brooks Decl. Exhibit A at 63:23-25, 64:1-8, 64:12-25, 65:1-8.

30. Mr. Ibert was paid $500 to represent Ms. LaCroix.  *See* Brooks Decl. Exhibit A at 66:7-15

31. Ms. LaCroix's mother loaned Ms. LaCroix $500 to pay for the attorney, and Ms. LaCroix has since paid her mother back the $500.  *See* Exhibit E at ¶¶8, 10.

32. Ms. Rodrigue now admits, in hindsight, that the fake subpoenas she used "should not have had the word 'Subpoena' on the top [of the document]."  *See* Brooks Decl. Exhibit B at 156:6-8.

33. Ms. Rodrigue also testified that the fake subpoenas should not have had statements about consequences of being fined or imprisoned.  *See* Brooks Decl. Exhibit B at 156:9-12.

34. Ms. Rodrigue also testified that the fake subpoena should not have included a statement that it was issued pursuant to Article 66.  *See* Brooks Decl. Exhibit B at 156:13-16.

Respectfully submitted this 26th day of January, 2021,

> /s/ Sarah S. Brooks
> Sarah S. Brooks
> VENABLE LLP
> 2049 Century Park East, Suite 2300
> Los Angeles, CA 90067
> ssbrooks@venable.com
> (310) 229-0408
> *Counsel for Plaintiff Tiffany LaCroix*

Katherine Chamblee-Ryan (*pro hac vice*)
Tara Mikkilineni (*pro hac vice*)
Ryan C. Downer (*pro hac vice*)
Laura Gaztambide Arandes (*pro hac vice*)
Civil Rights Corps
1601 Connecticut Avenue NW, Suite 800
Washington, D.C. 20009
Tel: (202) 844-4975

Somil Trivedi (*pro hac vice*)
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Tel: (202) 715-0802

Sarah S. Brooks (*pro hac vice*)
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Tel: (310) 229-9900

Mariana Kovel (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (646) 905-8870
mkovel@aclu.org

Bruce Hamilton
La. Bar No. 33170
ACLU Foundation of Louisiana
1340 Poydras St., Suite 2160
New Orleans, LA 70156
Tel: (504) 522-0628

*Counsel for Plaintiff Tiffany LaCroix*