# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

RENATA SINGLETON, *et al.*

     *Plaintiffs*,


v.


LEON CANNIZZARO, *et al.*,

     *Defendants*.

Civil Action No. 17-10721

Judge Jane Triche Milazzo

Magistrate Judge Janis van Meerveld

## REPLY MEMORANDUM IN SUPPORT OF
## TIFFANY LACROIX'S MOTION FOR SUMMARY
## JUDGMENT AGAINST DEFENDANT LAURA RODRIGUE

Defendant Laura Rodrigue's Opposition to Plaintiff Tiffany LaCroix's Motion for Summary Judgment relies on this Court to reverse its own previous rulings on fraud and abuse of process, and to rule in contravention of the Fifth Circuit's decision in this case on absolute immunity. With respect to both of Ms. LaCroix's state law claims, Rodrigue reiterates that Ms. LaCroix has suffered no injury. The undisputed record evidence of Ms. LaCroix's injury—the cost of hiring an attorney, the work she was forced to miss to hire the attorney to accompany her to the DA's office, and her stress at receiving the fake subpoena—only reinforces this Court's ruling that Ms. LaCroix was injured.  Similarly, as this Court did at the motion to dismiss stage, it should reject Defendants' argument that the subversion of the lawful Article 66 process in order to evade court oversight is not an abuse of process.  Finally, in order to evade the Fifth Circuit's ruling that prosecutors are not absolutely immune for the creation and issuance of the fake subpoenas in this case, Rodrigue argues that the fake subpoenas she sent to three witnesses (from whom she admits she was seeking information and whom she never called at trial) were for the purpose of "trial

preparation" and not "investigation." But the undisputed facts and the Fifth Circuit's decision underscore the correctness of this Court's previous ruling on immunity.

### A.  Ms. LaCroix's Fraud Claim Cannot be Defeated on Summary Judgment By the Defendant Simply Stating, "I had no Intent To Defraud"

Defendants contend that Ms. LaCroix's fraud claim fails because Rodrigue did not intend to deceive Ms. LaCroix in issuing the fake subpoena. (Dkt. 331 at 3). Rodrigue claims that she did not create the Fake Subpoena document and that although the Fake Subpoena references Article 66, she was not familiar with that provision of the Louisiana Criminal Code. (Dkt. 331 at 3-4).

These assertions that Rodrigue had no intent to defraud are not sufficient to defeat Ms. LaCroix's motion for summary judgment.  Case law is clear that a genuine issue of material fact cannot be manufactured by a party's self-serving testimony.  *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent [for fraud] is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud."); *see also Morris v. Pellerin Milnor Corp.*, No. 16-15905, 2018 U.S. Dist. LEXIS 60561, at *29 (E.D. La. Apr. 10, 2018) ("[A party's] mere subjective beliefs, when supported solely by his own self-serving, speculative and conclusory testimony…fail[s] to establish that a material fact issue is in dispute.").

Here, the evidence presented in Ms. LaCroix's motion for summary judgment is more than enough to establish fraud.  Rodrigue could have sent a letter that merely requested an interview with Ms. LaCroix or that requested Ms. LaCroix voluntarily attend a meeting at the Office. Instead, Rodrigue used a document that threatened significant, punitive consequences to enhance the likelihood that Ms. LaCroix would comply.  Rodrigue admits that a fine and imprisonment could not be imposed for failure to obey the document sent to Ms. LaCroix, nor that it was issued pursuant to the procedure set forth in Louisiana Code of Criminal Procedure article 66, despite the

fact that both statements appear on the face of the document.  (Dkt. 331-1 at ¶¶ 9, 11).  Rodrigue admits that she filled in the handwritten portions of this document and directed that it be sent to Ms. LaCroix.  *Id*. at ¶ 4.  And Rodrigue admits that she sent the document to Ms. LaCroix because she wanted Ms. LaCroix to appear at the DA's office so that she could speak with Ms. LaCroix about information she had relevant to the Cardell Hayes case.  *Id*. at ¶5.  The evidence (and common sense) thus demonstrate that Rodrigue issued a document entitled "Subpoena" to Ms. LaCroix with the intent to deceive Ms. LaCroix into believing that the document was, in fact, a subpoena that compelled her attendance at the DA's office—which is more than sufficient to establish this element of fraud.

