**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| RENATA SINGLETON,<br>LAZONIA BAHAM,<br>TIFFANY LACROIX, | Civil Action No. 17-10721 |
| *Plaintiffs*, | Section H<br>Judge Jane Triche Milazzo |
| v. | Division 1<br>Magistrate Judge Janis van Meerveld |
| LEON CANNIZZARO, in his official<br>capacity as District Attorney of Orleans<br>Parish; GRAYMOND MARTIN and LAURA<br>RODRIGUE; in their individual capacities, | |
| *Defendants*. | |

## MEMORANDUM IN OPPOSITION TO DEFENDANT LAURA RODRIGUE'S MOTION FOR SUMMARY JUDGMENT ON GROUNDS OF IMMUNITY

Only one thing has changed since the Fifth Circuit affirmed this Court's denial of immunity for prosecutors' use of fake subpoenas: the evidence has borne out the allegations in the complaint, on which the Fifth Circuit relied for its conclusions. Indeed, Defendant Rodrigue's own testimony makes plain that immunity does not apply. She has now confirmed under oath that she sent a fake subpoena demanding an out-of-court interview with Plaintiff LaCroix, and that she did so for an investigative purpose: to find out what Ms. LaCroix knew.

Nevertheless, Defendants now ask this Court to grant summary judgment on the absolute immunity question. Defendants offer no new evidence in support of their motion; the facts they address were all alleged in Plaintiffs' complaint and considered by the Fifth Circuit when it found immunity inapplicable. And they ignore the most relevant evidence in the record: Defendant Rodrigue's testimony, which squarely positions her actions within the Fifth Circuit's basis for denying immunity here. *Compare Singleton v. Cannizzaro*, 956 F.3d 773, 782–83 (5th Cir. 2020)

1

(affirming denial of immunity because "Defendants allegedly used the subpoenas to gather information from crime victims and witnesses outside of court"), *with* Ex. B to Decl. of S. Brooks (Rodrigue Dep.) (Dkt. No. 326-5) (hereby incorporated by reference) at 70:19–71:16 (testifying that "[the prosecution team] did not know whether [Plaintiff] LaCroix had any information relevant to the case," and that she sent her the fake subpoena "just to see what the information was").

It is Defendants' burden to show that immunity applies.[1] Here, the evidence shows the opposite. To the extent Defendants ask this Court to read the evidence in their favor, this is contrary to the summary judgment standard. Any factual disputes about the nature of Defendant Rodrigue's conduct are the province of the jury.[2]

Defendants also cite no new law that would alter the Fifth Circuit's conclusions. Instead, they attempt to rewrite binding precedent, ignore much of the Fifth Circuit's opinion, and re-urge arguments that have already failed, both in the Fifth Circuit and in this Court.

Because it is contrary to both the record and the law, Defendants' motion must fail.

## FACTUAL BACKGROUND

In November 2016, Defendant Laura Rodrigue, a prosecutor at the Orleans Parish District Attorney's Office, sent a fake subpoena to Plaintiff Tiffany LaCroix. *See* St. of Uncontested Facts in Support of Mot. for Summ. J. on Pl.'s Claims Against L. Rodrigue ("Pl. SUF") (Dkt. No. 326-2) Nos. 4, 6.[3] The "subpoena" demanded that Ms. LaCroix meet with Defendant Rodrigue at her

---

[1] *Singleton*, 956 F.3d at 779.

[2] Given the evidence, Plaintiffs submit that the facts are undisputed in Plaintiffs' favor. Indeed, LaCroix has sought summary judgment on this same issue. *See* Pls.' Mot. for Summ. J. (Dkt. No. 326-1) at 15–16.

[3] To avoid repetitive briefing, Plaintiff incorporates by reference her prior statements of undisputed facts, including Dkt. Nos. 326-2, Dkt. No. 333-8, and Dkt. No. 369-1. Plaintiff also incorporates by reference her responses to Defendants' first statement of facts, Dkt. No. 333-7.

office, outside of court, in connection with the State's prosecution of Cardell Hayes for the murder of Will Smith. *Id.* Nos. 3, 4. Before she sent the subpoena, Defendant Rodrigue had never spoken to Plaintiff LaCroix. *See* Pls.' Resp. to St. of Uncontested Facts in Supp. of Mot. for Summ. J. on Pl.'s Claims Against Individual Defs. ("Pl. First RSUF") (Dkt. No. 333-7) No. 6; *see also* Ex. 6 to Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. (Rodrigue Dep.) (Dkt. No. 327-8) at 81:6–13 (hereby incorporated by reference).

