# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENATA SINGLETON,<br>LAZONIA BAHAM,<br>TIFFANY LACROIX,<br><br>    *Plaintiffs*,<br><br>v.<br><br>LEON CANNIZZARO, in his official capacity as District Attorney of Orleans Parish; GRAYMOND MARTIN and LAURA RODRIGUE; in their individual capacities,<br><br>    *Defendants*. | Civil Action No. 17-10721<br><br>Section H<br>Judge Jane Triche Milazzo<br><br>Division 1<br>Magistrate Judge Janis van Meerveld |

## PLAINTIFF TIFFANY LACROIX'S RESPONSE TO DEFENDANT LAURA RODRIGUE'S STATEMENT OF UNCONTESTED FACTS

1.  In April 2016, Cardell Hayes was indicted on multiple charges arising out of a shooting earlier that month involving Will and Raquel Smith. *See* Doc. No. 331-4 (Docket Master for *State v. Cardell Hayes*).

**Response:** Plaintiff objects that this fact is not material to this summary judgment motion. The U.S. Supreme Court has held that prosecutors are not entitled to immunity simply because the conduct at issue occurred in relation to a case that had already been indicted. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) ("Of course, a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards."). In denying Defendants' interlocutory appeal of this Court's ruling on absolute immunity, the U.S. Court of Appeals for the Fifth Circuit held the same. *See Singleton v. Cannizzaro*, 956 F.3d 773, 783–84 (5th Cir. 2020) ("The Supreme Court has never held that the timing of a prosecutor's actions controls whether the prosecutor has absolute immunity. Instead, the Court focuses on the

function the prosecutor was performing. Defendants' use of the fake subpoenas in an attempt to obtain information from crime victims and witnesses outside the judicial context falls into the category of investigative conduct for which prosecutors are not immune."); *see also id.* at 780 ("Importantly . . . 'a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination, . . . a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity.'") (quoting *Buckley*, 509 U.S. at 274 n.5).

      Without waiving this objection, Plaintiff admits this fact.

2.      On November 27, 2016, Ms. LaCroix received a "DA subpoena" sent by Ms. Rodrigue. *See* Doc. No. 326-2 at ¶ 3 (statement of uncontested facts by Ms. LaCroix); Doc. No. 331-1 at ¶ 3 (Ms. Rodrigue's response to statement of uncontested facts); Doc. No. 326-6 (copy of "DA subpoena").

      **Response:** Plaintiff admits this fact. Plaintiff adds that this "DA subpoena" was a fake subpoena, and it falsely stated that it was issued under the authority of Article 66 of the Louisiana Code of Criminal Procedure; that it was a "process of court"; and that a "fine and imprisonment may be imposed for failure to obey" it. *See* St. of Uncontested Facts in Supp. of Mot. for Summ. J. on Pl.'s Claims Against L. Rodrigue ("Pl. SUF") (Dkt. No. 326-2) Nos. 6–12 (hereby incorporated by reference). It ordered Ms. LaCroix to "appear before" Defendant Laura Rodrigue at 12 p.m. on November 29, 2016 to "testify to the truth according to [her] knowledge in such matters as may be required of [her]." Ex. C to Decl. of S. Brooks (copy of fake subpoena to T. LaCroix) (Dkt. No. 326-6) (hereby incorporated by reference).

3.	At the time when she sent the "DA subpoena" to Ms. LaCroix, Ms. Rodrigue was a prosecutor in the Orleans Parish District Attorney's Office and was representing the State in the case of *State v. Cardell Hayes*. *See* Doc. No. 326-2 at ¶ 2 (statement of uncontested facts by Ms. LaCroix); Doc. No. 331-1 at ¶ 2 (Ms. Rodrigue's response to statement of uncontested facts).

**Response:** Plaintiff admits this fact.


4.	At the time when the "DA subpoena" was sent to Ms. LaCroix, trial in the case of *State v. Cardell Hayes* was set to begin on December 5, 2016. *See* Doc. No. 331-4 at 2 (Docket Master for *State v. Cardell Hayes*).

**Response:** Plaintiff objects that this fact is immaterial for at least two reasons. First, consistent with precedent, the Fifth Circuit has explained that the function of the prosecutor's conduct is what matters to the immunity analysis, not its timing. *See Singleton v. Cannizzaro*, 956 F.3d 773, 783–84 (5th Cir. 2020) ("The Supreme Court has never held that the timing of a prosecutor's actions controls whether the prosecutor has absolute immunity. Instead, the Court focuses on the function the prosecutor was performing. Defendants' use of the fake subpoenas in an attempt to obtain information from crime victims and witnesses outside the judicial context falls into the category of investigative conduct for which prosecutors are not immune."); *id.* at 780 ("Importantly . . . 'a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination, . . . a prosecutor may engage in "police investigative work" that is entitled to only qualified immunity.'") (quoting *Buckley*, 509 U.S. at 274 n. 5); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) ("Of course, a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards.").

