**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| RENATA SINGLETON,<br>LAZONIA BAHAM,<br>TIFFANY LACROIX,<br><br>   *Plaintiffs*,<br><br>v.<br><br>LEON CANNIZZARO, in his official<br>capacity as District Attorney of Orleans<br>Parish; GRAYMOND MARTIN and LAURA<br>RODRIGUE; in their individual capacities,<br><br>   *Defendants*. | Civil Action No. 17-10721<br><br>Section H<br>Judge Jane Triche Milazzo<br><br>Division 1<br>Magistrate Judge Janis van Meerveld |

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY

There is no real question that OPDA's criminal case files are the *only* records of prosecutors' interactions with victims and witnesses on particular cases. Those interactions are crucial to both establishing OPDA's policies and practices regarding treatment of victims and witnesses, as well as rebutting OPDA's defenses. This information is obviously relevant, and Defendant failed to raise the issue of relevance in the meet and confers leading up to this motion to compel. OPDA's belated attempts to rely on relevance are procedurally inappropriate and substantively meritless.

OPDA's position in the conferrals prior to this motion and its Opposition to Plaintiffs' Motion to Compel ("Opp'n") (ECF No. 399) instead boil down to the mistaken premise that because it has produced *some* of the highly-relevant case files containing evidence of its prosecutors' misconduct, it has produced "enough." That is not how proportionality works. The suggestion that OPDA need only produce DA case files for Plaintiffs and other witnesses listed in the Second Amended Complaint has no basis in law; Plaintiffs are not limited to discovery based on their pre-suit investigation. Indeed, even now, Plaintiffs seek only a subset of additional DA case files from the

1

total they believe contain evidence of misconduct. Plaintiffs' outstanding requests for specific DA case files are carefully targeted to include only the DA case files most likely to contain evidence of misconduct based on Plaintiffs' investigation and OPDA's own records, minimizing the burden for OPDA to simply gather and produce easily-identifiable files. This Court should order OPDA to search for and produce these files as soon as possible.

OPDA focuses on the burden of Plaintiffs' second request, which stems from OPDA's own insistence on relying on the results of a flawed search of its own files that it conducted prior to this litigation. OPDA insists that this review shows fake subpoenas were used in just a small subset of cases; however, its review focused on one specific type of fake subpoena and specifically did not look for other types of fraudulent, compulsive documents that have been uncovered in discovery. More importantly, OPDA's review only examined a sliver of the relevant time period. OPDA's reliance on the results of its search for its defenses cannot be rebutted unless Plaintiffs are allowed to conduct a meaningful, complete review of the entire set of relevant documents. Plaintiffs have offered to take the burden of this search upon themselves, including the cost of travelling to where the files are stored and reviewing them manually. However, OPDA has rejected all attempts at a reasonable compromise. OPDA cannot raise defenses based on what (it claims) is contained in the files while simultaneously denying Plaintiffs an opportunity to review those files to rebut those claims. The Court should order OPDA to permit Plaintiffs to obtain this information or prevent OPDA from raising defenses based on its shoddy, incomplete prior "review."

**ARGUMENT**

I.     **Defendant's Belated Attempts to Raise Relevance Are in Bad Faith and Lack Merit Given the Clear Relevance of the DA Case Files to Plaintiffs' Claims and OPDA's Defenses**

   A.     **Despite Ample Opportunity to Raise Relevance Objections, Defendant Did Not Raise Relevance in the Many Meet and Confers on this Issue**

Because Defendant failed to raise relevance as an ongoing objection to the production of the documents sought in the meet and confers leading up to this motions practice, Defendant's relevance objections are in bad faith and they not be allowed. In its Opposition, Defendants argue that they have consistently disputed the relevance of Plaintiffs' requests and point to various objections made in their discovery responses over a year ago. *See* Opp'n at 7. Although Defendants did make objections in their discovery responses, Defendants never disputed the relevance of the requested documents during subsequent meet and confers with Plaintiffs' counsel. Instead, as summarized in Plaintiffs' correspondence following the meet and confers, Defendants claimed documents were being withheld on the bases of burden and proportionality. *See* Ex. A (April 22, 2021 Meet and Confer Summary Email) ("With respect to Plaintiffs' Fourth Set of Request[s] for Production No. 25 and the specific DA files attached as Appendix A, OPDA will not be searching for and producing these case files. OPDA's position is that it is overly burdensome and not proportional to the needs of the case in light of the approximately 120 DA files already produced."); *see also* Ex. B (April 30, 2021 Meet and Confer Summary Email) ("OPDA is standing on its objections to producing any additional documents in response to Plaintiffs' RFP No. 50. . . . OPDA stood on its objections based on both burden and disproportionality."). In both meet and confer summaries, Defendants were explicitly instructed to let Plaintiffs know if they disagreed with the summary of takeaways, with Plaintiffs explaining that "[i]f we do not hear from you, we will assume you agree with our characterization below." Ex. A; Ex. B. With respect to the former,

OPDA counsel specifically wrote to say that he "agree[d] with [Plaintiffs'] characterization of [OPDA's] position," Ex. C (Apr. 23, 2021 email from J. Alford); and with respect to the latter, OPDA's counsel did not write to indicate any objection. Defendants should not be able to revive relevance objections made years ago in discovery responses when they had ample opportunity to raise these objections during subsequent meet and confer calls, including the ones earlier this year.

