# EXHIBIT A



Laura Arandes <lauraarandes@civilrightscorps.org>

## Singleton v. Cannizzaro - Meet and Confer Summary

**Laura Arandes** <lauraarandes@civilrightscorps.org>     Thu, Apr 22, 2021 at 10:45 AM
To: John Alford <jalford@orleansda.com>, John Alford <jsalford@dudleydebosier.com>, "Matthew J. Paul" <mjp@stanleyreuter.com>
Cc: "Sarah S. Brooks" <SSBrooks@venable.com>, Nabihah Maqbool <nabihah@civilrightscorps.org>, Savannah Baker <savannah@civilrightscorps.org>

John (and Matt),

Thank you for meeting and conferring yesterday regarding Plaintiffs' March 26, 2021 deficiency letter to OPDA. Below, I summarize what I believe the takeaways were. Please let me know if you disagree. If we do not hear from you, we will assume you agree with our characterization below.

With respect to Plaintiffs' Fourth Set of Request for Production No. 25 and the specific DA files attached as Appendix A, OPDA will not be searching for and producing these case files. OPDA's position is that it is overly burdensome and not proportional to the needs of the case in light of the approximately 120 DA files already produced. Our position is that these files are highly relevant because they reflect the DA's use of fake subpoenas and material witness warrants in particular cases, and the details of the specific uses are relevant in light of OPDA's defenses. We also believe that it is not overly burdensome because we are asking for case files related to less than 50 cases and we have provided names and case numbers so that they can be easily searched for and identified as requested by OPDA's prior lawyer Mr. Freeman. ~~Because~~ It appears we are at an impasse.

With respect to the outstanding DA files that Plaintiffs believe OPDA agreed to produce, John noted that OPDA searched for the MWW case file for State v. Damera Echols, No. 535-219, and it could not be located (but noted the underlying criminal case file had been produced). Matt added that the DA file for State v. Rolando Martinez, Case No. M549401, was produced in December 2020. Matt then represented that OPDA would not produce the other 7 DA case files we requested because OPDA had not, in fact, agreed to produce them. I laid out in detail in my March 26th letter how each of these files had, in fact, been requested and OPDA had agreed to produce them. I will note now, as I noted in my letter, that although one requested file had an incorrect case number, you have been provided with the case number now, and had it in your possession at the time of the request. Matt indicated OPDA would stand on its objection to producing any additional case files as unduly burdensome. Thus, it appears we are at an impasse on this issue as well.

With respect to Plaintiffs' RFPs No. 46, 47, and 48, you represented that you do not understand the relevance of the documents we are seeking, noting that none of the Plaintiffs received a grand jury subpoena. We stated that the evidence suggests that OPDA misused grand jury subpoenas to coerce victims and witnesses to meet with OPDA attorneys in the same way it used fake subpoenas, and that such evidence is relevant to several of our constitutional claims. To the extent Defendants continue to object to turning these materials over because of the secrecy of grand jury proceedings, the protective order is in place to address such concerns. Defendants disagreed. We are at an impasse on this issue as well.

Finally, with respect to the additional search terms to be run on OPDA emails, we first discussed Plaintiffs' proposed searches to obtain email correspondence regarding interviews or interviewing, arrests, or capias and witnesses and victims. Our ask, at this point, was whether OPDA would simply run the search terms to identify how many responsive hits resulted. Matt asked which RFPs these search terms were targeted at obtaining information regarding. We reminded you that our search terms were designed in light of OPDA's failure to search for and produce responsive emails to any of Plaintiffs' First Set of RFPs, and that it was relevant to, among others, RFP 1, 3, 4, and 7. We also noted that the fact that OPDA has failed to do a full review of its case files means that there are types of fake subpoenas and examples of practices that we can not and could not know about in the absence of search terms that will obtain correspondence between OPDA attorneys as well as between OPDA attorneys and outside individuals. Matt replied that this isn't a well-

defined search that is reasonably targeted at responses OPDA has agreed to produce. I reiterated that we would know whether it was well-defined and reasonably targeted if OPDA ran the search terms and provided the number of responsive hits. You confirmed that OPDA will not take that step at this time.

We then discussed the other narrowed search terms we have agreed OPDA would use to search emails (set forth in Sarah's Jan. 6, 2021 email), and we agreed that OPDA would propose a list of email custodians including potential supervisors, ADAs, investigators, and victim-witness advocates that worked on the relevant cases that they would run the searches on for each term. Matt noted that the IT personnel would actually run the search so we could see what the number of hits was. We hope to get that information in short order so we can obtain any additional responsive emails quickly.

Finally, we asked for an update on OPDA's responses to my March 31, 2021, email noting that several OPDA interrogatory verifications were missing. John indicated that he did not have an ETA, but was working on obtaining them.

Best,

Laura

--

**Laura Gaztambide Arandes** | *Supervising Attorney*

she/her/hers

(202) 894-6134

**Civil Rights Corps**

*Admitted to practice in DC, MD, and CA.*