## SETTLEMENT, RELEASE, AND INDEMNITY AGREEMENT

WHEREAS, on October 17, 2017, in the U.S. District Court for the Eastern District of Louisiana, Plaintiffs filed *Singleton v. Cannizzaro*, Case No. 17-cv-10721 (the "Lawsuit"), pursuant to 42 U.S.C. § 1983, alleging violations of the First, Fourth and, Fourteenth Amendments to the United States Constitution, and the laws of the state of Louisiana, and seeking monetary damages and injunctive relief against the Orleans Parish District Attorney's Office ("OPDA") and several prosecutors in their individual capacities; and

WHEREAS, multiple claims and parties have separately been settled and/or dismissed from the case, and now three Plaintiffs still maintain claims against OPDA; and

WHEREAS, this Settlement, Release, and Indemnity Agreement ("Agreement"), the terms of which were extensively and vigorously negotiated in good faith, resolves all outstanding claims against OPDA; and

WHEREAS, in exchange for the relief described within this Agreement, the remaining Plaintiffs have elected to forgo their right to seek any additional attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

NOW, THEREFORE, the undersigned parties to this Agreement agree to the terms and conditions set forth herein:

**1.    Parties**

    1.1.    The following are the parties to this Agreement:

        (a)    Plaintiffs Renata Singleton, Lazonia Baham, and Tiffany LaCroix (the "Plaintiffs"); and

        (b)    Defendant Jason R. Williams, in his official capacity as District Attorney of Orleans Parish ("OPDA").

    1.2.    In executing and consenting to this Agreement, the parties named above (the "Parties") shall include and hereby bind their assigns, predecessors and successors in interest, officers, attorneys, agents, representatives, public officials, and any party or person claiming through them.

**2.    Recitals**

    2.1.    OPDA denies that it is liable under any of claims asserted in this Lawsuit or that it has engaged in wrongdoing or illegal conduct.

    2.2    The Plaintiffs deny any wrongdoing in connection with this Lawsuit, including in connection with the criminal prosecutions that gave rise to the events on which the Lawsuit

Exhibit 1

is based. The Plaintiffs further deny any liability with respect to any civil claim that OPDA may have against them, known or unknown.

2.3.  The Parties wish to settle and compromise totally and finally all claims (actual or potential, known or unknown) among them and all of the Plaintiffs' remaining claims against all defendants in the Lawsuit, including without limitation any right or claim to costs or attorneys' fees. The Parties intend that this Agreement shall be construed to the fullest extent to achieve that objective.

2.4.  The Parties acknowledge that the covenants contained in this Agreement provide good and sufficient consideration for every promise, duty, release, obligation, and right contained in this Agreement.

2.5.  The Parties intend that this Agreement and the promises contained therein are not, and shall not be construed as, an admission of fault, liability, or wrongdoing by any Party.

**3.  Settlement Payments.** In consideration for the Plaintiffs signing this Agreement and complying with the promises made herein, OPDA agrees to pay a total sum of ONE HUNDRED TWENTY THOUSAND DOLLARS AND ZERO CENTS ($120,000), which will be paid in two installments. The first installment of $60,000 will be paid on or before December 15, 2021. The second installment of $60,000 will be paid on or before August 31, 2022. The payments shall be made to "ACLU Foundation," 125 Broad Street, 18th Floor, New York, NY 10004, Attn: Molly Kovel. The allocation of the payments shall be determined among the Plaintiffs and their counsel without further obligation on the part of OPDA.

**4.  OPDA Policy Agreement.** OPDA also agrees to adopt, implement, and enforce the policies contained in the "OPDA Agreement on Policies Concerning Subpoenas, Material Witness Warrants, and Engagement with Crime Victims and Witnesses" (the "Policy Statement"), which is attached as Exhibit A to this Agreement and is expressly incorporated as part of this Agreement.

**5.  Mutual Release of Claims and Covenant Not to Sue**

5.1.  Renata Singleton, Lazonia Baham, and Tiffany LaCroix hereby settle, release, compromise, and forever discharge OPDA and all of its past and present employees, officers, attorneys, agents, representatives, public officials, predecessors in interest, and successors in interest from any and all claims arising from or in any way connected with the allegations of the Lawsuit, including without limitation any demands, suits, actions, causes of action, debts, and obligations of any nature whatsoever, whether known or unknown, whether at law or in equity, and whether sounding in contract, tort, or otherwise, that may exist as of the Effective Date of this Agreement (as defined herein), including, specifically, the claims asserted by Ms. Singleton, Ms. Baham, and Ms. LaCroix in the Lawsuit. Ms. Singleton, Ms. Baham, and Ms. LaCroix expressly release and discharge any claims for recovery of attorneys' fees, court costs, or litigation expenses from OPDA. The foregoing will not be deemed to release OPDA from claims solely to enforce this Agreement.