The fact that Rodrigue does not admit her intent to deceive is unsurprising, but also irrelevant, because fraud "may be established by circumstantial evidence." La. Civ. Code art. 1957; *Schaumburg v. State Farm Mut. Auto. Ins. Co*., 421 F. App'x 434, 442 (5th Cir. 2011) (citation omitted); *accord Lafayette Ins. Co. v. Pennington*, 966 So.2d 136, 137-38 (La. App. 2d Cir. 2007) ("Fraud is proved by a preponderance of evidence and may be established by circumstantial evidence.").  No reasonable factfinder would believe Rodrigue's self-serving testimony, contradicted by her actions and the document itself; thus, she has not manufactured an issue of fact on this element.

### B.  Ms. LaCroix Was Injured.

Defendant Rodrigue argues that Ms. LaCroix's fraud claim fails because the money paid to Ms. LaCroix's attorney was originally paid by Ms. LaCroix's mother.  (Dkt. 331 at 5).  This Court already held in denying Defendants' Motion to Dismiss that Ms. LaCroix "suffered an injury—the cost of a private attorney—because [she] reasonably relied on the threats of fines and imprisonments that appeared as intentionally deceptive material misrepresentations within the

'subpoenas.'" (Dkt. 116 at 42).[1]  There is no relevant distinction between paying the cost herself and incurring a debt to her mother for the cost.[2]

Rodrigue also claims that Ms. LaCroix fails to present evidence on her lost income. (Dkt. 331 at 5). But Ms. LaCroix testified that she missed work in order to hire an attorney to respond to the fake subpoena, and her declaration clarifies that she used accrued vacation time (of an allotted ten days of paid leave per year) in order to meet with her attorney. (Dkt. 333-6 at ¶7).  In addition, Ms. LaCroix's damages also include garden-variety economic distress damages, and Ms. LaCroix testified about the distress experienced as a result of receiving the fake subpoena.  (Dkt. 333 at 15-17).  These injuries are more than sufficient to establish injury.

Defendant Rodrigue also claims that Ms. LaCroix has not introduced evidence from which the Court can ascertain the amount of damages to which she is entitled therefore her claim for fraud fails. (Dkt. 331 at 7).  But Louisiana courts and the Fifth Circuit have held that the precise specification of damages is not required to show *liability* for fraud.  For example, the *In re Rushing* court found that the defendant's intentional misrepresentations damaged the plaintiffs, even though the plaintiffs did not prove the "quantum of those damages." 424 B.R. 747, 754 (Bankr. M.D. La. 2010).  In that case, "[t]he evidence established beyond any doubt that [defendant's] actions caused [plaintiffs] mental anguish, aggravation and inconvenience," and the court awarded each plaintiff

---

[1] Defendants take issue with this Court's ruling that Ms. LaCroix reasonably relied on the fake subpoena to hire a lawyer, apparently because the lawyer that Ms. LaCroix hired ultimately quashed that same fake subpoena.  (Dkt. 331 at 5, n.9).  But Ms. LaCroix's testimony is clear, and Defendants do not dispute, that Ms. LaCroix hired that attorney *to accompany her to the meeting* at the DA's office, and it was only upon meeting with her attorney that she learned that the subpoena was fake and that there was no legal requirement that she actually go to the DA's office. Ms. LaCroix thus reasonably relied on the language in the fake subpoena threatening legal consequences if she did not attend the meeting by hiring a lawyer to represent her in that meeting.
[2] Although Ms. LaCroix could establish injury even if the debt was still outstanding, Ms. LaCroix has paid her mother back. (Dkt. 333-6 at ¶10).

a claim for $5,000. *Id.* Although the court dismissed the plaintiffs' claims for lost profits, moving expenses, and attorney's fees or litigation costs, the court found the defendant liable for fraud. *Id.* *See also Burkhart Grob Luft und Raumfahrt GmbH & Co. KG v. E-Sys., Inc.*, 257 F.3d 461 (5th Cir. 2001) (finding sufficient evidence to support the jury's finding that defendant committed fraud and affirming jury's award of $1 in nominal actual damages). While the issue of the *amount* of damages Ms. LaCroix suffered will ultimately be determined by a factfinder, there is no question that Ms. LaCroix suffered damages sufficient to establish Rodrigue's liability. Ms. LaCroix is therefore entitled to summary judgment on her state law claim of fraud.[3]