When asked in her deposition why she had sent the fake subpoena, Defendant Rodrigue was unequivocal: she wanted information. Ex. 1 (Pl.'s Resp. to Def. L. Rodrigue's St. of Uncontested Facts) ("Pl. Second RSUF") Resp. to No. 10. Shortly before sending the fake subpoena, Defendant Rodrigue learned from a news article that the defendant's "first phone call . . . on the scene of the crime after he shot the victim" was to Plaintiff LaCroix. *See* Ex. B to Decl. of S. Brooks (Rodrigue Dep.) (Dkt. No. 326-5) at 70:19–71:16. As Defendant Rodrigue testified, she did not know what Plaintiff LaCroix knew—or whether it mattered to the prosecution's case. *Id.* at 71:8-9 ("[A]t that time we did not know whether [Plaintiff LaCroix] had information relevant to the case."). But she sent a fake subpoena because she wanted to find out. *See id.* at 71:12-14 (testifying that the reason she sent a fake subpoena to Plaintiff LaCroix was "just to see what the information was"); Ex. 1 (Pl. Second RSUF) Resp. to Nos. 7, 10.

Plaintiff LaCroix hired an attorney, who moved to quash the fake subpoena; in response, Defendant Rodrigue withdrew it. Pl. SUF (Dkt. No. 326-2) No. 26; Pl. First RSUF (Dkt. No. 333-7) Nos. 19, 20. At that point, she concluded that she would not be able to learn what information Plaintiff LaCroix possessed unless she was called to testify. Ex. B to Decl. of S. Brooks (Rodrigue Dep.) (Dkt. No. 326-5) at 80:17-20 ("We would just, I guess, find out at the moment she testified what information she had if she became a witness.").

The State did not call Plaintiff LaCroix to testify at trial or sentencing, and there is no evidence it considered doing so. Ex. 1 (Pl. Second RSUF) Resp. to Nos. 8–10. However, the defense did call Plaintiff LaCroix at sentencing. When asked about the phone call immediately after the shooting, Plaintiff LaCroix testified, "[H]e didn't mean to [kill the victim]. . . . [H]e said, 'I shot somebody.' I said, 'What?' He said, 'I don't know. They were attacking me. I didn't know what to—they were attacking me. They were attacking me.'" Ex. 14 to Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. (Dkt. No. 327-16) (hereby incorporated by reference) at INDEF02000. When given the opportunity to cross-examine Plaintiff LaCroix after her testimony, the State declined to ask her any questions. *Id.* at INDEF02001.

In October 2017, Plaintiffs—including Tiffany LaCroix—filed this lawsuit, including claims against Defendant Rodrigue for sending the fake subpoena. Defendant Rodrigue and other prosecutors sued in their individual capacities moved to dismiss, arguing, among other things, that they could not be held liable for using fake subpoena because they were shielded by absolute immunity. Defs.' Jt. Mot. to Dismiss (Dkt. No. 363).

Based on Plaintiffs' allegations, this Court held that absolute immunity did not apply to prosecutors' use of fake subpoenas. Order & Reasons ("MTD Op.") (Dkt. No. 116) at 10–14. Defendants appealed to the Fifth Circuit Court of Appeals, arguing that this Court's ruling was contrary to precedent. The Fifth Circuit affirmed this Court's ruling. In doing so, it adopted both this court's reasoning and added other grounds for denying immunity.

## STANDARD OF REVIEW

A motion for summary judgment should be granted if the record, taken as a whole, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986);

*Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Merritt-Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).

This summary judgment motion concerns the application of absolute prosecutorial immunity. Importantly, an "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Singleton*, 956 F.3d at 779 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

## ARGUMENT

Defendants have introduced nothing that distinguishes the allegations in the complaint—which formed the basis of the Fifth Circuit's opinion—from the evidence adduced to date. Instead, as described below, the record evidence provides further support for the Fifth Circuit's conclusions. On the law, Defendants' arguments are foreclosed by the Fifth Circuit's opinion and other binding precedent. Further still, Defendants ask this Court to make fact determinations that are inconsistent with the record, and thus, at a minimum, inappropriate for summary judgment. With no basis in the law or the record, Defendants' arguments fail.