3

Second, as the U.S. Supreme Court, the Fifth Circuit, and this Court have explained, a prosecutor is not immune simply because her actions are related to trial preparation. *See Singleton v. Cannizzaro,* 956 F.3d 773, 782 (5th Cir. 2020) ("Defendants argue that creating and issuing the fake subpoenas was protected prosecutorial conduct because it 'relate[d] to the core prosecutorial function of preparing evidence and testimony for trial.' But the Supreme Court has squarely rejected this broad interpretation of absolute immunity.") (citing *Burns v. Reed*, 500 U.S. 478, 495 (1991) ("Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive.")); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993) ("A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial.").

Without waiving these objections, Plaintiff admits this fact.

5. At the time when the "DA subpoena" was sent to Ms. LaCroix, Ms. LaCroix had previously made statements about Cardell Hayes and the shooting of Will Smith that were published in the national media. *See, e.g.*, Doc. No. 327-6 (Sean Flynn, *The Shooter & The Saint*, GQ: GENTLEMEN'S QUARTERLY, October 1, 2016); Doc. No. 327-7 (Richard O'Brien, *Complicated Truth Behind Will Smith's Killing*, SPORTS ILLUSTRATED, October 11, 2016).

**Response:** Plaintiff admits this fact.

6.  Some of the statements by Ms. LaCroix that were published in the media concerned a telephone call that Mr. Hayes made to her immediately after the shooting, in which Mr. Hayes described what had happened. *See, e.g.*, Doc. No. 327-6 at 2, 8; Doc. No. 327-7 at 10.

    **Response:** Plaintiff admits this fact.

7.  Ms. Rodrigue recognized that Mr. Hayes's phone call to Ms. LaCroix was "extremely relevant" to his claim of self-defense at trial. *See* Doc. No. 327-8 at 4 (Rodrigue Depo. at 79).

    **Response:** Plaintiff denies this fact to the extent it mischaracterizes Defendant Rodrigue's testimony. Defendant Rodrigue did testify that the phone call "seemed extremely relevant" to the self-defense claim. Ex. 6 to Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. (Rodrigue Dep.) (Dkt. No. 327-8) at 79:15-25 (hereby incorporated by reference). However, she also testified that she did not know whether Plaintiff LaCroix had relevant information. *Id.* at 71:7-9 ("Through her interview with *Sports Illustrated*, we learned that the defendant in the case, his first phone call was made to her on the scene of the crime after he had shot the victim. So at that time *we did not know whether she had information relevant to the case*") (emphasis added); *id.* at 80:17-22 (explaining that, because her efforts to secure an interview with Plaintiff LaCroix had failed, Defendant Rodrigue and the rest of the prosecution team would "find out at the moment [Plaintiff LaCroix] testified what information she had if she became a witness"); *see also* St. of Uncontested Facts in Supp. of Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. ("Defs.' First SUF") (Dkt. No. 327-2) No. 5 ("Ms. Rodrigue hoped to speak with Ms. LaCroix before trial to ascertain what Ms. LaCroix's testimony might be because Ms. Rodrigue recognized that the testimony *could* be very important in adjudicating Mr. Hayes's claim of self-defense.") (emphasis added).

5

Defendant Rodrigue further testified that the reason she sent a fake subpoena to Plaintiff LaCroix was "just to see what the information was." Ex. B to Decl. of S. Brooks (Rodrigue Dep.) (Dkt. No. 326-5) (hereby incorporated by reference) at 71:12-14; *see also id.* at 70:19–71:17 (explaining why she sent the fake subpoena to Plaintiff LaCroix).

8.  Ms. Rodrigue recognized that Ms. LaCroix was a "potential witness" at trial who might be called by either the State or the defense. *See* Doc. No. 327-8 at 5 (Rodrigue Depo. At 80).

**Response:** Plaintiff denies this fact as stated because it mischaracterizes Defendant Rodrigue's testimony. Defendant Rodrigue's testimony implies that she viewed Plaintiff LaCroix as a potential trial witness, but she did not explicitly testify that Plaintiff LaCroix was, in fact, a "potential witness" for the State, that the State ever intended to call Plaintiff LaCroix as a witness, or that she or any other member of the prosecution team ever considered doing so.