And contrary to Defendants assertions, Plaintiffs have explained the relevance of the documents they are seeking on multiple occasions. *See e.g.,* Ex. A (April 22, 2021 Meet and Confer Summary Email) ("With respect to Plaintiffs' Fourth Set of Request for Production No. 25 and the specific DA files attached as Appendix A, . . . [o]ur position is that these [DA] files are highly relevant because they reflect the DA's use of fake subpoenas and material witness warrants in particular cases, and the details of the specific uses are relevant in light of OPDA's defenses."); *Id.* ("With respect to Plaintiffs' RFPs No. 46, 47, and 48, . . . [w]e stated that the evidence suggests that OPDA misused grand jury subpoenas to coerce victims and witnesses to meet with OPDA attorneys in the same way it used fake subpoenas, and that such evidence is relevant to several of our constitutional claims."). Defendants never suggested these assertions were insufficient, and because Defendant did not raise relevance objections during its telephonic meet and confers, Plaintiffs did not devote significant time and space to the relevance issue in its initial Memorandum in support of its Motion to Compel. Plaintiffs did, however, set forth certain justifications that Defendant's Opposition does not engage with:

> This request [for DA subpoenas] is highly relevant to Plaintiffs' *Monell* claims because it will establish which types of DA subpoenas OPDA used and in what numbers prior to Mr. Cannizzaro coming into office and over the course of his time as DA. It is also essential to addressing OPDA's defenses, including Mr. Cannizzaro's assertion that he was unaware that documents with the word "subpoena" and other compulsive language were being used and that it was used in a small percentage of OPDA cases.

*See, e.g.,* Memorandum in support of its Motion to Compel ("Motion"), at 13. Despite Defendant's protestation that Plaintiffs have not explained the relevance of its requests, Plaintiffs have explained the relevance on multiple occasions. To the extent Defendant had additional questions, they should have been asked in the meet and confer process rather than belatedly raised in opposition to a motion to compel. *See, e.g.*, *Stevens v. Omega Protein, Inc.*, No. 00-3326, 2002 U.S. Dist. LEXIS 9657, at *6 (E.D. La May 16, 2002) (finding party had "waived all objections by failing timely to assert them").

**B.    The Specific DA Files Requested Are Highly Relevant to Plaintiffs' Claims and OPDA's Defenses**

As originally explained in its Motion and reiterated above, Plaintiffs' request for specific DA criminal case files are directly relevant to Plaintiff's *Monell* claims for several reasons. Most importantly, and as Defendants are well aware, the DA file is the *only* location where the vast majority of information related to a criminal case is stored, including any notes that prosecutors took with respect to contacts with victims and/or witnesses in that particular case. Ex. D (OPDA 30(b)(6) Dep. Tr.) at 40:9-25 (describing office policy that documentation of contact with victim or witness would be on case activity sheet in DA case file and/or in messages or memoranda put in the file); *id.* at 22:13–24:5. For example, highly relevant information was contained in the front internal covers of the DA file folder.  *See, e.g.*, (OPDA30863-65) (A. Spears' case activity record including note, "To Do; 1) Get [victim] arrested").[1] Similarly, ADAs placed records related to subpoenas sought and served in the case file, *id.* at 26:19–29:10 (noting that, to the extent subpoena records were kept, they would be kept in the DA case file); whether actual subpoenas were served is directly relevant to material witness warrants that rely on service of a "subpoena" and also to OPDA's assertions that several fake subpoenas were "courtesy reminders" that accompanied legitimate subpoenas. And there are other relevant documents in

5

DA case files including internal memoranda, templates, and forms. *See, e.g.*, Ex. E (template for facially insufficient Motion for Material Witness Bond uncovered in DA case file); OPDA18158[1] ("Subpoena Results" form including a checkbox for "Type of Subponea" delivered with the options "Grand Jury," "DA Subpoena," and Court"); OPDA 61800[2] (DA file containing documents indicating OPDA kept material witness warrant open a year and a half after it was aware that witness's testimony was useless to the state).