5.2. OPDA hereby settles, releases, compromises, and forever discharges Renata Singleton, Lazonia Baham, and Tiffany LaCroix, and all of their attorneys, agents, representatives, predecessors in interest, and successors in interest, from any and all claims arising from or in any way connected with the allegations of the Lawsuit, including without limitation any demands, suits, actions, causes of action, debts, and obligations of any nature whatsoever, whether known or unknown, whether at law or in equity, and whether sounding in contract, tort, or otherwise, that may exist as of the Effective Date of this Agreement (as defined herein), including, specifically, any claims for defamation, libel, slander, and any claims arising from anything asserted by the Plaintiffs in the Lawsuit. OPDA expressly releases and discharges any claims for recovery of attorneys' fees, court costs, or litigation expenses from the Plaintiffs. The foregoing will not be deemed to release the Plaintiffs from claims solely to enforce this Agreement.

**6.   Indemnification**

6.1. Ms. Singleton agrees to defend, hold harmless, and indemnify OPDA for any claim, demand, cause of action, suit, or other proceeding that is brought by or on behalf of Ms. Singleton, her agents, attorneys, accountants, representatives, insurers, or assignees, or any party claiming through her, that was released by Ms. Singleton pursuant to Subsection 5.1 of this Agreement.

6.2. Ms. Baham agrees to defend, hold harmless, and indemnify OPDA for any claim, demand, cause of action, suit, or other proceeding that is brought by or on behalf of Ms. Baham, her agents, attorneys, accountants, representatives, insurers, or assignees, or any party claiming through her, that was released by Ms. Baham pursuant to Subsection 5.1 of this Agreement.

6.3. Ms. LaCroix agrees to defend, hold harmless, and indemnify OPDA for any claim, demand, cause of action, suit, or other proceeding that is brought by or on behalf of Ms. LaCroix, her agents, attorneys, accountants, representatives, insurers, or assignees, or any party claiming through her, that was released by Ms. LaCroix pursuant to Subsection 5.1 of this Agreement.

6.4. OPDA agrees to defend, hold harmless, and indemnify Ms. Singleton, Ms. Baham, and Ms. LaCroix for any claim, demand, cause of action, suit, or other proceeding that is brought by or on behalf of OPDA, its agents, attorneys, accountants, representatives, insurers, or assignees, or any party claiming through it, that was released by OPDA pursuant to Subsection 5.2 of this Agreement.

**7.   Warranties.** The Parties, as the releasors of the claims described above in Section 5 of this Agreement, acknowledge, represent, and warrant that they are the owners of the claims released by them (including all potential claims for attorneys' fees, court costs, or litigation expenses) and that they have not assigned, sold, transferred, or otherwise disposed of any such claims, whether such assignment, sale, transfer, conveyance, or other disposition has occurred by operation of law or otherwise, and, to the best of their knowledge, information, and belief, they know of no other person who has asserted any such right to their claims or threatened or intended to assert such a

right. The Plaintiffs further warrant that no contracts of employment with any attorneys have been filed in accordance with LA. REV. STAT. § 37:218 that would in any way nullify or affect this Agreement, the settlement effected hereby, or the dismissal of the Plaintiffs' claims in the Lawsuit. In the event that any Party breaches any of the warranties or obligations of this Section, the Party in breach shall hold the other non-breaching Parties harmless for any resulting damages, costs, expenses, and attorney's fees incurred by reason of said breach.

**8.     Non-Prosecution.** OPDA agrees that it will not file any criminal charges against Ms. Singleton, Ms. LaCroix, or Ms. Baham arising from any conduct related to this Lawsuit, including for any activity related to the underlying criminal case for which Ms. Singleton, Ms. LaCroix, or Ms. Baham may have been a witness or victim. This Agreement does not provide any protection against prosecution for any future conduct by Ms. Singleton, Ms. LaCroix, or Ms. Baham.