### C. The Use of Fake Subpoenas Is An Irregular Process

Defendants reiterate their previously-rejected argument that Plaintiff's abuse of process claim fails because the Fake Subpoenas were not a misuse of a lawful process. But the process abused here—Article 66 of the Louisiana Code of Criminal Procedure—*is* a court process and a legal process. (Dkt. 331 at 9). As explained in Plaintiff's Response to Defendants' Motion for Summary Judgment, Rodrigue *subverted* the judicial oversight mechanisms laid out in Article 66 for seeking a DA subpoena—thus establishing the element of irregular process required to establish abuse of process as a tort. (Dkt. 333 at 7-9).

The fact that the Fake Subpoena was itself an extra-legal document is irrelevant; Louisiana courts have considered legal filings with no actual legal effect to support an abuse of process claim. In *Owl Constr. Co. v. Ronald Adams Contractor, Inc.*, a case *cited by Defendants*, the court held

---

[3] Rodrigue argues that Ms. LaCroix's motion for summary judgment on abuse of process fails for the same reasons as her claim of fraud – i.e. because Ms. LaCroix suffered no injury. (Dkt. 331 at 15). As with her fraud claim, Ms. LaCroix is not required to show the *extent* of her damages in order to establish Rodrigue's *liability* for abuse of process. (Dkt. 333 at 12-13). And the cases are clear that her undisputed testimony regarding attorney's fees, missed work, and emotional distress are sufficient to establish the damages element of her abuse of process claim. *Id.*

that the filing of a lien that had no legal effect met the "irregularity of process" element of abuse

of process.[4]  642 F. Supp. 475, 478 (5th Cir. 2019).  And in *Alden v. Lorning*, the defendant lessee

filed a possessory action against his lessor despite the unavailability of such a legal avenue under

Louisiana law.  904 So.2d 24, 28 (La. App. 4th Cir. 2005) (noting that "a possessory action is not

available to a lessee against his lessor" and thus, "[b]ecause the principal action filed by [the lessee]

had no legal basis, such filing gave rise to an irregularity in the process itself.").[5]  It is thus of no

moment that the Fake Subpoenas themselves were unenforceable; the fact that they invoked the

process and the penalties associated with Article 66—and used the threat of those penalties to

compel the appearance of witnesses—establishes the "irregularity of process" element required

for Ms. LaCroix's abuse of process claim.

### D.  Rodrigue Issued the Fake Subpoena With An Ulterior Purpose

"With the establishing of an irregularity in the process itself, ulterior motive, the second

requisite element to establish abuse of process, is presumed." *Alden*, 904 So.2d at 28.[6]  Here, much

like in *Alden*, the very fact that Rodrigue subverted the Article 66 process is evidence that her

---

[4] Defendants cite *Owl Constr. Co.* for the proposition that there can be no abuse of process where the purpose of the irregular process was legitimate.  As discussed *infra*, this case is clearly distinguishable given that Rodrigue's (and OPDA)'s purpose was to evade court oversight as mandated by Article 66.

[5] Rodrigue also cites to *Delcambre v. Mancuso* for the argument that an abuse of process occurs when the actor employs the legal process "in a manner technically correct." 268 So.3d 325, 331 (La. App. 3d Cir. 2019).  But that case is in conflict with *Alden* and *Owl Const. Co*, which both found that the filing of legal documents with no actual legal force satisfied the element of irregularity of process.

[6] Defendants argue that this proposition from *Alden* is in conflict with *Owl Constr. Co.*, in which the court found that while the process in that case was irregular, there was no ulterior purpose and thus no abuse of process.  *Owl Constr. Co.* itself cites *Weldon v. Republic Bank*, 414 So. 2d 1361, 1365 (La. Ct. App. 1982), quoting the Am.Jur.2d to note that "the existence of an ulterior motive may, perhaps, be inferred from the fact that the process has been misused or misapplied."  In other words, Louisiana law suggests that there are circumstances in which the misuse of the process is so egregious that ulterior purpose may be inferred—and those circumstances are present here, when Rodrigue sent multiple fake subpoenas to obtain witness interviews she might not have been able to obtain had a court overseen the process.