### I.     The Fifth Circuit Affirmed This Court's Denial of Absolute Immunity

Defendants contend that the Fifth Circuit affirmed this Court's denial of absolute immunity for the use of fake subpoenas on a single ground: that the alleged conduct was "investigative" in nature. Mem. in Supp. of Mot. for Summ. J. on Claims Against L. Rodrigue on Grounds of Immunity ("Defs.' Br.") (Dkt. No. 363-1) at 3. Defendants also contend that the Fifth Circuit rejected this Court's analysis in its opinion on Defendants' motion to dismiss, which reasoned that

the Individual Defendants were not entitled to absolute immunity because they had "side-stepped the judicial process." *Id.*; MTD Op. at 11 (internal quotation marks and citations omitted).

None of this is true. In fact, the Fifth Circuit offered multiple grounds for affirming this Court's denial of absolute immunity—including the ground adopted by this Court, offering the same reasoning and citing the same case law.

As this Court did at the motion-to-dismiss stage, the Fifth Circuit relied on the functional approach prescribed by the U.S. Supreme Court, which limits absolute immunity to actions "which occur in the course of [the prosecutor's] role as an advocate for the State." *Singleton*, 956 F.3d at 779–80 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)); *id.* at 781–84 (applying functional approach); *see also* MTD Op. at 8–14. Applying that framework, the court identified "two reasons" that prosecutors' actions were not "intimately associated with the judicial phase of the criminal process" and thus not entitled to immunity. *Singleton*, 956 F.3d at 782 (quoting *Hoog-Watson v. Guadalupe Cty.*, 591 F.3d 431, 438 (5th Cir. 2009)).

First, the Individual Defendants were not entitled to immunity because they "allegedly used the subpoenas to gather information from crime victims and witnesses outside of court." *Singleton*, 956 F.3d at 782. As the court explained, this "information-gathering is more analogous to investigative police work than advocatory conduct," and absolute immunity does not shield it. *Id.* at 783.

Second, prosecutors "allegedly intentionally avoided the judicial process that Louisiana law requires for obtaining subpoenas." *Id.* at 784 (citing LA. CODE CRIM. PROC. ANN. art. 66). Prosecutors' "creation and use of the fake subpoenas thus fell 'outside the judicial process.'" *Id.* As such, this conduct was not subject to immunity. *Id.*; *accord* MTD Op. at 11–12 (denying immunity because prosecutors had allegedly "side-stepped the judicial process" by circumventing

6

Article 66 and "issu[ing] subpoenas themselves").[4] To arrive at this conclusion, the court relied on both *Loupe*, 824 F.3d 534, and *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012), the same cases that undergirded this Court's decision to deny immunity for prosecutors' use of fake subpoenas. *See* MTD Op. at 10–13.

Finally, the court found that "[d]enying Individual Defendants dismissal based upon absolute immunity for their creation and use of the fake subpoenas also accords with the policy underlying absolute prosecutorial immunity." *Singleton*, 956 F.3d at 784; *see Hoog-Watson*, 591 F.3d at 438 (noting that, "[t]o determine the scope of a prosecutor's absolute immunity," courts must ask both "the practical function of the conduct at issue" and "whether, at present, absolute immunity for the conduct at issue is necessary to advance the policy interests that justified common law immunity.").[5] Because Plaintiffs are "victims and witnesses with no cases pending against them," denying absolute immunity here "will not deter prosecutors' future decisions to charge specific defendants." *Singleton*, 956 F.3d at 784. And because prosecutors "issued the subpoenas without court supervision, they operated free of 'the checks and safeguards inherent in the judicial process,'" which creates a "greater need for private actions to curb prosecutorial abuse and to

---

[4] *See also* MTD Op. at 12 ("To find that such *ultra vires* conduct is 'intimately associated with the judicial phase of the criminal process' would give no meaning to the 'judicial phase' element of the standard") (quoting *Loupe*, 824 F.3d at 540).

[5] *See also* Oral Arg., *Singleton v. Cannizzaro*, No. 19-30197, at 11:39–12:12 (5th Cir. Feb. 5, 2020), *available at* https://www.courtlistener.com/audio/68493/renata-singleton-v-leon-cannizzaro-jr-e/ (Judge Elrod noting, "We've been instructed and we're supposed to consider not only the practical function of the conduct, but secondly, whether at present absolute immunity for the conduct at issue is necessary to advance the policy interests that justify the common law immunity" and asking Defendants, "What case could you possibly cite that this would be necessary to advance the policy interests to justify the common law immunity, given what the conduct at issue here is?").

compensate for abuse that does occur." *Id.* (quoting *Marrero v. City of Hialeah*, 625 F.2d 499, 509 (5th Cir. 1980)).