Specifically, Defendant Rodrigue testified as follows:

> [Plaintiff LaCroix] had done an interview with Sports Illustrated informing, I guess, the whole world at that point that the first phone call he made after he murders the victim was to her. . . . So it was very crucial evidence, in our opinion . . . but [she] would not speak with us. And we were making sure that we made every effort to speak to every potential witness who had evidence in the case out of our duty to our victims, as I hope I have done in every case.

Ex. 6 to Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. (Rodrigue Dep.) (Dkt. No. 327-8) at 79:15–80:6.

Defendant Rodrigue also testified that, after Plaintiff LaCroix's attorney moved to quash the fake subpoena, the State sought a trial subpoena for her from the court. However, once again, she did not attest that she ever intended to call Plaintiff LaCroix as a witness for the State or that she (or anyone else) considered doing so:

6

> At that point [when her attorney moved to quash the fake subpoena] it was obvious [Plaintiff LaCroix] was never going to speak to us. We would just, I guess, find out at the moment she testified what information she had if she became a witness. And her attorney came in. Then we asked the judge to issue a trial subpoena in the event that she would be needed to testify.

*Id.* at 80:16-22.

Moreover, Defendant Rodrigue repeatedly testified that she did not know what information Plaintiff LaCroix knew, and that the reason she sent her a fake subpoena was to learn this information. *See supra* Resp. to No. 7 (hereby incorporated by reference). There is also no evidence in the record that demonstrates that the defense had identified Ms. LaCroix as a witness for trial, although she was called as a defense witness at sentencing. *See infra* Resp. to No. 9 (hereby incorporated by reference).

Thus, all that can be stated as undisputed is that Defendant Rodrigue hoped to learn the information to which Plaintiff LaCroix might testify as a witness; at that point, Defendant Rodrigue would then know if she was a potential witness for either the prosecution or the defense.

Ultimately, the State did not call Plaintiff LaCroix to testify. Ex. 7 to Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. (LaCroix Dep.) (Dkt. No. 327-9) (hereby incorporated by reference) at 104:2-10; *see* Ex. B (witness list for each day of *Hayes* trial) at OPDA02194–OPDA02200. When Plaintiff LaCroix testified for the defense at sentencing (but not at trial), the State chose not to ask her any questions. Ex. 14 to Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. (Dkt. No. 327-16) (hereby incorporated by reference) at INDEF02001; *see also id.* at INDEF01964 (recording Defendant Rodrigue's appearance for the State).

Notably, in the same case, Defendant Rodrigue also sent a fake subpoena to another individual, Anthony Williams, interviewed him subject to the fake subpoena, and then did not call

7

him as a witness. *See* Pl. SUF (Dkt. No. 326-2) No. 14; *see* Ex. A (excerpts from Sept. 25, 2020 Dep. of L. Rodrigue) ("Rodrigue Dep.") at 95:21–96:2 (discussing how Williams was called as a defense witnesses); *see* Ex. B (witness list for each day of *Hayes* trial) at OPDA02194–OPDA02200.

9.  Ms. LaCroix was called as a witness for the defense at Mr. Hayes's sentencing. *See* Doc. No. 327-16. In her testimony, Ms. LaCroix described her phone conversation with Mr. Hayes on the night of the shooting. *See id.* at 9–10.

**Response:** Plaintiff admits this fact. In her testimony at sentencing, Plaintiff LaCroix described that conversation with Mr. Hayes as follows:

> [H]e didn't mean to [kill the victim]. He was—and that I know him he was in fear for his life. He was afraid because I talked to him. He called me right after it happened and I answered the phone and he was screaming on the phone and I've never heard him like that. And I said, 'Cardell, Cardell, calm down. What's wrong?' He said, he said, 'I shot somebody.' I said, 'What?' He said, 'I don't know. They were attacking me. I didn't know what to—they were attacking me. They were attacking me. . . . He sounded so afraid and just—he was so scared.

Ex. 14 to Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. (Dkt. No. 327-16) at INDEF02000.

When given the opportunity to cross-examine Plaintiff LaCroix after her testimony, the State declined to ask her any questions. *Id.* at INDEF02001; *see also id.* at INDEF01964 (recording Defendant Rodrigue's appearance for the State). The prosecution did not call Plaintiff LaCroix as a witness either at trial or at sentencing. Ex. 7 to Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. (LaCroix Dep.) at 104:2-10; *see* Ex. 14 to Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. (Dkt. No. 327-16) at INDEF02001 (setting forth

LaCroix's testimony for the defense at sentencing and prosecution asking no questions); *see* Ex. B (witness list for each day of *Hayes* trial) at OPDA02194–OPDA02200.