This case is about OPDA's mistreatment of victims and witnesses for years. These case files are the only records that can establish whether, as Plaintiffs allege, OPDA systematically sent fake subpoenas to victims and witnesses directing them to appear at OPDA *prior* to hearings or trial; whether it systematically sent fake subpoenas to witnesses who had refused to cooperate voluntarily; whether OPDA included all the relevant history of contact and conversations with victims and witnesses in material witness warrant applications; whether OPDA *misrepresented* prior conversations with victims and witnesses in material witness warrants; and many more. The DA files are thus crucial to establishing examples of the policies and practices alleged by Plaintiffs (and vehemently denied by Defendants).

Review of the DA case files requested is also necessary because it enables Plaintiffs to assess the history of engagement with particular victims and witnesses prior to and after the sending of fake subpoenas; inquiries which are clearly relevant to Plaintiffs' claims based on fake subpoenas.[3] If the DA case files reflects attempts to meet with an individual and those attempts

---

[1] This document was not marked confidential by Defendants; however, it can be made available to the Court upon request or filed under seal after Plaintiffs have consulted with Defendants on any potential privilege issues.

[2] This document was marked CONFIDENTIAL and can be made available to the Court upon request or filed under seal.

[3] Contrary to Defendants' assertions, *see* Opp'n at 8, Plaintiffs have several constitutional claims, including Ms. Baham and Ms. Singleton's First Amendment compelled speech claims; Ms.

being rebuffed prior to the sending of a fake subpoena, that would potentially support Plaintiffs' claims that OPDA used fake subpoenas to try to compel meetings with reluctant witnesses and to retaliate against those who wanted to exercise their constitutional right *not* to cooperate voluntarily with the prosecution. *See, e.g.*, Order on Mot. to Dismiss (ECF. No 116) at 24 & n.106 (noting that "timing of Plaintiffs' refusal to speak and the follow-up responses by prosecutors" is relevant to First Amendment retaliation claims). The fake subpoenas are fraudulent and deceptive on their face, but *how and why* they were used constitutes the crux of several of Plaintiffs' claims and can only be ascertained from the files.

The files are also highly relevant to OPDA's defenses with respect to fake subpoenas. For example, OPDA prosecutors, as well as David Pipes, Graymond Martin and Leon Cannizzaro, insist that fake subpoenas were given to victims and witnesses *at the request of the witness*. *See* Opp'n at 11 & n.13 (making this argument and describing testimony); Ex. F (G. Martin Dep. Tr.) at 155:10-18 (describing a DA subpoena as a "notice that is given to cooperative witnesses, trial date reminders, receipts for attendants [sic] at the office so you can bring it to your employer, like a doctor's note or whatever"); Ex. G (D. Pipes Dep. Tr.) at 117:25–118:15 (describing his practice of providing fake subpoenas to witnesses at their request); Ex. H (L. Cannizzaro Dep. Tr.) at 20:11–21:11 (describing witnesses requesting fake subpoenas as documentation when he was an ADA). If fake subpoenas were actually provided to witnesses at their request, as Defendants have repeatedly suggested without documentary support, the case files should reflect contact with that witness prior to the date the fake subpoena was issued. However, if the case files suggest that there

---

Baham, Ms. Singleton, and Ms. LaCroix's First Amendment retaliation claims; and substantive due process claims based on sending fraudulent and misleading documents generally, sending such documents in an attempt to compel meetings out-of-court, sending such documents in retaliation for failure to "cooperate" with prosecutors, and using such documents as a basis for material witness warrants). *See* Order on Mots. To Dismiss (ECF No. 116) at 26-39; 51-52.

were no meetings or telephone calls with victims or witnesses *prior* to the issuance of a fake subpoena, that is strong evidence that this *post hoc* litigation defense lacks merit. At least one witness has already come forward to deny that she "requested" a fake subpoena from a prosecutor, contrary to that prosecutor's deposition testimony;[4] Plaintiffs are entitled to the highly relevant evidence in the DA's files that will allow them to refute this defense.

Similarly, the DA files have information that is highly relevant to Plaintiffs' material witness warrant claims and which is unavailable elsewhere.[5] Plaintiff Lazonia Baham claims that, as a matter of policy and practice, OPDA systematically used the wrong legal standard in applying for material witness warrants, which resulted in the submission of material witness warrant applications containing material omissions, material misrepresentations, and which were inadequate on their face. The DA files (and the corresponding material witness case files, when one was actually opened), are where the information that was in the prosecutors' hands that was either omitted or misrepresented resides. For example, in a material witness warrant, ADA Ashley Spears represented to the Court that she had a recording with the witness that was "proof" that the witness would not appear.  Ex. J (Mtn. for Material Witness Bond in *State v. Richardson and Luckett*).  The DA file for the underlying criminal case did not contain any such recording, and Defendants have confirmed that no such recording exists in OPDA's possession.  Ex. K (Dec. 8,

---

[4] *Compare* J. Dansey Dec. (Dkt. No. 294-17) ¶¶ 3-7 (describing her repeated statements that she did not want to speak with ADA Arthur Mitchell and receipt of a "subpoena") *to* Ex. I (OPDA Am. Resps. to Tiffany LaCroix's First Set of Interrogs.) No. 1 (stating that Ms. Dansey "requested documentation for her upcoming court appearance" on May 4, 2016).