**9.     Monitoring and Enforcement of Agreement**

   9.1.   As set forth in the "Joint Motion to Dismiss All Remaining Claims With Prejudice," which is attached as Exhibit B to this Agreement, the Plaintiffs and OPDA shall request that the Court retain jurisdiction to enforce this Agreement for a period of 42 months following the Effective Date of this Agreement.

   9.2.   No more than 15 days after the Effective Date of this Agreement, the Plaintiffs and OPDA shall jointly select a Monitor to supervise and monitor OPDA's compliance with the Policy Statement for a 42-month period coinciding with the Court's continuing jurisdiction.

   9.3.   At six-month intervals, beginning six months after the Effective Date of this Agreement, OPDA will provide the following documents and data to the Monitor:

   9.3.1.   copies of all motions for material-witness warrants filed in court by OPDA prosecutors;

   9.3.2.   for each motion seeking a material-witness warrant, a statement of whether the motion was granted; whether the witness was represented by counsel; whether the witness was arrested; and, if so, the dates of arrest and release from custody;

   9.3.3.   copies of all grievances submitted by victims and witnesses concerning interactions with OPDA;

   9.3.4.   for each grievance, a statement of the actions taken by OPDA in response, or a statement that no action was taken; and

   9.3.5.   a description of any training that has been conducted pursuant to Section 7 of the Policy Statement, including the dates on which such training was conducted.

   9.4.   The Monitor shall review the data provided by OPDA and, if the Monitor believes there are any actual or potential problems relating to OPDA's compliance with the Policy

Statement, the Monitor shall bring those issues to OPDA's attention. OPDA shall consider the issues raised by the Monitor in good faith and confer with the Monitor as needed to resolve the issues.

9.5. If, after conferring with OPDA, the Monitor believes that there is a significant issue of noncompliance with the Policy Statement that has not been resolved to the Monitor's satisfaction, the Monitor shall notify the Plaintiffs of the issue and explain his or her basis for believing that OPDA is not in compliance. Upon being notified by the Monitor of a potential compliance issue, the Plaintiffs may file a motion in the District Court seeking to enforce this Agreement.

9.6. Additionally, if any Party to this Agreement believes that another Party is not complying with the terms of this Agreement (including the Policy Statement) with respect to an issue that has *not* been identified by the Monitor, the aggrieved Party shall notify the other Party or Parties in writing and describe the alleged noncompliance with particularity. If the issue concerns OPDA's compliance with the Policy Statement, the Monitor shall be notified also. The Parties (and the Monitor if applicable) shall meet and confer about the issues raised within ten business days. If the Parties are unable to resolve their differences, the aggrieved Party may file a motion in the District Court seeking to enforce this Agreement.

9.7. If OPDA believes that the Policy Statement should be modified for good cause, considering the need for OPDA to effectively and fairly prosecute the criminal offenses for which it is responsible, OPDA shall notify the Plaintiffs and the Monitor in writing and describe the proposed modification and the reasons for the modification with particularity. The Plaintiffs, OPDA, and the Monitor shall meet and confer about the proposal within ten business days. If the Plaintiffs and OPDA are unable to resolve their differences, OPDA may file a motion in the District Court seeking to modify the Policy Statement.

9.8. Only the Parties to this Agreement are entitled to enforce any of the promises contained herein. This Agreement is not intended to, and does not, create any third-party rights or provide standing for any non-party to seek enforcement of the Agreement (including the Policy Statement) in court.

9.9. Any motion to enforce the Agreement shall be heard and decided by the Magistrate Judge who is presiding over the Lawsuit. The Magistrate Judge may also choose to conduct a status conference with the Parties to determine whether the motion to enforce may be resolved informally. The Parties reserve their right to appeal the Magistrate Judge's orders and decisions concerning compliance with the Agreement to the District Court, as governed by applicable law.

9.10. No award of attorneys' fees shall be available in connection with a motion to enforce the Agreement, unless the Magistrate Judge determines that a Party committed a willful and egregious violation of the Agreement.

10.     **Miscellaneous Provisions**

    10.1.   **Consultation with Counsel**. The Parties hereby declare that the terms of this Agreement have been completely read and discussed with their respective counsel, and that the terms set forth herein are fully understood and voluntarily accepted for the purpose of making a full and final compromise, settlement, and release of any and all claims that have arisen between the Parties.