motive was to avoid the process (and the court and defense counsel oversight) it entails.  But even if ulterior purpose could not be presumed from Rodrigue's use of fake subpoenas, sufficient evidence exists in the record to establish that Rodrigue acted with an ulterior purpose in sending a fake subpoena to Ms. LaCroix.  Defendants argue that because the fake Article 66 subpoena achieved the same effect as a legitimate Article 66 subpoena—compelling Ms. LaCroix to appear at the DA's office—Rodrigue could not have had an ulterior purpose in using the former rather than seeking the latter.  (Dkt. 331 at 11).  But Article 66's requirement of court oversight is no mere technicality to be waved away, as Defendants try to do in their Response.  Ignoring court oversight allows prosecutors to compel witnesses to meet with them without having to justify to a judge why such compulsion is necessary, and why the witness is necessary.  And it also allows the prosecutors to talk to a witness without having to make public—including to the defense—the fact that the prosecutor is interested in that witness.  This confers a strategic advantage to the prosecutor, and allows a prosecutor to potentially engage in coercive, threatening, or intimidating behavior towards a witness she is meeting with, without any oversight or accountability for doing so.[7]

The cases Rodrigue cites to in supporting her argument that she had no ulterior purpose are unavailing.  In *Owl Constr. Co.*, the court held that the defendant's purpose in filing a lien was to collect money owed to them by the plaintiff, a *permissible* purpose under the Louisiana Public Works Act; the court found "as a matter of law that there can be no 'ulterior purpose' in the attempt

---

[7] Defendants argue that Rodrigue could not have had an ulterior purpose in using fake subpoenas rather than real subpoenas under the Article 66 process because she simply did not know what Article 66 was.  (Dkt. 331 at 14).  But this is belied by Rodrigue's own admissions that the fake subpoenas expressly invoke Article 66 (Dkt. 331-1 at ¶ 10), and that she believed it was "important" that the fake subpoenas issued "look[ed] as if [they] came from the DA's Office." (Dkt. 326-2 at ¶ 18; Dkt 331-1 at ¶ 18).

to collect money owed."  642 F. Supp. at 478.  Similarly, in *Harvey v. Caesars Entm't Operating Co.*, the Fifth Circuit found no ulterior purpose where defendants reported the plaintiff to the DA's Office so that defendants could collect a civil debt, as "Louisiana law does not consider the desire to collect a civil debt to be an ulterior motive for prosecution."  790 F. App'x 582, 591 (5th Cir. 2019).  Both are cases in which the motive of the defendants was in line with Louisiana law— indeed, both address the permissible motive of collecting outstanding debts.  By contrast, Rodrigue directly *contravened* Louisiana law, not only in letter but in spirit—as the Comment explaining Article 66's requirement of judicial oversight makes clear, evading such oversight is the hallmark of abuse of the Article 66 process.

### E.  Absolute Immunity

Defendants urge this Court to disregard its own ruling on absolute immunity, as well as the Fifth Circuit's decision, to hold that Defendant Rodrigue is absolutely immune for issuing a fake Article 66 investigative subpoena to Ms. LaCroix to compel her to appear at the DA's office to learn what information Ms. LaCroix had about the Cardell Hayes case.  Defendants attempt to recast this investigative activity as "trial preparation" in order to escape the Fifth Circuit's holding that, based on the facts alleged in the complaint: "Defendants' creation and use of the fake subpoenas . . . fell into the category of 'those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings,'" and as such was not subject to absolute immunity. *Singleton v. Cannizzaro*, 956 F.3d 773, 782 (5th Cir. 2020). Though the Fifth Circuit noted that facts might develop to support an absolute immunity defense, no evidence in the record contradicts the operative allegations in the Complaint, save for Rodrigue's self-serving statements that she used the fake Article 66 subpoenas for "trial preparation."