## II.     The Evidence Supports and Strengthens the Fifth Circuit's Reasoning

As Defendants emphasize, at the conclusion of its opinion affirming this Court's denial of immunity for prosecutors' use of fake subpoenas, the Fifth Circuit noted that "further facts may develop that support Individual Defendants' defense." *Id.* at 784. The opposite has occurred. The record supports the allegations on which the Fifth Circuit relied, and Defendant Rodrigue's testimony plainly situates her conduct within the Fifth Circuit's reasoning. Indeed, as described below, the evidence substantiates each of the Fifth Circuit's bases for finding immunity inappropriate here.

### A.     Absolute Immunity Does Not Apply Because Defendant Rodrigue's Conduct Was Investigative, Not Prosecutorial

As the Fifth Circuit explained, absolute immunity does not apply when prosecutors perform "investigatory functions." *Singleton*, 956 F.3d at 779–80 (quoting *Buckley*, 509 U.S. at 273). As such, prosecutors are not shielded from liability for using fake subpoenas if they did so to "gather information from crime victims and witnesses outside of court." *Singleton*, 956 F.3d at 782.

Defendant Rodrigue has now confirmed that she sent Plaintiff Tiffany LaCroix a fake subpoena demanding she meet with her at the District Attorney's Office. *See* Ex. B to Decl. of S. Brooks (Rodrigue Dep.) (Dkt. No. 326-5) at 65:4–67:25; *id.* at 70:2-18. And she has testified that the reason she did so was to gather information from Plaintiff LaCroix:

> Q. And why was Ms. LaCroix requested through this fake subpoena to appear there at the District Attorney's Office?
>
> A: [. . .] Through [Ms. LaCroix's] interview with Sports Illustrated, we learned that the defendant in the case, his first phone call was made to her on the scene of the crime after he had shot the victim. So *at that time we did not know whether she had information relevant to the case*. She never told anybody that, the police or

anybody else for that matter. So we were hoping to have her speak with us the same way she had spoken with the media outlets *just to see what the information was*. Really just to make sure there was no—no stone left unturned in preparation for the trial.

*Id.* at 70:19–71:16 (emphasis added).

This conduct is plainly investigative. The Fifth Circuit held that prosecutors were not entitled to immunity for using fake subpoenas to "gather information." *Singleton*, 956 F.3d at 782. And by her own account, this is precisely what Defendant Rodrigue did. *See* Ex. 1 (Pl. Second RSUF) Resp. to Nos. 7, 10. Indeed, Defendant Rodrigue testified that she sent the fake subpoena because she did not know what information Plaintiff LaCroix had or whether it was relevant to the case. *See* Ex. B to Decl. of S. Brooks (Rodrigue Dep.) (Dkt. No. 326-5) at 70:19–71:16; *see also id.* at 80:17-22 (explaining that, because her efforts to secure an interview with Plaintiff LaCroix had failed, Defendant Rodrigue and the rest of the prosecution team would "find out at the moment [Plaintiff LaCroix] testified what information she had if she became a witness"); St. of Uncontested Facts in Supp. of Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. ("Defs.' First SUF") (Dkt. No. 327-2) No. 5 ("Ms. Rodrigue hoped to speak with Ms. LaCroix before trial *to ascertain what Ms. LaCroix's testimony might be* . . . .") (emphasis added).

Moreover, Defendant Rodrigue testified that she sent the fake subpoena to Plaintiff LaCroix to find out information that the police had not. *See* Ex. B to Decl. of S. Brooks (Rodrigue Dep.) (Dkt. No. 326-5) at 71:9-11 ("[Plaintiff LaCroix] had never told anybody [about the phone call], the police or anybody else for that matter."). Thus, in a very direct sense, "[her] information-gathering [wa]s more analogous to investigative police work than advocatory conduct." *Singleton*, 956 F.3d at 783. Further still, the authority the fake subpoena purported to invoke—that of Article 66—explicitly involves investigation, not witness preparation. *See* LA. CODE CRIM. PROC. ANN.

art. 66 (allowing courts to order a witness to submit to questioning by a prosecutor "concerning any offense *under investigation* by him") (emphasis added).