10.     There is no evidence suggesting that Ms. Rodrigue had any purpose in attempting to interview Ms. LaCroix other than to prepare for the imminent trial in *State v. Cardell Hayes*.

   **Response:** To the extent this fact states that Defendant Rodrigue sent the fake subpoena to Plaintiff Tiffany LaCroix in connection with the State's upcoming trial in *State v. Cardell Hayes*, Plaintiff objects that it is immaterial. As the U.S. Supreme Court, the Fifth Circuit, and this Court have explained, a prosecutor is not immune simply because his actions are related to trial preparation. *See Singleton v. Cannizzaro,* 956 F.3d 773, 782 (5th Cir. 2020) ("Defendants argue that creating and issuing the fake subpoenas was protected prosecutorial conduct because it 'relate[d] to the core prosecutorial function of preparing evidence and testimony for trial.' But the Supreme Court has squarely rejected this broad interpretation of absolute immunity.") (citing *Burns v. Reed*, 500 U.S. 478, 495 (1991) ("Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive.")); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993) ("A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial.").

   Subject to this objection, although Defendant Rodrigue sent the fake subpoena to Plaintiff LaCroix in connection with the State's prosecution of Cardell Hayes, Plaintiff denies that

9

Defendant Rodrigue's purpose was merely to prepare for trial or to prepare Plaintiff LaCroix as a witness. Instead, the evidence—including Defendant Rodrigue's testimony—demonstrates that her purpose in sending the fake subpoena was to learn information from Plaintiff LaCroix, information gathering that is analogous to investigatory police work. In short, Defendants use the word "prepare" too broadly.

Before sending the fake subpoena to Plaintiff LaCroix, Defendant Rodrigue had never spoken to her. Ex. 6 to Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. (Rodrigue Dep.) (Dkt. No. 327-8) at 79:2-6, 81:6-13. According to Defendant Rodrigue's testimony, the reason she sent a fake subpoena to Plaintiff LaCroix seeking an out-of-court interview was that she wanted to gather information about what Plaintiff LaCroix knew:

> Q. And why was Ms. LaCroix requested through this fake subpoena to appear there at the District Attorney's Office?
>
> A: [. . .] Through [Ms. LaCroix's] interview with Sports Illustrated, we learned that the defendant in the case, his first phone call was made to her on the scene of the crime after he had shot the victim. So at that time we did not know whether she had information relevant to the case. She had never told anybody that, the police or anybody else for that matter. So we were hoping to have her speak with us the same way she had spoken with the media outlets *just to see what the information was*. Really just to make sure there was no—no stone left unturned in preparation for the trial.

*Id.* at 70:19–71:16 (emphasis added); *see also id.* at 79:13–80:6 (providing the same explanation for sending the fake subpoena to Plaintiff LaCroix).

Defendant Rodrigue also testified that she sent the fake subpoena because it was more expedient to do so than to access Plaintiff LaCroix through legal means. Sending a letter by mail, she explained, would be too slow:

> Q. Is there a reason why in Ms. LaCroix's case you didn't simply send her a letter on DA letterhead versus a fictitious, made-up document?

10

> A. Well, this was days before trial. I mean good luck if the mail is coming on a regular cycle. I mean there was no way we would have just sent a letter and hoped it got there in a few days, crossed our fingers, and then headed into a murder trial, you know. I mean we have certain obligations, in my opinion, to make sure that we have all the evidence that's relevant.

Ex. A (Rodrigue Dep.) at 83:12-23.

And she did not send an investigator because—as a general matter—people were often unwilling to talk to prosecutors.

> Q. Is there a reason why you didn't ask or authorize or instruct your investigator to merely go speak with Ms. La[C]roix instead of giving her a fictitious document?
>
> A. Well, every time the investigator would go out, it would be—certainly, the best case scenario, is if he actually made contact with the person and was able to speak with them. I mean nine times out of ten that was the best outcome, essentially. And then he would just report back to us: So and so—look, they're not going to cooperate, they cursed me out, whatever with that. And then we sort of knew at that point this witness is not cooperative.

*Id.* at 84:1-13.

Ultimately, although the State secured a trial subpoena for Plaintiff LaCroix after her attorney moved to quash the fake subpoena, the prosecution did not call her to testify. *Id.* at 80:15-22; 97:1-9; *see* Ex. B (witness list for each day of *Hayes* trial) at OPDA02194–OPDA02200; Ex. 7 to Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. (LaCroix Dep.) at 104:2-10. When Plaintiff LaCroix testified for the defense at sentencing, the State chose not to ask her any questions. Ex. 14 to Mot. for Summ. J. on T. LaCroix's Claims Against Individual Defs. (Dkt. No. 327-16) at INDEF02001; *see also id.* at INDEF01964 (recording Defendant Rodrigue's appearance for the State).