[5] Again, Defendants' claims summary is incomplete with respect to outstanding claims based on material witness warrants. Opp'n at 8. They are correct that Ms. Baham is the only plaintiff who has a Fourth Amendment claim based on a material witness warrant, but both Ms. Baham and Ms. Singleton have First Amendment compelled speech and retaliation claims based on material witness warrants, as well as substantive due process and LA abuse of process claims. *See* Order on Mots. to Dismiss (Dkt. No. 116) at 51-52.

2020 R. Freeman Email).

Importantly, OPDA is incorrect that Plaintiffs are seeing the DA case files for every material witness warrant sought by OPDA in the relevant time period. *See* Opp'n at 10. Although a large number of applications for material witness warrants sought by OPDA are unconstitutional on their face, many more of them may be suspect *depending on the information that is in the DA case files*. Again, Plaintiffs are not even requesting all of the DA case files for which they have identified potentially problematic material witness warrants; they have narrowed their request to a specific subset most likely to reveal misconduct.

To the extent that Defendants suggest that Plaintiffs "have never alleged or explained what unconstitutional conduct they believe occurred" in the requested case files, Opp'n at 10, that is not the standard for whether Plaintiffs are entitled to the requested discovery; the question for this Court is whether DA criminal case files related to cases where a fake subpoena and/or a suspicious material witness warrant was used are relevant to Plaintiffs' claims about OPDA's policies and practices. Indeed, Defendants' standard could *never* be satisfied; how would Plaintiffs specifically identify the misconduct contained in a particular case file until they have seen the case file? It is sufficient that for each of the specific case files requested, there is reason to believe that an ADA used a fake subpoena and/or a material witness warrant to fraudulently compel an out-of-court meeting, retaliate against a witness who did not want to voluntarily cooperate with the prosecution, or otherwise unlawfully use prosecutorial shows of authority, based on publicly-available information, interviews that have been conducted with witnesses, information gleaned from other DA case files that have been produced, and OPDA's own admissions in the charts provided to the LADB. Applying Defendants' standard would undermine the entire purpose of discovery – i.e., to discover evidence and allow parties to obtain full knowledge of the issues and facts involved in

the case.

For the same reasons, Defendant's arguments with respect to Plaintiffs' responses to OPDA's interrogatories are meritless. Plaintiffs were asked to identify all instances of constitutional violations; for example, every instance in which an OPDA prosecutor compelled a crime victim or witness to speak in violation of that person's First Amendment Rights. *See e.g.,* ECF No. 388-17 (OPDA's First Set of Interrogatories to Lazonia Baham) No. 1 (Ex. O to Motion). Again—the requested DA files are associated with individuals *known* to have received fake subpoenas or to have been the subject of material witness warrants. Since finding many of the individual recipients of fake subpoenas and material witness warrants to learn their version of their interactions with prosecutors is extraordinarily difficult, Plaintiffs cannot ascertain for certain whether or how individuals' constitutional rights were violated unless and until they get the associated DA files. The supposed absence of examples in Plaintiffs' interrogatory responses are a clear result of OPDA's deficiencies (as Plaintiffs noted in their objections to the interrogatories), not an indication of the merits of Plaintiffs' claims.

Although Defendants did not ask at the appropriate time, nor is it necessary for the resolution of this motion, Plaintiffs are happy to provide the basis they have for each of the specific DA files requested in Request No. 45. For example, Plaintiffs sought the case file for *State v. Dante Veals*, Case No. 520-850 I, where OPDA represented that "case prep" was the reason for two fake subpoenas (never produced in discovery) to be sent to a witness several days before an argument, OPDA22006.[6] *State v. Lawrence Martin*, Case No. 517-804, where OPDA sought a fake subpoena

---

[6] This document, which was previously marked CONFIDENTIAL, has now been de-designated. Plaintiffs are waiting for Defendants to re-produce this document and others without the CONFIDENTIAL designation; however, out of an abundance of caution, Plaintiffs will not attach this version to the public filing at this time, but can provide a copy directly to the Court.

directing the victim to show up the day after trial in the underlying case and called it a "courtesy reminder", OPDA22004;[7] *State v. Joseph Lambert*, Case No. 522-421, where several fake subpoenas were sent and then material witness warrants were sought on the basis that the witnesses "failed to appear pursuant to valid service", Ex. L (Mtns. for Material Witness Bonds in *State v. Lambert*); *State v. Garvin Scott*, No. 513-697, which involves allegations of witness coercion and retaliation as set forth in the Declaration of LaKisha Baker (ECF No. 296-57) (Ex. 66 to Mem. in Opp'n to Mot. for Summ. J on L. Baham's Claims Against Individual Defs.); and *State v. Thaddieus Simmons*, Case No. 524-978, and the accompanying material witness case file for *State v. LeShawn Ratliff*, Case No. 525-688, where ADAs alleged that Ms. Ratliff had failed to appear "pursuant to subpoenas for trial" prior to the arrival of a trial date.