    10.2.   **Scope of Agreement**. This Agreement is intended by the Parties to be a final, complete, and exclusive statement of their agreement and understanding with respect to the subject matters contained herein. This Agreement supersedes any and all prior promises, representations, warranties, agreements, understandings, duties, and undertakings between or among the Parties with respect to such subject matters, and there are no promises, representations, warranties, agreements, understandings, duties, or undertakings with respect to such subject matters other than what is set forth in this Agreement and the attachments thereto.

    10.3.   **Severability**. If any provisions of this Agreement, or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of the Agreement, and application of such provisions to other circumstances, shall remain in full force and effect and be interpreted so as best to reasonably effect the intent of the Parties.

    10.4.   **Governing Law**. This Agreement shall be governed by the laws of the State of Louisiana.

    10.5.   **Forum**. Any motion, action, suit, or other proceeding arising out of a breach of this Agreement or any other dispute as to this Agreement shall be brought in the United States District Court for the Eastern District of Louisiana, which shall retain jurisdiction for this purpose. The Parties agree to submit to the jurisdiction of that court with respect to any matter pertaining to this Agreement. The Parties further agree that the sole remedy for any breach of this Agreement shall be specific performance, and that neither damages (other than any attorneys' fees authorized pursuant to Section 9.10 of this Agreement) nor nullification of the settlement shall be available.

    10.6.   **Effective Date**. This Agreement shall become effective on the date when it has been signed by all of the Parties below.

    10.7.   **Joint Motion to Dismiss**. Within ten days of the Effective Date of this Agreement, the Parties will file the attached "Joint Motion to Dismiss All Remaining Claims With Prejudice," attaching this Agreement as an exhibit thereto.

    10.8.   **Counterparts**. The Parties agree that scanned and photocopied signatures shall have the same force and effect as original signatures. This Agreement may be executed in counterparts, and all counterparts so executed shall constitute one agreement that shall be binding on the Parties.

10.9. **Authority.** By their signatures below, the Parties represent that they have complete authority to enter into this Agreement and to bind themselves to the terms set forth herein.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of the dates below.

_____  Date: 10/3/2021
Renata Singleton

_____  Date: 10/4/2021
Lazonia Baham

_____  Date: 10/4/2021
Tiffany LaCroix

_____  Date: 10/5/2021
**Counsel for the Plaintiffs**

_____  Date: _____
Jason R. Williams, on behalf of the
Orleans Parish District Attorney's Office
(*i.e.*, Jason R. Williams, in his official capacity
as District Attorney of Orleans Parish)

_____  Date: _____
**Counsel for the Defendants**

10.9. **Authority**. By their signatures below, the Parties represent that they have complete authority to enter into this Agreement and to bind themselves to the terms set forth herein.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of the dates below.

_____   Date: _____
**Renata Singleton**

_____   Date: _____
**Lazonia Baham**

_____   Date: _____
**Tiffany LaCroix**

_____   Date: _____
**Counsel for the Plaintiffs**

_____   Date: 10-4-21
**Jason R. Williams, on behalf of the Orleans Parish District Attorney's Office** (*i.e.*, Jason R. Williams, in his official capacity as District Attorney of Orleans Parish)

_____   Date: _____
**Counsel for the Defendants**

10.9. **Authority**. By their signatures below, the Parties represent that they have complete authority to enter into this Agreement and to bind themselves to the terms set forth herein.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of the dates below.

_____  Date: _____
**Renata Singleton**

_____  Date: _____
**Lazonia Baham**

_____  Date: _____
**Tiffany LaCroix**

_____  Date: _____
**Counsel for the Plaintiffs**

_____  Date: _____
**Jason R. Williams, on behalf of the
Orleans Parish District Attorney's Office**
(*i.e.*, **Jason R. Williams, in his official capacity
 as District Attorney of Orleans Parish**)

*[signature]*

_____  Date: 10/5/2021
**Counsel for the Defendants**

**OPDA AGREEMENT ON POLICIES CONCERNING SUBPOENAS, MATERIAL WITNESS WARRANTS, AND ENGAGEMENT WITH CRIME VICTIMS AND WITNESSES**

1. **Use of Subpoenas and Prohibition of Subpoenas that are not Legally Authorized.**

    a.  OPDA will not create, disseminate, or otherwise use any document that purports to be a subpoena but has not been lawfully issued in accordance with the applicable provisions of the Louisiana Code of Criminal Procedure.