Rodrigue's attempts to paint her investigative conduct as "trial preparation" hold no water for several reasons.  First, it is undisputed that the fake Article 66 subpoena that Rodrigue issued is expressly *an investigative subpoena*.[8]   Under the Louisiana Code, Article 66 may only be invoked for investigative purposes, and so it was here—Rodrigue admits that her purpose in compelling Ms. LaCroix to appear was to ascertain what Cardell Hayes told her on the night of the shooting.  (Dkt. 331-1 at ¶ 5).  Though Rodrigue later issued Ms. LaCroix a trial subpoena, there is no evidence that Rodrigue ever intended to call her as a witness at trial (and in fact did not call her).[9]  Second, though Defendants make much of the fact that Rodrigue sent the fake subpoena to Ms. LaCroix a week before trial, the Fifth Circuit expressly held that such timing does not control the absolute immunity analysis: "The Supreme Court has never held that the timing of a prosecutor's actions controls whether the prosecutor has absolute immunity. Instead, the Court focuses on the function the prosecutor was performing . . .  Defendants' use of the fake subpoenas in an attempt to obtain information from crime victims and witnesses outside the judicial context falls into the category of investigative conduct for which prosecutors are not immune." *Singleton*, 956 F.3d 773 at 783-84.[10]

Defendants also ask this Court to ignore the additional rationale provided by the Fifth Circuit regarding why absolute immunity does not apply. The Fifth Circuit noted that the

---

[8] Article 66 provides that "[u]pon written motion of the . . . district attorney setting forth reasonable grounds therefor, the court may order the clerk to issue subpoenas directed to the persons named in the motion, ordering them to appear at a time and place designated in the order for questioning by the attorney general or district attorney respectively, *concerning any offense under investigation by him*." La. Code Crim. Proc. art. 66 (emphasis added).

[9] *Contra* Defendants, the fact that Ms. LaCroix testified several months later on behalf of Mr. Hayes at his sentencing does not support the inference that Rodrigue needed to talk to Ms. LaCroix for "trial preparation."

[10] It is for this reason that Defendants' reliance on *Cousins* is misplaced, as the Fifth Circuit itself discussed at length in its opinion. *See, e.g., Singleton*, 956 F.3d 773 at 782, n. 5.

Individual Defendants' use of fake subpoenas "intentionally avoided the judicial process that Louisiana law requires for obtaining subpoenas" and thus "fell 'outside the judicial process.'" *Id*. at 784. Thus, even apart from the inherently investigatory nature of Rodrigue's actions, the Fifth Circuit held that the subversion of the Article 66 process itself placed Defendants' conduct outside the ambit of immunity.

The Fifth Circuit's explanation for why the use and creation of fake subpoenas should not be granted absolute immunity accords perfectly with the record here: "Individual Defendants allegedly violated the rights of victims and witnesses with no cases pending against them. Denying them absolute immunity will not deter prosecutors' future decisions to charge specific defendants. Moreover, because Individual Defendants issued the subpoenas without court supervision, they operated free of 'the checks and safeguards inherent in the judicial process.'" *Id*. at 784 (internal quotations omitted).  The *Singleton* Court's understanding of the creation and use of fake Article 66 subpoenas has now been confirmed by the record evidence in this case.  Rodrigue's argument that she is absolutely immune is thus meritless.

*     *     *

For the reasons above, Ms. LaCroix respectfully asks that the Court grant her Motion for Summary Judgment.


Respectfully submitted this 3rd day of February, 2021,

> */s/   Sarah S. Brooks*
> Sarah S. Brooks
> VENABLE LLP
> 2049 Century Park East, Suite 2300
> Los Angeles, CA 90067
> ssbrooks@venable.com
> (310) 229-0408
> *Counsel for Plaintiff Tiffany LaCroix*

Katherine Chamblee-Ryan (*pro hac vice*)
Tara Mikkilineni (*pro hac vice*)
Ryan C. Downer (*pro hac vice*)
Laura Gaztambide Arandes (*pro hac vice*)
Civil Rights Corps
1601 Connecticut Avenue NW, Suite 800
Washington, D.C. 20009
Tel: (202) 844-4975

Somil Trivedi (*pro hac vice*)
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Tel: (202) 715-0802

Sarah S. Brooks (*pro hac vice*)
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Tel: (310) 229-9900

Mariana Kovel (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (646) 905-8870
mkovel@aclu.org

Bruce Hamilton
La. Bar No. 33170
ACLU Foundation of Louisiana
1340 Poydras St., Suite 2160
New Orleans, LA 70156
Tel: (504) 522-0628

*Counsel for Plaintiff Tiffany LaCroix*