Nevertheless, Defendants claim that Defendant Rodrigue has so plainly met her burden to show that absolute immunity shields her conduct that she is entitled to summary judgment. To do so, Defendants misinterpret governing case law, ignore the evidence in the record, and rehash arguments that the Fifth Circuit has already rejected. These efforts fail.

First, Defendants claim—contrary to the Fifth Circuit's opinion and Supreme Court precedent—that a prosecutor *can* be entitled to immunity even when she is "search[ing] for information." Defs.' Br. at 4; *but see Singleton*, 956 F. 3d at 782–83 ("Defendants' use of the fake subpoenas in an attempt to obtain information from crime victims and witnesses . . . falls into the category of investigative conduct for which prosecutors are not immune.").

To support this argument, Defendants misportray precedent. For instance, Defendants claim that in *Buckley v. Fitzsimmons*, the Supreme Court "made clear that 'interviewing witnesses'" was a prosecutorial function. Defs.' Br. at 4 (quoting *Buckley*, 509 U.S. at 273). That is not what *Buckley* says. Instead, it distinguished between interviewing witnesses in preparation for trial—which could be prosecutorial—and "searching for [] clues and corroboration," which is not. 509 U.S. at 273.[6]

---

[6] Defendants also suggest that *Imbler v. Pachtman*, 424 U.S. 409 (1976), supports their position that gathering evidence is not an "investigative function" so long as it is tethered to preparation for trial. *See* Defs.' Br. at 5. *Imbler* does not say that, and the Fifth Circuit has already rejected Defendants' efforts to apply it here. *See Singleton*, 956 F. 3d at 783 (finding *Imbler* distinguishable because it involved efforts to control a witness's testimony during a break in trial, not out-of-court meetings to learn information). Moreover, the Supreme Court has repeatedly cautioned that prosecutors cannot avoid immunity by describing their conduct as trial preparation.

Moreover—although Defendants present it as new information—the Fifth Circuit already knew that Defendant Rodrigue used the fake subpoena in connection with a case because Plaintiffs pled this fact in the complaint. *See Singleton*, 956 F.3d at 778 (stating that Plaintiff Tiffany LaCroix was a "potential witness" in a murder case who "received a fraudulent subpoena demanding a private meeting at the Office prior to trial."); *id.* at 782 n.5 (recognizing that Plaintiff LaCroix was given a fake subpoena "while [the] related criminal case[] w[as] pending"). Regardless, the Fifth Circuit rejected Defendants' efforts to recast prosecutors' use of fake subpoenas as mere trial preparation. The court explained,

> [Defendants] allegedly used fake subpoenas in an attempt to pressure crime victims and witnesses to meet with them privately at the Office and share information outside of court. Defendants never used the fake subpoenas to compel victims or witnesses to testify at trial. Such allegations are of investigative behavior that was not 'intimately associated with the judicial phase of the criminal process.'

*Id.* at 783 (quoting *Imbler*, 424 U.S. at 430).

This conclusion aligns with Supreme Court precedent. As the Court cautioned in *Buckley*, "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because . . . that work may be retrospectively described as 'preparation' for a possible trial." 509 U.S. at 276; *see also Burns*, 500 U.S. at 495 ("Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive."); *Singleton*, 956 F.3d at 782 (quoting *Buckley* and *Burns* for same); *accord* MTD Op. at 12–13 (concluding, pursuant to *Burns*, "[T]hat the alleged activity by the Individual Defendant took place as a means to a prosecutorial end is not dispositive of the issue. Under that logic, virtually all activity engaged in by a prosecutor would be absolutely immune from civil

liability. The U.S. Supreme Court has rejected expanding prosecutorial absolute immunity so broadly . . . .").[7]

Nor do the Fifth Circuit cases Defendants cite support their view. Defendants principally rely on *Cook v. Houston Post*, 616 F.2d 791 (5th Cir. 1980). As an initial matter, *Cook* was decided before the Supreme Court decided *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), and *Burns v. Reed*, 500 U.S. 478 (1991), which clarified the meaning of "investigative" conduct not subject to immunity. *See Singleton*, 956 F. 3d at 779–80, 782–73 (relying on *Burns* and *Buckley* to define investigative conduct). Regardless, *Cook* is inapplicable: unlike in this case, the conduct at issue concerned "interview[ing] witnesses before presenting their testimony to the Grand Jury"—not seeking "information" from a witness who whose testimony was never presented at all. *Cook*, 616 F.2d at 793;[8] Ex. B to Decl. of S. Brooks (Rodrigue Dep.) (Dkt. No. 326-5) at 70:19–71:16.