Other than the act of securing the trial subpoena after failing to access Plaintiff LaCroix through the fake subpoena, there is no evidence in the record that the State planned to or considered calling Plaintiff LaCroix as a witness in its case against Cardell Hayes. *See supra* Resp. to No. 8

11

(hereby incorporated by reference). Indeed, in the same case, Defendant Rodrigue sent a fake subpoena to another individual, Anthony Williams, interviewed him subject to the fake subpoena, and then did not call him as a witness. *See* Pl. SUF (Dkt. No. 326-2) No. 14; Ex. A (Rodrigue Dep.) at 95:21–96:2 (discussing how Williams was called as a defense witnesses); *see* Ex. B (witness list for each day of *Hayes* trial) at OPDA02194–OPDA02200.

11. There is no evidence suggesting that, at the time when the "DA subpoena" was sent to Ms. LaCroix, Ms. Rodrigue was contemplating or investigating the possibility of instituting new criminal charges against Ms. LaCroix, Mr. Hayes, or anyone else.

**Response:** Plaintiff objects that this fact is not material to this summary judgment motion. The U.S. Supreme Court has held that prosecutors are not entitled to immunity simply because the conduct at issue occurred in relation to a case that had already been indicted. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) ("Of course, a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards."). In denying Defendants' interlocutory appeal of this Court's ruling on absolute immunity, the U.S. Court of Appeals for the Fifth Circuit held the same. *See Singleton v. Cannizzaro*, 956 F.3d 773, 783–84 (5th Cir. 2020) ("The Supreme Court has never held that the timing of a prosecutor's actions controls whether the prosecutor has absolute immunity. Instead, the Court focuses on the function the prosecutor was performing. Defendants' use of the fake subpoenas in an attempt to obtain information from crime victims and witnesses outside the judicial context falls into the category of investigative conduct for which prosecutors are not immune." (citations omitted)); *see also id.* at 780 ("Importantly . . . 'a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken

afterwards. Even after that determination, . . . a prosecutor may engage in "police investigative work" that is entitled to only qualified immunity.'") (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993)).

Plaintiff also objects because this fact is vague as to the meaning of "contemplating or investigating the possibility" of instituting new criminal charges and as to who is meant by "anyone else." For the purposes of this response, Plaintiff interprets "contemplating or investigating the possibility" of instituting new criminal charges to mean that Defendant Rodrigue was directly involved in the decision whether to file or amend an indictment or information. Plaintiff interprets "anyone else" to mean any other person, whether or not related to this particular case.

Without waiving these objections, Plaintiff admits this fact in part. Specifically, Plaintiff is not aware of any evidence that, at that time, Defendant Rodrigue was "contemplating or investigating the possibility" of instituting new criminal charges against Plaintiff LaCroix or Mr. Hayes. Indeed, the record includes no evidence that Ms. LaCroix has ever had any charge pending against her. Plaintiff denies that there is no evidence that Defendant Rodrigue was "contemplating or investigating the possibility" of instituting new criminal charges with respect to any other person. Defendant Rodrigue was employed as a prosecutor at the Orleans Parish District Attorney's Office at that time, and she described handling indictments in connection with that position. *See* Ex. A (Rodrigue Dep.) at 52:15-25, 57:10-14; *see also supra* No. 3 & Resp. to No. 3 (hereby incorporated by reference); Pl. SUF (Dkt. No. 326-2) No. 2.

Dated: April 27, 2021                                           Respectfully Submitted,

                                                                *s/ Katie Chamblee-Ryan*

Katherine Chamblee-Ryan (*pro hac vice*)
Tara Mikkilineni (*pro hac vice*)
Ryan C. Downer (*pro hac vice*)
Laura Gaztambide Arandes (*pro hac vice*)
Jeffrey Stein (*pro hac vice*)
Civil Rights Corps
1601 Connecticut Avenue NW, Suite 800
Washington, D.C. 20009
Tel: (202) 844-4975

Bruce Hamilton
La. Bar No. 33170
ACLU Foundation of Louisiana
1340 Poydras St., Suite 2160
New Orleans, LA 70156
Tel: (504) 522-0628

Sarah S. Brooks (*pro hac vice*)
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Tel: (310) 229-0408

Mariana Kovel (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (646) 905-8870

Allison B. Gotfried (*pro hac vice*)
Tel: (212) 370-6227
Thomas Welling (*pro hac vice*)
Tel: (212) 503-0558
Venable LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020

*Attorneys for Plaintiffs*