It is important to note that Plaintiffs' request for these specific files is already a compromise position that Plaintiffs have taken to ensure proportionality and minimize burden; with respect to relevance, Plaintiffs should not be limited to DA files that it has been able to identify as containing misconduct through its own investigative work, as this obviously represents a subset of the total number of times that OPDA used fake subpoenas, misused material witness warrants, and employed other coercive and retaliatory techniques over the last dozen years. Plaintiffs originally asked for over 350 DA case files wherein it had identified possible misconduct; it has significantly decreased its request to make it as targeted and manageable as possible. But Defendants have not and cannot establish that these DA files are not *relevant* to Plaintiffs' claims.

### C.       Defendants Must Also Provide the DA Files It Previously Agreed to Produce

---

[7] This document, which was previously marked CONFIDENTIAL, has now been de-designated. Plaintiffs are waiting for Defendants to re-produce this document and others without the CONFIDENTIAL designation; however, out of an abundance of caution, Plaintiffs will not attach this version to the public filing at this time, but can provide a copy directly to the Court.

In addition, Plaintiffs' Motion requests that the Court order Defendant to produce seven DA files OPDA agreed to produce, but now refuses to search for and produce without any basis.

There is no justification for failing to search for and produce those DA files; they are the only source for relevant information about the treatment of victims and witnesses in those cases. Again, Plaintiffs can provide details about each case, but, without the DA files, they lack critical evidence regarding how fake subpoenas and material witness warrants were misused. For example, *State v. George Wells*, No. 517-340, involves two fake subpoenas that were provided to the victim's treating physician by former Defendant Arthur Mitchell, purportedly at the witness' request. Ex. M (A. Mitchell Dep. Tr.) at 147:17–148:8; 149:4–150:13. Because Mr. Mitchell's testimony (and the credibility thereof) is relevant generally and also specifically to Ms. Singleton's case, Plaintiffs are entitled to challenge the purported "request" by the witness to receive a fake subpoena. *State v. Kevin Payton*, No. 525-889, is similar; OPDA claims that Arthur Mitchell sent the victim in this case a fake subpoena as a "courtesy reminder." *Id.* at 137:15–138:8; OPDA22010.[8]

Defendant refused to produce these essential documents, relying entirely on Plaintiffs' alleged failure to request these files at the appropriate time (a statement that is baseless, *see* Motion at 7-9). Defendants should be compelled to search for and produce these seven specific case files.

### D.    The DA Case Files Related to Grand Jury Documents Are Also Highly Relevant and Must Be Produced

Plaintiffs requested records and testimony regarding grand jury proceedings related to three grand jury subpoenas and the grand jury proceedings that happened on the dates identified on them

---

[8] This document, which was previously marked CONFIDENTIAL, has now been de-designated. Plaintiffs are waiting for Defendants to re-produce this document and others without the CONFIDENTIAL designation; however, out of an abundance of caution, Plaintiffs will not attach this version to the public filing at this time, but can provide a copy directly to the Court.

(RFP Nos. 46, 47, and 48). Defendants object that Plaintiffs have not explained how the requested documents would be relevant to prove "misuse" of grand jury subpoenas. Opp'n at 16. However, as Plaintiffs explained in their initial Motion:

> [E]vidence gathered at Defendants' depositions suggests that OPDA misused grand jury subpoenas in certain cases to coerce victims and witnesses to meet with OPDA attorneys in the same way it used fake subpoenas, and such evidence is relevant to defining the contours of the unconstitutional policies and practices at issue…