    b.  Other than lawfully issued subpoenas, OPDA will not create, disseminate, or otherwise use any document that purports to legally require any person to report to, meet with, communicate with, or otherwise cooperate with any OPDA employee or creates the misleading impression that the person is legally required to report to, meet with, communicate with, or otherwise cooperate with any OPDA employee.

    c.  OPDA employees shall attempt to ensure that all subpoenas issued at their request include all information required by the Louisiana Code of Criminal Procedure.

    d.  In accordance with Article 66 of the Louisiana Code of Criminal Procedure, Article 66 subpoenas shall be requested only with respect to offenses that are "under investigation by" OPDA.

    e.  No prosecutor shall seek an Article 66 subpoena after an indictment or bill of information has been filed concerning the offense at issue, unless OPDA is investigating new or additional charges.

    f.  No OPDA employee or agent, including investigators and victim-witness advocates, may serve any subpoena without authorization from an OPDA prosecutor.

2. **Use of Material Witness Warrants.**

    a.  The use of material witness warrants by OPDA shall be an extraordinary measure that is used only when absolutely necessary.

    b.  OPDA employees shall operate with the rebuttable presumption that arrest and detention of witnesses are unnecessary and that witnesses will comply with lawful subpoenas.

    c.  If a witness has expressed any concerns about safety, OPDA shall take reasonable steps to address the witness's concerns before resorting to a material witness warrant.

    d.  Material witness warrants shall not be requested in cases in which the highest charged offense involving the witness is a misdemeanor.

    e.    Material witness warrants shall not be requested with respect to any individual who is the alleged victim in the case, unless exceptional circumstances apply.

    f.    Material witness warrants shall not be requested with respect to witnesses who are known to be pregnant or to suffer from serious health conditions.

    g.    OPDA prosecutors shall not request money bail for a witness who is arrested pursuant to a material witness warrant.

3. **Motions Seeking Material Witness Warrants.**

    a.    Motions seeking material witness warrants shall not include misrepresentations or material omissions.

    b.    Motions seeking material witness warrants must state the complete grounds for asserting that the legal standard is satisfied, as well as any information that in any way undermines, impeaches, or contradicts the allegations or evidence set forth in support of the motion.

    c.    The prosecutor submitting a motion seeking a material witness warrant shall review all affidavits, documents, and other materials attached to the motion before submitting the motion and attachments.

    d.    In a motion seeking a material witness warrant, no OPDA prosecutor shall describe any document as a "subpoena" unless it is a lawfully issued subpoena.

    e.    If the term "subpoena" is used in a motion for material witness warrant, the motion shall explicitly state, with respect to each such reference, what the subpoena required of the witness (*e.g.*, where the witness was required to report and on what date).

    f.    If a motion for material witness warrant includes any reference to "service" of a subpoena, the motion shall explicitly state, with respect to each such reference, the date and type of service (*e.g.*, personal, domiciliary, by mail).

    g.    No motion seeking a material witness warrant shall be filed in which the witness's refusal to voluntarily appear at the District Attorney's Office or otherwise cooperate with the prosecution is the sole basis for asserting that it may become impracticable to secure the witness's presence by subpoena.

    h.    Motions seeking material witness warrants shall include the specific date or potential range of dates on which the prosecutor intends to call the witness to testify.

4. **Approval to Seek Material Witness Warrants.**

   a. The District Attorney shall designate a Supervising Attorney who reports directly to the District Attorney or the First Assistant, and whose responsibilities include overseeing the use of material witness warrants and approving or denying requests by prosecutors to seek material witness warrants.

   b. Before any motion seeking a material witness warrant is filed, the prosecutor wishing to seek a material witness warrant shall request permission from the Supervising Attorney.

   c. The Supervising Attorney shall determine whether the requirements concerning material witness warrants set forth in this Agreement are satisfied. If these requirements are not satisfied, permission to seek a material witness warrant shall be denied.