Defendant also rely on *Cousin v. Small*, 325 F.3d 627 (5th Cir. 2003), contending it supports their view that witness interviews are prosecutorial so long as their purpose is to secure information for trial. Defs.' Br. at 5–6. But the Fifth Circuit has already found that *Cousin* does not apply where the fake subpoenas were not used to secure testimony for any judicial proceeding. *Singleton*, 956 F.3d at 782 n.5 ("[B]ased upon the allegations before us, the fake subpoenas were never used to secure [Plaintiffs'] attendance or testimony in any judicial proceeding. Thus, their

---

[7] *Accord Simon v. City of New York*, 727 F.3d 167, 173 (2d Cir. 2013) ("The prosecutorial function may encompass questioning a witness for a brief period before presentation to determine whether, in the prosecutor's judgment, the witness's testimony should still be pursued or whether the witness should be released without further action. Based on Simon's testimony, however, a reasonable jury could find that the . . . interrogation went beyond what could reasonably be construed as clarifying Simon's status or 'preparing her for a grand jury appearance, and became an investigative interview.").

[8] Notably, the *Cook* opinion does not explain precisely what conduct by the prosecutor plaintiffs challenged.

situations are not governed by *Cousin*, in which the defendant prosecutor told a witness to falsely implicate a suspect and practiced with him on how to testify at trial while the trial was pending."); *see also id.* (explaining that, in contrast to this case, the prosecutor's actions in *Cousin* occurred "during a pending trial and were designed to shape a witness's testimony at that trial").[9]

Defendants' argument suffers another evidentiary defect as well: the record does not establish that Defendant Rodrigue ever planned to call Plaintiff LaCroix as a witness. *See* Ex. 1 (Pl. Second RSUF) Resp. to No. 8.[10] The State did not call Plaintiff LaCroix as a witness at trial, and Defendant Rodrigue did not testify that she or anyone else on the prosecution team ever intended to do so. *See id*. Further, when the defense called Plaintiff LaCroix at sentencing,

---

[9] Defendants also cite several out-of-circuit cases, all of which predate the Fifth Circuit's opinion in this case, and none of which supports their view. Defs.' Br. at 6–7. As an initial matter, all of these cases are distinguishable because none of them involved out-of-court interviews conducted to gather information from a witness (despite Defendants' efforts to portray them as such). *See Mullinax v. McElhenney*, 817 F.2d 711, 715 (11th Cir. 1987) (addressing the prosecutor's act of "[o]ffering a witness immunity in exchange for his testimony"); *Broadnicki v. Omaha*, 75 F.3d 1261, 1268 (8th Cir. 1996) (addressing witness interviews conducted as "preparation for [a] revocation hearing" or to "evaluat[e] the reliability of the witnesses"). Defendants particularly misportray *Rogers*, claiming that the Eighth Circuit found the prosecutor immune even for an interview that had an "investigatory purpose." Defs.' Br. at 6 (quoting *Rogers v. O'Donnell*, 737 F.3d 1026, 1032 (6th Cir. 2013)). But there, although the district court found that the interview had an "investigatory purpose," the Eighth Circuit concluded that it did not. 737 F.3d at 1031 ("The district court viewed this as indicating an "investigatory" purpose . . . . In our view, the record conclusively demonstrates that Smith was not acting simply in an investigative or administrative capacity when making these inquiries."). Instead, its purpose was "evaluating evidence and preparing a victim witness for upcoming grand jury proceedings," which immunity does protect. *Id.* at 1032. With respect to *Girardo v. Kessler*, 694 F.3d 161, 167 (2d Cir. 2012), the Court was addressing a prosecutor's interview of a witness to "weigh[] . . . the credibility" of her story, not to gather information. But Defendants also fail to note that, in more analogous circumstances, the Second Circuit later concluded that a prosecutor's out-of-court interview of a witness was investigative and not entitled to immunity. *See Simon v. City of New York*, 727 F.3d 167, 173 (2d Cir. 2013); *see also Singleton*, 956 F.3d at 782–83 (quoting *Simon* with approval).

[10] *Singleton*, 956 F. 3d at 782 n. 5 (noting, in support of its conclusion that Defendants' conduct was investigative, that prosecutors never "sought to use . . . LaCroix's testimony at trial" and "never called . . . LaCroix to testify").