Defendants also object that any such misuse would not be relevant to Plaintiffs' claims, noting that Plaintiffs' Second Amended Complaint did not include a single allegation relating to misuse of grand jury subpoenas. Opp'n at 16. Defendants' position is perplexing, as they are aware of fake grand jury subpoenas produced in discovery that were apparently sent by OPDA employees to witnesses, two of which were sent years after the underlying criminal case had been indicted. *See* Ex. N (fake grand jury subpoena used by ADA Payal Patel); Ex. O (fake grand jury "Article 66" subpoenas sent by investigator on behalf of David Pipes, including correspondence by defense attorney identifying them as invalid). The fake grand jury subpoenas sent from David Pipes were adapted from the same Article 66 fake subpoena template that OPDA and other defendants have long conceded was not a subpoena. D. Pipes Dep. Tr. 154:9–156:8. There can be no dispute that these three fake grand jury subpoenas were a "misuse", because, as Defendants note, grand jury subpoenas must be issued by a judge. Opp'n at 16-17. And OPDA is incorrect that such misuse of grand jury subpoenas is not relevant to Plaintiffs' claims, Opp'n at 17; if ADAs sent documents purporting to be grand jury subpoenas without court supervision to witnesses in order to compel them to meet with OPDA out of court and on the record, that is highly relevant to OPDA prosecutors sending documents purporting to be Article 66 subpoenas for the same reasons.

Defendant concedes that the Louisiana Constitution does not implement an absolute bar to the disclosure of grand jury proceedings, acknowledging that after an indictment, "statutory

irregularities in grand jury proceedings" can be disclosed. *Id.* at 17-18. However, Defendant maintains that Plaintiffs have not identified any such "statutory irregularities" and that Plaintiffs have only vaguely suggested the requested documents "could demonstrate irregularities in OPDA's interactions with and retaliation against crime witnesses." *Id.* at 18. But the documents show, and OPDA witnesses testified, that OPDA misused grand jury subpoenas in certain cases to coerce victims and witnesses to meet with OPDA attorneys. *Compare* Ex. P (S. Dawkins Dep. Tr.) at 178:24–184:16 (discussing sending grand jury subpoenas to two witnesses in ongoing case, with no intention to "have them charged as defendants") *with* OPDA21976[9] (G. Martin letter explaining that "the use of Grand Jury subpoenas for any open or active criminal case is proscribed"); *see also* OPDA26498 (dismissal authorization form related to Kendrick case).[10] Plaintiffs are entitled to the grand jury information about this case, and the other they requested[11] on this basis, and should not be required to make a more specific showing at this stage as such a discovery standard would be unworkable and illogical. Defendants would effectively be asking Plaintiffs to identify specific misuse or wrongdoing in records they have not seen. Further, Plaintiffs' good faith belief that the records it seeks contains misconduct is evidenced by the fact that the materials requested are regarding matters called before the Orleans Parish grand jury on particular dates and involving

---

[9] This document was previously marked CONFIDENTIAL and Plaintiffs are waiting for Defendants to re-produce this document and others without the CONFIDENTIAL designation. Out of an abundance of caution, Plaintiffs will not attach this version to the public filing at this time. The Court previously approved filing this document under seal (*see* No. 369-6 (Ex. 5 to Am. Supp'l Memo. in Opp. to Individual Defs.' Mtn. for Summ. J.)), and an additional copy can be provided to the Court if helpful.
[10] This document was marked CONFIDENTIAL and can be made available to the Court upon request or filed under seal.
[11] The subpoena attached as Appendix B to Plaintiff's Fourth Set of Requests for Production (and the subject of Request No. 48) was provided to Plaintiffs' counsel by a family member of the individual whose presence was sought. She represented that she had reached out to OPDA and was told by an ADA that it was not a grand jury subpoenas but simply a tool to get witnesses to come forward and cooperate.

14

specific individuals – a very narrow request and the opposite of a fishing expedition.

Defendants also argue that Plaintiffs and their counsel are not on the list provided in Article 434 of people to whom "statutory irregularities" can be disclosed. Opp. at 17-18. But the Supreme Court of Louisiana has recognized that "the secrecy of grand jury proceedings is not absolute." *In Re Grand Jury*, 98-2277 (La. 4/13/99), 737 So.2d 1, 3. "In determining whether to permit discovery of grand jury transcripts," the Supreme Court "has followed the same approach as the federal courts. *Id*. (citing cases). Under that approach, "[a] party seeking disclosure has the burden of proving a compelling necessity for the material sought, and the need must be demonstrated 'with particularity.'" *Id*. at 6 (internal citations omitted). The Court stated that while it "recognized the strong public policy in favor of maintaining the secrecy of grand jury proceedings, however, there is also a strong policy in favor of openness in civil, as well as criminal, discovery and grand jury transcripts often provide 'a storehouse of relevant fact.'" *Id*. at 7. And the Court noted that the showing of compelling necessity would provide an exception to the disclosure requirements of Article 434. *Id*. at 6. Again, such compelling necessity is shown here, where there is evidence that the Defendants abused the grand jury process by sending fake grand jury subpoenas, *supra*.