5. **Procedures After Issuance of a Material Witness Warrant.**

   a. After a material witness warrant is issued by the court at the request of an OPDA prosecutor, the Supervising Attorney shall meaningfully monitor the prosecutor's compliance with the relevant provisions of this Agreement.

   b. If the witness is not known to have counsel, within 24 hours of the time when the motion seeking a material witness warrant is granted, the prosecutor who filed the motion shall notify the designated Orleans Public Defenders Office conflicts panel that the motion has been granted as to that witness.

   c. A prosecutor whose motion seeking a material witness warrant has been granted shall take all reasonable steps to ensure that he or she is promptly alerted to the witness's arrest.

   d. When a prosecutor whose motion seeking a material witness warrant was granted learns that the witness has been arrested pursuant to the warrant, the prosecutor shall take all reasonable steps to ensure that the witness is released as expeditiously as possible (unless the witness is also being held on other charges).

   e. If, at any time while a witness remains detained pursuant to a material witness warrant sought by OPDA, the Supervising Attorney finds that the witness's detention is no longer justified (taking into account the guidelines of Section 2 above), OPDA shall request that the court order the witness to be released.

   f. After the underlying criminal case or the material witness case is concluded (whichever is concluded first), the prosecutor who sought the material witness warrant (or his or her successor) shall request that the warrant be recalled.

   g. The Supervising Attorney shall conduct regular audits of OPDA's system to ensure no material witness warrants remain open on closed cases.

  h.  Any case file that is created for a material witness warrant issued by the court shall be linked to the underlying criminal case file.

6. **Engagement with Crime Victims and Witnesses.**

  a.  OPDA employees shall not use coercive or unlawful means to secure cooperation from crime victims or witnesses.

  b.  All OPDA employees shall comply with all relevant provisions of Louisiana law concerning the rights of crime victims and witnesses. *See* LA. CONST., Art. I, § 25; LA. REV. STAT. §§ 46:1841 *et seq.* OPDA shall ensure its employees' compliance with these provisions through training, supervision, and discipline as necessary.

  c.  OPDA will accept and give consideration to crime victims' views with respect to the disposition of criminal cases and the use of available sentencing alternatives, in accordance with LA. REV. STAT. § 46:1841(D).

  d.  No OPDA employee shall knowingly misrepresent information to a crime victim or witness.

  e.  OPDA shall not prohibit crime victims or witnesses from conferring with agents of the defense team.

  f.  Assistant District Attorneys and Victim-Witness Coordinators shall endeavor to document all communications with victims and witnesses concerning items of major significance, including but not limited to communications that are exculpatory or favorable to the defense and communications about the dispositions of cases.

  g.  OPDA shall create and maintain a grievance procedure that will allow crime victims and witnesses to submit grievances about their interactions and/or engagement with OPDA. This grievance procedure shall be designed to ensure that no crime victim or witness is unlawfully deterred from providing his or her truthful account of the facts or faces any form of unlawful retaliation for providing his or her truthful account of the facts. This grievance procedure does not encompass complaints expressing dissatisfaction with the final disposition of a criminal case or the plea negotiation process.

  h.  Grievances submitted by crime victims and witnesses shall be recorded and reviewed by a supervisory OPDA attorney.

  i.  Any prosecutor who is found to have violated the Office's policies concerning the use of subpoenas or material witness warrants, or to have harassed, intimidated, or coerced witnesses, shall be subject to discipline.

7. **Training.**

    a. All prosecutors shall be required to attend an annual training that covers:

        i. Their obligations under state law and constitutional law;

        ii. The impact of trauma on crime survivors and witnesses; the effects of incarceration on individuals' ability to recover from trauma; the impact of trauma on mental health; and trauma-informed interactions with and questioning of crime survivors and witnesses;

        iii. Appropriate engagement with crime survivors and witnesses with behavioral and mental health issues;

        iv. Implicit bias and how poverty impacts crime survivors and witnesses' engagement with the criminal-legal system;

        v. The Office's policies and procedures set forth in this Agreement;

        vi. The use of grand jury subpoenas;

        vii. Any new legal developments related to the issues addressed in this Agreement; and

        viii. The resources afforded by outside victim-support services.

    b. The training program for prosecutors described above shall be developed in collaboration with the Plaintiffs, survivor advocacy groups, and subject-matter experts in the enumerated areas. Such collaboration shall begin when the settlement is finalized.

    c. All newly hired prosecutors shall be required to attend such training within six months of their date of hiring.

    d. All prosecutors shall be required to attend a supplemental training if the policies set forth in this Agreement are amended or if the law relevant to these policies changes.

    e. Prosecutors found to be in violation of the policies set forth in this Agreement may also be required to attend additional training.