Defendant Rodrigue declined to ask her any questions. *See id.* This makes sense; as Defendant Rodrigue repeatedly explained, she did not know what information Plaintiff LaCroix knew. *See id.* Resp. to Nos. 7, 10. Thus, Defendants' argument not only distorts the law, it asks the Court to infer from the record that Plaintiff LaCroix was a potential prosecution witness—contrary to both the evidence and the summary-judgment standard. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587 (requiring courts at summary judgment to view all justifiable inferences in favor of the non-moving party); *see also Singleton*, 956 F. 3d at 782 n.5 (finding support for the conclusion that prosecutors' conduct was investigative since "prosecutors withdrew the fake subpoenas and never called . . . LaCroix to testify").

Defendants also urge this Court—contrary to precedent—to find that immunity applies because Plaintiff LaCroix was a witness in a case that had already been indicted. *See* Defs.' Br. at 2–9. The Fifth Circuit rejected this argument.[11] It explained, "The Supreme Court has never held that the timing of a prosecutor's actions controls whether the prosecutor has absolute immunity. Instead, the Court focuses on the function the prosecutor was performing." *Singleton*, 956 F.3d at 783–84.[12] Here, where Defendants used fake subpoenas "in an attempt to obtain information from crime victims and witnesses outside the judicial context," that function was "investigative conduct for which prosecutors are not immune." *Id.* at 783–84.

---

[11] As described above, the fact that the fake subpoena related to a pending trial is not new information:  the Fifth Circuit knew this when it affirmed this Court's denial of immunity. *See supra* Sec. I; Sec. Am. Compl. (Dkt. No. 52) ¶¶ 10, 304, 319.

[12] *See also Singleton*, 956 F.3d at 780 ("Importantly . . . 'a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination, . . . a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity.") (quoting *Buckley*, 509 U.S. at 274. n.5).

In sum, Defendant Rodrigue umambiguously testified that she sent a fake subpoena to Plaintiff LaCroix demanding an out-of-court interview so that she could find out what Plaintiff LaCroix knew. *See* Ex. 1 (Pl. Second RSUF) Resp. to Nos. 7, 10. She cannot avoid liability by rewriting precedent or recasting her conduct as mere witness preparation—particularly since the prosecution did not, in fact, call Tiffany LaCroix to testify at trial. *See id.* Resp. to No. 8.

At minimum, however, whether Defendant Rodrigue's purpose was investigative or prosecutorial is a fact question for the jury. *See Simon*, 727 F.3d at 174 (confirming that a jury could assess whether the prosecutor was acting in an investigative capacity when he interviewed a witness at his office). At the summary judgment stage, Defendants fall far short of their burden to establish that immunity applies. *Burns*, 500 U.S. at 486.

> **B.     Absolute Immunity Must Also Be Denied Because The Evidence In This Case Demonstrates That Defendants' Use of Fake Subpoenas Intentionally Avoided the Judicial Process**

Defendants do not engage with the Fifth Circuit's second application of the functional approach. However, it too, is fatal to Defendants' motion.[13] Just as this Court did in its opinion on Defendants' motions to dismiss, the Fifth Circuit found that prosecutors were not entitled to immunity for using fake subpoenas because they acted outside of the judicial process. *See supra* Sec. I.

Puzzlingly, Defendants claim that the Fifth Circuit rejected this Court's reasoning on this score. This is fanciful. It relied on both the same reasoning and the same cases. *See id*. Other than

---

[13] These arguments are now waived. *Knudsen v. Bd. of Supervisors of Univ. of La. Sys.*, No. 14-382, 2015 WL 1757695, at *1 (E.D. La. Apr. 16, 2015) ("A party's failure to brief an argument in response to a summary judgment motion waives that argument.").

this, Defendants make no effort to claim that the evidence alters the Fifth Circuit's conclusion on this ground.[14]