### E.   Plaintiffs Have to Assess How Many DA Subpoenas Were Sent Over Cannizzaro's Tenure to Respond to OPDA's Defenses

Finally, Plaintiffs' most recent request for documents seeks a review of case files to identify the number of and types of fake subpoenas used by OPDA during Cannizzaro's tenure. This review is necessary for Plaintiffs to test the defense asserted by Cannizzaro at his deposition—that he was unaware that documents with the word "subpoena" and other compulsive language were being used, and that they were only used in a small percentage of OPDA cases. *See* Ex. H (L. Cannizzaro Dep. Tr.) at 149:18–151:22; 202:15–203:10.

Defendants argue that these documents are irrelevant and that identifying and producing

them is enormously burdensome. Opp'n at 13–16. But Defendants cannot have it both ways. It is the testimony of former DA Leon Cannizzaro and other OPDA employees that makes the extent and use of DA subpoenas over the course of his tenure highly relevant, and, in fact, the only mechanism for Plaintiffs to respond to OPDA's defenses. Defendants cannot assert a defense that the use of fake subpoenas were infrequent and then deny Plaintiffs the opportunity to test such a defense.

Plaintiffs have set forth *supra* why the prior search OPDA conducted for fake subpoenas was inadequate; OPDA did not search for several types of fake subpoenas and limited the timeframe. But the 2014 template sent out by Graymond Martin had been used prior to its dissemination, and other, equally unconstitutional documents labeled "subpoena" had been sent since *at least* 2010 under Cannizzaro's watch. Ex. Q (Fake Subpoena in *State v. Shannon*). Cannizzaro and OPDA are trying desperately to present the use of fake subpoenas as uncommon, asserting that the 2014 template was outside the norm; Plaintiffs must access the requested, relevant evidence to refute that assertion. If OPDA is willing to enter into stipulations, including a stipulation that it will not represent that the search for fake subpoenas done at the behest of the City Council was comprehensive, and a stipulation that it does not know whether and what fake subpoenas were used prior to 2014, Plaintiffs would not need access to these documents. In the absence of those evidentiary limitations, the review of OPDA's files is the only way for Plaintiffs to refute OPDA's contentions.

## II.    The Requested Documents Are Proportional to the Needs of Discovery and It Would Not Be Unduly Burdensome to Produce

For the reasons set forth above, Plaintiffs are entitled to both the specific DA case files identified as well as a review of additional DA files to assess the use of and extent to which OPDA used fake subpoenas during Cannizzaro's tenure. In  its  Opposition,  Defendants  maintain  their

objection that Plaintiffs' requests are burdensome and disproportionate to the needs of the case. Opp'n at 11–12. However, Defendants fail to support their burden arguments with any tangible details; for that reason alone, it should be rejected. *See Biote Med., LLC v. Jacobsen*, No. X, 2021 U.S. Dist. LEXIS 18097, at *8-9 (E.D. Tex. Feb. 1, 2021) (noting that a party objecting based on proportionality or burden "typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request") (quoting *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (quotation omitted)).

OPDA's burden and proportionality arguments lack merit. *First*, to the extent that Defendants' arguments are based on its own failure to maintain documents or files in a reasonable fashion, that cannot be a reason why Plaintiffs are denied access to them. *See Fagan v. D.C.*, 136 F.R.D. 5, 7 (D.D.C. 1991) ("Plaintiffs should not suffer if the information is not easily accessible because defendants have an inefficient filing system."); *ROY-G-BIV Corp. v. Fanuc Ltd.*, No. 2:07-CV-418 (DF), 2008 WL 11346476, at *5 (E.D. Tex. July 15, 2008) (requesting party "should not suffer" because of producing party's "inefficient filing system.") (citing *Fagan*); *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) ("The defendant may not excuse itself from compliance with Rule 34 . . . by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition. To allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules."). And OPDA fails to reckon with the fact that, because of its own shoddy recordkeeping, there is no other alternative for Plaintiffs to obtain this information. There are no electronic files to be searched or emails to be gathered; the evidence of misconduct is in OPDA's

own files, and OPDA cannot simultaneously argue Plaintiffs have not adduced enough evidence while refusing to give them the files containing it.

*Second*, OPDA's burden arguments focus almost entirely on Plaintiffs' request to review case files; it provides no reason why it cannot search for and produce the seven DA case files OPDA previously agreed to produce, nor the 75 additional DA case files that Plaintiffs have identified and discussed *supra*. OPDA has made clear that it can search for specific case files by name and case number; Plaintiffs have provided a list in that format for that reason. And given the protective order in place, OPDA has not been conducting, nor does it need to conduct, a review of the case files produced for privilege prior to production. Should that be a concern, Plaintiffs reiterate their willingness to enter into a Rule 502(d) Order, which should assuage concerns about cost, burden, and privilege.