Regardless, the evidence now demonstrates its applicability here. Defendant Rodrigue has testified that she knew the "subpoena" she sent to Plaintiff LaCroix had no legal force. Ex. A (excerpts from Sept. 25, 2020 Dep. of L. Rodrigue) ("Rodrigue Dep.") at 94:20–95:1, 98:1-10; *see also* Defs.' First SUF (Dkt. No. 327-2) Nos. 7–9; Ex. B to Decl. of S. Brooks (Rodrigue Dep.) (Dkt. No. 326-5) at 67:1-6. Indeed, she testified that when Ms. LaCroix's attorney moved to quash it, she withdrew it for that very reason. Ex. A (Rodrigue Dep.) at 98:1-10. And when asked why she didn't "simply send [Plaintiff LaCroix] a letter on DA letterhead versus a fictitious, made-up document," Defendant Rodrigue explained that the fake subpoena was a more expeditious way of getting the information that she wanted. *See id.* at 83:12 (testifying that a letter would not have arrived quickly enough to satisfy her "obligations" to "make sure we have all the evidence that's relevant"); *see also id.* at 84:1-13 (explaining that she did not have an investigator visit Plaintiff LaCroix because "we sort of know at that point this witness is not cooperative").

## C. Denial of Absolute Immunity Accords With the Policy Rationales Underlying the Doctrine

The Fifth Circuit also found that denying absolute immunity for prosecutors' creation and use of the fake subpoenas "accords with the policy underlying absolute prosecutorial immunity." *Singleton*, 956 F.3d at 784; *see supra* Sec. I. This is true, it explained, because the Plaintiffs are

---

[14] Defendants suggest in passing that the conclusion that prosecutors side-stepped the judicial process by using fake subpoenas was somehow different from the functional approach set forth by the Supreme Court. *See* Defs.' Br. at 4. This makes no sense. The functional approach asks whether the conduct in question fell within the "prosecutorial function," and when a prosecutor subsumes the role of a judge, she is not acting within that function. Regardless, however Defendants characterize it, the Fifth Circuit clearly adopted this rationale as a grounds for affirmance. *Singleton*, 956 F.3d at 784.

victims and witnesses, not criminal defendants; thus, denying immunity here will not deter prosecutors' future charging decisions. *Id.* This record supports this rationale; Plaintiff LaCroix was a witness with no charges pending against her. *See* Ex. 1 (Pl. Second RSUF) Resp. to No. 11.

In addition, "because Individual Defendants issued the subpoenas without court supervision, they operated free of 'the checks and safeguards inherent in the judicial process.' As a result, 'there is greater need for private actions to curb prosecutorial abuse and to compensate for abuse that does occur.'" *Singleton*, 956 F.3d at 784 (quoting *Marrero*, 625 F.2d at 509). Defendant Rodrigue admits that she acted without court supervision. *See* Defs.' First SUF (Dkt. No. 327-2) Nos. 7–9. Defendants do not and cannot contend otherwise.

## CONCLUSION

Based on the evidence in the record, Defendant Rodrigue's conduct falls squarely within the grounds for the Fifth Circuit's opinion. However, even if some question remains as to whether her conduct was prosecutorial, this determination would turn on factual questions that are appropriate for a jury. *See, e.g.*, *Simon*, 727 F.3d at 174. For now, Defendants cannot satisfy their burden to show that immunity should apply—much less that there is no genuine dispute otherwise. *See Burns*, 500 U.S. at 486; *Celotex*, 477 U.S. at 323–25. Defendants' motion should be denied.

Dated:  April 27, 2021                              Respectfully Submitted,

                                                                    *s/ Katie Chamblee-Ryan*

Katherine Chamblee-Ryan (*pro hac vice*)
Tara Mikkilineni (*pro hac vice*)
Ryan C. Downer (*pro hac vice*)
Laura Gaztambide Arandes (*pro hac vice*)
Jeffrey Stein (*pro hac vice*)
Civil Rights Corps
1601 Connecticut Avenue NW, Suite 800
Washington, D.C. 20009
Tel: (202) 844-4975

Sarah S. Brooks (*pro hac vice*)
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Tel: (310) 229-0408

Allison B. Gotfried (*pro hac vice*)
Tel: (212) 370-6227
Thomas Welling (*pro hac vice*)
Tel: (212) 503-0558
Venable LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020

Bruce Hamilton
La. Bar No. 33170
ACLU Foundation of Louisiana
1340 Poydras St., Suite 2160
New Orleans, LA 70156
Tel: (504) 522-0628

Mariana Kovel (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (646) 905-8870
mkovel@aclu.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 27, 2021, I electronically filed the foregoing Memorandum in Opposition to Defendant Laura Rodrigue's Motion for Summary Judgment on Grounds of Immunity using the CM-ECF System, which caused notice to be sent to via email to all counsel of record.

*s/ Katie Chamblee-Ryan*