*Third*, with respect to Plaintiffs' request to review case files for DA subpoenas, Defendant relies on the search it conducted at the direction of City Council to argue it has produced "enough" in this case. But the time period and scope of the City Council search falls well short of that necessary to ascertain the full contours of the unconstitutional conduct alleged in this action. Motion at 16–17. Plaintiffs' claims are not limited to the May 2014 template, and it has already been revealed that other types of DA subpoenas were used during the relevant time period. *See* ECF No. 294-10 (Ex. 7 to Mem. in Opp'n to Mot. for Summ. J on R. Singleton's Claims Against Individual Defs.) (compilation of eleven versions of fake subpoenas used by OPDA). The fact that other types of "DA subpoenas" were not styled as "subpoenas" or may not have contained language referencing fines or imprisonment for failure to comply does not mean these documents were not coercive and unconstitutional and thus somehow disproportionately burdensome for OPDA to produce, as it alleges. *See* Opp'n at 15. In addition, OPDA's attempt to limit the relevant time

period to 2015 and 2016 fundamentally ignores and misunderstands Plaintiffs' *Monell* claims, as the relevant time period includes both before Mr. Cannizzaro took office and during Mr. Cannizzaro's time in office.

*Fourth*, Plaintiffs recognize that reviewing DA case files for several years is a large task. But, as set forth above, OPDA's chosen defenses have left Plaintiffs no other choice, and OPDA has not engaged with Plaintiffs about any alternative mechanisms. OPDA rejects out of hand Plaintiffs' offer to review the DA case files themselves at an off-site location and enter into a Rule 502(d) Order, but these are meaningful, reasonable compromises that address their purported concerns and would eliminate the burden from OPDA entirely. *See, e.g.*, *Icon Health & Fitness v. Horizon Fitness*, 2009 U.S. Dist. LEXIS 148589, at *18-19 (E.D. Tx. Mar. 16, 2009) (granting motion to compel and noting that unduly burdensome argument was not persuasive given Plaintiffs' offer to minimize the cost of production by conducting a site inspection); *McElgunn v. Cuna Mut. Group*, 2008 U.S. Dist. LEXIS 140876, at *12 (D.S.D. Apr. 3, 2008) (fact that defendants will have to review dozens of boxes of documents is not a sufficient reason to find that the document request is unduly burdensome, especially when plaintiff has offered to appear at any designated location to inspect the documents so as to alleviate defendants of the time and expense of scanning and copying all the requested documents); *see* Advisory Committee Notes to Fed. R. Evid. 502(d) (explaining that purpose of new rule "responds to the widespread complaint that litigation costs necessary to protect against waiver of attorney-client privilege or work product have become prohibitive due to the concern that any disclosure (however innocent or minimal) will operate as a subject matter waiver of all protected communications or information"). OPDA's insistence on maintaining particular defenses while refusing to engage on how Plaintiffs can obtain evidence uniquely in OPDA's possession to refute those defenses, is exactly the type of

gamesmanship that cannot be allowed. *See Long v. C.M. Long, Inc.*, 2016 U.S. Dist. LEXIS 82166, at *8-9 (W.D. La. Jun. 22, 2016) (granting motion to compel and explaining that where defendant intends to argue good faith defense, plaintiff is entitled to information that may rebut that defense under Fed. R. Civ. P. 26(b)); *Heller v. City of Dallas*, 303 F.R.D. 466, 489 (N.D. Tx. 2014) ("[A] party cannot refuse to produce a requested document or information simply because it is relevant to a claim or defense on which the producing party believes that it will prevail.").

## CONCLUSION

For the reasons explained above, Plaintiffs respectfully request that the Court grant this motion to compel and order Defendants to produce the requested documents.

Respectfully submitted this 11th day of June, 2021,

> _/s/  Sarah S. Brooks_
> Sarah S. Brooks
> VENABLE LLP
> 2049 Century Park East, Suite 2300
> Los Angeles, CA 90067
> ssbrooks@venable.com
> (310) 229-0408
> *Counsel for Plaintiffs*

Katherine Chamblee-Ryan (*pro hac vice*)
Tara Mikkilineni (*pro hac vice*)
Ryan C. Downer (*pro hac vice*)
Laura Gaztambide Arandes (*pro hac vice*)
Jeffrey D. Stein (*pro hac vice*)
Civil Rights Corps
1601 Connecticut Avenue NW, Suite 800
Washington, D.C. 20009
Tel: (202) 844-4975

Allison B. Gotfried (*pro hac vice*)
Tel: (212) 370-6227
Thomas Welling (*pro hac vice*)
Tel: (212) 503-0558
Venable LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020

Sarah S. Brooks
Alicia M. Sharon
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Tel: (310) 229-0408

*Counsel for Plaintiffs*

Mariana Kovel (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (646) 905-8870
mkovel@aclu.org